UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

LISA K. BLUMENSCHINE,            :   CIVIL ACTION NO. 302CV2244 DJS
                                 :
            Plaintiff,           :
                                 :
vs.                              :
                                 :
PROFESSIONAL MEDIA GROUP LLC,    :   DECEMBER 8, 2003
                                 :
            Defendant.           :


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Defendant Professional Media Group, LLC (the "Company"), submits this memorandum of law in support of its motion for summary judgment pursuant to Fed.R.Civ.P.56.

SUMMARY OF ARGUMENT

In her complaint, plaintiff Lisa Blumenschine ("Blumenschine") alleges the following nine "counts" against the Company:

First Count: sex discrimination in violation of 29 U.S.C. Sect. 2000 ("Title VII");

Fourth Count: retaliatory discharge for complaining of sex discrimination ion in violation of Title VII;

Second Count: age discrimination in violation of 29 U.S.C. Sect. 623(d) ("ADEA");

Fifth Count: retaliatory discharge for complaining of age discrimination in violation of the ADEA;

Third Count: sex and/or age discrimination in violation of Connecticut General Statute ("C.G.S.") Sect. 46a-60(a);

Sixth Count: retaliatory discharge in violation of C.G.S. 46a-60(a);

Seventh Count: common law promissory estoppel;

Eighth Count: common law negligent misrepresentation; and

Ninth Count: violation of the "Connecticut Wage Statute," C.G.S. Sect. 31-72.

It is respectfully submitted that summary judgment should be granted for the Company on the following grounds:

1. On the First, Second, Fourth and Fifth Counts, which allege Federal age and sex discrimination, and "retaliatory"

discharge, by the Company, Blumenschine cannot prove a *prima facie* case of either age and/or sex discrimination and/or retaliation because:

    (a) her "proof" does not rise to the level of creating a triable issue of fact as to any discrimination by the Company;

    (b) the evidence shows that the Company had a legitimate, non-discriminatory basis for its decision to terminate Blumenschine's employment, *i.e.*, her poor sales performance; and

    (c) she is constrained to admit that Joseph J. Hanson, the Company decision-maker who terminated her employment, had no discriminatory intent, and never even heard of any complaint of discrimination by Blumenschine.

2. On the Third and Sixth Counts, alleging the same acts of age and/or sex discrimination and "retaliatory discharge" in violation of Connecticut State law, Blumenschine fails to meet the same legal standard as on her Federal law claims.

3. On the Seventh, Eighth and Ninth Counts, under common law doctrines of promissory estoppel and negligent misrepresentation, as well as a purported violation of the Connecticut Wage Statute, Blumenschine fails to offer sufficient

proof that she continued to work for the Company on the basis of any promise or misrepresentation, or that the Company owes her any monies. Additionally, this Court, in its discretion, should not exercise supplemental jurisdiction over these State and common law claims, and subject-matter jurisdiction is lacking under 28 U.S.C. §1332.

## FACTS

The salient undisputed facts of this matter are summarized in the accompanying Affirmation of Michael L. Ferch, dated December 9, 2003 (hereinafter, "Ferch aff."), and the Exhibits submitted therewith, as well as the Company's Rule 9(c)1 Statement ("Company's Rule 9 Statement").

## ARGUMENT

### POINT I

SUMMARY JUDGMENT IS APPROPRIATE WHERE, AS HERE, A DISCRIMINATION PLAINTIFF'S PROOF DOES NOT MAKE A PRIMA FACIE CASE, MUCH LESS OVERCOME THE EMPLOYER'S LEGITIMATE BUSINESS REASON FOR TERMINATING THE EMPLOYEE

This Court correctly has not hesitated to grant summary judgment where, as here, a discrimination plaintiff's proof does not rise to the level of a prima facie case, much less overcome

4

an employer's legitimate business reason for terminating the employee.  See, e.g., Monahan v. United Technologies, No. 96-9342, 113 F.3d 1229, 1997 WL 279887 (2d Cir. May 27, 1997), affirming District Court (Squatrito, J.) grant of summary judgment on age discrimination and retaliation claims ("Monahan's age claim was dismissed on the ground that Monahan failed to establish that [the employer's] proffered reason was pretextual and that discrimination more likely than not was a motivating reason for the termination."  Id. at *1); Cioffi v. Allen Products Co., No. 3:98CV857, 2000 WL 33180448 (D. Conn. Sept. 29, 2000) (Squatrito, J.); Karson v. State of Conn. Dep't of Vet. Affrs., No. 3:98CV747, 2000 WL 305965 (D. Conn. Feb. 25, 2000) (Squatrito, J.) ("...plaintiff has not established the fourth element of a prima facie discrimination case because she has not adduced evidence demonstrating that a similarly situated, non-protected employee was treated differently or more favorably than she, nor has she offered any other evidence suggesting that the adverse actions she alleges occurred under circumstances giving rise to an inference of gender discrimination"); also see, e.g., James v. New York Racing Assoc., 233 F.3d 149 (2d Cir. 2000); Vandel v. Standard Motor Prods., 201 F.3d 433, No. 99-7757, 1999 WL 1295332 (2d Cir. Dec.

