Sedoto v. Borg-Warner Protective Svcs Corp., 94 F. Supp.2d 251, 264 (D. Conn. 2000); Cioffi, supra (hostile work environment claims).

Disrespectful Atmosphere

Blumenschine claims she was discriminated against because Shannon was "sarcastic" and "disrespectful." However, Blumenschine could not testify to a single instance where Shannon, or the Company, ever said or did anything disrespectful to her based on some aspect of her gender. See Ferch aff., paras. 31-33. In the absence of such specifics, Dan Shannon's personal management style, as it was perceived by Blumenschine, cannot rise to the level of evidence of discrimination.

Blumenschine's Isolated
Comment About a "Boys' Club"

Plaintiff testifies that she once told Dan Shannon he was creating a "boys' club" atmosphere at the Company. Blumenschine dep., pp. 127-128. Shannon never viewed this comment as anything more than an off-hand, sarcastic remark by Blumenschine as she witnessed Shannon and a few other men leave for lunch, a lunch to which Blumenschine did not even ask to be invited. Shannon dep., pp. 49-50. A legitimate complaint of discrimination must be made in good faith and be far more formal and specific for the employer to be considered to have notice of

15

it and/or an obligation to investigate it. See, e.g., Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1038-1039 (2d Cir. 1993) (sexual harassment claim). See also, Higdon v. Storz Instrument Co., No. 99-5138, 211 F.3d 1269, 2000 WL 420685 at *3 (6th Cir. Apr. 12, 2000) (unpublished opinion) (if context isolated and sufficiently vague, no direct evidence of discrimination).

Blumenschine admits that she did not voice this purported complaint to any other person at the Company. Blumenschine dep., pp. 134-135. She did not put her views in writing, or ever "follow up" orally with her "complaint" to anyone at the Company. Most importantly, Blumenschine admits she did not make a complaint, or even repeat her off-hand comment, to Hanson, who made the decision to fire Blumenschine (Blumenschine dep., p. 130).[4] Indeed, Blumenschine cannot contend that her comment was made before Hanson had made the decision, in mid-November 2001, to terminate her employment (Blumenschine dep., p. 213; Hanson dep., pp. 49-51). Accordingly, Hanson had no knowledge Blumenschine had ever made such a statement until this legal proceeding. Hanson dep., p. 62. Hanson could not have terminated Blumenschine based on a comment she admits she never

---

[4] She admits she knew Hanson, whom she had worked for previously and who re-hired her, sufficiently well to invite him and his wife to her "commitment ceremony" (which Hanson and his wife attended), but she still did not mention anything about any "boys' club" to Hanson or any other manager of the Company other than Shannon (Id. pp. 134-135).

16

made to him!  This alone is fatal to Blumenschine's purported evidence of sex discrimination.

Blumenschine does not even allege, much less point to, any instance that Shannon, or anyone else at the Company, ever made specific comments, or took specific actions, disparaging to her sex.  Where the nonmovant bears the burden of proof at trial, such as here, "the movant can ... [point] out an absence of evidence to support an essential element of the non-movant's case."  Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53 (1986)).  See also, Vandel, supra, 52 F.Supp.2d at 348 (no evidence of age discrimination; plaintiff failed to show defendant ever made any comments disparaging plaintiff's age).  Here, too, Blumenschine fails to meet her evidentiary burden.

The Hiring of Two Young Males

Blumenschine cites the hiring of two males, younger than she, as evidence of the Company's sex (and age) discrimination.  What Blumenschine chooses to ignore, however, is the circumstances attendant to their hiring, stated more fully at Ferch Aff., paras. 34-36:  (1) Hanson had decided to terminate Blumenschine at least one month before the Company was even

17

approached by the two salesmen regarding employment; (2) the two men at the time were employed by a competing magazine, "University Business"; (3) in late 2001, the Company received notice that the last issue of "University Business" would soon be published; (4) Hanson immediately engaged in discussions regarding the Company's proposed acquisition of some or all of the "University Business" assets and Hanson wanted those salespersons' unique access to target advertisers as well as their track record of generating sales revenue (vastly greater than Blumenschine's) from the Company's specific education market; and (5) the two young men were not hired to (and did not) "replace" Blumenschine.

Accordingly, Blumenschine cannot show that she was replaced by a less qualified male. The Company "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 245, 259, 101 S.Ct. 1089, 1097 (1981). Since the Company had decided to terminate Blumenschine before being approached by the two salesmen, the facts at bar simply do not support a claim of discrimination based on gender.

