2

2000 WL 33180448
(Cite as: 2000 WL 33180448 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Cherie CIOFFI, Plaintiff,
v.
THE ALLEN PRODUCTS COMPANY, Defendant.

No. 3:98CV857(DJS).

Sept. 29, 2000.

*MEMORANDUM OF DECISION*

SQUATRITO, J.

*1 The plaintiff, Cherie Cioffi, brings this action against the defendant, The Allen Products Company ("Allen Products"), alleging: (1) hostile work environment, constructive discharge and adverse retaliatory treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; (2) negligent hiring and/or retention; and (3) intentional and negligent infliction of emotional distress. The defendant now moves for summary judgment on all counts of the plaintiff's complaint pursuant to Fed.R.Civ.P. 56(c). For the reasons that follow, the defendant's motion is GRANTED with respect to the plaintiff's Title VII claims; the plaintiff's state law claims are dismissed.

I. FACTS

Examination of the memoranda, affidavits, and Local Rule 9 statement submitted in support of the motion for summary judgment and the responses thereto discloses the following.

In November, 1990, Ron Bailer, Allen Products' President, hired Cherie Cioffi to work in Allen Products' customer service department. Ron Martin, Allen Products' National Service Manager, was Ms. Cioffi's direct supervisor until he resigned in April, 1994, at which point Gary Prushko became the plaintiff's supervisor. Mr. Martin and Mr. Prushko appear to have reported directly to Mr. Bailer. There were approximately five women and nine men working in the small office where Ms. Cioffi worked.

From 1990 to 1994, Ms. Cioffi maintained a good working relationship with most of her co-workers, including Joe Dowdell and Michael Slater. Ms. Cioffi has no complaints about her treatment by Mr. Martin. Ms. Cioffi received regular raises and two promotions during her employment, including a promotion with pay increase to Customer Service Administrator in April, 1994.

Ms. Cioffi alleges that she was subjected to sexual harassment throughout her employment with the defendant. The plaintiff cites to the following incidents in support of her sexual harassment claims:

(1) In 1991 or 1992, Mr. Bailer separately confronted Ms. Cioffi and a co-worker, Fran Connors, about a workplace rumor that they were having an affair. Mr. Bailer felt the rumor was disrupting the workplace. Later, in 1994, Mr. Bailer mentioned the alleged affair to Al Baccili, a district manager for Allen Products, at a luncheon meeting after Ms. Cioffi had discussed her concerns regarding her treatment by co-workers and company officials with Mr. Baccili. Ms. Cioffi asserts that Mr. Bailer also talked to other unnamed employees about the alleged affair.

(2) During the winter of 1992-1993, Mr. Dowdell stated to the plaintiff that he would like to see her "run naked through the snow." (Cioffi Dep. at 69-71, Def.'s App. Supp. Mot. Summ. J.) Ms. Cioffi complained to Mr. Martin about Mr. Dowdell's comment. Ms. Cioffi and Allen Products disagree as to whether Mr. Martin actually disciplined Mr. Dowdell for this incident.

(3) On April 11, 1994, Ms. Cioffi caught Mr. Slater, who sat in a cubicle next to Ms. Cioffi throughout most of her employment, sliding a mirror under her desk. [FN1] Ms. Cioffi immediately complained to Mr. Martin, who conducted an investigation that day. Mr. Slater admitted the incident occurred and agreed to apologize to Ms. Cioffi in writing. Mr. Slater apologized in writing to Ms. Cioffi on the morning following the incident.

> FN1. At her deposition, Ms. Cioffi described the mirror incident as follows: "But I leaned back in my chair and ... just happened to stare down at the floor by the wall that was separating our two desks and saw the mirror coming underneath the desk." (Cioffi Dep. at 137, Def.'s App. Supp. Mot. Summ. J.)

*2 Mr. Prushko took responsibility for investigating Ms. Cioffi's complaint regarding the mirror incident on April 13, 1994, in light of Mr. Martin's upcoming departure from the company. Mr. Prushko met with Mr. Slater on April 13, 1994. During that meeting, Mr. Slater volunteered to seek psychiatric counseling. Mr. Prushko then met with Mr. Bailer specifically to discuss Mr.

Slater's actions of April 11, 1994.

After meeting with Mr. Bailer, Mr. Prushko gave Mr. Slater oral and written warnings informing him that he would be terminated if any such conduct occurred in the future. On April 13, 1994, Mr. Prushko met with Ms. Cioffi to discuss the incident and the company's response.

When Mr. Martin left the defendant's employ, Ms. Cioffi requested that she be moved to Mr. Martin's previous workspace so that her work area would not be next to that of Mr. Slater. There was no other office space available to which Ms. Cioffi could move at that time. Ms. Cioffi moved to Mr. Martin's workspace approximately two weeks after he left the company. [FN2] Ms. Cioffi alleges that after she moved, Mr. Slater pushed back a partition of his cubicle and repositioned his desk in order to see her more readily. Also, Mr. Prushko did not move Mr. Slater's desk closer to him as promised so that Mr. Prushko could monitor Mr. Slater. The plaintiff and the defendant disagree as to whether Ms. Cioffi complained about Mr. Slater removing his partition or the defendant's failure to move Mr. Slater's desk. [FN3]

> FN2. The parties dispute the actual date upon which Ms. Cioffi switched workspaces. Ms. Cioffi alleges that her desk was moved two to three weeks after the mirror incident, sometime between April 25 and May 2, 1994. The defendant alleges that Ms. Cioffi was moved by April 28, 1994, within two weeks of Mr. Martin's last day of employment.

