3

2000 WL 305965
(Cite as: 2000 WL 305965 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Faye KARSON,
v.
STATE OF CONNECTICUT, DEPT. OF VETERANS' AFFAIRS.

No. 3:98CV747 (DJS).

Feb. 25, 2000.

MEMORANDUM OF DECISION

SQUATRITO.

*1 The plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that the defendant discriminated against her "by harassing her, creating a hostile work environment and retaliating against her ... for challenging the legality of certain conduct of her superiors, all motivated by reason of the fact that she is a female." Pl.'s Am. Compl., ¶ 3a. Now pending before the court is the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. [FN1] For the reasons stated below, the defendant's motion is granted.

> FN1. The court previously dismissed the plaintiff's retaliation claim because it was not clear to the plaintiff's employer that her prior grievances and complaints were directed at conduct prohibited by Title VII. See 2/12/99 Mem. of Decision (doc. # 28) at 9-10. Accordingly, the instant motion for summary judgment is directed solely at the plaintiff's gender discrimination claim under Title VII.

I. Facts

Examination of the memoranda, affidavits, and Local Rule 9 statements submitted in support of the motion for summary judgment and the responses thereto, discloses the following relevant facts.

The defendant, State of Connecticut, Department of Veterans' Affairs ("Department"), employed the plaintiff as a part-time clerk/typist in its office of Advocacy and Assistance ("OA & A") located in Stamford, Connecticut, and later moved to Bridgeport, Connecticut, from March 1992 until December 1998. [FN2] The OA & A maintains an office in each of the six congressional districts of the state. Each office is staffed with at least one clerical personnel and one Veterans' Services Officer ("VSO"). Maurice Collin, a white male and a veteran, is the supervisor of the OA & A. William Gambino, a white male, was the VSO in charge of the Bridgeport office at all times pertinent to this case. As such, he worked with the plaintiff, though he had no supervisory authority over her. Both Gambino and the plaintiff reported to Collin.

> FN2. The plaintiff was still employed by the defendant at the time she filed the instant complaint in July 1998, and the cessation of her employment with the defendant is not at issue here.

From 1992 until sometime in 1996, the plaintiff worked satisfactorily, receiving job performance ratings of "very good" during this period. Beginning in 1996 and following an adjustment to the plaintiff's work schedule in order to allow her to work full-time for two separate agencies, Collin became aware through his secretary that the paperwork prepared by the plaintiff contained an increasing number of typographical errors. Collin counseled the plaintiff many times both orally and in writing in an attempt to guide her to improve her performance, but without much success. The plaintiff also began having problems working with Gambino during this period. The plaintiff's performance review in 1996 rated her as "fair," indicated that she was "reluctant to cooperate with staff," and reflected lower ratings than she had previously achieved in every category other than attendance.

The plaintiff identifies several situations in which Collin treated her less favorably than he did Gambino, allegedly indicating gender discrimination. First, Collin required her to sign in and out of work every day beginning in February 1997, but initially did not enforce this rule uniformly with respect to Gambino. Second, Collin conducted the plaintiff's 1997 job performance review at the plaintiff's work station in an open area of the office rather than conducting it in private, as the plaintiff requested, while he conducted his review of Gambino privately in Gambino's office. Third, Collin did not reimburse the plaintiff for the mileage cost she incurred in attending a December 1997 grievance hearing nor did he pay her for the time it took her to return from said grievance hearing, while Gambino attended the hearing using a state car and was not docked any pay. Finally, the plaintiff alleges that Collin blamed her for typographical errors in outgoing correspondence and documents signed by Gambino, thereby shifting Gambino's primary responsibility for

2000 WL 305965
(Cite as: 2000 WL 305965, *1 (D.Conn.))

Page 2

typographical errors in his own work to the plaintiff.

*2 The plaintiff alleges that the defendant, through Collin and Gambino, caused her working environment to become "demeaning, unduly tense, contentious and hostile" in the above described manner, constituting gender discrimination in violation of Title VII and resulting in the plaintiff's emotional distress and physical harm. Pl.'s Am. Compl., ¶ 16.

II. Legal Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. See *Anderson*, 477 U.S. at 255; *Gallo*, 22 F.3d at 1223; *Ramseur v.. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. See *Anderson*, 477 U.S. at 255; *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III. Discussion

The defendant seeks summary judgment on the grounds that: (1) the plaintiff cannot establish the fourth element of a prima facie case of gender discrimination because she has not shown that she was treated differently from a similarly situated, non-protected employee of the Department; (2) the Department's employment decisions concerning the plaintiff were motivated by legitimate, nondiscriminatory reasons involving the plaintiff's poor work performance and attitude; and (3) the plaintiff has not produced evidence demonstrating that gender discrimination was a substantial or a motivating factor in the Department's actions and decisions.

