6

2000 WL 435546
(Cite as: 2000 WL 435546 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Scott BUCHANAN,
v.
CONNECTICUT TRANSIT, INC. et al.

No. 3:98cv1145 AHN.

March 10, 2000.

Ruling on Motion for Summary Judgment

NEVAS.

*1 The plaintiff, Scott Buchanan ("Buchanan"), brings this action against CT Transit Inc., H.N.S. Management Co. ("HNS"), for defamation, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress and promissory estoppel. Buchanan also brings claims for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e *et seq..*

Now pending before the Court is HNS's Motion for Summary Judgment. For the reasons that follow, the motion [doc. # 28] is GRANTED.

STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson,* 477 U.S. at 258. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ..." *Miner v. Glen Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (internal quotation marks and citation omitted).

In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

FACTS

In 1995, Buchanan was a transportation supervisor for HNS. At that time, Betty Deluca ("Deluca") was a bus driver in the transportation department of HNS. (*See* Def.'s 9(c) Statement of Material Facts [hereinafter "Def.'s Stat."] ¶¶ 1, 2.) From October 1995 until April 1996, Buchanan and Deluca had a consensual sexual relationship. (*See id.* ¶ 3.) In June 1996, DeLuca complained to HNS management that Buchanan had been harassing her. (*See id.* ¶ 5.) Her claim was determined to be false and she was given a written reprimand and verbal counseling. Nonetheless, Buchanan's supervisor, Mark Fallon ("Fallon"), suggested that he avoid contact with DeLuca. [FN1] (*See* Plaintiff's 9(c)(2) Statement of Material Facts in Dispute [hereinafter "Pl.'s Stat."] ¶¶ 3-5.)

> FN1. There is a dispute as to whether Fallon "suggested" or "instructed" Buchanan to stay away from DeLuca.

*2 Thereafter, on January 3, 1997, DeLuca met with Martha White ("White"), one of HNS's affirmative action officers, and made a formal complaint of sexual harassment against Buchanan. [FN2] (*See* Def.'s Stat. ¶¶ 7, 8, 10, 11.) After she met with DeLuca, White spoke about DeLuca's charges with Buchanan's supervisors, Fallon and Tom Crispano ("Crispano"), as well as with Steve Warren ("Warren"), another member of HNS's affirmative action committee. (*See* Def.'s Stat. ¶¶ 11, 13.) On January 6, 1997, White and Warren met with Joe Piatti, another HNS bus operator, as part of the investigation into DeLuca's charges. [FN3] (*See id.* ¶ 14.) White and Crispano also met with Buchanan on January 6, 1997. Buchanan admitted that he had contact with DeLuca near her home on one

occasion. [FN4] (*See* Def.'s Stat. ¶ 16.)

> FN2. From April 1996 until January 1997, Buchanan and DeLuca had several encounters both formally and informally. It is disputed as to who initiated these contacts. Moreover, Buchanan made a formal complaint in January 1997, regarding an incident in which DeLuca is alleged to have made an inappropriate gesture at him. (*See* Pl.'s Stat. ¶ 7.)
>
> FN3. There is a dispute as to whether Joe Piatti witnessed any contact between Buchanan and DeLuca which could be characterized as "inappropriate." (*See* Pl.'s Stat. ¶ 15.)
>
> FN4. Buchanan maintains that this was simply a chance encounter with DeLuca. (*See* Pl.'s Stat. ¶ 17.)

Buchanan was assured by Fallon and Warren that he would be given a fair opportunity to present his side of the case and question anyone he needed. Despite these representations, he was not allowed to see the report containing DeLuca's allegations against him and those charges were never fully disclosed to him. (*See* Pl.'s Stat. ¶¶ 8-10.)

White and Warren also interviewed Linda Bower ("Bower"), who explained that she had observed unnecessary contacts between Buchanan and DeLuca. This fact is disputed by Buchanan. (*See* Def.'s Stat. ¶¶ 19, 20.) Bower also claims she told Buchanan to "stop pursuing" DeLuca. Buchanan also disputes this fact. (*See* Def.'s Stat. ¶ 21.)

After meetings with these individuals, White and Warren concluded that Buchanan had acted inappropriately towards DeLuca and reported their conclusions to Fallon. (*See id.* ¶ 22.) Fallon recommended to his supervisor, Mr. Mangene, that Buchanan be fired. (*See id.* ¶¶ 22-24.) Mangene did not terminate Buchanan but suspended him for five days and demoted him from supervisor to driver. (*See id.* ¶¶ 24, 25.)

