

211 F.3d 1269 (Table)
**Unpublished Disposition**

Page 26

**(Cite as: 211 F.3d 1269, 2000 WL 420685 (6th Cir.(Tenn.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Alice C. HIGDON, Plaintiff-Appellant,

v.

STORZ INSTRUMENT COMPANY, Defendant-Appellee.

No. 99-5138.

April 12, 2000.

On Appeal from the United States District Court for the Western District of Tennessee.

Before NELSON, COLE, and CLAY, Circuit Judges.

OPINION

PER CURIAM.

**\*\*1** Plaintiff-Appellant Alice Higdon appeals the district court's order granting summary judgment to Defendant-Appellee Storz Instrument Co. ("Storz") on her Title VII discrimination claim. On appeal, Higdon argues that the district court erred by failing to find that she put forth sufficient direct evidence of discrimination by Storz to escape summary judgment. For the following reasons, we AFFIRM the judgment of the district court.

I.

Storz, a manufacturer and distributor of surgical equipment, pharmaceuticals, and other medical devices, terminated Higdon's employment as a Surgical Product Representative ("SPR") for its "mideast region" on December 31, 1995. Higdon claims she was fired because she is a woman; Storz claims it terminated Higdon as part of a reduction in force due to a company reorganization. After terminating Higdon's position, the company essentially resurrected it about a year later and hired a male to fill it.

After filing a complaint with the Equal Employment

Opportunity Commission (EEOC) and receiving her "right-to-sue" letter, Higdon filed suit in June 1997. [FN1] In September 1998, the district court granted Storz's motion for summary judgment on the Title VII claim. In October 1998, Higdon moved that the court reconsider its order granting summary judgment, arguing that her response to Storz's summary judgment motion had "contained direct evidence of discriminatory animus which precludes a motion for summary judgment on her Title VII claim." The court denied Higdon's motion, finding that Higdon failed to present any new arguments. Higdon filed a timely notice of appeal.

FN1. In her complaint, Higdon alleged state breach of contract and conversion claims along with her Title VII claim. A jury found for Storz on the state claims. Higdon pursues only the Title VII claim on appeal.

II.

We review de novo the district court's grant of summary judgment. *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the district court must view the factual evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The non-moving party may not rest on its pleadings, but rather must put forward evidence from which a rational trier of fact could find in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

III.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discharg[ing] any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff bears the initial burden of establishing a prima facie case of discrimination by the defendant. *See Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). The plaintiff may establish a prima facie case of discrimination by putting forth either direct evidence of the defendant's intentional discrimination, or circumstantial evidence pursuant to the familiar framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Talley,* 61 F.3d at

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

211 F.3d 1269 (Table)
(Cite as: 211 F.3d 1269, 2000 WL 420685, **1 (6th Cir.(Tenn.)))

1246. Once the plaintiff has established a prima facie case of discrimination, a presumption that the defendant unlawfully discriminated against the plaintiff arises, and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action taken against the plaintiff. *Id.* If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to show that the discrimination was a determinative factor in her termination. *Id.*

**2 Applying the foregoing law, the district court found that Higdon failed to put forth any direct evidence of discrimination, but that she did present a prima facie case of discrimination by virtue of the circumstantial evidence she set forth. [FN2] Nonetheless, the court found that Storz articulated a legitimate, nondiscriminatory reason for Higdon's termination--corporate restructuring--and that Higdon was unable to prove by a preponderance of the evidence that this was a pretext for discrimination. *See Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

> FN2. Higdon does not argue the circumstantial evidence issue on appeal, and we need not address it here.

On appeal, Higdon argues that she presented direct evidence of Storz's discrimination to the district court, and that the district court erred by treating her case under the *McDonnell-Douglas* framework for evaluating circumstantial evidence. Higdon points to two incidents that she characterizes as direct evidence of Storz's discriminatory motivation to terminate her employment. In the first incident, Higdon alleges that her immediate supervisor, Dan Deller, "cut his eyes" in a manner to suggest that he would not hire any women. In a conversation with Deller and Chip Deason, another Storz employee, that took place about a year before Higdon was terminated, Higdon asked Deller about the interviewing he was doing to fill a sales position unrelated to Higdon's. Higdon recalled the conversation as follows:

> [Deller] said, "Well, I've been interviewing this girl." And Chip Deason said, "I thought you said you weren't going to--" and then [Deller] cut his eyes over at him. And, of course, my inference, finishing that sentence, would be "hire another woman." [FN3]

> FN3. Deller went on to hire a woman for the position to which his eye movement allegedly referred.

In the second incident, Mike Huez, Storz's Area Manager for the Eastern United States and Deller's supervisor, allegedly made the following statement at an all-male meeting of sales representatives from the company's mideast region: "wow, this is like a testosterone rush, it's almost like a boy's club, you don't really have to watch what you say and I like that." Huez made the statement within a month after Higdon was terminated.

We find that the Deller eye movement does not constitute direct evidence of discrimination. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999); *see also Norbuta v. Loctite Corp.,* No. 98-3013, 1999 WL 357780, at **1 (6th Cir. May 20, 1999) (unpublished) (citation omitted) ("[D]irect evidence proves the existence of a fact without any inferences or presumptions.... [The plaintiff must] present ... evidence which would allow us to find intentional discrimination on the part of [the defendant] without making inferences."). We are unable to find, without making inferences, that either Deller's eye movement or Deason's comment shows that Higdon's sex was a motivating factor in Storz's decision to fire her. As Storz points out, the speaker's unfinished comment, "I thought you said you weren't going to--," could have been leading to any number of things; to 'fill in the blank,' we would have to infer that Deason was speaking about female job candidates, that Deason accurately reported Deller's animus toward women, and that Deller's feeling toward female job candidates inspired him to fire Higdon months later. The need for such inferences precludes consideration of the incident as direct evidence. [FN4]

> FN4. In addition, we note that the inferences required to conclude that Deller was intentionally discriminating against female job candidates are cast into serious doubt by the fact that Deller went on to hire a woman to fill the sales position to which the eye movement allegedly referred.

**3 Although the Huez "boys' club" comment is a closer call, we find that it does not constitute direct evidence of discrimination, either. It is not clear that Huez's avowed satisfaction with a room occupied exclusively by men evidences a motivation to fire female subordinates. Further, the comment is isolated. As we recently held, an "isolated and ambiguous comment ... does not establish direct evidence of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

211 F.3d 1269 (Table)
(Cite as: 211 F.3d 1269, 2000 WL 420685, **3 (6th Cir.(Tenn.)))

discrimination." *Hopkins v. Electronic Data Sys. Corp ., * 196 F.3d 655, 661 (6th Cir.1999) (listing cases supporting same proposition). Thus, Higdon has failed to present direct evidence of discrimination. [FN5] Because Higdon has failed to present "evidence on which the jury could reasonably find for the plaintiff," *Talley,* 61 F.3d at 1245 (quoting *Liberty Lobby,* 477 U.S. at 252), summary judgment for Storz was proper.

FN5. Because Higdon's further arguments on appeal derive from her claim that she

presented direct evidence to the trial court, we need not address them here.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

211 F.3d 1269 (Table), 2000 WL 420685 (6th Cir.(Tenn.)) Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works