To highlight defendant's pretextual reason for plaintiff's termination, defendant admits that the sole document it relied upon to terminate plaintiff does not even contain the data of the type it claimed it used in forming its conclusion of "poor sales." (Shannon Depo. P39 L1–P40 L1, P49 L12–P51 L25, P56 L10, P57 L5–P62 L23 (App.Ex. E).) Stated otherwise, when defendant was confronted with the fact the sales figures on which it claims to have relied were already known, defendant shifted to a claim that plaintiff's alleged lack of sales included "projections which [are] as important as actuals." (Shannon Depo. P39 L1–P40 L1, P49 L12–P51 L25, P56 L10, P57 L5–P62 L23 (App.Ex. E).) Incredibly, however, the document defendant admits it solely and exclusively relied upon in making its determination to terminate plaintiff does not even contain "projections" within it. (Shannon P39 L1–P40 L1, P49 L12–P51 L25, P56 L10, P57 L5–P62 L23 (App.Ex. E).) No documents containing any such "projections" have been produced in this litigation.

Moreover, implicit within defendant's pretextual reason for plaintiff's termination is its disingenuous indication that it was its poor financial condition arising out of alleged poor sales revenues which necessitated plaintiff's termination. Incredibly, however, in the same time frame as plaintiff's termination, defendant proceeded to acquire: (1) assets of University Business, a competing magazine which was brought in to merge with Matrix for a price of $350,000, (2) Darren Sikorsky, a sales manager paid approximately $60,000 per year plus additional commission (Offer Letter to Darren Sikorsky dated December 28, 2001 ("Sikorsky Offer Letter") (App.Ex. N)), (3) Tom Terry, a sales manager paid $60,000 per year plus additional commission (Offer Letter to Tom Terry dated December 28, 2001 ("Terry Offer Letter") (App.Ex. O)); and (4) Dan Boucher, a Publisher who was compensated well over $100,000 in

13

base salary and guaranteed commissions (Offer Letter to Daniel Boucher dated February 21, 2002 ("Boucher Offer Letter") (App.Ex. P)). (Hanson Depo. P63 L20--P65 L25 (App.Ex. D).)

Finally, upon the filing of plaintiff's complaint with the CHRO, documents which defendant allegedly maintained plaintiff was merely a salesperson like all other salespersons in defendant's employment (Ziperman Depo. P26 L3--P28 L15 (App.Ex. B)), setting forth sales data and commissions analysis were supposedly "lost" (Ziperman Depo. P24 L14--P25 L11 (App.Ex. B).) Defendant claims under oath it realized it had "lost" the documents detailing the structure of plaintiff's compensation and what it now characterizes as a "commission plan" at the time plaintiff filed her CHRO complaint. (Ziperman Depo. P24 L14--P25 L16 (App.Ex. B); Hanson Depo. P26 L12--P27 L12, P28 L25--P29 L2, P30 L16-23 (App.Ex. D).) Even more incredible is defendant's admission that despite claiming these documents are now "lost," defendant admits it never even saw such documents at any time, prior to or subsequent to this litigation. (Ziperman Depo. P39 L5-10 (App.Ex. B); Hanson Depo P26 L12--P27 L12, P28 L25--P29 L23, P30 L16-23 (App.Ex. D)). Yet, all other true "salespersons" within its employment had folders containing these quarterly commission reports analyzing sales numbers, goals, and commission payments. (Ziperman Depo. P40 L8--P41 L4 (App.Ex. B); Hanson Depo. P26 L12--P27 L12, P28 L25--P29 L23, P30 L16-23 (App.Ex. D).)

Q.   I noticed in production there are other salespeople that have folders, commission folders, if you will.
A.   Um-hum.
Q.   I don't know what the term is.  But folders with the commission calculations and reconciliations in them; is that correct?
A.   Yes.
Q.   Is it the practice of Professional Media to maintain that type of folder for salespeople?
A.   Yes.
Q.   Did you maintain that type of folder for Ms. Blumenschine?

