**EXHIBIT S**

Not Reported in A.2d                                                      Page 1
(Cite as: 1997 WL 255093 (Conn.Super.))

▷
Only the Westlaw citation is currently available.


UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.


Superior Court of Connecticut.

Denis JEWETT
v.
GENERAL DYNAMICS CORP. et al.

No. 530943.

May 7, 1997.


MEMORANDUM OF DECISION

BOOTH.

*1 The defendants, General Dynamics Corporation (GD), Walter Lord, John Fogarty and Robert Nardone bring this motion for summary judgment, which they filed on September 4, 1996, on the grounds that the plaintiff, Denis Jewett, fails to raise any issues of material fact in his July 21, 1994 twelve count, 106 page amended complaint, and that GD is entitled to judgment as a matter of law.

In the operative complaint, the plaintiff alleges that he has been employed at GD's Electric Boat Division for over twenty-two years. In July, 1988, the plaintiff was promoted to Director of Nuclear Quality Control (NQC), the senior managerial position in a separate quality assurance department responsible for overseeing a nuclear reactor plant and related nuclear systems. On June 4, 1992, the plaintiff was relieved of his duties as Director NQC and reassigned to a nonsupervisory principal engineer position at the same salary, but three salary grades below the director position. On June 26, 1994, the plaintiff was transferred to the Radiological Services Department (RADCON) within the Quality division, at the same position, salary and grade.

The plaintiff asserts claims against GD and the three individual defendants, Walter Lord (plaintiff's supervisor and Vice President of Quality), John Fogarty (Vice President of Human Resources), and Robert Nardone (Manager of Salary Administration).

The defendant's motion for summary judgment is accompanied by a memorandum of law and the plaintiff filed a memorandum in opposition on December 20, 1996.

DISCUSSION

"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                Page 2
(Cite as: 1997 WL 255093 (Conn.Super.))

judgment as a matter of law." (Internal quotation marks omitted.) *Doty v. Mucci*, 238 Conn. 800, 805, 679 A.2d 945 (1996).

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party "... The test is whether a party would be entitled to a directed verdict on the same facts ..." (Citations omitted; internal quotation marks omitted.) *Bank of Boston v. Scott Real Estate*, 40 Conn.App. 616, 620, 673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller v. United Technologies Corp.*, 233 Conn. 732, 751, 660 A.2d 810 (1995).

Connecticut courts have permitted use of the motion for summary judgment to contest the legal sufficiency of the complaint, even though legal sufficiency is more appropriately tested by a motion to strike See, e.g., *Boucher Agency, Inc. v. Zimmer*, 160 Conn. 404, 409, 279 A.2d 540 (1971) (a motion for summary judgment may be used to test the legal sufficiency of the pleadings); *Burke v. Avitabile*, 32 Conn.App. 765, 769, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993) (where court found that, while a motion to strike is the proper method to challenge the legal sufficiency of a complaint, it is not the burden of the defendant to attempt to correct a deficient complaint by motion). Thus, as in the present case, "failure by the defendants to [move to strike] any portion of the amended complaint does not prevent them from claiming that the [plaintiff] [has] no cause of action and that a judgment in their favor [is] warranted. *Brill v. Ulrey*, 159 Conn. 371, 374, 269 A.2d 312 (1970)." *Id.*, citing *Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 535 n. 5, 546 A.2d 216 (1988).

### Count One--Wrongful Demotion

*2 The plaintiff alleges that he was wrongfully demoted in violation of an important public policy and that this demotion from Director of NQC to a principal engineer position injured his professional reputation and caused him to suffer economic loss. In moving for summary judgment, the defendants cite Connecticut cases establishing the standards for *wrongful discharge*. See *Morris v. Hartford Courant*, 200 Conn. 676, 513 A.2d 66 (1986); *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 472, 427 A.2d 385 (1980); *Somers v. Cooley Chevrolet Co.*, 146 Conn. 627, 629, 153 A.2d 426 (1959); *Battista v. United Illuminating Co.*, 10 Conn.App. 486, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). The defendants ask the court to refuse to extend the principles underlying Connecticut law on *wrongful discharge* to a claim unrecognized in Connecticut for *wrongful demotion*.

