43. At no time during her employment had plaintiff been told that her position was in jeopardy, in fact she was assured that her position was safe. (See promotion email (App.Ex. J); Kinnaman Depo. P46 L8-15 (App.Ex. C).)

44. Defendant cannot and has not produced any evidence that plaintiff's sales were so poor relative to defendant's other salespeople that they placed her job in jeopardy. (Shannon Depo. P40 L7-L13 (App.Ex. E); Hanson Depo. P50 L22--P51 L12, P62 L3-5 (App.Ex. D); Ziperman P48 L17--P49 L2 (App.Ex. B).)

45. This termination was not communicated to plaintiff until January 2002. (Hanson Depo. P51 L24--P52 L2 (App.Ex. D).)

46. When plaintiff was promoted to Associate Publisher on September 26, 2001, defendant knew her sales performance through at least a part of the month of November. (Ziperman Depo. P75 L20--P76 L8 (App.Ex. B); Shannon Depo. P39 L1--P40 L1, P41 L7-15 (App.Ex. E); Kinnaman Depo. P51 L8-17 (App.Ex. C).)

> "Q. Sales are done in the months preceding the actual issue of the monthly magazine, correct?
> A. True.
> Q. So November sales would have been known, at least in part, by September, correct?
> A. In part."

(Ziperman Depo. P75 L8-25, P76 L1-L8 (App.Ex. B).)

47. Defendant claims it fired plaintiff due to her "poor sales" for the *three months* spanning September, October and November of 2001. (Ziperman Depo. P75 L20--P76 L8 (App.Ex. B); Shannon Depo. P41 L7-L15 (App.Ex. E).)

48. Defendant was well aware of plaintiff's sales for at least two of those three months prior to her promotion and yet still promoted her on September 26, 2001. (Shannon

11

Depo. P39 L1--P40 L1 (App.Ex. E); Kinnaman Depo. P51 L8-17 (App.Ex. C).) In addition, Mr. Shannon states that he made his decision to terminate plaintiff around "possibly late November," which is the third month of the three-month time span. (Shannon Depo P39 L24--P40 L1 (App.Ex. E).)

49. Therefore, within 60 days after her promotion to Associate Publisher and within weeks of her first complaint of discrimination, plaintiff was selected by Mr. Shannon for termination for alleged "poor sales" based upon sales figures it knew at the time of her promotion. (Shannon Depo. P39 L1--P40 L1, P49 L12--P51 L25, P56 L10 (App.Ex. E); Hanson Depo. P53 L18--P54 L14 (App.Ex. D); Ziperman Depo. P76 L1-8 (App.Ex. B); promotion e-mail (App.Ex. J); (Kinnaman Depo. P55 L4-25 (App.Ex. C).)

50. Defendant admits that the sole document it relied upon to terminate plaintiff does not even contain the data of the type it claimed it used in forming its conclusion of "poor sales." (Shannon Depo. P39 L1--P40 L1, P49 L12--P51 L25, P56 L10, P57 L5--P62 L23 (App.Ex. E).)

51. The document defendant relied upon in making its determination to terminate plaintiff does not contain sales "projections" within it. (Shannon P39 L1--P40 L1, P49 L12--P51 L25, P56 L10, P57 L5--P62 L23 (App.Ex. E).) No documents containing any such "projections" for plaintiff have been produced in this litigation.

52. Defendant claims its poor financial condition arising out of alleged poor sales revenues necessitated plaintiff's termination. In the same general time frame as plaintiff's termination, however, defendant proceeded to acquire: (1) assets of University Business, a competing magazine which was brought in to merge with Matrix for a price of $350,000, (2) Darren Sikorsky, a sales manager paid approximately $60,000 per year plus additional

commission (Offer Letter to Darren Sikorsky dated December 28, 2001 ("Sikorsky Offer Letter") (App.Ex. N)), (3) Tom Terry, a sales manager paid $60,000 per year plus additional commission (Offer Letter to Tom Terry dated December 28, 2001 ("Terry Offer Letter") (App.Ex. O)); and (4) Dan Boucher, a Publisher who was compensated well over $100,000 in base salary and guaranteed commissions (Offer Letter to Daniel Boucher dated February 21, 2002 ("Boucher Offer Letter") (App.Ex. P)). (Hanson Depo. P63 L20--P65 L25 (App.Ex. D).)

53.     Upon the filing of plaintiff's complaint with the CHRO, documents which defendant allegedly maintained plaintiff was merely a salesperson like all other salespersons in defendant's employment (Ziperman Depo. P26 L3--P28 L15 (App.Ex. B)), setting forth sales data and commissions analysis were "lost" by defendant (Ziperman Depo. P24 L14--P25 L11 (App.Ex. B).)

54.     Defendant claims under oath it realized it had "lost" the documents detailing the structure of plaintiff's compensation and what it now characterizes as a "commission plan" at the time plaintiff filed her CHRO complaint. (Ziperman Depo. P24 L14--P25 L16 (App.Ex. B); Hanson Depo. P26 L12--P27 L12, P28 L25--P29 L2, P30 L16-23 (App.Ex. D).)

55.     Defendant admits it never even saw such documents at any time, prior to or subsequent to this litigation. (Ziperman Depo. P39 L5-10 (App.Ex. B); Hanson Depo P26 L12--P27 L12, P28 L25--P29 L23, P30 L16-23 (App.Ex. D)).

56.     All "salespersons" within its employment had folders containing these quarterly commission reports analyzing sales numbers, goals, and commission payments. (Ziperman Depo. P40 L8--P41 L4 (App.Ex. B); Hanson Depo. P26 L12--P27 L12, P28 L25--P29 L23, P30 L16-23 (App.Ex. D).)

13

57. By the time plaintiff was told on January 2, 2002 that her position was terminated, defendant had already made offers to the two young men who Mr. Shannon repeatedly referred to as "the boys." (Ziperman Depo. P69 L10-11 (App.Ex. B); Shannon Depo. P49 L12--P51 L25, P56 L10 (App.Ex. E).)

58. These two young men had been contacted by defendant as early as November. (Ziperman P69 L22--P70 L2 (App.Ex. B).)

59. When plaintiff insisted that she be included in management meetings, including hiring decision meetings, Mr. Shannon adamantly denied her from such inclusion. (Shannon Depo. P45 L2-9 (App.Ex. E).)

60. Despite management's awareness of plaintiff's complaint of sex discrimination, it did not perform any form of inquiry or investigation. (Kinnaman Depo. P55 L4-25 (App.Ex. C).)

61. Defendant hired a total of three young men shortly after it terminated plaintiff. (Ziperman Depo. P69 L10-11, P75 L5-7 (App.Ex. B); Shannon Depo. P55 L8-17 (App.Ex. E); Hanson Depo. P63 L20--P65 L25 (App.Ex. D).)

62. Upon her termination, plaintiff was never paid the portion of her compensation representing her non-recoverable draft from May 2001 to the date of her termination (i.e., $40,000).

By: _____
Scott R. Lucas (ct00517)
Mary Alice S. Canaday (ct17608)
Michel Bayonne (ct24628)
*Attorneys for Plaintiff*
*Lisa K. Blumenschine*
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mcanaday@mlc-law.com
mbayonne@mlc-law.com

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of December, 2003, a copy of the foregoing was mailed, first class, postage prepaid, to:

George P. Birnbaum, Esq.
Thomas P. Minogue, Esq.
Michael L. Ferch, Esq.
Minogue Birnbaum LLP
237 Elm Street
New Canaan, CT 06840
Phone: (203) 966-6916
Fax: (203) 966-6917

Scott R. Lucas