to the two young men, who Mr. Shannon repeatedly referred to as "the boys." In reaction to plaintiff's complaints of discrimination, defendant hired these two young men and terminated plaintiff.

Accordingly, the mere fact that plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis.

### B.  DEFENDANT'S REASON FOR PLAINTIFF'S TERMINATION IS SUBJECT TO AMPLE EVIDENCE OF PRETEXT.

#### 1.  There exists an additional inference of discrimination from defendant's missing evidence.

Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed." Kronisch v. United States, 150 F.3d 112 at 126. (2d. Cir. 1998). Such an obligation usually arises when a "party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Id. The law in this Circuit is not clear on what state of mind a party must have when destroying it. In Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 267 (2d Cir.1999), the Second Circuit noted that at times courts have required a party to have intentionally destroyed evidence; at other times courts have required action in bad faith; and at still other times courts have allowed an adverse inference based on gross negligence. In light of this, the Second Circuit concluded a case-by-case approach was appropriate. See Byrnie v. Town of Cromwell, Board of Education, 243 F.3d 93 (2d. Cir. 2001). Finally, a court must determine "whether there is any likelihood that the

16

destroyed evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127. The burden falls on the "prejudiced party" to produce "some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." Id. at 128; see also Zimmerman v. Associates First Capital, 251 F.3d 376 (2001).

In Zimmerman v. Associates First Capital, 251 F.3d 376 (2001), the defendant employer contended that the jury instruction relating to missing evidence was impermissible. The Second Circuit, however, held otherwise, stating that the missing information concerning defendant's salespeople, i.e., their sales figures memos, were critical to plaintiff's attempt to show discrimination. The following jury charge permitting an adverse inference was therefore fully warranted:

> You have heard testimony about records which have not been produced. Counsel for the plaintiff has argued that this evidence was in the defendant's control and would have proven facts material to the matter in controversy. If you find that the defendant could have produced these records, and that the records were within their control, and that these records would have been material in deciding facts in dispute in this case, then you are permitted, but not required, to infer that this evidence would have been unfavorable to the defendant. In deciding whether to draw this inference you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether the defendant had a reason for not producing this evidence, which was explained to your satisfaction.

Id. at 382.

In the instant case, defendant has failed to offer substantial documentary evidence to support its assertion that it fired plaintiff for poor sales performance. The members of defendant's all-male management team testified that they either had not seen or could not locate

17

documents purported to identify plaintiff's sales performance, but nevertheless defendant stands steadfast in its claim these documents did in fact exist and were used to track performance.

Accordingly, an adverse inference of discrimination can be drawn from the missing evidence.

### 2. *Defendant's legitimate, nondiscriminatory reason is false.*

Defendant's legitimate, nondiscriminatory reason for terminating plaintiff's employment, her poor sales performance, is pretextual. Therefore, the issue as to the sufficiency of the evidence is whether the record as a whole, including whatever reasonable inference the jury could draw from the proffer of a false reason for the discharge, permitted the required ultimate finding of discrimination. See Zimmerman v. Associates First Capital, 251 F.3d 376 (2001). In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court instructed that the combination of evidence establishing a *prima facie* case and evidence showing that a proffered explanation was pretextual is neither always deemed sufficient nor always to be deemed insufficient. Id. at 146-147, 120 S. Ct. 2097. Thus, the Reeves court recommended a case-specific approach, urging a reviewing court to consider a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49, 120 S.Ct. 2097.

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up discriminatory purpose....Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely

alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

Id. at 147, 120 S.Ct. 2097.

In Zimmerman v. Associates First Capital, 251 F.3d 376 (2d. Cir. 2001), the Court of Appeals addressed the "probative value of the proof that the employer's explanation is false." In Zimmerman, the defendant employer alleged poor performance for plaintiff's discharge. However, plaintiff employee provided ample evidence of good performance and the complete absence of any negative reviews. Moreover, the Second Circuit noted that the defendant not only failed to present evidence from plaintiff's personnel file indicating any complaints about her job performance, it also acknowledged that the records that would show her productivity and that of other sales people had been destroyed. Accordingly, the Second Circuit noted that the plaintiff's evidence was substantial and the defendant's effort to meet it was woefully inadequate.

