## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LISA K. BLUMENSCHINE, | : | **CIVIL ACTION NO.** |
| | : | **302 CV 2244 (DJS)** |
| **Plaintiff,** | : | |
| | : | |
| V. | : | |
| | : | |
| PROFESSIONAL MEDIA GROUP, | : | |
| LLC, | : | **JANUARY 27, 2004** |
| | : | |
| **Defendant.** | : | |

### PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT

Pursuant to Local Rule 56(a)2, plaintiff Lisa K. Blumenshcine submits the following statement in support of her Opposition to Defendant's Motion for Summary Judgment:

1.    Plaintiff Lisa K. Blumenschine ("Blumenschine") was 50 years old when her employment was terminated by the Company, having been born June 27, 1951.  Complaint, para. 7.

***RESPONSE:*** Admitted.

2.    Defendant Professional Media Group LLC ("the Company") publishes two magazines: "District Administration" and "University Business incorporating Matrix," the latter of which is addressed to college and university administrators.  Deposition of William Ziperman ("Ziperman dep."), pp. 10-11, and Ex. "I" at para. 1.

***RESPONSE:*** Admitted that defendant currently publishes two magazines: "District Administration" and "University Business," formerly "Matrix," the latter of which is addressed to college and university administrators. Defendant at one time published three magazines. (See "Statement of Facts" contained in plaintiff's Memorandum of Law in Support of her Motion for Summary Judgment dated December 8, 2003 (hereinafter "Plaintiff's Statement of Facts").)

3.       The Company has 32 employees. Ziperman dep., Ex. "I" at para. 2.

*RESPONSE:* Admitted, except plaintiff lack knowledge sufficient to form a belief as to the current number of defendant's employees.

4.       Since 1998, the Company has employed 26 women and 24 men, and currently employs at least 14 women and 18 persons over the age of 40, including Joe Hanson, Bill Ziperman, Dan Kinnaman and Dan Shannon. Shannon Dep., Ex. "P".

*RESPONSE:* Plaintiff lacks knowledge sufficient to form a belief as to the number, age and sex of the current employees employed within defendant's company, but admits that at the time plaintiff was employed with defendant, Joe Hanson, Bill Ziperman, Dan Kinnaman and Dan Shannon were also employed with defendant.

5.       There is no formal corporate heirarchy [sic] in place at the Company, nor was there ever one in place during Blumenschine's employment. Deposition of Joseph Hanson ("Hanson dep."), p. 15; Deposition of Daniel Kinnaman ("Kinnaman dep."), pp. 39, 51-52.

*RESPONSE:* Denied as stated, except plaintiff lacks knowledge sufficient to form a belief as to whether a formal corporate hierarchy is currently in place within defendant's company. At the time of plaintiff's employment, a core management group did exist which had the authority to hire, terminate and set salaries. (See Plaintiff's Statement of Facts; Deposition of William Ziperman taken September 16, 2003 (hereinafter "Ziperman Depo.") Page 19 Lines 18-25[1] (attached to Defendant's Exhibits to Affirmation of Michael L. Ferch dated December 8, 2003 (hereafter "Def.Ex.") as Exhibit D); Deposition of Daniel Shannon taken September 24, 2003 (hereinafter "Shannon Depo.") P14 L21-24, P16 L1-14 (Def.Ex. E); Deposition of Daniel Kinnaman (hereinafter "Kinnaman Depo.") P17 L10--P21 L17 (Def.Ex. F); Deposition of Joseph

---

[1] Hereinafter, page and line number will be referred to as "P___ L___."

2

Hanson taken September 30, 2003 (hereinafter "Hanson Depo.") P13 L16--P15 L17 (Def.Ex. C).)

6.       The Company has an "open door" policy. Kinnaman dep., p. 51; Deposition of Daniel Shannon ("Shannon dep."), p. 50.

**RESPONSE**: Denied, except plaintiff lacks knowledge sufficient to form a belief as to whether defendant has an "open door" policy. Defendant did not have a company handbook or a Human Resource Department and thus had no formal "policy." (See Plaintiff's Statement of Facts; Hanson Depo. P17 L14 – L16 (Def.Ex. C).)

7.       Joseph J. Hanson ("Hanson") is managing member and co-owner of the Company. Hanson dep., p. 4; Ziperman dep., p. 19.