21, 1999) (unpublished opinion).

For the reasons discussed below, Blumenschine's "proof" is similarly inadequate and summary judgment should be granted on her discrimination and retaliation claims.

POINT II

TAKING THE EVIDENCE IN THE LIGHT
MOST FAVORABLE TO BLUMENSCHINE,
SHE FAILS TO PROVE A PRIMA FACIE
CASE OF SEX DISCRIMINATION

On her Title VII case, Blumenschine has the burden of proving a prima facie case of discrimination. See Karson, supra, 2000 WL 305965 at *3, citing Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). To do this, Blumenschine must show that her termination occurred under circumstances giving rise to an inference of sex discrimination. See id.[1] Blumenschine must not only offer "concrete evidence from which a

---

[1] If Blumenschine could establish a prima facie case, the burden would shift to the Company to articulate a legitimate, non-discriminatory reason for discharging plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-08, 113 S.Ct. 2742, 2746-2748 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). If the Company then articulates a legitimate, nondiscriminatory reason for discharging Blumenschine -- here, her indisputably poor and declining sales performance -- any presumption of discrimination created by the prima facie case "simply drops out of the picture," St. Mary's Honor Center, 509 U.S. at 510-11, 113 S.Ct. at 2749, and Blumenschine must establish that the Company's proffered reason is merely a pretext for discrimination, i.e., both that the Company's stated reason was false, and that it is more than likely that discrimination was the real reason for its action. Id., 509 U.S. at 515, 113 S.Ct. at 2752; Viola v. Philips Medical Systems of N.A., 42 F.3d 712, 717 (2d Cir. 1994).

6

reasonable juror could return a verdict in [her] favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986), but Blumenschine's proffered evidence must reasonably support a verdict in her favor. James v. NY Racing Assoc., 233 F.3d 149, 157 (2d Cir. 2000). Summary judgment is warranted if Blumenschine's evidence is merely colorable, or is not significantly probative to show that there is a genuine issue of material fact for trial. Gorman v. Hughes Danbury Optical Sys., No. 3:93CV2163, 1998 WL 164765 at *2 (D. Conn. Mar. 13, 1998) citing Anderson, 477 U.S. at 249-250. Further, Blumenschine cannot rely on her own speculation or conjecture regarding the true nature of the facts. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570 (1987). Summary judgment is warranted in this case since "[t]he salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) (citations omitted).

In the case at bar, Blumenschine cannot establish an essential element of a prima facie case of sex discrimination because no reasonable trier of fact could infer discrimination

from her "proof":

(1) Her complaint that she was treated differently from a "similarly situated" male employee of the Company is now admitted to be an error;

(2) Blumenschine admits her knowledge of the legitimate, nondiscriminatory reason -- poor sales performance -- which motivated her termination;

(3) Blumenschine's "evidence" of sex discrimination -- one or two occasions of Viagra jokes, a supposedly brusque management style, her single comment about a "boys' club" which was never repeated to management, and the hiring of salesmen from a failing competitor <u>after</u> she had been terminated, is patently insufficient to show discriminatory intent or behavior; and

(4) there is absolutely no proof that the sole decision-maker regarding Blumenschine's termination -- Joseph J. Hanson, the co-owner of the Company and someone for whom Blumenschine had worked in a previous job -- acted from any discriminatory motive or engaged in any discriminatory conduct. Moreover, Hanson never knew about any of Blumenschine's purported complaints of discrimination.

No One Similarly Situated

To satisfy the fourth element of a Title VII prima facie case of sex discrimination, Blumenschine must show that a "similarly situated" man was treated differently than she was. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 106-07 (2d Cir. 1989).

As this Court succinctly stated in Karson, supra, 2000 WL 305965 at *3:

> "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). More specifically, similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Mazzella v. RCA Global Communications, Inc., 642 F.Sup. 1531, 1547

(S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir. 1987). Moreover, "[a]lthough the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." Brown v. Middaugh, 41 F.Sup.2d 172, 184 (N.D.N.Y.1999)."

Blumenschine initially claimed that George Saroyan, a part-time salesperson, was a similarly-situated male employee who was treated more favorably despite his low sales figures. Complaint, para. 22.

In fact, as Blumenschine is now forced to admit, Saroyan was treated no differently than Blumenschine -- he was terminated on November 27, 2001 (around the same time the Company's President, Joe Hanson, decided to terminate Blumenschine) -- for the same reason: poor sales performance! Hanson dep., pp. 49-51. At her own deposition, Blumenschine was forced to admit that she understood Saroyan's termination was premised on his diminishing sales figures. Blumenschine dep., pp. 83-84.