Blumenschine has not established a prima facie sex discrimination case because (1) she cannot adduce evidence

18

demonstrating that a similarly situated male employee was treated more favorably than she was, and (2) she does not offer sufficient evidence even on which a reasonable trier of fact could find that the Company's decision to terminate her was motivated by discrimination rather than by her woeful sales performance.

POINT III

BLUMENSCHINE ALSO FAILS TO
OFFER SUFFICIENT PROOF TO
MAKE A PRIMA FACIE CASE OF
AGE DISCRIMINATION

To establish a prima facie case of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., Blumenschine must show that her discharge occurred under circumstances giving rise to a legitimate inference of discrimination based on her age. Burger v. New York Institute of Technology, 94 F.3d 830, 833 (2d Cir. 1996); see also Gorman v. Hughes Danbury Optical Sys., No. 3:93CV2163, 1998 WL 327174 (D. Conn. June 17, 1998).

As with sex discrimination (discussed above in Point I, supra), Blumenschine cannot come close to establishing that her termination took place under conditions giving rise to an inference of age discrimination. "The ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Community Affrs. v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981).

For Blumenschine to defeat summary judgment, she "must show that there is a material issue of fact as to whether (1) the [Company's] asserted reason for discharge is false or unworthy of belief *and* (2) more likely than not [Blumenschine's] age was the real reason for the discharge." Woroski v. Nashua Corp., 31 F.3d 105, 108-09 (2d Cir. 1994) (citing St. Mary's Honor Center, 509 U.S. at 515, 113 S.Ct. at 2752 (1993)). She can show neither.

Blumenschine, for her age discrimination claim, alleges the exact same behavior of Dan Shannon that purportedly support her Title VII sex discrimination claim. That "evidence" is even more unworthy, if possible, in the context of age than gender, and will not be repeated here. None of it rises to the level of sufficient evidence of an employment action taken because of bias based on age.

At the time Hanson made his exclusive, executive decision to terminate Blumenschine, he was 71 years old and Bill Ziperman was 59 years old. Blumenschine admits, as she must, that Ms.

20

Terry Nelson, a highly-compensated female salesperson was older than she was. Another female employee, Ms. Melanie Jenkins, is both well over forty and in 2001 was the most highly compensated employee of the Company (see Ferch aff., para. 43). All were and still are employed by the Company. The fact that the Company's management, including the person who decided to fire her, and a colleague, were all older than Blumenschine -- a fact she surely noticed -- "further negates any inference of discriminatory animus with respect to [Blumenschine's] termination." Vandel v. Standard Motor Prods., Inc., supra, 52 F.Supp.2d at 349. In these circumstances, Blumenschine cannot (and does not) even allege that anyone connected with the Company ever made disparaging comments regarding her age, or that the Company was prejudiced against older workers.[5] This further negates any discriminatory "pretext" for Blumenschine's termination. See, id.

As Blumenschine must now admit, her Complaint is in error where it says a younger male salesperson was treated more favorably. In fact, that same young male salesperson -- George Saroyan -- was fired slightly more than one month prior to

---

[5] To the contrary, more than one-half of the Company's employees are over the age of forty (Shannon dep., Ex. "P").

21

Blumenschine's own termination, and for the same business reason (Ferch aff., paras. 41-43).

Even taking at face value Blumenschine's allegation that Shannon made reference in December 2001 to hiring two "energetic young men," the use of the word "young" when explaining an intention to hire new staff has been held to be insufficient to raise a genuine issue of material fact, especially, where, as here, Blumenschine's termination was not causally related to the hiring of the two "University Business" salespersons. <u>See</u>, <u>Monahan v. United Technologies Corp.</u>, <u>supra</u>, 1997 WL 279887 at *2. In fact, Hanson had decided to terminate Blumenschine's employment before the two "University Business" salespersons ever <u>approached</u> the Company.

Accordingly, summary judgment is warranted on Blumenschine's purported age discrimination claim as well.

### POINT IV

<u>BLUMENSCHINE FAILS TO MAKE A PRIMA FACIE CASE OF RETALIATION, SHE CANNOT SHOW THAT THE DECISION-MAKER WHO TERMINATED HER EMPLOYMENT KNEW OF ANY COMPLAINT OF SEX OR AGE DISCRIMINATION.</u>

Since Blumenschine also lacks sufficient evidence to

support her claim of retaliatory discharge under Federal law, summary judgment as to Counts Two and Four is warranted as well.