> FN3. In her affidavit dated March 21, 2000, the plaintiff states: "However, within a few days of my move Mr. Slater pushed back his partition and moved his desk and chair so that he could see me and my work are[a]. This totally circumvented the original move and the company did nothing about it despite my objection." (Cioffi Aff. ¶¶ 60-61, Pl.'s App. Supp. Obj. Mot. Summ. J., Ex. 1.) However, the defendant contends that between April 11, 1994, and Ms. Cioffi's last day of work on June 20, 1994, Ms. Cioffi gave no indication to anyone at Allen Products that she felt harassed or that she was dissatisfied in any way with Allen Products' response to her complaints about Mr. Slater or Mr. Dowdell. (See Bailer Aff. ¶ 15, Def.'s App. Supp. Mot. Summ. J.)

Mr. Slater attended psychiatric counseling following the mirror incident, and on April 25, 1994, gave Mr. Prushko a written statement indicating that he was receiving the treatment. In July, 1994, Mr. Prushko received a letter from Mr. Slater's psychiatrist which stated that Mr. Slater had pursued his meetings with diligence and to maximum benefit. The plaintiff alleges that no one told her that Mr. Slater was receiving counseling and that Mr. Bailer refused to insist that Mr. Slater attend counseling, despite her request that Allen Products require him to do so.

In June, 1994, Mr. Slater laughed at a statement made to Ms. Cioffi by John Gomez, a co-worker, that had a sexual connotation/double-meaning. [FN4] No other incidents occurred between Ms. Cioffi and Mr. Slater.

> FN4. At her deposition, Ms. Cioffi described this incident as follows: "John Gomez had come in to empty the garbage in my cubicle. And he made a comment, 'Are you looking trashy?' ... I know he was joking. And then I hear this laughter coming from Mike's desk, so this made me angry; and so then I knew that he wasn't sincere at all about this. So I went over to his desk, and I says, you didn't mean that apology at all, did you? Because after what you did, you're laughing? I wasn't talking to you. I was talking to John.... And he says, I was laughing--at first he said, 'Well, I thought that was funny.' " (Cioffi Dep. at 147-148, Def.'s App. Supp. Mot. Summ. J.)

(4) On April 22, 1994, Mr. Dowdell allegedly said "eat me" to Ms. Cioffi after they argued over office procedure. Ms. Cioffi complained to Mr. Prushko in a letter dated April 25, 1994. Mr. Prushko interviewed Mr. Dowdell and another employee who had been nearby; both denied making or hearing the statement. No formal action was taken against Mr. Dowdell, but Mr. Prushko counseled Mr. Dowdell about Allen Products' policy against harassment of any kind and warned him not to use inappropriate language in the workplace. Mr. Prushko gave Ms. Cioffi a written report on the outcome of his investigation on June 8, 1994. Later, Mr. Dowdell often read the newspaper while leaning against a wall behind the plaintiff's cubicle.

*3 (5) In April, 1994, Carmen Colon, a co-worker, waved a page with sketches of penises on it in front of Ms. Cioffi. Ms. Colon sometimes left photocopies of off-color jokes on co-workers' desks. Ms. Cioffi claims that Ms. Colon waved the picture in front of her because Ms. Cioffi complained about Mr. Slater's actions noted above. Ms. Cioffi contends she complained about Ms. Colon the day she left Allen Products permanently. Allen Products asserts that Ms. Cioffi never

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

complained about Ms. Colon during her employment and that they first became aware of Ms. Colon's alleged harassing actions when Ms. Cioffi filed her Affidavit of Illegal Discriminatory Practice before the Connecticut Commission on Human Rights and Opportunities ("CCHRO") on September 22, 1994.

(6) Ms. Cioffi alleges that agents and employees of the company, including Mr. Bailer, told off-color jokes in her presence on numerous occasions during her employment. Ms. Cioffi points to one specific instance of a joke told to her over the phone by an Allen Products salesperson. The plaintiff thinks she told Mr. Martin that the joke was disgusting, although she "can't say positive[ly]." (Cioffi Dep. at 267, Def.'s App. Supp. Mot. Summ. J.)

Ms. Cioffi also alleges that several co-workers harassed her in retaliation for her complaints of sex discrimination to management and because Mr. Bailer told several employees about the rumors of Ms. Cioffi's affair with a co-worker.

Ms. Cioffi was absent from work for approximately nine days between April 15, 1994, and June 3, 1994, due to illness, back problems, stress and requested personal time. On June 9, 1994, the plaintiff presented a doctor's note to Mr. Prushko stating that she would be absent from work until June 20, 1994, because she was suffering from stress. On June 20, 1994, Ms. Cioffi returned to work and was asked to cross-train another employee. She became agitated, worked for half a day, and left. She never returned to work.