A. Prima Facie Case of Discrimination

*3 In a Title VII case the burden is first on the plaintiff to establish a prima facie case of discrimination. See *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir.1997). [FN3] To do this, the plaintiff must show that: (1) she is a woman; (2) she was qualified for her position; (3) she suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to an inference of discrimination. See *id.*

> FN3. Once a plaintiff alleges a prima facie case of sex discrimination, the burden of production then shifts to the employer, who must offer a legitimate, nondiscriminatory reason for its actions. See *Luciano*, 110 F.3d at 215. If the employer successfully articulates such a reason, the plaintiff has the burden of proving that the proffered reason is merely a pretext for discrimination. See *id.*

The defendant concedes that the plaintiff has established the first three elements of a prima facie case. However, the defendant contests the plaintiff's ability to satisfy the fourth element, which may be proven by showing that a man similarly situated was treated differently. See *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir.1989).

"To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997). More specifically, similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the appropriate discipline for it." *Mazzella v. RCA Global Communications, Inc.*, 642 F.Sup. 1531, 1547 (S.D.N.Y.1986), *aff'd*, 814 F.2d 653 (2d Cir.1987). Moreover, "[a]lthough the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." *Brown v. Middaugh*, 41 F.Sup.2d 172, 184 (N.D.N.Y.1999).

In this case, the defendant contends that Gambino, the person with whom the plaintiff seeks to compare herself in order to demonstrate dissimilar treatment at the hands of the defendant, was not similarly situated to the plaintiff because he had a different job classification, distinct job responsibilities, and vastly different job functions from those of the plaintiff. The defendant explains:

> Mr. Gambino is a professional who specializes in veterans' benefits. He has to visit nursing homes in the course of his duties. He conducts interviews with clients. He has to prepare for hearings. He has to know laws, regulations, and medical information pertaining to benefit claims and how they apply to specific cases. His duties frequently take him out of the office. His job requirements require Mr. Collin to give him some flexibility in performing his duties especially with respect to scheduling.
> On the other hand, the plaintiff's position required no such flexibility. Her position required her to spend all her time at work at the office answering the phone, taking messages, filing paperwork, typing and proofreading letters, and performing other clerical functions. These tasks are incomparable to Mr. Gambino's responsibilities.

*4 Def.'s Mem.Supp.Mot.Summ. J. (doc. # 36) at 9.

The plaintiff concedes these identified differences between the two positions, but "submits, however, that different job classifications, functions and responsibilities are not 'material' to the comparison of the Plaintiff and Gambino for purposes of the discrimination analysis." Pl.'s Mem. Opp. Mot. Summ. J. (doc. # 39) at 2. Rather, the plaintiff suggests that "[w]hat is material is the fact that they worked for the same off-site supervisor, Maurice Collin ('Collin'); they worked in the same district office of the Defendant; they both received their job performance reviews from Collin; and they both were held responsible by Collin for the spelling and grammatical content of the work product coming out of their district office, which Collin reviewed in his office before allowing to be mailed out." *Id.* at 2-3.

The plaintiff also points out that she and Gambino were the only two employees in the defendant's Bridgeport office, and Gambino did not supervise the plaintiff. *See id.* at 3.

Notwithstanding the similarities pointed out by the plaintiff, the court finds that the uncontested differences in the two position's job classifications, functions, and responsibilities are "material" to the similarly situated analysis required under *Shumway*, 118 F.3d at 64. And because the marked differences between the two positions reasonably affect the applicable "standards governing performance evaluation and discipline," *Mazzella*, 642 F.Sup. at 1547, the court concludes that Gambino was not similarly situated to the plaintiff in all material respects. *See Belgrave v. City of New York*, No. 95-CV-1507(JG), 1999 WL 692034, at *28 (E.D.N.Y. Aug. 31, 1999) (finding two of plaintiff's co-workers were not similarly situated because one employee's job responsibilities differed significantly from those of the plaintiff and the plaintiff had failed to provide any information regarding another employee's job description or responsibilities); *Aviles v. Chase Manhattan Bank, N.A.*, No. 94Civ.8544(RPP), 1997 WL 651474, at *6 (S.D.N.Y. Oct. 20, 1997) (determining that the plaintiff had not shown that she and co-worker were similarly situated in terms of their job responsibilities and therefore declining to allow allegation to proceed); *see also Hargett v. National Westminster Bank, USA*, 78 F.3d 836, 839-40 (2d Cir.) (affirming district court's conclusion that employment position was a factor for the jury to consider along with the conduct in question in deciding whether co-workers were similarly situated to the plaintiff, noting that U.S. Supreme Court precedent does not preclude "a finding that identical acts undertaken by persons of differing authority or in differing circumstances are in fact dissimilar"), *cert. denied*, 519 U.S. 824 (1996).

Consequently, the plaintiff has not established the fourth element of a prima facie discrimination case because she has not adduced evidence demonstrating that a similarly situated, non-protected employee was treated differently or more favorably than she, nor has she offered any other evidence suggesting that the adverse actions she alleges occurred under circumstances giving rise to an inference of gender discrimination.

*5 Because the court finds that the plaintiff has failed to make out a prima facie case of gender discrimination, therefore entitling the defendant to summary judgment in its favor on this ground, it need

not address the defendant's other grounds for summary judgment.

IV. Conclusion

For the above stated reasons, the defendant's motion for summary judgment (doc. # 35) is GRANTED. The clerk shall enter judgment in favor of the defendant and close this file.

So ordered at Hartford, Connecticut, this 25th day of February 2000.

2000 WL 305965, 2000 WL 305965 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works