More than a year and a half later, Buchanan resigned from HNS. He maintains that he did so because of his demotion in January 1997. (*See id.* ¶ 26.)

DISCUSSION

HNS argues that there is no evidence to support any of Buchanan's claims and that it is entitled to summary judgment. In response, Buchanan maintains that genuine issues of material fact exist and that HNS's motion for summary judgment must be denied.

I. Title VII--Gender Discrimination

A. Prima Facie Case

Buchanan asserts that his suspension and demotion were based on gender discrimination in violation of Title VII. In response, HNS maintains that the adverse employment actions were taken to discipline Buchanan for his harassment of DeLuca, and were not a result of gender discrimination.

In Title VII cases, courts employ the burden shifting analysis set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny. Under the *McDonnell-Douglas* analysis, the plaintiff must initially prove by a preponderance of the evidence a prima facie case of discrimination. *See Meckenberg v. N.Y. City Off-Track Betting,* 42 F.Sup.2d 359, 375 (S.D.N.Y.1999). "In order to make out a prima facie case of employment discrimination, the plaintiff must demonstrate: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he was subject to an adverse employment action; and (4) that the adverse employment decision occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998).

*3 Proof of a prima facie case creates a presumption that the employer discriminated against the employee in an unlawful manner. *See Fisher v. Vassar College,* 114 F.3d 1332, 1340 (2d Cir.1997). The plaintiff's burden at this stage is de minimis. *See id.* If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for its actions. *See Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). If the defendant is successful in meeting its burden, the presumption of discrimination drops out of the case. *See Fisher,* 114 F.3d at 1332. "The burden then rests on the plaintiff to persuade the trier of fact that, more likely than not, the true reason was intentional discrimination." *Meckenberg,* 42 F.Sup.2d at 375.

Here, Buchanan alleges that he has suffered a distinct adverse employment decision. Specifically, he claims that he was treated less favorably than similarly

situated females charged with similar conduct in that he was suspended and demoted rather than being verbally reprimanded.

The undisputed evidence shows that Buchanan cannot establish a prima facie case of discrimination in regard to his suspension and demotion. The court concludes that Buchanan cannot, as a matter of law, establish by a preponderance of the evidence the fourth element of a prima facie case, i.e., that his suspension and demotion occurred under circumstances giving rise to an inference of discrimination. *See Schumway v. United Parcels Service, Inc.*, 118 F.3d 60, 63-65 (2d Cir.1997) (holding that there can be no inference of discrimination unless the plaintiff shows that she was treated differently than her male "comparators" who were similarly situated in all material respects).

Here, as in *Schumway*, the record provides no basis to support Buchanan's claim that he was treated less favorably than female employees similarly situated in all material respects. That is, he has not put forth any evidence that female employees who occupied supervisory positions and who were charged with sexual harassment of a subordinate, were treated more favorably. *See Schumway*, 118 F.3d at 64; *see also Hargett v. National Westminster Bank*, 78 F.3d 836, 839 (2d Cir.1996). Notably, his counsel, at oral argument, conceded that he had no evidence of any other claims of sexual harassment made against HNS supervisors by their subordinates.

Instead, Buchanan compares himself to his subordinate, DeLuca, and contends that she was treated more favorably during the sexual harassment investigation. However, Buchanan cannot sustain his Title VII claim based on this comparison because there is no evidence that he and DeLuca were similarly situated in all material respects. *See Schumway*, 118 F.3d at 63-65. DeLuca was a bus operator for HNS. She had no supervisory responsibilities. By contrast, Buchanan was a transportation supervisor and had management responsibilities. Buchanan and DeLuca were not subject to the same standards governing performance and discipline. Moreover, even assuming that Buchanan and DeLuca were similarly situated, there is no evidence that DeLuca was ever charged with sexual harassment of a subordinate or that, if such charges were made, she was treated more favorably than Buchanan in any investigation of those charges. [FN5]

FN5. Moreover, Buchanan's claim that DeLuca was not initially disciplined for making false charges of harassment is also unavailing because in that instance DeLuca was not being charged with sexual harassment. Thus, her situation is different from the situation that led to Buchanan's demotion and the comparison is not appropriate for Title VII purposes. *See Hargett*, 78 F.3d at 839.