14

No.6075   P. 14          Dec. 9. 2003  3:02PM

A.    Yes, I thought.
Q.    No one can find it?
A.    We had a change of financial people and so the – somewhere in that change – I also kept copies on my computer, but I must have overwritten it because I don't have a copy.
Q.    You've done a computer search and can't find any documents?
A.    Right.
Q.    And you've done a physical search and you can't find the folder that may or may not have been kept of Ms. Blumenschine's commissions?
A.    Right.
Q.    Do you recall ever seeing a folder with Ms. Blumenschine's name on it containing commissions calculations for her?
A.    No. But I don't see them for other – unless there are commission payments, I don't see them.

(Ziperman Depo. P25 L20--P26 L25 (App Ex. B).)

By the time plaintiff was told on January 2, 2002 that her position was terminated, defendant had already made offers to the two young men who Mr. Shannon repeatedly referred to as "the boys." (Ziperman Depo. P69 L10-11 (App.Ex. B); Shannon Depo. P49 L12--P51 L25, P56 L10 (App.Ex. E).) As noted, these two young men had been contacted by defendant as early as November. (Ziperman P69 L22--P70 L2 (App.Ex. B).) When plaintiff insisted that she be included in management meetings, including hiring decision meetings, Mr. Shannon adamantly denied her from such inclusion. (Shannon Depo. P45 L2-9 (App.Ex. E).) Moreover, management's awareness of plaintiff's complaint of sex discrimination did not even merit any form of inquiry or investigation by defendant.  (Kinnaman Depo. P55 L4-25 (App.Ex. C).) Rather, in reaction to plaintiff's complaints of discrimination, defendant hired a total of three young men and terminated plaintiff.  (Ziperman Depo. P69 L10-11, P75 L5-7 (App.Ex. B); Shannon Depo. P55 L8-17 (App.Ex. E); Hanson Depo. P62 L20--P65 L25 (App.Ex. D).) Upon

15

her termination, plaintiff was never paid the compensation due her (i.e., $40,000)[9], representing the balance of her compensation from the date it was unilaterally reduced with promise to pay, until the date of her termination.

## ARGUMENT

### I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT.

A motion for summary judgment will be granted if the court determines that the case presents no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catret, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is the substantive law governing the case which identifies those facts which are material on motions for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether there is a genuine issue of material fact, the court is required to resolve ambiguities and draw factual inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255. However,

> In determining the appropriateness of summary judgment [in a discrimination case], the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole.

Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir.2000).

---

[9]This amount equals her non-recoverable draw of $60,000, less the monies paid to her for 4 of the 12 months, from January 2001 through April 2001 (i.e., 1/3 of $60,000), leaving $40,000 due through the remainder of the year.

15

As set forth below, even drawing all inferences in favor of the defendant, it is clear that summary judgment is appropriate on plaintiff's claims of retaliation (both Title VII and CFEPA), promissory estoppel and negligent misrepresentation.

## II. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIMS OF RETALIATION PURSUANT TO TITLE VII AND CFEPA.

### A. THERE ARE NO MATERIAL QUESTIONS OF FACT INVOLVING PLAINTIFF'S CLAIMS OF RETALIATION PURSUANT TO TITLE VII.

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) she was engaged in an activity protected by Title VII; (2) defendant was aware that the plaintiff engaged in the protected activity; (3) the plaintiff suffered a disadvantageous employment action; and (4) a causal relation exists between the protected activity and the employment action. Serrano v. Runyon, 1997 WL 718976 (D.Conn. August 22,1997) (App.Ex. Q); see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998); Pascal v. Storage Technology Corp. 152 F.Supp.2d 191 (D. Conn. 2001).

#### 1. Plaintiff Was Engaged In Protected Activity.

In order for plaintiff to establish the first element, that she was engaged in a protected activity, she need only show that she was acting under a good faith belief that the activity was covered by the statute. Cosgrove v. Sears, Roebuck and Co., 9 F.3d 1033, 1040 (2d Cir. 1993) (citing Summer v United States Postal Service, 899 F.2d 203, 209 (2d. Cir. 1990). While the protected activity usually takes the form of filing a formal complaint or a lawsuit, making an internal complaint regarding sexual discrimination is also covered by the statute. Id. at 1040.