The plaintiff cites no Connecticut case law in support of his claim for "wrongful demotion," nor could the court find any. The court is aware that the cause of action has been recognized in California, *Scott v. Pacific Gas and Electric*, 904 P.2 834 (Cal.1995). However, because the plaintiff's claim for wrongful demotion in count one is not supported by existing Connecticut law, the court is not prepared to recognize a new cause of action. The defendant's motion for summary judgment is granted.

### Count Two--Violation of Constitutional and Statutory Protections

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                                      Page 3
(Cite as: 1997 WL 255093 (Conn.Super.))

The plaintiff claims that exercise of his free speech rights led GD to discipline him by removing him from his position as Director of NQC, demoting him to principal engineer and then transferring him to a different section within the Quality division. The plaintiff claims that these actions violate his rights guaranteed by the first amendment to the United States constitution, the constitution of Connecticut, article first § 4 and General Statutes § 31-51q, which provides, in relevant part:

Any employer ... who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge ...

As a threshold matter, any constitutional claim asserted by the plaintiff must fail because "[a]bsent state action, the plaintiff simply cannot pursue a claim under the First Amendment to the United States Constitution." *Urashka v. Griffin Hosp.,* 841 F.Supp. 468, 473 (D.Conn.1994), citing *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) (a privately owned retail shopping center is not subject to the First Amendment, which safeguards the right of free speech by limitations on *state* action); *Musso v. Hourigan,* 836 F.2d 736, 742 (2d Cir.1988) (the First Amendment prohibits *state action* that regulates speech on the basis of content); *Johnson v. Carpenter Technology Corp.,* 723 F.Supp. 180, 185-86 (D.Conn.1989) (citing *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) where Court found that acts of private individuals are beyond the scope of state action and are thus beyond the protection of the federal constitution unless the state has exercised coercive power, making the act that of the *state* ).

*3 Furthermore, a claim under article first of the Connecticut constitution cannot be sustained "without a showing of state action." See *Cologne v. Westfarms Associates,* 192 Conn. 48, 66, 469 A.2d 1201 (1984) (following *Lloyd Corp. v. Tanner, supra,* and rejecting claim that sections 4 and 14 of Article First of the Connecticut Constitution apply to privately owned shopping mall).

In addition, the defendants correctly argue that an employee's statements are not constitutionally protected for purposes of General Statutes § 31-51q when those statements relate exclusively to matters concerning the employee's personal interests, as opposed to matters of public concern. See *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

However, in Count Two, the plaintiff also alleges that the protected speech in which he engaged involved discussions with his supervisor, Lord, about complaints made to Lord by other senior managerial employees. When Lord did not support the plaintiff's efforts to strictly enforce GD's safety, construction, and quality assurance standards concerning the nuclear reactor plant and related systems on the submarines, the plaintiff went to the next highest level of management, the general manager of GD's Electric Boat division.

The plaintiff does not allege that he went outside of GD's Electric Boat division seeking to inform the public that GD was not discharging its governmental responsibilities, nor did the plaintiff "seek to bring to light actual or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                     Page 4
(Cite as: 1997 WL 255093 (Conn.Super.))

potential wrongdoing or breach of public trust" on the part of the defendants. *Id.*, 148. Communications which are not of public concern do "not attain that status because [the communication's] subject matter could, in different circumstances, have been the topic of communication to the public that might be of general interest." *Id.*, 149 n. 8. See also *Epworth v. Journal Register Co.*, Superior Court, judicial district of Litchfield, Docket No. 065371 (November 1, 1994, Pickett, J.) (12 CONN. L. RPTR. 585); *Daley v. Aetna Life & Casualty*, Superior Court, judicial district of Hartford- New Britain at Hartford, Docket No. 533693 (August 3, 1994, Sheldon, J.); *Vince v. Worrell*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 319386 (July 14, 1992, Schaller, J.).