In the case at bar, defendant's reason for plaintiff's termination, poor sales performance, is patently false. Plaintiff is able to provide ample evidence of good performance and the complete absence of any negative reviews. For instance, she was promoted into a position of management, namely Associate Publisher, which was communicated to defendant's entire company less than 60 days prior to defendant's decision to terminate plaintiff. Moreover, in the communication declaring her promotion, defendant stated that plaintiff would continue to play a "key role" within the organization. In addition, the fact that plaintiff was not even a salesperson at the time of her termination undermines defendant's contention that plaintiff was fired solely on the basis of poor sales performance. More importantly, the sole document defendant states it relied upon in making its determination to terminate plaintiff does not even contain the criteria

19

defendant now states it relied upon in deciding plaintiff's termination. Finally, the proof that defendant's explanation for plaintiff's termination, poor sales performance, is a complete fabrication is highlighted by the fact that it acknowledges that records that would show her to be a poor salesperson are now unavailable and may never have existed.

Accordingly, the evidence in this case would plainly permit a jury to infer that the defendant's proffered reason for plaintiff's discharge is pretextual.

>   3.  *Inconsistent application of defendant's alleged disciplinary policy is sufficient for jury to find that defendant's defense was pretext for discrimination.*

The Second Circuit in Greenway v. The Buffalo Hilton Hotel, 143 F.3d 47 (2d. Cir. 1998), held that the evidence of defendant employer's inconsistent application of its disciplinary policy was sufficient for the jury to have decided properly that the employer's defense was simply a pretext for discrimination. In Greenway, the plaintiff had been employed with defendant for approximately five years and received positive employment reviews. However, defendant, upon learning of plaintiff's HIV status, immediately proceeded to issue plaintiff warning notices regarding his work performance. The plaintiff, after complaining that he was being discriminated against because of his disability,[7] was terminated for "continued poor performance." He had received a total of four warnings from his employer upon its learning of his disability up to his date of termination. The evidence offered showed that defendant did not

---

[7] As noted, in McDonnell Douglas, supra, the Supreme Court set out "the order and allocation of proof" in private employment discrimination cases. 411 U.S. at 800, 93 S.Ct. at 1823 (establishing the standard in Title VII cases). This applies equally to ADA discrimination claims. See EEOC v. Amego, Inc., 110 F.3d 135, 145 n.7 (1st Cir.1997) ("The ADA is interpreted in a manner similar to Title VII, and courts have frequently invoked the familiar burden-shifting analysis of McDonnell Douglas in ADA cases.").

apply a similar disciplinary policy where, for example, one employee who had received 11 written warnings was not fired and another who received 6 warnings was not fired. Moreover, another employee who held the same title as plaintiff was only given a "friendly reminder" after being in a "physical confrontation" with a customer of defendant.

In the instant case, plaintiff, who shortly after receiving a promotion to Associate Publisher, was terminated *without ever receiving a warning* for alleged poor sales performance. However, George Sorayan, a salesperson under plaintiff's supervision who was also terminated for poor sales, was not only given **notice** and **warning** that his sales performance was poor, but was also allowed to continue his employment for over six months without any showing of improvement. More importantly, defendant had to completely shut down eMarketing Magazine, another one of its major magazines, because of Mr. Shannon's failure to produce sales under his supervision. However, despite eMarketing Magazine's failure under Mr. Shannon's direction and control, Mr. Shannon was named the new head of Matrix magazine, over plaintiff, who according to defendant had "contributed greatly to Matrix's steady growth" since its launch and "has done a terrific job helping the book get established." Mr. Shannon's termination of plaintiff for "poor sales" given his failed effort with the sales of eMarketing Magazine which folded incident to his assuming control of Matrix magazine just weeks earlier is evidence of defendant's discriminatory treatment.

Accordingly, defendant's reason for terminating plaintiff is pretextual, and summary judgment must therefore be denied.