**RESPONSE**: Denied, except that plaintiff admits Joseph J. Hanson is one of the managing members and co-owner of defendant. (Ziperman Depo. P19 L18-25 (Def.Ex. D); Shannon Depo. P14 L21-24, P16 L1-14 (Def.Ex. E); Kinnaman Depo. P17 L10--P21 L17 (Def.Ex. F); Hanson Depo. P13 L16--P15 L17 (Def.Ex. C).)

8.       Hanson makes all executive decisions for the Company. Hanson dep., p. 15; Kinnaman dep., pp. 21-22; Ziperman dep., p. 19.

**RESPONSE**: Denied, except admitted that Mr. Hanson was at times involved in executive decisions of defendant. (Hanson Depo. P 13 L16--P15 L17 (Def.Ex. C).)

9.       Shortly after Blumenschine joined the Company, she recognized that there were employees older than plaintiff, including Fran Cassone, Joanna Melfi, and Ms. Terry Nelson, a female salesperson who worked with plaintiff on "Matrix" magazine. Blumenschine dep., pp. 79-81.

**RESPONSE**: Admitted, except plaintiff was not similarly situated to such employees; plaintiff held supervisory authority over designated salespeople such as Terry Nelson and was later promoted to Associate Publisher reporting to Dan Shannon. Moreover, Dan Shannon, after

3

deciding to terminate plaintiff proceeded with his plans to hire two young male employees to work under him.

10.    Blumenschine began her employment with the Company that is the subject of this litigation in January 2000. Complaint, para. 6.

*RESPONSE:* Admitted.

11.    Blumenschine's initial title with the Company was "National Sales Manager." Complaint, para. 6.

*RESPONSE:* Admitted.

12.    Blumenschine's primary responsibility was the sale of advertising space for "Matrix" magazine. Kinnaman dep., pp. 37-38; Shannon dep., p. 46; Ziperman dep., pp. 22-23.

*RESPONSE:* Denied. Plaintiff's responsibilities included, among other things, the support and management of the defendant's sales efforts. In fact, she played a "key role" in positioning the magazine and developing collateral sales material. (Ziperman Depo., Exs. A & G thereto (Def.Ex. D).)

13.    In January 2000, when Blumenschine was hired, "Matrix" was a start-up publication aimed at college and university administrators. Ziperman dep., Ex. "A."

*RESPONSE:* Admitted.

14.    Revenue from "Matrix" was derived almost exclusively from the sale of advertising space, since the publication was largely given away for free. Ziperman dep., p. 10, Ex. "H" para. 1, Ex. "I" para. 3.

*RESPONSE:* Plaintiff has insufficient knowledge as to where the revenue for defendant's Matrix Magazine "almost exclusively" came from.

15.    Blumenschine understood that she would be responsible for generating advertising sales. Blumenschine dep., pp. 46-47, 117.

*RESPONSE:* Denied, except that plaintiff states that generating advertising sales was one of many functions of her position. (Ziperman Depo. Ex. H (Def.Ex. D).)

4

16.    For the first year (2000), Blumenschine's compensation consisted of base pay of $80,000 (Blumenschine dep., p. 52) and a "nonrecoverable draw against commissions" of $60,000. Blumenschine dep. p. 52; Ziperman dep., pp. 21-22.

*RESPONSE:* Denied. Plaintiff's compensation consisted of base pay of $80,000 and a

"non-recoverable draw against commission" of $60,000 that continued beyond her first year of

employment. (Ziperman Depo. P49 L5—P53 L17 (Def.Ex. D).)

17.    Blumenschine's draw was "nonrecoverable" during 2000 because the Company knew that in the first year, "Matrix" would not generate sufficient revenues to pay sales commissions. Ziperman dep., pp. 20-21.

*RESPONSE:* Denied. Plaintiff's draw was "nonrecoverable" throughout the term of her

employment. Midway through her second and final year of employment, in 2001, defendant

unlawfully withheld plaintiff's compensation. (Ziperman Depo. P49 L5—P53 L17 (Def.Ex. D).)

18.    At all times during Blumenschine's employment with the Company, sales territory for "Matrix" magazine was divided by the Company in the following manner: Terry Nelson, Midwest; George Saroyan, West Coast; and Lisa Blumenschine, East Coast. Blumenschine dep., pp. 47, 81; Hanson dep., pp. 32-33; Ziperman dep. Ex. "F."

*RESPONSE:* Denied. George Saroyan was not an employee of defendant until well

after a year from plaintiff's date of hire. (Shannon Depo., Ex. P thereto (Def.Ex. E).)