Accordingly, there is no triable issue that Saroyan was treated any differently than plaintiff: both were terminated for

poor sales performance.[2]  Blumenschine's "sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact." Shumway, supra, 118 F.3d at 65 (citation omitted).

Blumenschine Knew Why
She Was Terminated:
Poor Sales Performance

The Company's legitimate, nondiscriminatory reason for terminating Blumenschine's employment -- her poor sales performance -- was well known to Blumenschine before her termination (Ferch aff., para. 8).  "The ultimate inquiry is whether an employee's performance 'meets [the] employer's legitimate expectations.'"  Vandel v. Standard Motor Products, 52 F. Supp.2d 344, 348 (D.Conn. 1999) (citation omitted), aff'd 201 F.3d 433, 1999 WL 1295332 (2d Cir. 1999) (unpublished opinion), cert. denied, 530 U.S.1274, 120 S.Ct. 2741 (2000).  As discussed at more length in the Ferch Affirmation, at para. 13, Hanson decided to terminate Blumenschine solely on the basis of her diminishing sales performance and projections indicating her performance was worsening.  Hanson dep., pp. 32, 34, 35, 42, 49-50. The hard evidence of Blumenschine's (and Saroyan's)

---

[2] Actually, Blumenschine received arguably better treatment than Saroyan. The Company fired Saroyan immediately but waited to provide Blumenschine with notice of termination until after the holiday season of 2001.  This has become another good deed which has not gone unpunished.

11

declining sales figures, which were produced in Ziperman Exhibit "F" corroborate Hanson's decision. Blumenschine acknowledged, as she must, that her sales performance was lacking and that she knew it could lead to her termination. Blumenschine dep., pp. 121-123, 188-189.

There is not a shred of proof that Hanson, the co-owner of the Company and the sole and ultimate decision-maker, made the decision to terminate Blumenschine on any grounds other than her dismal (and declining) sales record, just as with George Saroyan.

Blumenschine's Other "Evidence"
of Discrimination Is, Taken
In Its Best Light, Patently
Inadequate.

Blumenschine "cannot survive the instant motion for summary judgment merely by asserting that intent is at issue. Instead, she must present 'concrete particulars' that substantiate her claim of discrimination." Buchanan v. Connecticut Transit, Inc., No. 3:98CV1145, 2000 WL 435546 at *4 (D.Conn. Mar. 10, 2000) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). Just as her claim about a "similarly situated" employee fell away, Blumenschine's other "evidence" that the Company terminated her because of sex discrimination cannot survive even modest scrutiny.

12

Having to admit that a similarly-situated male employee was not treated any differently -- he was fired for poor sales, Blumenschine alleges five purportedly discriminatory acts: (1) Blumenschine's immediate supervisor, Daniel Shannon, after he took over as Publisher of "Matrix" magazine in September 2001, excluded Blumenschine from "important and strategic meetings" (Complaint, para. 17); (2) Shannon made sexist jokes (Id.); (3) Shannon fostered an atmosphere disrespectful to Blumenschine because of her sex (and age) (Id.); (4) the Company did not adequately investigate Blumenschine's purported complaint to Shannon of a "boys' club" (Complaint, para. 30); and (5) the Company hired two young, male salesmen (Complaint, para. 23).

Exclusion from Meetings

Blumenschine alleges that she was discriminated against on the basis of her sex because she was excluded from more than one management meeting. Blumenschine dep., pp. 185-186. She offers no evidence of how this fact, even if true, is indicative of discrimination, other than the fact that the managers involved were male, and she "wanted to be a part of the management team." Blumenschine dep., p. 149. Blumenschine's subjective desires, which were contrary to both her job responsibilities, as well as the Company's stated expectation that she had to focus on her

13

sales performance, form nothing more than legally inadequate speculation that gender animus motivated her termination. As such, they fail, as a matter of law, to support a claim for Title VII discrimination. See, Buchanan, supra, 2000 WL 435546 at *3-*5. The fact that, at Blumenschine's own urging, her title was changed to "Associate Publisher" (with no change in compensation) in order to help her to make more sales (see Ferch Aff., paras. 9-11) cannot be bootstrapped into sufficient evidence of anything other than a decision to help Blumenschine succeed. As it turned out, she sold less and less.

Sexist Jokes

Blumenschine alleges Dan Shannon made sexist jokes. Not only is this allegation flatly denied by all other testimony given under oath in this matter (Ferch Aff., para. 30), but Blumenschine can only remember, at most, one or two occasions involving some Viagra jokes. Blumenschine also admits that any purported joke-telling occurred in the presence of many other men and women at business conventions and was not in any way directed toward Blumenschine personally. See Ferch Aff., para. 30.[3] Such undirected, isolated, offhand joking, if it did occur, does not rise to the level of discriminatory conduct. See,

---

[3] Also, Blumenschine never mentioned this purportedly offensive behavior to Hanson or any other Company manager. Id.