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, which applies both to Title VII and ADEA retaliation claims, Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995), Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997), Blumenschine must show (1) she was engaged in an activity protected by Title VII or the ADEA; (2) the Company was aware of that activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. McMenemy v. City of Rochester, 241 F.3d 279, 283 (2d Cir. 2001).

Ultimately, such proof must be sufficient to permit a rational fact-finder ultimately to find that her termination was more likely than not based in whole or in part on retaliation. Woroski, supra, 31 F.3d at 100 (citing St. Mary's Honor Center).

There is simply no evidence of "retaliation" here. Blumenschine cannot show that alleged complaints about being excluded from meetings or her comment about a "boys' club," even if true, ever reached or influenced the person who decided on

her termination: Joe Hanson (see Ferch aff., paras. 37-38).[6]

Without Hanson's knowledge of any dissatisfaction on Blumenschine's part,[7] much less anyone's knowledge of a formal complaint of discrimination by her, how could there be any "retaliation"? Since Blumenschine fails to prove any causal connection between any mention (much less a real complaint) of discrimination and her firing, these counts must be dismissed as well.

## POINT V

### SUMMARY JUDGMENT ALSO MUST BE GRANTED AS TO THE THIRD AND SIXTH COUNTS SINCE BLUMENSCHINE FAILS TO OFFER PROOF SUFFICIENT TO SUPPORT HER STATE LAW CLAIMS OF DISCRIMINATION AND RETALIATION

Claims for age and sex discrimination, as well as for "retaliatory discharge" under Connecticut State law impose the same legal standards and burdens used to analyze such claims under Federal law. See, Zephyr v. Ortho McNeil Pharmaceutical, 62 F. Supp.2d 599, 603 (D. Conn. 1999).

---

[6] Leaving aside the issue of whether such conduct rises to the level of a protected protest of sex or age discrimination, which it plainly does not. See, Points II and III, supra.

[7] Blumenschine cannot even prove that Hanson ever heard of the "boys' club" remark.

24

As discussed above in Points I, II and III, summary judgment on Blumenschine's Federal claims must be granted. Accordingly, summary judgment dismissing Blumenschine's Connecticut State discrimination and retaliation Counts must be granted as well.

POINT VI

SUMMARY JUDGMENT SHOULD ALSO BE GRANTED ON BLUMENSCHINE'S SEVENTH (PROMISSORY ESTOPPEL), EIGHTH (NEGLIGENT MISREPRESENTATION), AND NINTH (CONN. WAGE STATUTE) COUNTS

Blumenschine's Seventh, Eighth and Ninth Counts allege Connecticut State and common law theories of recovery with respect to Blumenschine's "nonrecoverable draw" against commissions that was terminated in May 2001. Blumenschine alleges she is owed $40,000 from June through December 2001. Sufficient evidence of these claims is totally lacking, as demonstrated in the Ferch affirmation at 47-49.

Moreover, since Blumenschine has failed to produce evidence supporting her Federal discrimination claims, as discussed above, it is respectfully submitted that this Court, in its discretion, should choose not to exercise its supplementary jurisdiction over Blumenschine's State and common law wage

25

claims.  See, Buchanan, supra, 2000 WL 435546 at *9 (discussing 28 U.S.C. §1367).[8]

"It is well settled that when all federal claims are eliminated, a federal court should decline to exercise jurisdiction over any remaining state law claims." Cioffi, supra, 2000 WL 33180448 at *15.

## CONCLUSION

For the reasons set forth herein, the Company's motion for summary judgment dismissing Blumenschine's complaint should be granted.

                                              Respectfully submitted,

                                              Thomas E. Minogue (CT06845)
                                              Michael L. Ferch (CT24764)
                                              MINOGUE BIRNBAUM LLP
                                              Attorneys for Defendant
                                              Professional Media Group LLC
                                              237 Elm Street
                                              New Canaan, CT 06840
                                              (203) 966-6916

---

[8] Since Blumenschine's discrimination and retaliation claims fail, this Court lacks separate subject-matter jurisdiction pursuant to 28 U.S.C. Sect. 1332. The amount in controversy is $40,000 and there is no diversity of citizenship.

26

**CERTIFICATION**

    This is to certify that a copy of the foregoing was sent by Federal Express to the following counsel of record on December 8, 2003:

        Scott R. Lucas, Esq.
        Martin, Lucas & Chioffi, LLP
        177 Broad Street
        Stamford, CT  06901

                              MICHAEL L. FERCH