Mr. Bailer called Ms. Cioffi's home on June 27, 1994, and spoke to her husband. Mr. Cioffi told Mr. Bailer that Ms. Cioffi was not ready to return to work and asked for worker's compensation forms. Mr. Bailer sent the forms to Ms. Cioffi the next day, along with a letter asking for additional information concerning her status and a medical evaluation. After receiving no response to his inquiry, Mr. Bailer sent a similar letter to Ms. Cioffi on July 6, 1994. Still failing to receive a response, Mr. Bailer sent Ms. Cioffi a letter on July 13, 1994, stating that the company could not continue to keep her position open and would terminate her on July 18, 1994, if she did not explain her absence and provide medical proof of a disability. The plaintiff responded by sending a note from a psychiatrist to Mr. Bailer dated June 28, 1994, which stated that the psychiatrist advised Ms. Cioffi to stay away from work until the situation there was resolved and she felt comfortable returning. Ms. Cioffi did not communicate to anyone at Allen Products after sending the psychiatrist's note, and the defendant terminated Ms. Cioffi's employment, effective November 1, 1994. Allen Products asserts that it terminated Ms. Cioffi in compliance with its normal absence control and job abandonment policy.

*4 Ms. Cioffi filed a charge of discrimination with the CCHRO and the Equal Employment Opportunity Commission ("EEOC") on September 22, 1994. After receiving a right to sue letter from the EEOC, the plaintiff filed the instant action on May 8, 1998.

## II. STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Gallo*, 22 F.3d at 1223; *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).). However, the non-moving party "may not rest upon mere conclusory allegations or denials." *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.1997) (internal citations omitted).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson*, 477 U.S. at 255; *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Although "[a] trial court must be cautious about granting summary judgment to an employer [in a discrimination case] when ... its intent is at issue," *Gallo,* 22 F.3d at 1224, "it is fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case." *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61 (2d Cir.1998).

III. DISCUSSION

The court will address Allen Products' motion for summary judgment with respect to the plaintiff's federal and state law claims separately.

A. Title VII Claims

*5 The defendant moves for summary judgment with respect to the plaintiff's Title VII claims of hostile work environment, retaliatory harassment, and constructive discharge. The court will address each claim seriatim.

1. *Hostile Work Environment*

To recover under her Title VII hostile work environment claim, Ms. Cioffi must "establish (1) that the 'workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." ' *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 436 (2d Cir.1999) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997)).

Allen Products seeks summary judgment on Ms. Cioffi's hostile work environment claim on the grounds that her allegations are neither timely, attributable to Allen Products, nor gender related. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764-768 (2d Cir.1998) (affirming the district court's decision granting summary judgment in the defendant's favor on the plaintiff's Title VII hostile work environment claim where the district court found that the plaintiff's claims were either time-barred, not attributable to the employer, or not sufficiently severe or pervasive to create a hostile work environment). In the alternative, if the court does consider some or all of the plaintiff's allegations, Allen Products contends that the allegations are not so severe and pervasive as to have altered the conditions of the plaintiff's employment.

*See id.* at 767-768.

Ms. Cioffi responds that summary judgment is inappropriate because genuine issues of material fact exist in that: 1) her claims are timely because the continuing violation doctrine saves those allegations otherwise subject to the statue of limitations; 2) Allen Products should be held liable because its response to the alleged harassment was neither prompt nor effective; and 3) all alleged incidents were gender related. Further, Ms. Cioffi contends that there is a genuine issue of material fact concerning whether the plaintiff's allegations, taken together, are sufficiently severe and pervasive as to have effected the conditions of her employment.

The court will address each argument below.

a. *Timeliness*

The defendant contends that the court is precluded from considering any incident relative to the plaintiff's Title VII claim that occurred more than 300 days prior to the filing of her claim with the CCHRO on September 22, 1994, i.e., November 26, 1993. *See* 42 U.S.C. § 2000e-5(e)(1). [FN5] Specifically, the defendant challenges the timeliness of two incidents which allegedly occurred before November 26, 1993, upon which the plaintiff relies in support of her hostile work environment claim: 1) in 1991 or 1992, Mr. Bailer called Ms. Cioffi into his office and asked her about a rumored affair with a co-worker, Fran Connors; and 2) during the winter of 1992-1993, Mr. Dowdell stated to the plaintiff that he would like to see her "run naked through the snow."

> FN5. 42 U.S.C. § 2000e-5(e)(1) states that a Title VII charge "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred...."

*6 The plaintiff relies on the continuing violation doctrine to justify the court's consideration of incidents that occurred before November 26, 1993, contending that the aforementioned incidents are, in fact, timely because they are sufficiently related to each other and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 33180448
(Cite as: 2000 WL 33180448, *6 (D.Conn.))

Page 5

to the later, timely incidents as to be considered part of a continuing violation. The defendant argues that the continuing violation doctrine does not apply in this case because these two incidents do not bear a sufficient relationship to the alleged incidents occurring after November 26, 1993.

"[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn*, 159 F.3d at 766 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)); *see Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) (noting discriminatory seniority lists and discriminatory employment tests as examples of discriminatory policies or mechanisms), *cert. denied*, 511 U.S. 1052 (1994). However, " 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism, do not amount to a continuing violation.' " *Quinn*, 159 F.3d at 765 (quoting *Lambert*, 10 F.3d at 53). No continuing violation may be found where alleged acts were "sufficiently isolated in time (usually from each other, and at least from the timely allegations) as to break the asserted continuum of discrimination." *Quinn*, 159 F.3d at 766.