*4 In sum, no evidence has been presented to show that female employees charged with sexual harassment were treated more favorably than male employees in terms of discipline or sanctions. Accordingly, a reasonable fact finder could not find or infer that Buchanan's demotion from transportation supervisor to bus operator occurred under circumstances giving rise to an inference of discrimination. *See Schumway*, 118 F.3d at 64-65. As a result, other than the fact that Buchanan is a man, there is simply no reason to infer that he was demoted due to gender animus or bias.

B. Pretext

For similar reasons, even assuming that Buchanan could establish a prima facie case, he cannot, as a matter of law, show that HNS's proffered reasons for suspending and demoting him, i.e., that he was found to have engaged in inappropriate conduct towards DeLuca, were a pretext for gender discrimination.

In order to establish that the proffered reason for the employer's action was pretextual, Buchanan must show both "that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515. At the summary judgment stage, this means that he "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging him is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer*, 156 F.3d at 401 (citation and internal quotation marks omitted). "[A] plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction--or both." *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied*, 118 S.Ct. 851 (1998). However, a plaintiff cannot survive a motion for summary judgment merely by asserting that intent is at issue. Instead, she must present "concrete particulars" that substantiate her claim of discrimination. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Here, Buchanan has failed to raise a genuine issue of material fact through either direct, statistical or circumstantial evidence that HNS's stated reason for suspending and demoting him, i.e., inappropriate conduct towards DeLuca, was a pretext for gender discrimination. Even if, as Buchanan asserts, HNS acted as it did because it feared that DeLuca would file a lawsuit, there is still no evidence that HNS's action was not taken as discipline for his inappropriate conduct towards DeLuca. Thus, there is no evidence that would permit a reasonable fact finder to infer that HNS's reason for suspending and demoting Buchanan was false. *See Kerzer*, 156 F.3d at 401.

Further, even assuming that Buchanan could show that HNS's proffered reason was false, there is no evidence from which a rational fact finder could infer that the adverse employment action was actually motivated, in whole or in part, by discrimination on the basis of his gender. *See Grady*, 130 F.3d at 561 (explaining that the plaintiff must point to evidence which would permit a rational jury to conclude that the employer took the adverse employment action, at least in part, for discriminatory reasons).

*5 The record is bereft of evidence that HNS engaged in gender-based discrimination against Buchanan. Buchanan has not provided any evidence that shows a discriminatory animus on the part of HNS management. His claim that female employees were treated more favorably than he was treated is not rooted in the evidence, and his conclusory allegations are not enough to create a genuine issue of material fact as to whether the real reasons for his suspension and demotion were illegal discrimination. *Cf. Ralkin v. New York City Transit Authority*, 62 F.Sup.2d 989, 999-1000 (E.D.N.Y.1999) (explaining that to survive summary judgment, a plaintiff must offer more than "h[is] own conclusory and unsubstantiated statements in his deposition testimony").

Accordingly, because of the total absence of evidence "to demonstrate that [HNS's] articulated reason for its decision is in fact a pretext for discrimination[,]" *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir.1997), no rational jury could find that HNS's conduct was motivated by gender bias.

While the court is cognizant of the admonition that courts must be especially cautious about granting summary judgment in an employment discrimination case, *see Carlton v. Mystic Trans., Inc.*, No. 98-7973, 2000 WL 95036, **5-7 (2d Cir. Jan. 28, 2000), this case presents the court with nothing more than legally inadequate speculation that gender animus motivated the alleged discriminatory treatment of the plaintiff. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating "opponent must do more than simply show that there is some metaphysical doubt as to the material facts") (citations omitted). Consequently, Buchanan's Title VII gender discrimination claim fails as a matter of law.

II. Constructive Discharge Claim

Buchanan also alleges that he was exposed to intolerable working conditions. Specifically, he contends that he was subjected to constant ridicule and derogatory comments by fellow workers, and that this hostile work environment eventually compelled him to leave HNS. In response, HNS maintains that Buchanan was never subjected to a hostile work environment and thus his constructive discharge claim fails as a matter of law.

"To establish a [claim for] constructive discharge, a plaintiff must show that the employer deliberately made his working conditions so intolerable that [he was] forced into an involuntary resignation." *Stetson v. NYNEX Serv. Corp.*, 995 F.2d 355, 360 (2d Cir.1993) (internal quotation marks and citations omitted). Intolerable working conditions have been described as conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996). A prerequisite to a finding of constructive discharge is proof that the "employer deliberately created working conditions" effectively forcing the employee to resign. *See Kader v. Paper Software, Inc.*, 111 F.3d 337, 341 (2d Cir.1997).