Plaintiff made repeated internal complaints and defendant admits that it registered her protests as complaints of discrimination. (Shannon Depo. P49 L12--P51 L2 (App.Ex. K) ;

17

No.6075   P. 18

Dec. 9. 2003  3:04PM

Kinnaman Depo. P55 L4-25 (App.Ex. C).) Accordingly, defendant's own assertions establish that plaintiff has satisfied the first element necessary to support her claim of retaliation and there are no material questions of fact.

    **2.**    *Defendant Knew Or Should Have Known That Plaintiff Was Engaged In Protected Activity.*

As set forth above, defendant's own admissions establish that it was aware that plaintiff was in fact complaining of discriminatory conduct. Indeed, Mr. Shannon's deposition testimony reveals that he viewed plaintiff's assertions that the company was being run as a "boys' club" as a complaint of discrimination, but yet he gave it "no weight." (Shannon Depo. P49 L12–P51 L2 (App.Ex. K).) If defendant did not realize that making a complaint of discrimination is protected activity, it certainly should have known. Kotcher v. Rosa And Sullivan Appliance Center, 957 F.2d 59 (2nd Cir. 1992).

Accordingly, there are no genuine issues of fact as to whether defendant knew or should have known that plaintiff was engaged in protected activity.

    **3.**    *Defendant's Retaliatory Conduct Affected Plaintiff's Employment.*

The third element of a retaliation claim is satisfied when plaintiff shows that defendant's conduct "affected terms, privileges, duration, or conditions of employment." Dortz v. City of New York, 904 F.Supp. 127, 155, 156 (S.D.N.Y. 1995) (quoting Vergara v. Bensten, 868 F.Supp 581, 591 (S.D.N.Y. 1994)). "While the result is often the employee's discharge, less severe events can also be sufficient." Id.

Upon becoming plaintiff's supervisor, Mr. Shannon failed to recognize plaintiff as an employee with managerial duties and responsibilities, despite the fact that she had recently been

18

promoted to an Associate Publisher. In fact, plaintiff became acutely aware of Mr. Shannon's sexist and ageist attitude, as he refused to include her in any of the managerial duties of her position. Indeed, Mr. Shannon admits that despite plaintiff's title, he viewed her as merely a salesperson, like any other. (Shannon Depo. P62 L18-23 (App.Ex. K).)

Moreover, despite becoming aware that plaintiff had made internal complaints of discrimination, Mr. Shannon implemented a plan he had to replace plaintiff with two young men, he referred to as "the boys." (Shannon Depo. P55 L18-P56 L18 (App.Ex. K).) Although as Associate Publisher, plaintiff should have been consulted concerning any new hires, Mr. Shannon refused to include plaintiff in the hiring decision or process and in fact hired the two young men, ages 27 and 31, without any input from plaintiff. At the time he hired these young men, Mr. Shannon had already decided that he was going to terminate plaintiff (Shannon Depo. P44 L8-17 (App.Ex. K).) Indeed, plaintiff was terminated on January 2, 2002. Accordingly, while plaintiff was ultimately terminated as a result of defendant's retaliatory conduct, the retaliation also included the blatant disregard for her role as a manager. Mr. Shannon was aware of plaintiff's complaints at the time he refused to recognize her as an Associate Publisher and at the time he decided she should be terminated.

Accordingly, there are no material questions of fact as to whether plaintiff's employment was detrimentally affected by defendant's conduct, as defendants own admissions reveal that Mr. Shannon refused to recognize plaintiff's managerial responsibilities and ultimately terminated her.

**4.    *Plaintiff's Protected Activity Is Casually Related To Her Adverse Treatment.***

The fourth and final element of a retaliation claim is satisfied "by showing that the protected activity was closely followed by adverse treatment." Dorz v. City of New York, 904 F.Supp. 127, 156, 157 (S.D.N.Y. 1995). Indeed, a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713 (2d Cir. 2002) (causal relationship found where adverse employment actions took place within a few months of complaints of discrimination); Cifra v. Gen. Electric Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and allegedly adverse action sufficient to establish causation).