The Connecticut Supreme Court recently found that General Statutes § 31- 51q "provides a cause of action for damages for an employee who has been disciplined or discharged on account of the exercise by such employee of various constitutional rights including the freedom of speech"; *D'Angelo v. McGoldrick*, 239 Conn. 356, 357, 685 A.2d 319 (1996), however, the plaintiff in the present case has failed to adequately allege the type of speech which is constitutionally protected. The legislative history quoted in *Epworth, supra,* at fn. 4, explains the legislative intent in passing 31-51q. Representative Tulisano, a sponsor of the bill, states:

*4 This is clear that they do have in fact a cause of action against an employer, and that is exercise of rights which *have no way to do with job performance, or on the job,* or interfering with their employment. [Emphasis added.]

The plaintiff here complained only within the company, on the job.

He does not allege speech to the Navy or outside the company. Thus, as a matter of law, the plaintiff fails to state a cause of action in count two and summary judgment as to this count is granted.

Count Three--Breach of Contract

The plaintiff alleges that the defendants breached an express/implied contract of employment with the plaintiff, resulting from GD's personnel policies, rules, standards, procedures, customs and practices, whereby the plaintiff would receive regular performance reviews, that any deficiency in performance would be brought to his attention and time would be given for the plaintiff to correct any deficiencies before any disciplinary actions would be taken.

"Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14, 662 A.2d 89 (1995). In *Torosyan*, the Connecticut Supreme Court upheld the trial court's finding that, because of representations made to the plaintiff in his pre-employment interviews and in an employee manual given to the plaintiff on his first day of work, there was an implied contract between the parties that the plaintiff's employment could be *terminated* only for cause. *Id.*, 3, 662 A.2d 89.

The defendants argue that they did not, either by words or actions, undertake any form of actual contract commitment to the plaintiff not to demote him, citing in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                            Page 5
(Cite as: 1997 WL 255093 (Conn.Super.))

support of their position *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 211-12 n. 2, 520 A.2d 217 (1987) ("[a] contract implied in fact, like an express contract, depends on actual agreement); *Coelho v. Posi-Seal International, Inc.,* 208 Conn. 106, 544 A.2d 170 (1988) (employee has the burden of proving by a fair preponderance of the evidence that the employer had agreed either by words or action or by conduct to undertake some form of actual contract commitment to him).

Whether statements made in a policy manual constitute a binding employment contract which modifies an otherwise at will employment relationship is a question of fact for a jury. See *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 520 A.2d 208 (1987), overruled on other grounds, *Curry v. Burns,* 225 Conn. 782, 626 A.2d 719 (1993); *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra,* 202 Conn. 206, 520 A.2d 217. Compare *Reynolds v. Chrysler First Commercial Corp.,* 40 Conn.App. 725, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996) (where court held that, because plaintiff presented insufficient evidence that defendant impliedly contracted to implement its progressive disciplinary measures with the plaintiff in every situation where the plaintiff allegedly performed his job inadequately, trial court properly granted the defendants' motion for summary judgment).

*5 Accordingly, because this count raises genuine issues of material fact as to whether there was a contract between the parties regarding demotion and the plaintiff supplies evidence to support his contention that he received documents forming the basis for his contract claim, summary judgment is denied.

Count Four--Promissory Estoppel

The plaintiff alleges that the defendants made written and oral promises before and after they hired the plaintiff that before demotion or progressive discipline would be undertaken documentation of performance issues would occur and that any such demotion or discipline required "just cause." The plaintiff relied on these promises to his detriment, as the defendants reasonably could have anticipated, by continuing to work in his position because of GD's policies, thereby foregoing other employment opportunities. See *Hanover Ins. Co. v. Fireman's Fund Ins. Co.,* 217 Conn. 340, 351, 586 A.2d 567 (1991) ("essential elements of estoppel are that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury").

The defendants argue that this claim should fail because an express promise was never made to the plaintiff. "A fundamental element of promissory estoppel ... is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he has no reason to expect any reliance at all." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra,* 202 Conn. 213.