### 4. *Shannon exercised influence over management and the decision to terminate plaintiff.*

This Court has recognized that one way of showing pretext is by establishing that the employee with the discriminatory attitude influenced the key decision maker. Cooke v. Prototype & Plastic Mold Company, Inc., 220 F. Supp.2d 104 (D. Conn. 2002); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir.2000) (one way to prove pretext is by showing "that discriminatory comments were made by the key decision-maker or those in a position to influence the decision-maker"); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir.2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decision-maker."). In Cooke, 220 F.Supp.2d 104, plaintiff's former employer sold its business as a going concern to defendant, the new owner and employer of plaintiff. During the sale of the company, evidence was elicited regarding disparaging remarks made by plaintiff's former employer to his new employer regarding plaintiff's age[8] and his ability to perform. The new employer testified that the former employer's description of plaintiff raised a "huge red flag" in its decision to terminate plaintiff. Id. at 106. Defendant claimed that the former employer's comments were irrelevant because it was the new owner, and not the former, who terminated plaintiff. In denying defendant's motion for summary judgment, the Cooke court stated that defendant's "view of causation in discrimination actions [was] far too limited" and that a jury could find that the former

---

[8]The McDonnell Douglas standard for determining age discrimination claims under the ADEA is the same as for Title VII. Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir.2000).

22

employer's comments are probative of discrimination in plaintiff's termination if the former employer exercised influence over the new employer's decision. Id. at 110.

In the present case, Daniel Shannon, as plaintiff's supervisor and a member of defendant's male inner circle, readily admits that not only did he give plaintiff's complaints of discrimination "no weight," but that it was his idea to terminate plaintiff after her complaints.

> Q. Now, you recommended Ms. Blumenschine's termination, correct?
> A. Correct.
> Q. Was it your decision?
> A. No.
> Q. But you—it was your idea initially correct?
> A. Yes, as best I can recall.

(Shannon Depo. P39 L4--L10 (Def.Ex. E).)

Mr. Hanson, who just weeks earlier promoted plaintiff, admits that only after Mr. Shannon initiated the topic of plaintiff's termination with him, did he immediately conclude "we [i.e., management] have to *replace* her." (Hanson Depo. P50 L9--L13 (Def.Ex. C).)

It is abundantly clear that Mr. Shannon exercised influence over the decision to terminate plaintiff, and therefore his discriminatory attitude is imputed upon Mr. Hanson and the other members of management, thereby establishing pretext.

### III.　GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S AGE DISCRIMINATION CLAIM UNDER ADEA.

The shifting-burden analysis for determining age discrimination claims under the ADEA is the same as for Title VII. Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir. 2000). See §II, supra.

23

### A. PLAINTIFF'S PROOF ESTABLISHES THE PRIMA FACIE CASE FOR DISCRIMINATION.

#### 1. *Plaintiff's termination occurred under circumstances giving rise to an inference of age discrimination where two young males replaced plaintiff.*

Plaintiff's discharge occurred under circumstances giving rise to an inference of discrimination based upon her age where two young males replaced her. Kern v. Brookhaven National Laboratory, 2003 WL 22843082 (E.D.N.Y.) (attached hereto as Exhibit 1). Generally, an employee's replacement by a significantly younger person is evidence of age discrimination. Carlton v. Mystic Transp. Inc., 202 F.3d 129 (2d Cir.2000). Moreover, while evidence that an employee was replaced by a younger individual is a valuable indicator of age discrimination under the ADEA, an employee need not show as part of the *prima facie* case that he was replaced by someone younger than he. Id. However, the Supreme Court has noted that because ADEA prohibits discrimination on the basis of age as opposed to class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class. O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996).

In the instant case, plaintiff was immediately replaced by two young men, each approximately **20 years younger than she**. In fact, despite the known complaints of discrimination, defendant hired these two young men, affectionately referred to by Mr. Shannon as "the boys," just weeks after plaintiff's promotion and shortly after her first complaint. At the time plaintiff was advised by her new manager of the potential of hiring these two young men,

24

she had been in her promoted position of Associate Publisher (a decision made by Mr. Hanson without the input of her new manager) for only two months.

Accordingly, summary judgment must be denied where there is a strong indication that plaintiff was discriminated against because of her age.

### B. THE EVIDENCE IS SUFFICIENT TO SUPPORT A RATIONAL FINDING THAT THE LEGITIMATE, NON-DISCRIMINATORY REASON PROFFERED BY DEFENDAT IS FALSE.

To avoid summary judgment, plaintiff's evidence must be "sufficient to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [employer] were false, and that more likely than not [discrimination] was the real reason" for the action taken. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994)). The determination of whether summary judgment is appropriate is case-specific. The court must examine the entire record to determine whether the plaintiff "could satisfy the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir.2000) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000)); Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir.2000).