19.    Advertisement space in the inaugural issue of "Matrix" was offered for free as an enticement for continued ad sales from initial customers. Hanson dep., pp. 32-33.

*RESPONSE:* Admitted.

20.    For the remaining issues of "Matrix," total advertising sales can be broken down between the sales territories and salespersons as follows:

|        | East Coast   | Midwest   | Southwest |
|--------|--------------|-----------|-----------|
|        | Blumenschine | Nelson    | Saroyan   |
| 9/00   | 44,478.38    | 49,254.65 |           |
| 10/00  | 28,812.88    | 31,193.30 |           |

| 11/00 | 34,031.20 | 37,830.95 | |
| 2/01 | 24,762.38 | 38,188.38 | |
| 4/01 | 21,658.00 | 24,730.75 | 9,201.25 |
| 6/01 | 31,219.13 | 35,078.65 | 4,840.75 |
| 9/01 | 27,429.08 | 21,230.03 | 9,681.50 |
| 10/01 | **13,115.50** | 57,926.03 | 16,889.50 |
| 11/01 | **5,504.17** | 35,236.75 | 4,840.75 |
| Total | 231,010.71 | 330,669.48 | 45,453.75 |

Ziperman dep. Ex. "F" (emphasis added).

**_RESPONSE:_** Admitted, except that plaintiff's sales exceeded those of Mr. Saroyan, and the highlighted sales figures were known by defendant **prior** to plaintiff's promotion. Moreover, Mr. Saroyan's sales figures are poor throughout his term of employment and plaintiff's sales are on par with other salespeople despite her not being a salesperson.

21.    In or around the end of September 2001, Blumenschine told Kinnaman her sales figures were not where she would like them to be. Blumenschine dep., p. 121.

**_RESPONSE:_** Admitted, except plaintiff made the statement that her sales figures were not where she would like them to be prior to her promotion, and plaintiff states that her statement was taken out of context where she *personally* would have preferred to see greater sales, but she was never given a target nor did her position require one and the statement pertained not only to her sales but to the overall magazine figures.

22.    Hanson and Blumenschine had several conversations during the course of Blumenschine's employment in which Hanson directly expressed to Blumenschine the Company's concern with her poor sales performance. Hanson dep., p. 42.

**_RESPONSE:_** Denied. Mr. Hanson never expressed to plaintiff that he or defendant was "concerned" with her sales performance. In addition, Mr. Hanson was not accessible to plaintiff

6

regarding discussions involving sales or the generation of revenues. (Deposition of Lisa Blumenschine taken May 28, 2003 (hereinafter "Blumenschine Depo.") P126 L6 – P127 L9 & P130 L8—P132 L14 (Def.Ex. B).)

23.    Blumenschine stated to Daniel Shannon that she expected to be fired because of her lack of sales volume (Shannon dep., pp. 66-67) and, in December 2001, asked him when the Company would terminate her to put her out of her misery. Blumenschine dep., pp. 122, 126, 188-189; Answer to Interrogs. 8.

**_RESPONSE:_** Denied. Plaintiff's statements to Daniel Shannon are taken out of context. Plaintiff asked defendant if she was being terminated only after Dan Shannon told plaintiff not to use the phones or to do any work. (Blumenschine Depo. P126 L6 – P127 L9 & P189 L1—L4 (Def.Ex. B).)

24.    In May 2001, Blumenschine's nonrecoverable draw against commissions was terminated by the Company. Answer to Interrogs. 8; Blumenschine dep., p. 58; Hanson dep., pp. 47-48; Ziperman dep., pp. 49-50.

**_RESPONSE:_** Denied.   In May 2001, plaintiff's nonrecoverable draw was held in abeyance and she was promised that this portion of her compensation would be reinstated retroactively under a similar payment arrangement. (Ziperman Depo. P49 L5—P53 L17 (Def.Ex. D).)

25.    Blumenschine's sales figures for 2001 could not justify any nonrecoverable draw or commission plan. Ziperman dep., pp. 28, 51; Answer to Interrogs. 4.

**_RESPONSE:_** Denied. Plaintiff's sales figures were not correlated with her nonrecoverable draw, as she was never given sales goals to meet. (Ziperman Depo. P50 L9-19 (Def.Ex. D).) Plaintiff was not a salesperson, as reflected by her title, Associate Publisher, and defendant did not provide plaintiff with a commission schedule as it did its salespeople. (Ziperman Depo. P40 L8—P41 L4 and Ex. G thereto (Def.Ex. D).)