In the instant case, the court concludes that the challenged incidents are "sufficiently isolated in time ... as to break the asserted continuum of discrimination," *id.*, because no reasonable jury could find that these two incidents were continuous in time with one another, or with the later, timely allegedly harassing acts. These incidents occurred at least a year apart, and the second incident occurred more than a year before the next timely incident alleged in the plaintiff's complaint. Therefore, these incidents are time- barred. *See Quinn*, 159 F.3d at 766 (finding no continuing violation where more than five alleged discriminatory incidents involving various co-workers and supervisors occurred during the five years prior to the timely incidents, with one of the untimely incidents occurring less than a year before the timely incidents); *Osier v. Broome County*, 47 F.Supp.2d 311, 318-319 (N.D.N.Y.1999) (finding no continuing violation where the plaintiff alleged six harassing acts by various co-workers during the two years before the alleged timely harassing acts). [FN6] As a result, the court will not consider these two untimely incidents when assessing the plaintiff's Title VII hostile work environment claim.

FN6. Notwithstanding the plaintiff's assertion to the contrary, the fact that these incidents occurred in a work environment where co-workers and the president of the company often told off-color jokes does not constitute a continuing violation. Moreover, that Mr. Bailer and Mr. Dowdell were also involved in later, timely incidents does not necessitate the finding of a continuing violation in light of the time between the earlier, untimely incidents and the later, timely ones. *See Osier v. Broome County*, 47 F.Supp.2d 311, 318 (N.D.N.Y.1999) (finding no continuing violation where the untimely incidents were sufficiently isolated in time from one another and from other timely acts committed by the same alleged harasser).

b. *Allen Products' liability*

*7 The defendant contends that it cannot he held responsible for the mirror incident involving Mr. Slater and the "eat me" remark made by Mr. Dowdell because it responded to these incidents in a timely and effective manner. The defendant also denies liability for the incident where Ms. Colon waived sketches of penises in front of the plaintiff and the off-color jokes told by employees of Allen Products on the grounds that Ms. Cioffi never complained about these incidents, thereby preventing Allen Products from addressing them.

Ms. Cioffi argues that summary judgment is not appropriate with respect to these incidents because there remains a genuine issue of material fact as to whether: 1) Allen Products' responses to the mirror incident and the "eat me" statement were timely or effective; and 2) Allen Products should have known about the penis sketches and off-color jokes and should therefore be held responsible for them.

To prevail on her hostile work environment claim against the defendant, the plaintiff "must establish that the conduct which created the hostile environment should be imputed to the employer." *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2d Cir.1992). "When a 'co-employee'-- as distinct from a supervisor--is alleged to have engaged in harassing activity, the 'employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.' " *Quinn*, 159 F.3d at 766 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995)). The sufficiency of the employer's response to complaints "has to be assessed from the totality of circumstances ... [including] the gravity of the harm being inflicted upon the plaintiff, the nature of the

employer's response in light of the employer's resources, and the nature of the work environment." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir.1998). The effectiveness of the response should also be considered. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir.1999) (finding that relevant factors in assessing the reasonableness of remedial measures include whether the company's response was reasonably calculated to end the harassment and may include "whether or not the measures ended the harassment"). The court concludes that no reasonable jury could find Allen Products liable for the mirror incident or Mr. Dowdell's alleged "eat me" statement because the record clearly demonstrates that Allen Products' responses to Ms. Cioffi's complaints were prompt, proportional to the seriousness and frequency of the incidents, and reasonably calculated to end the harassment. [FN7]

> FN7. To the extent that the plaintiff alleges she had no reasonable avenue of complaint for these incidents, the record clearly demonstrates otherwise, as she filed several written complaints with her employer during the relevant period.

With respect to the mirror incident, it is undisputed that Mr. Martin investigated Ms. Cioffi's complaint and spoke with Mr. Slater the day of the incident. Mr. Slater assured Mr. Martin that he would apologize in writing to Ms. Cioffi, and he did so the next morning. Two days after the incident, Mr. Prushko spoke with Ms. Cioffi and Mr. Bailer about the incident. Mr. Prushko then gave Mr. Slater oral and written warnings indicating that he would be fired if there were any other similar complaints against him. Mr. Slater also told Mr. Prushko that he would pursue psychological counseling, and provided the company with a letter from his psychologist confirming treatment. [FN8] In addition, when Ms. Cioffi asked to be moved to Mr. Martin's desk, which was at the opposite end of the work area from Mr. Slater, she moved within approximately two weeks of Mr. Martin's departure. Ms. Cioffi concedes that there was no other office space available for relocation.

> FN8. That the defendant did not inform Ms. Cioffi of Mr. Slater's psychological treatment does not detract from the reasonableness of the aforementioned remedial measures taken by the defendant.

*8 Reviewing the aforementioned facts in the totality of the circumstances, the court concludes that Allen Products' response to Ms. Cioffi's complaint was reasonable in light of the limited gravity of the harm inflicted upon the plaintiff due to the adolescent nature of the conduct and her immediate discovery thereof. *See Brooks v. City of San Mateo*, 214 F.3d 1082, 1090-1091 (9th Cir.2000) (affirming summary judgment for the defendant employer where a co-worker improperly touched the plaintiff's stomach and breast, because "[t]he conduct ..., while very offensive, does not rise to the level of harassment for which Title VII offers a remedy," especially given that the city took prompt steps to address the incident); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir.1995) (finding no sexual harassment where the employee's supervisor was a "man whose sense of humor took final shape in adolescence" and where, during a seven month period, he made several distasteful comments and gestures, including a gesture intended to suggest masturbation).