*6 In addition, constructive discharge requires more than evidence that the employee was dissatisfied with the nature of his assignments or that the employee disagreed with the employer's criticisms of the quality of his work. *See Stetson*, 995 F.2d at 360. Nor is the test whether the employee's working conditions were difficult or unpleasant. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). Finally, the employee's subjective perceptions are not determinative. *See Nobler v. Beth Israel Med. Ctr.*, 702 F.Supp. 1023, 1020 (S.D.N.Y.1988).

Here, the undisputed facts show that, as a matter of law, Buchanan cannot establish a prima facie case of discriminatory constructive discharge. Specifically, he cannot show that he was constructively discharged and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 435546
(Cite as: 2000 WL 435546, *6 (D.Conn.))

Page 5

therefore, cannot show that he had an adverse employment action taken against him. Moreover, even assuming Buchanan could establish that he was constructively discharged, there are no facts showing that his discharge occurred under circumstances giving rise to an inference of discrimination.

Buchanan has not produced any evidence from which a rational fact finder could infer that HNS deliberately made his working conditions so intolerable that a reasonable person in the same circumstances would be compelled to resign. *See Turnullo v. Reno,* 8 F.Sup.2d 186, 193 (N.D.N.Y.1998) (explaining that criticism of employee performance and employee dissatisfaction with work assignments are insufficient to establish a claim of constructive discharge). The record merely establishes that Buchanan was upset over his perceived mistreatment by HNS during the investigation which ultimately resulted in his suspension and demotion. *See Chertkova,* 92 F.3d at 89.

Specifically, Buchanan asserts that after he was demoted, he lost self-esteem and pride, had different job responsibilities, was not able to get days off as easily as before his demotion, had to grovel for vacation time and, that employees made derogatory comments about him, but he does not provide the content of those alleged remarks. (*See* Buchanan Dep. pp. 149-50, 181-86.) Moreover, at oral argument, his counsel stated that the difference in job responsibilities caused Buchanan to feel humiliated and thus unable to tolerate continued employment with HNS.

Although this evidence may show that Buchanan was dissatisfied with his demotion and with the work assignments that he received thereafter, there is no evidence that HNS intentionally created an intolerable work environment to force him to resign. *See Stetson,* 995 F.2d at 360; *Turnullo,* 8 F.Sup.2d at 193. To the contrary, the evidence establishes that Buchanan was unable to accept that, as a result of his demotion, his status within HNS changed and that, as a bus operator, unlike that of a supervisor, he lost seniority, had to bid for vacation time and bus routes and needed advance permission to take sick time. Buchanan has not produced any evidence that other bus operators were treated more favorably. *See Sinopoli v. Regula,* 125 F.3d 844, 1997 WL 624987 (2d Cir. Oct. 9, 1997). In addition, his subjective perception that he had to grovel for time off and particular assignments and that other HNS employees lost respect for him are insufficient as a matter of law to support a claim for constructive discharge. *See Nobler,* 702 F.Sup. at 1030 (explaining that an employee's subjective feelings as to the intolerable nature of his position are insufficient to lead to a finding of constructive discharge).

*7 Consequently, although normally the determination as to whether an intolerable work environment exists is a factual question, in this case, construing all inferences in Buchanan's favor, there is no evidence from which a reasonable fact finder could infer either that his working conditions were intolerable, or that an intolerable work environment was intentionally created by HNS. *Cf. Carrero v. N.Y. City Hous. Auth.,* 890 F.2d 569, 577 (2d Cir.1989). Accordingly, Buchanan cannot establish that he was constructively discharged and, therefore, he cannot make out a prima facie case of gender discrimination because he cannot show an adverse employment decision.

Moreover, even assuming that Buchanan could establish that he was constructively discharged, based on the undisputed facts of this case he cannot show that his discharge occurred under circumstances giving rise to an inference of discrimination. The record in this case does not contain any evidence from which a reasonable fact finder could infer that gender animus motivated HNS's actions. The bases for his constructive discharge claim, his difference in job responsibilities after his demotion and his subjective feelings of humiliation because of his demotion, do not raise any issues or facts that suggest gender-based animus. Therefore, Buchanan cannot make out a prima facie case of discrimination based on constructive discharge because he cannot show that his alleged discharge occurred under circumstances warranting an inference of gender discrimination.