In the case at bar, within six weeks of complaining of discrimination, plaintiff was terminated by her newly-appointed supervisor, Dan Shannon. This was despite the fact that plaintiff had recently been promoted by defendant's general manager. Defendant contends that a legitimate non-discriminatory reason for this termination was due to plaintiff's lack of sales. However, defendant knew of plaintiff's sales performance well before she was promoted to Associate Publisher and told her she had a "bright future" with defendant.

More importantly, at the time of her termination, plaintiff was no longer a salesperson, but an Associate Publisher. Accordingly, plaintiff did not have clear and delineated sales targets, goals and commission reports reflecting the results of any sales performed, as did the salespeople. Simply stated, plaintiff was not assigned goals nor did she even have commission

20

reports reflecting the product of her sales effort because she was not a salesperson but a manager as her duties and title illustrate. Clearly the reason put forth by defendant for plaintiff's termination is a pretext.

Accordingly, there are no material issues of fact to be determined by a fact finder in connection with the fourth and final element of a retaliation claim. Defendants have produced no evidence to support its purported reason for terminating plaintiff and the close temporal proximity is sufficient to satisfy the element of causal relation.

In view of the foregoing, plaintiff has established her claim of retaliation pursuant to Title VII and even taking the facts in the light most favorable to the defendant, there are no material questions of fact to be determine by a fact finder and summary judgment on this claim is appropriate.

B.     *THERE ARE NO MATERIAL QUESTIONS OF FACT INVOLVING PLAINTIFF'S CLAIMS OF RETALIATION PURSUANT TO CFEPA.*

Plaintiff also brings a retaliation claim under the Connecticut Fair Employment Practices Act. Connecticut General Statutes §46a-60(a)(4) makes it a discriminatory employment practice:

> For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice ...

We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both. Craine v. Trinity College, 259 Conn. 625 (2002). Accordingly, as set forth above, plaintiff has satisfied the elements necessary to establish a claim of retaliation under Title VII and CFEPA and there are no material issues of fact to be determined. Accordingly, summary judgment is appropriate on plaintiff's claims of retaliation pursuant to Title VII and CFEPA.

21

No.6075   P. 22

### III. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN CONNECTION WITH PLAINTIFF'S CLAIM THAT DEFENDANT HAS VIOLATED § 31-72.

Plaintiff's ninth count alleges that defendant violated Connecticut wage provisions when it unilaterally reduced her agreed upon compensation and failed to retroactively reinstate her full salary, despite its promises to do so.

Connecticut General Statutes § 31-72 provides:

> "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k ... such employee ... may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorneys fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action."

The compensation at issue is clearly considered wages as the Statute defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission *or other basis of calculation* ..." C.G.S. §31-71a(3) (emphasis added). Moreover, defendant had an obligation to pay plaintiff her wages in full not later than the business day next succeeding the date of such discharge. C.G.S. §31-71c.

The requirements for establishing a claim pursuant to C.G.S. §31-72 are not burdensome. In fact, a party seeking damages for violation of C.G.S. §31-72 must only afford a basis for a reasonable estimate by a trier, court or jury, of the amount of that party's loss. Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 828 A.2d 64 (2003); see also Mahoney v. Augenstern, 1998 WL 764465 (Conn.Super 1998) (plaintiff's motion for summary judgment on a §51-72 count was granted where "all that exists to oppose summary judgment is the defendant's legal argument and the unsworn assertions of the defendant and his counsel that he does not owe

22

Dec. 9. 2003  3:05PM

$2,559.20 in back wages to the plaintiff. These are not sufficient to beat summary judgment.") (App.Ex. R).

In the case at bar, plaintiff was promised compensation at the rate of $140,000 per year. (Defendant's Answer ¶10 (App.Ex. D).) This compensation was split between her salary of $80,000 plus a $60,000 nonrecoverable draw against commission. (Defendant's Answer ¶10 (App.Ex. D).) Plaintiff was in fact paid pursuant to this promise for over a year. (Defendant's Answer ¶10 (App.Ex. D).) Then, in May 2001, defendant unilaterally withheld the non-recoverable portion of plaintiff's compensation. (Ziperman Depo. P49 L5--P53 L17 (App.Ex. B).) Plaintiff, of course, did not agree with the unilateral decision to have her pay reduced, and raised her concerns repeatedly with defendant. (Ziperman Depo. P49 L5--P53 L17 (App.Ex. B).) Indeed, plaintiff was repeatedly assured by defendant that her salary would be reinstated retroactively in some fashion. (Ziperman Depo. P49 L5--P53 L17 (App.Ex. B).)[10]