"In the absence of definitive contract language, however, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Finley v. Aetna Life & Casualty Co., supra,* 202 Conn. 199. The court, therefore, finds

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                           Page 6
(Cite as: 1997 WL 255093 (Conn.Super.))

that, in the present case, the plaintiff alleges facts in his complaint that raise the genuine issue of whether GD's employment manual, policies and rules equate to a promise upon which the plaintiff could have reasonably relied. Accordingly, summary judgment as to this count is denied.

### Count Five--Negligent Misrepresentation

The plaintiff claims that the representations made by GD prior to hire and during his career about performance evaluations and disciplinary procedures were false. The defendants claim that no one at GD's Electric Boat Division intentionally led the plaintiff to believe that he would only be demoted for just cause. Further, the defendants assert that the representations made in GD's employment manual are true and that the plaintiff, indeed, received employee evaluations.

*6 The plaintiff, however, argues that the defendants represented that, if his performance were deficient, he would be given oral and/or written notification regarding the deficiency and time to correct his performance *before* disciplinary action would be taken. The defendants claim that the plaintiff was removed as Director of NQC and placed in the position of principal engineer because of his poor performance. This "disciplinary action" occurred without the plaintiff being notified about the deficient performance and without time being given for the plaintiff to correct his performance. Thus, the defendants negligently misrepresented the procedure for evaluation and discipline.

"One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra,* 202 Conn. 218, quoting Restatement (Second) of Torts § 552 (1979).

The court finds that this count raises genuine issues of material fact in that it is unclear which representations were made and the manner in which those representations were made. Summary judgment, therefore, is denied as to this count.

### Count Six--Intentional Infliction of Emotional Distress

The plaintiff claims that the defendants' failure to follow mandatory personnel policies governing performance evaluations and discipline, removal from his position without cause and destruction of his professional career caused the plaintiff to suffer extreme emotional distress. The plaintiff argues that the defendants knowingly and maliciously failed to follow their disciplinary procedures in removing the plaintiff from his position as Director of NQC, constituting extreme and outrageous conduct, causing the plaintiff to suffer severe mental anguish and anxiety, emotional distress, humiliation and embarrassment.

The defendants argue that demotion does not constitute extreme and outrageous conduct as a matter of law. Further, the defendants argue that the plaintiff's alleged symptoms were not serious enough to merit medical treatment and, thus, not "severe" as a matter of law.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                                Page 7
(Cite as: 1997 WL 255093 (Conn.Super.))

"In order for the plaintiff to prevail in a case for liability under ... [a claim of intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan v. Ellis*, 200 Conn. 243, 353, 510 A.2d 1337 (1986). This tort requires the plaintiff to show that the defendants engaged in extreme and outrageous conduct. To meet this standard, the conduct must have "exceed[ed] *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." [Emphasis in the original.] *Id.*, 254 n. 5, 510 A.2d 1337, quoting W. Prosser & W. Keeton, Torts (5th Ed.1984), § 12, at 60.

*7 While Connecticut case law suggests that determining whether the defendants' conduct was extreme and outrageous is a question of fact; *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 62, 480 A.2d 610 (1986); *Brown v. Ellis,* 40 Conn.Supp. 165, 167-68, 484 A.2d 944 (1986); federal case law suggests that "[t]he issue of whether the defendants' conduct rises to [the level of extreme and outrageous] is a question to be determined by the court in the first instance." *Ziobro v. Connecticut Institute for the Blind,* 818 F.Supp. 497, 502 (D.Conn.1993).

This court cannot reconcile the appellate court decisions in *Murray* and *Brown* with the Federal District Court decision in *Ziobro*. It is clear that the *Ziobro* court was hearing a matter originally filed in a Connecticut state court and removed to federal court. The District Court intended to supply the Connecticut law on the tort of intentional infliction of emotional harm. *Ziobro* relies on an earlier federal case. *Kurtner v. Nidec-Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1989) to arrive at its conclusion that the issue of whether the conduct raises to the level of "extreme and outrageous" is to be decided by the court in the final instance.

This court chooses to follow the 1993 *Ziobro* reasoning. It is the court's opinion that the conduct alleged does not exceed "all bounds usually tolerated by decent society."