In Carlton, 202 F.3d 129 (2d Cir.2000), the Second Circuit held that defendant employer's reason for terminating its employee was pretextual. In Carlton, plaintiff's age discrimination claim survived defendant's motion for summary judgment where defendant stated that it terminated plaintiff for poor performance, yet during plaintiff's employment he never received a negative written performance evaluation or formal warning, nor was there any writing whatsoever criticizing his job performance. The Second Circuit noted that "objective evidence

25

indicate[d] that plaintiff was performing his job adequately," and therefore defendant's reason for plaintiff's termination, poor performance, was an "afterthought."

In the case at bar, defendant's reason for plaintiff's termination, poor sales performance, is untrue. Plaintiff is able to provide ample evidence of good performance and the complete absence of any negative reviews. For instance, she was promoted into a position of management, namely Associate Publisher, which was communicated to defendant's entire company less than 60 days prior to defendant's decision to terminate her. Moreover, in the communication declaring her promotion, defendant stated that plaintiff would continue to play a "key role" within the organization. In addition, the fact that plaintiff was not even a salesperson undermines defendant's contention that plaintiff was fired for poor sales performance. Moreover, the sole document defendant states it relied upon in making its determination to terminate plaintiff does not contain the criteria defendant stated it looked at in deciding plaintiff's termination. Finally, the proof that defendant's explanation for plaintiff's termination is a complete fabrication is highlighted by the fact that it acknowledges that records that would show her to be a salesperson are unavailable or "lost."

Accordingly, defendant's Motion for Summary Judgment should be denied where its reason for terminating plaintiff cannot past muster.

IV. **THERE ARE MATERIAL QUESTIONS OF FACT INVOLVING PLAINTIFF'S CLAIMS OF DISCRIMINATION PURSUANT TO CFEPA.**

Plaintiff also brings a discrimination claim under the Connecticut Fair Employment Practices Act. Connecticut General Statutes §46a-60(a)(1) states:

(a) It shall be a discriminatory practice in violation of this section:

26

(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness

We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both. Board of Education of the City of Norwalk v. Commission On Human Rights and Opportunities, 266 Conn. 492, 832 A.2d 660 (2003); Craine v. Trinity College, 259 Conn. 625 (2002). Accordingly, as set forth above, plaintiff has satisfied the elements necessary to establish a claim of discrimination under Title VII, ADEA and CFEPA, and there are material issues of fact to be determined. Accordingly, defendant's Motion for Summary Judgment must be denied.

V. **PLAINTIFF MUST PREVAIL REGARDING HER CLAIMS OF RETALIATION PURSUANT TO TITLE VII AND CFEPA.**

Plaintiff hereby incorporates in its entirety §II of her December 8, 2003 Memorandum of Law in Support of her Motion for Summary Judgment.

VI. **PLAINTIFF MUST PREVAIL REGARDING HER CLAIM DEFENDANT VIOLATED C.G.S. § 31-72.**

Plaintiff hereby incorporates in its entirety §III of her December 8, 2003 Memorandum of Law in Support of her Motion for Summary Judgment.

VII. **PLAINTIFF MUST PREVAIL REGARDING HER CLAIM OF PROMISSORY ESTOPPEL.**

Plaintiff hereby incorporates in its entirety §IV of her December 8, 2003 Memorandum of Law in Support of her Motion for Summary Judgment.

### VIII. PLAINTIFF MUST PREVAIL REGARDING HER CLAIM OF NEGLIGENT MISREPRESENTATION.

Plaintiff hereby incorporates in its entirety §V of her December 8, 2003 Memorandum of Law in Support of her Motion for Summary Judgment.

### CONCLUSION

For all of the foregoing reasons, plaintiff respectfully requests that defendant's Motion for Summary Judge be denied in its entirety.

By _____
Scott R. Lucas (ct00517)
Mary Alice S. Canaday (ct17608)
Michel Bayonne (ct24628)
*Attorneys for Plaintiff*
Lisa K. Blumenschine
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mcanaday@mlc-law.com
mbayonne@mlc-law.com

28

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of January, 2004, a copy of the foregoing was mailed, first class, postage prepaid, to:

George P. Birnbaum, Esq.
Thomas P. Minogue, Esq.
Michael L. Ferch, Esq.
Minogue Birnbaum LLP
237 Elm Street
New Canaan, CT 06840
Phone: (203) 966-6916
Fax: (203) 966-6917

                                                        Scott R. Lucas