7

26.     Blumenschine understood that her nonrecoverable draw against commissions was discontinued because of poor actual and projected sales. Blumenschine dep., p. 123; Ziperman dep., pp. 49-50.

*RESPONSE:* Denied. Plaintiff was told that her compensation was being held because defendant's company as a whole was going through a hard time financially, despite the acquisition of 3 male employees and a new magazine after plaintiff's termination. (Blumenschine Depo. P 123 L11 to L16 (Def.Ex. B); Hanson Depo. P63 L2--P65 L25 (Def.Ex. C).)

27.     Blumenschine admits her sales figures were not meeting even her own goals. Blumenschine dep., p. 123.

*RESPONSE:* Denied, except plaintiff admits that she stated that her sales and those of Matrix generally were not meeting her own personal goals. However, it is clear that plaintiff was never designated any goals like defendant's salespeople or told that her sales performance was low. (Blumenschine Depo. P 123 L2 to P127 L9 (Def.Ex. B).)

28.     After her nonrecoverable draw was terminated in May 2001, Blumenschine continued to work for the Company. Blumenschine dep., pp. 69-70, 78; Hanson dep., p. 48; Answer to Interrogs. 4.

*RESPONSE:* Denied. Plaintiff's nonrecoverable draw was not terminated. Plaintiff continued to work after being promised that the nonrecoverable draw portion of her salary would be reinstated retroactively. (Ziperman Depo. P49 L5—P53 L17 (Def.Ex. D).)

29.     At Blumenschine's request, on or about September 15, 2001, Blumenschine's job title was changed by the Company to "Associate Publisher." Complaint, para. 14; Kinnaman dep., pp. 37-40, 42; Ziperman dep., pp. 59, 86-87, Ex. "G."

*RESPONSE:* Denied, except admitted that on or about September 15, 2001, plaintiff received a promotion which was published to defendant's entire company. (Ziperman Depo. Ex. G (Def.Ex. D).)

8

30.    The Company's purpose was to provide Blumenschine with a title she had explicitly requested in an effort to assist her to increase her advertising sales for "Matrix" and to provide her with additional status in the marketplace to "open doors" to new business. Kinnaman dep., pp. 37-40; Shannon dep., pp. 29-30; Ziperman dep., pp. 59, 85-86, Ex. "I" para. 4.

*RESPONSE:* Denied. In an e-mail published to all employees in defendant's company, plaintiff was promoted to Associate Publisher to, among other things, recognize her valuable contribution to the company.  (Ziperman Depo. Ex. G (Def.Ex. D).)

31.    The Company did not view this change as a promotion of any sort, merely a change in title.  Deposition of Daniel Boucher ("Boucher dep."), pp. 34-35, 51; Hanson dep., p. 43; Kinnaman dep., pp. 37-42; Ziperman dep., pp. 59, 87-88.

*RESPONSE:* Denied. In an e-mail published to defendant's entire company, defendant states it promoted plaintiff to Associate Publisher, a position usually reserved for those in management. (Ziperman Depo. Ex. G (Def.Ex. D); Deposition of Daniel Xavier Boucher taken September 24, 2003 (hereinafter "Boucher Depo.") P34 L13--P35 L10 (Def.Ex.G).)

32.    This change in job title was not accompanied by any increase in Blumenschine's pay; the Company did not hire any additional salesperson because of the change in Blumenschine's title. Hanson dep., p. 43.

*RESPONSE:* Denied.  Plaintiff was "promoted" as stated in an e-mail published to defendant's entire company. Defendant promoted plaintiff to Associate Publisher, a position usually reserved for those in management.  (Ziperman Depo. Ex. G (Def.Ex. D); Boucher Depo. P34 L13--P35 L10 (Def.Ex G).)  Immediately, after plaintiff was promoted, defendant did not hire additional salespersons, however, defendant admits that throughout plaintiff's employment, she continued to have subordinates. (Shannon Depo. Ex. P (Def.Ex. E); Ziperman Depo. Ex. H (Def.Ex. D).)

9

33.     Blumenschine retained her full sales responsibility after the title change. Blumenschine dep., pp. 82, 151; Kinnaman dep., pp. 38, 41-42; Ziperman dep., pp. 60-61.