Ms. Cioffi also argues that Allen Products' response to the mirror incident was not effective because Mr. Slater's harassment continued in that: (1) he subsequently laughed at a statement made to Ms. Cioffi by a co-worker that had a sexual connotation/double-meaning; (2) he pushed back a partition of his cubicle and repositioned his desk in order to see her more readily; and (3) his desk was not moved closer to Mr. Prushko so that Mr. Prushko could monitor him. However, as none of these subsequent incidents can fairly be viewed as actionable sexual harassment, the court concludes that the defendants' response to the mirror incident was both reasonable and effective, such that Allen Products may not be held liable for Mr. Slater's conduct. *See Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.) (reversing jury verdict in favor of the plaintiff employee and finding no sexually hostile work environment where the plaintiff was subjected to sexually suggestive jokes and comments and was looked at in a suggestive manner, because the conduct was merely offensive), *cert. denied*, 522 U.S. 865 (1997).

Turning to Mr. Dowdell's alleged "eat me" comment on April 13, 1994, the court similarly concludes that no reasonable jury could find Allen Products liable for this incident. Once again, it is undisputed that after Ms. Cioffi complained, Mr. Prushko interviewed Mr. Dowdell and another employee who had been nearby, though both denied making or hearing the statement. No formal action was taken against Mr. Dowdell, but Mr. Prushko counseled Mr. Dowdell about Allen Products' policy against harassment of any kind and warned him not to use inappropriate language in the workplace. Mr. Prushko also gave Ms. Cioffi a written report on the outcome of his investigation on June 8,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 33180448
(Cite as: 2000 WL 33180448, *8 (D.Conn.)) Page 7

1994.

This response, viewed in the totality of the circumstances, was clearly reasonable and timely in light of the minimal gravity of the situation and the fact that Mr. Dowdell denied the plaintiff's uncorroborated allegation. *See Phillips v. Merchants Ins. Corp.*, 3 F.Supp.2d 204, 206, 208 (N.D.N.Y.1998) (granting summary judgment in favor of the defendant employer on sexually hostile work environment claim where supervisor commented that "she did not care whether [the plaintiff] had to 'dance naked in the snow' to get business," asked the plaintiff "if he thought he was a 'big man on campus,' " ' directed profanity at him, and "called him names such as 'little boy,' 'tough son-of-a-bitch,' and 'dumb man,' " ' concluding that "[b]ehavior that is immature, nasty, or annoying, without more, is not actionable as sexual harassment").

*9 Ms. Cioffi again argues that Allen Products' response to the "eat me" incident was ineffective because Mr. Dowdell's harassment continued after the incident in that he often read the newspaper while leaning against a wall behind the plaintiff's cubicle. Once again, the court concludes that Mr. Dowdell's subsequent actions do not constitute actionable sexual harassment. *See Black,* 104 F.3d at 826 (reversing jury verdict in favor of the plaintiff employee and finding no sexually hostile work environment where the plaintiff was, among other things, leered at in a suggestive manner, because the conduct was merely offensive). Accordingly, the defendant may not be held liable for the "eat me" incident because its response was reasonable when viewed in the totality of the circumstances. [FN9]

> FN9. Ms. Cioffi also argues that Allen Products should be held liable for these incidents because it did not maintain a written policy and failed to conduct anti-harassment training for employees. However, the plaintiff cites to no authority indicating that the existence of a written sexual harassment policy and training, or the lack thereof, is dispositive in the case of co-worker harassment. *Cf. Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 295 (2d Cir.1999) (stating that, although not necessary, the existence of an anti-harassment policy is an important consideration in determining whether an employer has demonstrated that it exercised reasonable care in preventing and correcting a *supervisor's* sexually harassing conduct, as required for the employer to avoid liability) (emphasis added), *cert. denied,* 120 S.Ct. 1959 (2000).

With respect to the defendant's argument that it may not be held liable for the penis sketches and the off-color jokes told by employees because Ms. Cioffi never complained about these incidents, [FN10] the court declines to address this argument because, as will be discussed below, these incidents, even when viewed in conjunction with the remaining, timely incidents, do not rise to the level of severity necessary to constitute a hostile work environment.

> FN10. The court notes that the plaintiff offers no evidence demonstrating the basis for the defendant's alleged constructive knowledge of these incidents.

c. *Gender related harassment*

The defendant also seeks to avoid liability for the "eat me" incident and the incident where Mr. Bailer asked the plaintiff about her relationship with a co-worker on the ground that these incidents were not based on gender-related animus. As the court has already precluded consideration of these incidents above, it need not address the defendant's alternative arguments that they were not gender-related.