Consequently, the court holds that Buchanan's constructive discharge claim fails as a matter of law. He has not raised any genuine issues of material fact that preclude summary judgment. Even when construed in Buchanan's favor, the facts in this case do not evince any basis from which a reasonable fact finder could determine that he was either constructively discharged or that his alleged discharge occurred due to his gender. As before, the court is cognizant of the admonition that courts must be especially cautious about granting summary judgment in an employment discrimination case. *See Carlton,* 2000 WL 95036, at *5. However, the record in this case provides only unsubstantiable speculation that HNS discriminated against Buchanan because of his gender.

III. Title VII--Sexual Harassment

It is not clear from the complaint whether Buchanan

claims sexual harassment based on his perception that HNS's investigation of DeLuca's charges was not fair and thorough, or that he was sexually harassed by other HNS employees. In either case he has failed to provide a factual or legal basis for a claim of sexual harassment.

Title VII prohibits discrimination based upon race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). However, it does not protect employees who are unjustly and maliciously accused of sexual harassment. *See id.* Consequently, Buchanan's claim that he was unfairly accused of sexual harassment fails as a matter of law. Moreover, to the extent that his claim is that the sexual harassment investigation was unfairly conducted, that claim also fails as a matter of law for the reasons stated in Section I and II, *supra*.

*8 Similarly, any claim of sexual harassment by DeLuca or other non-supervisory employees of HNS also fails as a matter of law because there is no evidence that Buchanan was subjected to severe or pervasive conduct which created an objectively hostile or abusive work environment.

To prevail on a claim based on a sex-based hostile work environment, Buchanan must show that "the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993). Moreover, if the harasser is the victim's coworker, the employer will be liable only if it is negligent. *See Richardson v. New York State Dept. of Corr. Ser.,* 180 F.3d 426, 441 (2d Cir.1999). Specifically, an employer will be liable if it either "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995) (citation omitted).

The harassment claimed by Buchanan simply fails to rise to the level of severity or pervasiveness necessary for a hostile environment claim. Notably, he has failed to present any evidence of repeated and continuous comments, intimidation, ridicule or insults that are attributable to a discriminatory animus. *See id.; see also Kotcher v. Rosa & Sullivan Appliance Ctr.,* 957 F.2d 59, 62 (2d Cir.1992) (explaining that the incidents complained of by the plaintiff must be continuous and repeated, not merely isolated acts or occasional episodes). In fact, Buchanan has not provided any evidence that discriminatory comments were even made.

Indeed, at oral argument, counsel for Buchanan conceded that no gender-based derogatory comments were made by HNS employees. Rather, his counsel stated that the alleged intolerable work environment resulted solely from his demotion. This is insufficient as a matter of law to maintain a hostile work environment claim. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767-68 (2d Cir.1998). Therefore, his conclusory assertions that he was subjected to sexual harassment is not supported by the evidence and is not sufficient to defeat summary judgment. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (stating that unsupported assertions and conclusory statements are not considered on a motion for summary judgment). Consequently, there is no evidence from which a reasonable fact finder could infer that Buchanan's work environment at HNS was sexually hostile. *See Carrero v. New York City Housing Authority,* 890 F.2d 569, 580 (2d Cir.1989) (reiterating that to prevail on a sexual harassment claim, the conduct complained of must have been prompted by the victim's protected status).

Viewing all the evidence in a light most favorable to Buchanan, and based on the totality of the circumstances, the court finds that no reasonable jury could conclude that Buchanan was sexually harassed by any HNS employee. Accordingly, HNS is entitled to judgment as a matter of law on Buchanan's sexual harassment claim.

VI. State Law Claims

*9 Buchanan also brings numerous state law claims against HNS. Because the claims against HNS upon which federal question jurisdiction was based have been dismissed, the court must determine whether it is appropriate to exercise supplemental jurisdiction over Buchanan's state law claim.

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3) (West 1993). "In deciding whether to exercise pendent jurisdiction, the district court must weigh the value of judicial economy, convenience, fairness, and comity in light of the facts of the case and the stage of the litigation." *Larkin v. Town of West Hartford,* 891 F.Sup. 719, 731 (D.Conn.1995) (citation and internal quotation marks omitted), *aff'd,* 101 F.3d 109 (2d Cir.1996). After careful consideration of these factors, the court declines to exercise supplemental

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 435546  
(Cite as: 2000 WL 435546, *9 (D.Conn.))

Page 7

jurisdiction over the remaining state law claims.

CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment [doc. # 28] is GRANTED. The Clerk is directed to enter judgment for the defendant and CLOSE this case.

SO ORDERED this 9th day of March, 2000 at Bridgeport, Connecticut.

2000 WL 435546, 2000 WL 435546 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works