This never occurred, despite continuous inquires by plaintiff from May 2001 to the date of her termination a few months later. (Blumenshine Depo. P60 L21--P61 L1 (App.Ex. F); Ziperman Depo. P49 L5--P53 L17 (App.Ex. B).) There are no issues of fact in connection with whether defendant's violated §31-72: Defendant owed plaintiff back wages, promised to reinstate her full salary retroactively and failed to do so.

There are also no material issues of fact in connection with the amount of wages owed to plaintiff. Defendant admits to suspending plaintiff's non-recoverable draw as of May 1, 2001. (Ziperman Depo. P49 L5--P53 L17 (App.Ex. B).) The amount in non-recoverable draw plaintiff

---

[10]Even if defendant argues that plaintiff agreed to the suspension of the non-recoverable draw upon the promise of being reimbursed retroactively, §31-72 specifically provides that "any agreement between [an employee] and his employer for payment of wages other than specified in said sections shall be no defense to [a wage] action."

23

should have received from May 2001 through December 2001 is $40,000. Accordingly, there are no questions of fact to be determined in this regard.

Moreover, plaintiff is entitled to payment of double the amounts due, plus costs and attorney's fees. As noted by the Connecticut Supreme Court:

> Section 31-72 provides for a discretionary award of double damages to employees who are successful in actions against their employers for wages due. Although the statutory language does not require evidence of bad faith, arbitrariness or unreasonableness, cases interpreting and applying this statute have required such evidence. See *Sansone v. Clifford*, 219 Conn. 217, 229, 592 A.2d 933 (1991) ("[i]n an action for wages brought pursuant to General Statutes §31-72, awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness" [internal quotation marks omitted]).

Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 470 (1997) (footnotes omitted). This burden of demonstrating "bad faith, arbitrariness or unreasonableness" is not a heavy one, however, and the making of assurances of payment in exchange for work followed by a denial of payment is sufficient. For example, the Supreme Court in Butler, in reviewing a double damages award by the trial court, stated:

> The trial court's memorandum of decision is unclear as to the basis of the double damages award. On the basis of our review of the record, however, we conclude that there was sufficient evidence of bad faith to support the award of double damages. The trial court found that Skidmore was expected to work overtime and did so. Skidmore testified that the defendant made representations to her both before she was hired and during her employment that she would be compensated for her overtime hours. Skidmore provided documentation of her hours to Susan Meyers, who, after discussing it with the defendant, told her that she was not going to be paid for overtime. The defendant's requests of Skidmore to work additional hours, his assurances that she would be paid, coupled with his subsequent denial of payment support the trial court's decision to award double damages.

Id. (footnote omitted).

24

Here, defendant clearly made numerous payment representations to plaintiff to induce her to commence and continue to work for defendant. Indeed, defendant admits that it promised to retroactively reinstate plaintiff's wages in some form and that this was in fact never done. (Zipperman Depo. P49 L5–P53 L17 (App.Ex. B).) These assurances were relied upon by plaintiff with defendant's knowledge. This clearly provides a sufficient basis for an award of double damages and fees under §31-72.

Accordingly, summary judgment is appropriate on plaintiff's claim pursuant to Connecticut General Statute §31-72, and the Court should award plaintiff double the amount owed, for a total of $80,000 plus attorneys' fees and costs.[11]

## IV. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIM OF PROMISSORY ESTOPPEL

Plaintiff's seventh count sounds in promissory estoppel. An employee may maintain a claim for damages based upon promissory estoppel where a promise was made by an employer that induced the employee's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise, and the promisor breaches that promise. Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 205 (1985); D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987).

Connecticut has adopted the Restatement (Second) of Contracts with regard to promissory estoppel. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987). Restatement §90 provides:

---

[11]Should the court grant plaintiff's motion for summary judgment on this count, plaintiff will provide the Court with an affidavit from counsel setting forth the amount of attorneys' fees and costs expended to date.

25