Because the court finds as a matter of law that the defendants' conduct was not "extreme and outrageous," the summary judgment is granted as to the sixth count.

Count Seven--Negligence as to the Defendant, Lord

The plaintiff alleges that the defendant, Lord, as the plaintiff's supervisor and an employee of GD, had a duty to comply with GD's personnel policies, rules, standards, procedures, customs and practices. Lord's duty arose from an express/implied employment contract between Lord and GD. Lord breached this duty by treating the plaintiff in a manner inconsistent with the customs, practices and policies uniformly followed at GD concerning evaluation of an employee's performance and removal from a position of employment based on allegedly unsatisfactory performance. As a direct and proximate result of Lord's breach of duty, the plaintiff was demoted to a nonsupervisory position, lost his eligibility for incentive compensation, his salary was capped (which, in turn, affects other fringe benefits), and he suffered emotional distress and injury to his name and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                Page 8
(Cite as: 1997 WL 255093 (Conn.Super.))

professional reputation.

　The defendants argue that the individual defendants were not a party to any express or implied contract of employment with GD, and supply the individual defendants' affidavits swearing to this fact. Therefore, a contract did not exist which imposed the duty alleged by the plaintiff. Further, the defendants argue that the plaintiff is estopped from claiming that Lord was negligent because the plaintiff did not complain about his supervisor's failure to perform evaluations, although he received merit increases without the evaluations.

　*8 "The existence of a duty is a question of law." Doe v. Cuomo, 43 Conn.Supp. 222, 234, 649 A.2d 266, 12 CONN. L. RPTR. 1 (1994). In the present case, the court must first determine whether Lord owed a duty to the plaintiff. "A duty may arise from statute, a contract, or circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm was likely to result from his act or failure to act." Id., 234-35, 649 A.2d 266, citing Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620 (1982). "Generally, in the absence of some rule of conduct specifically prescribed by legislation, the standard of due care is that of the ordinary prudent person under the circumstances." Burritt v. Plate, 40 Conn.Supp. 103, 106, 481 A.2d 425 (1983), citing Steinhaus v. Steinhaus, 145 Conn. 95, 139 A.2d 55 (1958).

　The court finds that Lord owed a duty to the plaintiff based on some type of contract between Lord and GD. Our Supreme Court recently noted that "all employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working ..." (Citations omitted; internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 13.

　The question, however, of the extent of Lord's duty to evaluate the plaintiff and provide him with notice before any disciplinary action was taken raises a genuine issue of material fact. "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Id., 15. Accordingly, summary judgment as to count seven is denied.

　Count Eight--Tortious Interference as to the Defendant, Lord

　The plaintiff alleges that the individual defendant, Lord, tortiously interfered with the plaintiff's contract of employment with GD. The defendants argue that any actions taken by Lord were taken within the scope of his employment as the Vice President of Quality for GD's Electric Boat Division and the plaintiff fails to submit evidence to prove that his demotion, failure to receive a copy of a Personnel Action form, failure to receive performance evaluations and progressive discipline were motivated by malice on Lord's part.

　Connecticut courts have "long recognized a cause of action for tortious interference with contract rights or other business relations." Blake v. Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983). The elements of tortious interference with a business relationship are "the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                          Page 9
(Cite as: 1997 WL 255093 (Conn.Super.))

interfere with it, and the consequent actual loss suffered by the plaintiff." *Hart, Nininger and Campbell Associates, Inc. v. Rogers,* 16 Conn.App. 619, 629, 548 A.2d 758 (1988).

*9 "It is well settled that in order to sustain a cause of action for tortious interference with contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive." *Arzonetti v. Bank of Boston Connecticut,* Superior Court, judicial district of Litchfield, Docket No. 057615, 9 CONN. L. RPTR. 372 (June 24, 1993, Dranginis, J.), citing *Robert S. Weiss Associates, Inc. v. Wiederlight, supra,* 208 Conn. 536. "A different rule, however, applies where tortious interference is alleged against someone who is directly or indirectly a party to the contract." *Conning Corp. v. Davenport Group,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 115140, 6 CONN. L. RPTR. 340 (April 30, 1992, Mottolese, J.). As an agent of the defendant corporation in the present case, Lord cannot be held liable for interfering with a contract between the plaintiff and GD. See *Urashka v. Griffin Hosp., supra,* 841 F.Supp. 475. "An agent, however, can be held liable for such interference or inducement if he did not act legitimately within the scope of duty but used the corporate power improperly for personal gain." *Murray v. Bridgeport Hospital, supra,* 40 Conn.Sup. 61.