***RESPONSE:*** Admitted, and plaintiff continued, among other things, to have authority over her subordinates.

34.     Blumenschine's management responsibilities were extremely limited, both prior to and after the title change. Blumenschine dep., pp. 84-86; Boucher dep., Ex. "O"; Hanson dep., pp. 34, 42; Kinnaman dep., pp. 40-41; Shannon dep., pp. 46, 62-65; Ziperman dep., pp. 60, 87-88.

***RESPONSE:*** Denied. Plaintiff held management responsibilities upon being hired with defendant as a National Sales Manager, and upon being promoted to Associate Publisher, however, Mr. Shannon obstructed plaintiff from carrying out her additional management duties. (Ziperman Depo. Ex. H (Def.Ex. D); Shannon Depo. P49 L12—P51 L2 (Def.Ex. E).)

35.     Blumenschine gave no sales goals to any Company employee. Blumenschine dep., p. 203.

***RESPONSE:*** Admitted, except that plaintiff would work with the salespeople she oversaw with their sales issues and she provided support for the sales effort who were given sales goals by the company.

36.     All sales goals were determined by or otherwise came from the Publisher of "Matrix," not Blumenschine. Blumenschine dep., pp. 85, 203.

***RESPONSE:*** Admitted, except that Mr. Ziperman purported to have authority to set sales objectives as well.

37.     Blumenschine claims she was not privy to, and had no input regarding, the Company's decision to terminate George Saroyan, a younger, male salesperson. Blumenschine dep., pp. 87, 188.

*RESPONSE:* Admitted, except that plaintiff's statements, when placed into a proper context, reveal that she was "surprised" that she was not apprised of the decision to terminate said employee.

38.     Blumenschine's "management responsibility" for George Saroyan consisted of nothing more than relaying information received from the Publisher of "Matrix" to Saroyan. Blumenschine dep., pp. 84-85.

*RESPONSE:* Denied. Plaintiff expressly states that she sought to help him establish prospects as they related to his sales. (Blumenschine Depo. P84 L20 to P85 L13 (Def.Ex. B).)

39.     Blumenschine claims she was not privy to and had no input regarding the Company's decision to place Ms. Terry Nelson on temporary probation. Blumenschine dep., pp. 164-167.

*RESPONSE:* Denied. Plaintiff not only had the authority to terminate said employee, but also recommended certain "restrictions" be placed upon her. (Blumenschine Depo. P164 L1-P167 L11 (Def.Ex. B).)

40.     Hanson regularly reviewed sales figures and projected sales for the Company's two magazines. Hanson dep., p. 32; Kinnaman dep., p. 51; Shannon dep., pp. 21-22.

*RESPONSE:* Denied. Mr. Hanson stated that every year between New Year's and to the end of March, he only works on Mondays and Fridays, the rest of the time he is skiing. (Hanson Depo. P12 L18 –P13 L7 (Def.Ex. C).)

41.     The tragic events in New York City on September 11, 2001, caused the advertising industry to suffer. Blumenschine dep., pp. 161-162; Hanson dep., p. 39. These events affected sales volume for "Matrix" magazine in fall 2001. Blumenschine dep., pp. 114-115; Hanson dep., p. 63.

*RESPONSE:* Admitted, except that despite the tragic events of September 11, 2001 and the purported negative effects it had on Matrix magazine, plaintiff less than two weeks later was promoted to Associate Publisher for her great contributions to the magazine.

42.     However, despite the struggling technology and advertising markets, Ms. Terry Nelson, a female employee older than Blumenschine, continued to have strong sales. Hanson dep., pp. 34-35; Ziperman dep., p. 58, Ex. "H" para. 2; see also, para. 20, supra.

*RESPONSE:* Admitted, except that plaintiff was not a salesperson with a commission plan based on set objectives as Ms. Nelson was. Moreover, Ms. Nelson was a subordinate of plaintiff.

43.     Blumenschine's sales volume decreased significantly throughout the latter part of 2001 (Blumenschine dep., p. 115; see also, para. 20, supra), and was projected to continue in an appreciable decline. Hanson dep., pp. 32, 34-35; Ziperman dep. Ex. "F".

*RESPONSE:* Denied. Plaintiff's projected sales were not available during the latter part of 2001 and, therefore, a projected decline cannot be established. In addition, plaintiff's actual sales were known by defendant prior to her being given a promotion. (Ziperman Depo. P75 L20—P76 L8 and Ex. F thereto (Def.Ex. D).)