The defendant also seeks to preclude from consideration the plaintiff's allegation that Ms. Colon showed Ms. Cioffi a picture with sketches of penises on it, arguing that there is no evidence demonstrating that Ms. Colon was harassing Ms. Cioffi because she is a woman. The court again declines to address this argument because, as will be discussed below, this incident, even when viewed in conjunction with the remaining, timely incidents, does not rise to the level of severity necessary to constitute a hostile working environment.

d. *Severe or pervasive discriminatory conduct*

The defendant next argues that the plaintiff's hostile work environment claim must fail because, even if the court were to consider some or all of the plaintiff's allegations, the alleged sexual harassment was not sufficiently severe or pervasive as to give rise to a cause of action. The plaintiff contends that there remains a genuine issue of material fact with respect to this issue. [FN11]

> FN11. Ms. Cioffi argues that findings by the CCHRO and the Social Security Administration ("SSA"), as well as her diagnosis by Dr. Kligfeld, provide further support for her hostile work environment

claim. The plaintiff contends that if the CCHRO, SSA and Dr. Kligfeld could make the determination that she was harassed, then a reasonable jury could come to the same conclusion. This argument is misplaced because the SSA and Dr. Kligfeld were not asked to determine the existence of a Title VII violation, and the plaintiff offers no evidence documenting the CCHRO's finding in the plaintiff's favor. In fact, the defendant contends that the CCHRO failed to make any factual determinations in the plaintiff's case because the plaintiff withdrew her complaint before the CCHRO conducted an administrative hearing.

To establish the existence of a hostile work environment under Title VII, the plaintiff must show that her workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). When analyzing the pervasiveness of the alleged harassment, " 'isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." ' *Quinn*, 159 F.3d at 768 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995)); *see Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577-78 (2d Cir.1989) (stating that in order to be deemed pervasive, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted"); *see also Harris*, 510 U.S. at 21 ("[The] mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."). " 'Simple teasing', offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the 'terms and conditions of employment." ' *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998)). However, "where the conduct is sufficiently severe, it may alter the plaintiff's conditions of employment without repetition." *Quinn*, 159 F.3d at 768. In other words, Title VII is not to be used as "a general civility code," *Oncale*, 523 U.S. at 80; rather, alleged discriminatory conduct must be "extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

*10 There is no precise test for determining what constitutes a hostile work environment. Instead, the court must focus on the totality of the circumstances. Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the plaintiff's work performance." *Harris*, 510 U.S. at 21. These factors must be evaluated from both a subjective and an objective viewpoint. *See id.* at 21-22; *Faragher*, 524 U.S. at 787 ("[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.").

As the court has determined above that several of the plaintiff's allegations are either untimely or not attributable to Allen Products, it must now determine whether the plaintiff's remaining allegations amount to actionable harassment. *See Quinn*, 159 F.3d at 765-768 (affirming summary judgment for the defendant where the district court first eliminated all untimely incidents and any incidents that could not be attributed to the employer, and then determined if the remaining incidents were sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment). The plaintiff's allegations which are properly before the court are as follows: 1) in 1994, Mr. Bailer mentioned Ms. Cioffi's alleged affair to Mr. Baccili; 2) in April, 1994, Carmen Colon waved a page with sketches of penises on it in front of Ms. Cioffi and would often place photocopies of off-color jokes on co-workers' desks; 3) off-color jokes were told in Ms. Cioffi's presence on numerous occasions during her employment by agents and employees of the company, including Mr. Bailer; [FN12] 4) Mr. Dowdell often read the newspaper while leaning against a wall behind the plaintiff's cubicle; and 5) in June, 1994, Mr. Slater laughed at a statement made to Ms. Cioffi by a co-worker that had a sexual connotation/double-meaning.

FN12. The defendant argues that Allen Products cannot be liable for off-color jokes told in Ms. Cioffi's presence because she cannot remember who made the jokes, where or when they were made, or what they were about. The plaintiff contends that it is normal for her to suppress the memories of repulsive behavior and further, there was no mechanism for complaint because the joke-teller was most often the president of the company. The court declines to address this argument because the remaining incidents of harassment cited by the plaintiff, even including the joke-telling, are not sufficiently severe or pervasive as to constitute a hostile working environment, as explained below.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Viewing the above incidents in their totality, the court concludes that no reasonable jury could find that these five incidents created an actionable hostile work environment for the plaintiff. Ms. Cioffi has alleged sufficient facts to support the subjective portion of her hostile work environment claim, attesting that the alleged harassment caused her to be absent from work due to stress, to seek psychiatric help and, finally, to leave work permanently. *See Brooks v. City of San Mateo*, 214 F.3d 1082, 1088-89 (9th Cir.2000) (finding sufficient facts to support the subjective portion of the plaintiff's hostile work environment claim where the alleged harassing incident "pervaded her work environment to such a degree that she required psychological help and even then was unable to successfully return to her job"). However, when viewed objectively, the court concludes that these five incidents cannot be found to be severe or pervasive enough to alter the conditions of Ms. Cioffi's employment and create an abusive working environment.