In the present case, the plaintiff fails to allege Lord's use of corporate power improperly for personal gain so that the elements necessary to state a cause of action for tortious interference with the alleged contract with GD are lacking. Summary judgment as to this count, therefore, is granted.

### Count Nine--Negligence as to the Defendant, Nardone

The plaintiff alleges that Nardone's duty resulted from a contract with GD whereby, in his capacity as Manager of Salary Administration at GD's Electric Boat Division, Nardone was to determine whether the defendant, Lord, discharged Lord's duty to the plaintiff and GD.

The discussion under Count Seven of this opinion applies to this count, as well, and summary judgment is denied.

### Count Ten--Negligence as to the Defendant, Fogarty

The plaintiff alleges that the individual defendant, Fogarty, in his capacity as Vice President of Human Resources at GD's Electric Boat Division, owed the plaintiff a duty to monitor the other individual defendants' compliance with GD's personnel policies, rules, standards, procedures, customs and practices. Fogarty's duty also derives from a contract between Fogarty and GD. The discussion under count seven applies to this count as well and summary judgment is denied.

### DEFAMATION

The plaintiff alleges defamation against the defendants in Counts One through Five and Counts Seven through Ten. The basis of the plaintiff's claims of defamation is that his demotion was based on the defendants' characterization of his performance as "poor." The defendants assert that any statements made in performance evaluations or notes regarding the plaintiff's demotion are protected by qualified or absolute privilege as a matter of law and, therefore, the plaintiff fails to state a claim for defamation. "To find that the defendants

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                 Page 10
(Cite as: 1997 WL 255093 (Conn.Super.))

were liable for defamation ... the [court is] required to find that the defendants published false statements that harmed the plaintiff, and that the defendants were not privileged to do so." (Internal quotation marks omitted.) *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* supra, 234 Conn. 27.

*10 Practice Book § 386 authorizes the "severance of claims and partial summary judgments[.]" *DeLaurentis v. New Haven,* 220 Conn. 225, 255 n. 15, 597 A.2d 807 (1991). There is a split in the Connecticut Superior Courts on the issue of whether summary judgment may be granted as to one or more, but not all, of the claims made in a single count. This is what defendants are attempting to do in the present case. See, e.g., *Ambrosino v. Superior Plating Co.,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 309952 (September 9, 1996, Maiocco, J.); *Niper v. Johnston,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 256309 (February 28, 1992, Lewis, J.) (6 CONN. L. RPTR. 4); *Cocca v. Pocesta,* Superior Court, judicial district of Waterbury, Docket No. 086470 (July 13, 1990, Barnett, J.) (2 CONN. L. RPTR. 69) (courts entered summary judgment as to paragraph in operative complaint). But see *Tracy v. Charisma Aviation, Ltd.,* Superior Court, judicial district of New Haven at New Haven, Docket No. 270725 (January 20, 1993, Hadden, J.) (8 CONN. L. RPTR. 282, 8 CSCR 283); *Dunham v. Cigna Insurance Co.,* Superior Court, judicial district of Hartford- New Britain at Hartford, Docket No. 334030 (April 5, 1991, Hennessey, J.) (3 CONN. L. RPTR. 819, 6 CSCR 437); *Schofield v. Bic Corporation,* Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 021244 (January 31, 1991, Fuller, J.) (3 CONN. L. RPTR. 229) (courts found that Connecticut rules of practice do not allow a defendant to obtain a partial summary judgment against a plaintiff to eliminate some, but not all, of the allegations of a single count of the complaint).