44.     Blumenschine asked the Company's managers if she would be fired or if her job was in jeopardy because of her poor sales. Hanson dep., p. 42; Kinnaman dep., p. 46; Ziperman dep., Ex. "I" para. 5. Blumenschine admits she asked Shannon this. Blumenschine dep., pp. 188-189; Answer to Interrogs. 8.

*RESPONSE:* Denied, except that it is admitted that plaintiff made a statement that was taken out of context. Plaintiff asked defendant if she was being terminated only after defendant

12

told her not to use the phones or do any work. (Blumenschine Depo. P126 L6 – P127 L9 & P189

L1—L4 (Def.Ex. B).)

     45.    The Company's managers specifically assessed Blumenschine's dramatically-declining sales revenues, actual and projected, for the last few months of 2001 and projected into early 2002. Hanson dep., pp. 49-51; Shannon dep., pp. 39-41, 53, 60, 85; Ziperman dep., pp. 68-69; Answer to Interrogs. 13.

    *RESPONSE:* Denied. Plaintiff's projected sales were not available during the latter part

of 2001 and, therefore, projections into 2002 were not even possible. (Ziperman Depo. Ex. F

(Def.Ex. D).)

     46.    Based solely on her failure to generate advertising sales for "Matrix" magazine, in or about mid-November 2001, Joe Hanson made a business decision that the Company must terminate Blumenschine. Hanson dep., pp. 49-51; Hanson dep., Ex. "R"; Shannon dep., p. 39; Answer to Interrogs. 1.

    *RESPONSE:* Denied. Mr. Shannon admitted that he based his decision to terminate

plaintiff upon projections which do not even exist, and defendant stated that sales figures were

the sole and exclusive reason for plaintiff's discharge. Moreover, plaintiff's alleged "poor sales"

were known to defendant prior to her promotion. (Ziperman Depo. P75 L20—P76 L8 and Ex. F

thereto (Def.Ex. D).)

     47.    As a courtesy, the Company waited until after the holiday season 2001 to inform Blumenschine of its decision. Hanson dep., pp. 51-52; Shannon dep., Ex. "Q", para. 14.

    *RESPONSE:* Denied. Plaintiff was terminated after the holidays after the two young

"boys" agreed to work for defendant. (Shannon Depo. P44 L8-17 (Def.Ex. E).)

     48.    Blumenschine was terminated as of January 2 or 3, 2002. Complaint, para. 20; Hanson dep., Ex. "R"; Shannon dep., Ex. "P".

    *RESPONSE:* Admitted.

49.     Although Blumenschine complains that a "similarly situated young male" was not similarly treated, despite low sales figures (Complaint, para. 22), she admits that the person referred to was George Saroyan ("Saroyan"). Blumenschine dep., p. 175.

**RESPONSE:** Denied.  When read properly, plaintiff asserts that she was not treated as favorably as "another young male" within defendant's employment.  It was not stated that she was "similarly situated" to a male salesperson.  It is admitted, however, that the young male in question is George Saroyan. (Complaint ¶22 (Def.Ex. A).)

50.     In fact, on or about November 27, 2001, Saroyan, a part-time salesman for "Matrix", _was_ dismissed by the Company for his poor sales performance. Hanson dep., Ex. "R".

**RESPONSE:** Admitted.

51.     Blumenschine now admits Saroyan was terminated a few weeks prior to her own termination because the Company was dissatisfied with Saroyan's performance, as well as his sales volume. Blumenschine dep., pp. 83-84.

**RESPONSE:** Admitted, except plaintiff was an employee who had recently been promoted to Associate Publisher, was blindsided by her termination and not given any notice unlike Mr. Saroyan, who not only was given an opportunity to cure his poor sales, but demonstrably did have poor sales.

52.     In or around September of 2001, Dan Shannon replaced Kinnaman as Publisher of "Matrix" magazine, and consequently became Blumenschine's direct supervisor.  Complaint, para. 16; Blumenschine dep., p. 84; Shannon dep., p. 26; Ziperman dep., pp. 54-55.

**RESPONSE:** Admitted.

53.     Blumenschine had no problems working with Shannon until December 2001. Blumenschine dep., p. 213.

**RESPONSE:** Denied.  Plaintiff states that her endless effort to work well with Mr. Shannon was ultimately futile. Moreover, defendant admits that plaintiff complained that