*11 The five incidents are clearly offhand comments, "mere offensive utterances" and isolated incidents, which numerous courts have made clear do not amount to discriminatory changes in the terms and conditions of a plaintiff's employment. *See, e.g., Faragher*, 524 U.S. at 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view."); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir.2000) (affirming summary judgment for the defendant employer where, over a seventeen month period, the plaintiff's supervisor frequently told jokes with sexual overtones, once referred to the female plaintiff as "Hot Lips," commented about the plaintiff's state of dress, and made a statement that could be construed as telling the plaintiff that she could get a better review if she performed sexual favors for him, concluding that the harassing supervisor's behavior was the "kind of simple teasing, offhand comments, and isolated incidents that *Faragher* made clear did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment"); *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 773 (4th Cir.1997) (affirming summary judgment for the defendant employer where male co-workers regularly made off-color statements to the plaintiff and other women employees, stating that "[t]here was no allegation that [the plaintiff] was inappropriately touched, propositioned, flirted with, taunted, or even ogled," that none of the alleged comments "were even vulgar, much less obscene," and that the co-worker's behavior "falls well short" of harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive). The court notes that most of the off-color jokes cited by the plaintiff were not directed toward Ms. Cioffi personally, but to the defendant's employees in general. *See Morris*, 201 F.3d at 790 (stating that, when allegedly offensive jokes frequently told by a supervisor were not aimed at the plaintiff, these circumstances "can be relied upon as part of a court's conclusion that a defendant's conduct was not severe enough to create an objectively hostile environment"); *Sedotto v. Borg-Warner Protective Services Corp.*, 94 F.Supp.2d 251, 265 (D.Conn.2000) (finding no evidence that the plaintiff was harassed because of her sex where her supervisor criticized and ridiculed her, but he was that way with everyone and he never said anything of a sexual nature directly to the plaintiff). Finally, Ms. Cioffi was not physically touched, threatened or propositioned. *See Morris*, 201 F.3d at 790 (affirming district court's finding that a male supervisor's harassment was not sufficiently severe or pervasive as to create a hostile working environment where the supervisor made a statement that could be construed as telling the plaintiff that she could get a better review if she performed sexual favors for him because "[a]lthough [the supervisor's] purported sexual advance was truly offensive, it was the only advance that [he] allegedly made"); *Quinn*, 159 F.3d at 768 (affirming summary judgment for the defendant employer where the plaintiff's supervisor allegedly told her that she had been voted the "sleekest ass" in the office and touched her breasts with papers he was holding).

*12 In summary, Ms. Cioffi may have found her work environment unpleasant, and the sexual banter may have been boorish, but her workplace cannot be found to be hostile under Title VII. *See Faragher*, 524 U.S. at 788 ("[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code." ') (quoting *Oncale*, 118 S.Ct. at 1002); *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir.1998) ("The Supreme Court has recognized the difficulty in precisely defining what will or will not, in the virtually infinite number of varying circumstances, constitute a violation of [Title VII].... 'On one side lie sexual assaults; ... physical contact ...; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures.... On the other side lays the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." ') (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995)). Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's hostile

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

work environment claim contained in count one of the complaint is granted.

2. *Retaliatory Harassment*

Allen Products also seeks summary judgment with respect to Ms. Cioffi's retaliatory harassment claim on the ground that: 1) there is no evidence that the plaintiff was harassed because she engaged in a protected activity; 2) the alleged retaliatory harassment was not sufficiently severe or pervasive as to constitute an adverse employment action; and 3) Allen Products took reasonable actions to eliminate any conduct about which the plaintiff complained. While Ms. Cioffi does not respond to the defendant's motion on this count, the court analyzes the merits of her claim below.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [she] has opposed any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation a plaintiff must show (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." *Richardson v. New York State Dept. of Correctional Serv.,* 180 F.3d 426, 443 (2d Cir.1999). With respect to retaliation by co-workers, the Second Circuit Court of Appeals went on to state in *Richards:*

> We adopt the view that unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case.
> ...
> Just as an employer will be liable in negligence for a racially or sexually hostile work environment created by a victim's co-workers if the employer knows about (or reasonably should know about) that harassment but fails to take appropriate remedial action, so too will an employer be held accountable for allowing retaliatory co-worker harassment to occur if it knows about that harassment but fails to act to stop it.

*13 *Id.* at 446 (citations omitted).

There is no dispute that Ms. Cioffi participated in a protected activity when she complained to supervisors about alleged harassment. The parties' dispute presumably centers on whether Ms. Cioffi was subjected to any disadvantageous employment actions and, if so, what causal connection, if any, existed between those actions and her protected activity.

Although Ms. Cioffi fails to state in her complaint exactly which of the alleged incidents of sexual harassment were retaliatory in nature, the court gleans from her deposition and other exhibits submitted in connection with the instant motion eight possible incidents which Ms. Cioffi may claim were retaliatory because they occurred after she complained about the mirror incident: [FN13] 1) an unspecified incident with Carmen Colon; 2) Karen Bragdon, a co-worker, listened into a conversation between Ms. Cioffi and a customer; 3) the "eat me" incident; 4) sometime between the mirror incident and May 20, 1994, Mr. Bailer called Ms. Cioffi into his office and talked with her about "getting along" with others in the workplace; 5) incidents where male co-workers "accidently" bumped into Ms. Cioffi; 6) Ms. Cioffi walked into the coffee room one day and a co-worker stopped talking, stating that he could not continue his conversation because of "present company"; 7) Mr. Slater laughed at a joke that he heard between Ms. Cioffi and another co-worker; and 8) Ms. Colon waived the paper with sketches of penises in front of Ms. Cioffi.

> FN13. Ms. Cioffi stated at her deposition that she was also harassed by co-workers after Mr. Bailer spoke with un-named persons about the plaintiff's alleged affair with a co-worker. Because Ms. Cioffi did not complain to anyone about Mr. Bailer's inquiring about the affair, this is not a protected activity upon which she may base her retaliation claim.

For the same reasons iterated previously, these incidents, even if they were somehow retaliatory in nature, [FN14] were either not attributable to Allen Products because it responded appropriately to the plaintiff's complaints, or were not severe or pervasive enough to constitute adverse employment actions.

> FN14. The court notes its reservations concerning the plaintiff's ability to establish the necessary causal connection between allegations of mistreatment at the hands of un-named co-workers and her complaints to her supervisor.

Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's retaliation claim contained in count two of the complaint is granted.

3. *Constructive Discharge*

Although not included in her original complaint, Ms.

2000 WL 33180448
(Cite as: 2000 WL 33180448, *13 (D.Conn.))

Page 11

Cioffi raises a claim of constructive discharge in her response to the defendant's statement of undisputed facts. (*See* Pl.'s Resp. Def.'s Statement Undisputed Facts, ¶ 19 (stating "the fact that Mr. Slater underwent counseling would have no impact on [the plaintiff's] claim of constructive discharge").) The court will therefore examine the merits of such a claim below, notwithstanding the fact that neither party addressed this claim in their briefs.

"To establish a constructive discharge, a plaintiff must show that the employer deliberately [made her] working conditions so intolerable that [she was] forced into an involuntary resignation." *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993) (internal citation and quotations omitted). " 'Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." ' *Leson v. ARI of Connecticut, Inc.*, 51 F.Supp.2d 135, 143 (D.Conn.1999) (quoting *Lombardo v. Oppenheimer*, 701 F.Supp. 29, 30 (D.Conn.1987)). "Intolerability is measured by a reasonable person standard and not by the employee's subjective feelings." *Id.*

*14 The Second Circuit has noted that "a constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir.1993); *see Stetson*, 995 F.2d at 360 ("A constructive discharge generally cannot be established, however, simply through evidence that an employee was dissatisfied with the nature of his assignments."). Indeed, the standard for constructive discharge is "a demanding one ." *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (determining that the plaintiff's resignation due to humiliation over her employer's loud mention of her having to take a polygraph test and her burdensome working conditions did not amount to a constructive discharge).

The court concludes from the pleadings that, in support of her constructive discharge claim, Ms. Cioffi would contend that Allen Products did not take her complaints seriously and that this lack of care created an intolerable working environment resulting in her constructive discharge when she left work on June 20, 1994, and was unable to return. [FN15]

FN15. To the extent that Ms. Cioffi may rely on the fact that Allen Products requested that she train another employee on her last day of work in support of her constructive discharge claim, such a claim is unavailing because it is reasonable to believe that Allen Products was attempting to secure back-up for Ms. Cioffi's duties in light of her absences during the preceding two months. *See Sedotto v. Borg-Warner Protective Services Corp.*, 94 F.Supp.2d 251, 261 (D.Conn.2000) (stating that if an employee is dissatisfied with the work assignments she received, this is not enough to show that an employer intended the employee to quit).

However, Ms. Cioffi has failed to allege any facts from which a reasonable jury could conclude that the defendant intentionally created an intolerable working atmosphere for the purpose of inducing her resignation. First, the court has already determined that Allen Products responded reasonably to Ms. Cioffi's actionable complaints. In addition, Ms. Cioffi was given new responsibilities, a promotion and a raise in pay in late April, 1994, after she had complained about several instances of alleged harassment including the "mirror incident." *See Sedotto v. Borg-Warner Protective Services Corp.*, 94 F.Supp.2d 251, 261 (D.Conn.2000) (concluding that the plaintiff produced insufficient evidence of intent in support of her Title VII constructive discharge claim where the plaintiff was offered another district to manage, was given a raise, her performance was considered good, and she received a substantial bonus during the three months before she quit work). Finally, the court notes that Mr. Bailer held the plaintiff's job open for five months without receiving the requested medical documentation supporting her absence before terminating her employment. *See Viera v. Olsten/Kimberly Quality Care*, 63 F.Supp.2d 413, 418 (S.D.N.Y.1999) (finding former employee was not actually or constructively discharged where she was offered a new position during company reorganization that provided same salary and benefits as she currently received, she was aware that her failure to accept position would be treated as voluntary resignation, and employer waited nearly two months before compelling her to decide).

*15 Therefore, the plaintiff has failed to produce sufficient facts to establish a prima facie case of constructive discharge, and the defendant's motion for summary judgment is granted with respect to this claim.

B. State Law Claims

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 33180448
(Cite as: 2000 WL 33180448, *15 (D.Conn.))

Page 12

It is well settled that when all federal claims are eliminated, a federal court should decline to exercise jurisdiction over any remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1998) (holding that a federal court should decline to exercise jurisdiction over pendant state law claims absent federal claims); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (holding that a federal court should hesitate to exercise jurisdiction over state claims absent federal claims); *DiLaura v. Power Auth. of New York,* 982 F.2d 73, 80 (2d Cir.1992) (holding that it is in the discretion of the court to relinquish jurisdiction over supplemental state claims absent federal claims). Accordingly, because there are no viable federal claims pending against the defendant, the court declines to exercise jurisdiction over the plaintiff's remaining state law claims of negligent hiring and/or retention and intentional infliction of emotional distress contained in counts three and four of her complaint, respectively. These claims are hereby dismissed without prejudice. As the plaintiff has withdrawn her claim of negligent infliction of emotional distress contained in count five of the complaint, this claim is dismissed with prejudice.

IV. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (doc. # 32) is GRANTED with respect to the plaintiff's Title VII claims. The plaintiff's state law claims of negligent hiring and/or retention and intentional infliction of emotional distress are dismissed without prejudice. The plaintiff's claim of negligent infliction of emotional distress is dismissed with prejudice. The clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.

2000 WL 33180448, 2000 WL 33180448 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works