In the present case, the court finds that those Superior Court cases which do not allow granting of summary judgment to eliminate some, but not all, of the allegations of a single count of a complaint more persuasive. Further, because the court recognizes that the defendants' motion operates as a motion to strike, which may address individual counts of the pleading, but cannot be used to attack a single paragraph; *Fromkin v. Brown,* Superior Court, judicial district of New Haven at New Haven, Docket No. 334095 (March 3, 1994, Hartmere, J.) (9 CSCR 329); *Cloutier v. Stop & Shop Cos.,* Superior Court, judicial district of Middlesex, Docket No. 68409 (September 7, 1993, Higgins, J.) (8 CSCR 1000); the court will not address the defendants' motion as to paragraphs within a count of the operative complaint.

The defendants' statements complained of in Counts One through Five and Counts Seven through Ten in the plaintiff's complaint, however, implicate the defendants' interest in efficiently running its business, which is worthy of protection. See *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* supra, 234 Conn. 29 (communications between managers regarding the review of an employee's job performance are protected by a qualified privilege); *Kelley v. Bonney,* 221 Conn. 549, 565-67, 606 A.2d 693 (1992) (if proceedings before tribunal performing judicial function are "quasi-judicial," absolute privilege in defamation action applies and damages cannot be recovered for defamatory statement, even if it is published falsely).

*11 Therefore, as to those counts for which the court grants summary judgment in the present case (Counts One, Two, Six and Eight), that holding applies to the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                Page 11
**(Cite as: 1997 WL 255093 (Conn.Super.))**

allegations of defamation as well. As to those counts for which the court denies summary judgment (Counts Three through Five, Seven, Nine and Ten), that holding applies to the allegations of defamation also. Of course, the plaintiff has the burden of proving that the privilege found by this court is defeated through abuse. This is a question of fact for a jury. See *Bleich v. Ortiz,* 196 Conn. 498, 504, 493 A.2d 236 (1985).

### Count Eleven--Plaintiff's Transfer to RADCON

The plaintiff alleges that his transfer to RADCON was precipitated by his commencing suit against the defendants. The defendants argue that this transfer was contemplated and set into motion well before the plaintiff filed suit and supply five exhibits to support their motion as to this count.

The plaintiff claims that the transfer to RADCON constitutes wrongful demotion, further damaging his professional reputation, and that statements made in connection with the transfer are defamatory. Further, the transfer caused the plaintiff to suffer mental anguish and anxiety, impaired his earning capacity, at GD or elsewhere, and violated his rights under the First Amendment of the federal constitution, Article First, sections ten and fourteen and Article Fifth of the Connecticut constitution, the Twentieth Amendment to the Connecticut constitution and the General Statutes.

Because the plaintiff pleads several causes of action in this count, some of which are viable, while others fail to state a claim for which Connecticut law provides relief, summary judgment is denied as to the entire count. This denial should be read in light of the above discussion regarding partial summary judgment being unavailable for individual paragraphs within a single count of the complaint.

### Count Twelve--Transfer to RADCON Constitutes Wrongful Demotion

This claim involves a May 27, 1993 performance evaluation prepared by the defendant, Lord, which the plaintiff claims is inaccurate. The plaintiff alleges that this poor performance evaluation was given in retaliation for complaints filed with the Connecticut Commission on Human Rights and Opportunities (CCHRO) and with GD's Ethics Commission.

The plaintiff claims that this poor performance evaluation and his subsequent transfer to RADCON were maliciously undertaken by the individual defendants with willful and reckless indifference to, and conscious disregard of the plaintiff's rights with the wrongful intent to injure the plaintiff.

The court finds that the plaintiff attempts to state a claim for wrongful demotion in Count Twelve. As more fully set forth in addressing Count One, this is not a recognized cause of action in Connecticut. Thus, summary judgment is granted as to this count.

### CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted as to Counts One, Two, Six, Eight and Twelve and is denied as to Counts Three through Five, Seven and Nine through Eleven of the plaintiff's amended complaint.

1997 WL 255093 (Conn.Super.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                Page 12
(Cite as: 1997 WL 255093 (Conn.Super.))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works