defendant's management team was a "boys club." (Blumenschine Depo. P213 L1--L22 (Def.Ex. B); Shannon Depo. P49 L12--P51 L2 (Def.Ex. E).)

54. The only direct evidence Blumenschine claims to have of sex discrimination is one occasion in late October or November 2001, when Blumenschine herself made a comment referring to management personnel at the Company as a "boys' club." Complaint, para. 18; Blumenschine dep., pp. 127, 128, 179; Shannon dep., pp. 49-51.

*RESPONSE:* Denied. Mr. Shannon admitted, among other things, to plaintiff's charge that he withheld her from meetings and never recognized her promotion into the position of Associate Publisher. Plaintiff further alleges Mr. Shannon told sexual jokes, looked at her sexually, and displayed a sexist attitude toward women in management. (Shannon Depo. P49 L12—P51 L2, P62 L18-L23 (Def.Ex. E); Blumenschine Depo. P196 L1—P197 L14 (Def.Ex. B).)

55. Blumenschine did not make any complaints about Dan Shannon, the "boys' club" -- or any other alleged act of sex discrimination -- to any other management personnel or employee at the Company. Blumenschine dep., pp. 134-135; Hanson dep., pp. 54-55; Kinnaman dep., pp. 35-36, 55; Shannon dep., p. 106; Ziperman dep., p. 88, Ex. "H" para. 3.

*RESPONSE:* Denied. Daniel Kinnaman, a member of defendant's management team, admitted that plaintiff tried to counter Mr. Shannon's repressions by seeking more duties involving management and that he himself reacted adversely toward her in relation to such action to which she objected. (Kinnaman Depo. P38 L23--P39 L2 (Def.Ex. F).)

56. Blumenschine never made any purported complaint of any kind of discrimination to Hanson. Blumenschine dep., p. 130; Hanson dep., pp. 54-55.

*RESPONSE:* Denied. Plaintiff specifically states that she attempted to voice her complaints to Mr. Hanson. (Blumenschine Depo. P130 L8—P131 L6 (Def.Ex. B).) Moreover, Mr. Hanson stated that he had received complaints from plaintiff prior to the "boys club"

15

comment, but that he dismissed them as plaintiff's sarcasm. (Hanson Depo. P62 L17 --P63 L10 (Def.Ex. C).)

57. No one at the Company was aware that Blumenschine's comment about a "boys' club" was intended to be a complaint of sex discrimination until Blumenschine started these legal proceedings against the Company. Hanson dep., pp. 53-55; Kinnaman dep., p. 55; Shannon dep., p. 106; Ziperman dep., pp. 80-81.

*RESPONSE:* Denied. Mr. Shannon stated that plaintiff had "scoffingly[2]" made her complaint of discrimination to him that the small management group of the company was a boys club prior to these legal proceedings, and there was no other way to reasonably interpret plaintiff's remarks other than as a complaint of sexist conduct. (Shannon Depo. P49 L12—P51 L2 (Def.Ex. E).)

58. Blumenschine's "boys' club" comment was not known and never mentioned during the Company's discussion(s) about terminating, and decision to terminate, Blumenschine. Hanson dep., p. 62; Ziperman dep., p. 81.

*RESPONSE:* Denied. Plaintiff's "boys club" comment was known by Mr. Shannon, defendant's agent, prior to defendant's decision to terminate her, as she was terminated on or around January 2, 2002, and defendant admits that plaintiff complained well before that time. (Shannon Depo. P49 L12—P51 L2 (Def.Ex. E).)

59. The only time in its history the Company actually did receive a complaint of inappropriate behavior and/or discrimination concerning an employee (Dan Boucher), the Company immediately investigated and took remedial action, eventually terminating the employee involved (an incident which had nothing to do with Blumenschine). Boucher dep., pp. 57-59; Hanson dep., pp. 18-19; Shannon dep., pp. 101-104.

*RESPONSE:* Denied. Defendant admits that it received complaints that its management team was a "boys club" and that plaintiff was prevented from undertaking her managerial duties

---

[2] Merriam-Webster Dictionary defines the verb "scoff" as "to show contempt by derisive acts or language; to treat or address with derision."

16

well before the next reported incident of sex discrimination it received which was <u>after</u> plaintiff's termination and filing with the CHRO. (Shannon Depo. P49 L12—P51 L2 (Def.Ex. E).)

60. Blumenschine's only evidence of her claim that Shannon told off-color, sexist, or otherwise inappropriate jokes (Complaint, para. 17), is a single occasion, or perhaps two, where Shannon was purportedly telling Viagra jokes. Blumenschine dep., pp. 196-197, 247.

*RESPONSE:* Denied. (Blumenschine Depo. P196 L1—P197 L14 (Def.Ex. B).)

61. Even this alleged joking was done in the presence of others and was not directed toward Blumenschine personally. Blumenschine dep., pp. 196-197, 246-247.

*RESPONSE:* Denied, except admitted that Mr. Shannon's off-color, sexist jokes were not always directed at her and need not have been so directed to be actionable. (Blumenschine Depo. P196 L1—P197 L14 (Def.Ex. B).)

62. Any alleged inappropriate joke-telling was done in mixed company at business conventions. Blumenschine dep., p. 246.

*RESPONSE:* Admitted.

63. No one at the Company has otherwise known Shannon to tell, or ever complained of his telling, any inappropriate joke. Boucher dep., p. 53; Hanson dep., p. 46; Kinnaman dep., p. 56; Ziperman dep., p. 83.

*RESPONSE:* Plaintiff has insufficient knowledge and information to form a belief as to this contention.

64. Blumenschine can only recall one specific meeting from which she was ever allegedly excluded. Blumenschine dep., pp. 185-186.

*RESPONSE:* Denied. Mr. Shannon only admits to excluding plaintiff from one meeting, and plaintiff clearly states that she was excluded from a number of managerial meetings in which she was denied access. (Blumenschine Depo. P184 L25—P186 L25 (Def.Ex. B).)

17

65. The Company did not give Blumenschine additional duties after September 2001 which required her to attend such a management meeting. See paras. 33-39, supra.

*RESPONSE:* Denied. Plaintiff was promoted into management and denied the opportunity to perform her managerial duties by defendant. (Blumenschine Depo. P184 L25--P186 L25 (Def.Ex. B).)

66. The alleged exclusionary meeting occurred in December 2001, at a time after the Company had made its decision to terminate Blumenschine. Shannon dep., pp. 44-45; see para. 46, supra.

*RESPONSE:* Denied. Plaintiff states that she was excluded from a number of managerial meetings while working under Mr. Shannon. (Blumenschine Depo. P184 L25--P186 L25 (Def.Ex. B).)

67. Blumenschine did not complain about her perceived exclusion to anyone except Dan Shannon in December 2001, by which time Hanson had already decided to terminate Blumenschine's employment for poor sales performance. Blumenschine dep., pp. 130, 152-153; Hanson dep., Ex. "R".

*RESPONSE:* Denied. Plaintiff had already made her complaint of being excluded and was chosen by Mr. Shannon for termination prior to December 2001. (Blumenschine P184 L25--P186 L25 (Def.Ex. B); Kinnaman Depo. P38 L23--P39 L2 (Def.Ex. F); Shannon Depo. P44 L8-17 & P49 L12—P51 L2 & P62 L18—23 (Def.Ex. E).)

68. In or about December 2001, the Company received notice that its principal competitor, "University Business," was going out of business and would publish its last issue in January 2002. Hanson dep., pp. 51, 53 and Ex. "R"; Shannon dep., pp. 41-42.

*RESPONSE:* Denied. Mr. Shannon stated that he may have learned that "University Business" was going out of business as early as November 2001. (Shannon Depo. P41 25—P42 L11 (Def.Ex. E).)

18

69. Shortly thereafter, Hanson initiated discussions with the owners of "University Business" as to the possibility of the Company acquiring some of its assets. Hanson dep., p. 8.

*RESPONSE:* Admitted, except Mr. Shannon had commenced discussion with University Business as early as November 2001 and Mr. Hanson had ongoing discussion with it over the years.

70. The owners of University Business ultimately agreed to sell certain assets to the Company, including the right to continue publication of "University Business," and the acquisition was consummated in early 2002. Hanson dep., p. 7; Ziperman dep., Ex. "I", para. 8.

*RESPONSE:* Plaintiff is without sufficient knowledge to ascertain exactly when and under what terms defendant acquired "University Business."

71. In or about December 2001, after the Company had made its decision to terminate Blumenschine, two sales personnel from "University Business," Tom Terry and Darren Sikorsky, approached the Company to discuss employment possibilities with the Company. Hanson dep., p. 53; Shannon dep., Ex. "Q", paras. 15, 16.

*RESPONSE:* Denied. Defendant admits that it had been in discussions with Tom Terry and Darren Sikorsky regarding employment possibilities prior to December 2001. (Shannon Depo. P44 L8-17 (Def.Ex. E).)

72. The Company had decided to terminate Blumenschine before ever being approached by these two salespersons. Shannon dep., p. 44; see paras. 45-47, supra.

*RESPONSE:* Denied. Mr. Shannon had decided to terminate plaintiff around the time he was in discussions with these two salespersons. (Shannon Depo. P44 L8-17 (Def.Ex. E).)

73. Although hired by the Company when it acquired the assets of University Business in early 2002, Mr. Sikorsky was terminated by the Company in or about December 2002, and Mr. Terry was terminated by the Company in or about April 2003, both for poor sales performance. Hanson dep., Ex. "R."

*RESPONSE:* Plaintiff has insufficient knowledge and information to form a belief as to this contention.

19

74. Terry Nelson is a highly-compensated female employee of the Company <u>older than Blumenschine</u>, who consistently sold more advertising space than Blumenschine during Blumenschine's tenure with the Company, and Ms. Nelson continues to be employed by the Company. Blumenschine dep., pp. 80-81, 92; Ziperman dep., Ex. "F" and Ex. "I", para. 4.

<u>*RESPONSE*</u>: Denied. Plaintiff, unlike Terry Nelson, was hired and promoted by a member of management, and Terry Nelson was always plaintiff's subordinate. In addition, Terry Nelson did not consistently sell more advertising space than plaintiff. (<u>See</u> promotion e-mail (attached as Exhibit J to Plaintiff's Appendix of Exhibits in Support of Motion for Summary Judgment (hereinafter "Pl. Ex."); Ziperman Depo. Ex. H (Def.Ex. D); Shannon Depo. P49 L12—P51 L2 (Def.Ex. E); Blumenschine Depo. P164 L1-P167 L11 (Def.Ex. B).)

75. Ms. Melanie Jenkins, a 46-year-old female, was the Company's <u>most</u> highly compensated employee in 2001. Shannon dep., Ex. "Q", para. 11; Ziperman dep., Ex. "T", para. 6.

<u>*RESPONSE*</u>: Plaintiff has insufficient knowledge as to the compensation of other employees.

76. Ms. Nelson and Ms. Jenkins, both females over forty, were and remain among the Company's top five (5) most highly compensated employees. Ziperman Ex. "T", paras. 4 and 6.

<u>*RESPONSE*</u>: Plaintiff has insufficient knowledge as to the compensation of other employees.

77. Blumenschine admits she was not terminated exclusively because of her age. Blumenschine dep., pp. 90, 93, 147-148, 150.

<u>*RESPONSE*</u>: Admitted. Plaintiff also states that she was terminated because of her sex.

20

78. Hanson repeatedly discussed Blumenschine's poor sales performance with her before her termination. See para. 22, supra.

*RESPONSE:* Denied. Plaintiff has never discussed her "poor" sales performance with Mr. Hanson and its alleged impact on her tenure with defendant as alleged. (Blumenschine Depo. P126 L6 – P127 L9 & P130 L8—P132 L14 (Def.Ex. B).)

### DISPUTED ISSUES OF MATERIAL FACT

1. Plaintiff was selected by Mr. Shannon for termination after receiving complaints of gender discrimination. (Shannon Depo. P39 L1--P40 L1, P49 L12--P51 L25, P56 L10 (Def.Ex. E); Hanson Depo. P53 L18--P54 L14 (Def.Ex. C); Ziperman Depo. P76 L1-8 (Def.Ex. D).)

2. Mr. Shannon was the driving force in the ultimate decision to terminate plaintiff. (Shannon Depo. P39 L1--P40 L1, P49 L12--P51 L25, P56 L10 (Def.Ex. E); Hanson Depo. P53 L18--P54 L14 (Def.Ex. C); Ziperman Depo. P76 L1-8 (Def.Ex. D).)

3. Mr. Shannon, as supervisor of plaintiff, abused the power of his position to further the harassment of plaintiff, leaving defendant liable despite any claim that it did not have knowledge of Mr. Shannon's unlawful conduct. (Shannon Depo. P39 L1--P40 L1, P49 L12--P51 L25, P56 L10 (Def.Ex. E).)

4. No action was taken to provide, prevent and promptly correct Mr. Shannon's discriminatory behavior. (Kinnaman Depo. P55 L4-25 (Def.Ex. F).)

5. Defendant did not provide any avenue for plaintiff to avoid Mr. Shannon's harassment. (Hanson Depo. P17 L14—L16 (Def.Ex. C).)

21

6. No affirmative defense is available to defendant because Mr. Shannon's harassment culminated in a tangible negative employment action. (Hanson Depo. P17 L14—L16 (Def.Ex. C).)

7. There is an all-male executive team that carries with it the power to hire, fire, promote and set salaries. (Ziperman Depo. P19 L18-25 (Def.Ex. D); Shannon Depo. P14 L21-24, P16 L1-14 (Def.Ex. E); Kinnaman Depo. P17 L10--P21 L17 (Def.Ex. F); Hanson Depo. P13 L16--P15 L17 (Def.Ex. C).)

8. Defendant does not have an "open door" policy. (Hanson Depo. P17 L14—L16 (Def.Ex. C).)

9. Hanson was not the sole decision maker in connection with the decision to terminate plaintiff. (Shannon Depo. P52 L16- -P53 L16 (Def.Ex. E); Ziperman Depo. P48 L17—P49 L2 (Def.Ex. D); Hanson Depo. P49 L7-L20, P50 L9-18 (Def.Ex. C).)

10. Hanson does not make all executive decisions for defendant. (Ziperman Depo. P19 L18-25 (Def.Ex. D); Shannon Depo. P14 L21-24, P16 L1-14 (Def.Ex. E); Kinnaman Depo. P17 L10--P21 L17 (Def.Ex. F); Hanson Depo. P13 L16--P15 L17 (Def.Ex. C).)

11. Plaintiff's responsibility as a National Sales Manager carried with it the authority to recommend termination as well as the over seeing of salespersons. (See Offer Letter (Pl.Ex. H); Blumenschine Depo. P164 L1-P167 L11 (Def.Ex. B).)

12. Plaintiff's compensation was not directly related to her amount of sales. (Defendant's Answer ¶10 (Pl.Ex. I); Kinnaman Depo. P29 L23—P30 L4 (Def.Ex. F); Ziperman Depo. P50 L9-19 (Def.Ex. D).)

13. Sales figures with defined goals and or objectives did not exist for plaintiff as they did for defendant's salespeople. (Shannon Depo. P40 L7-L13 (Def.Ex. E); Hanson Depo. P50 L22--P51 L12, P62 L3-5 (Def.Ex. C); Ziperman P48 L17--P49 L2 (Def.Ex. D).)

14. Plaintiff was reassured that her position was secure. (See promotion e-mail (Pl.Ex. J); Kinnaman Depo. P46 L8-15 (Def.Ex. F).)

15. Plaintiff was never told that defendant was concerned with her sales performance. (See promotion e-mail (Pl.Ex. J); Kinnaman Depo. P46 L8-15 (Def.Ex. F).)

16. Plaintiff's promotion was not one in title only. (See promotion e-mail (Pl.Ex. J).)

17. Plaintiff never stated that she expected to be terminated because of her sales performance. (Blumenschine Depo. P123 L2 – P127 L9 & P130 L8—P132 L14 (Def.Ex. B).)

18. Plaintiff did not acquiesce to the nonrecoverable portion of her compensation being withheld. (Hanson Depo. P48 L6-11 (Def.Ex. C); Ziperman Depo. P49 L5--P53 L17 (Def.Ex. D).)

19. Plaintiff's promotion was merit based. (See promotion e-mail (Pl.Ex. J); Kinnaman Depo. P38 L11-L15, P38 L23--P39 L2 (Def.Ex. F).)

20. Plaintiff's management responsibility for George Saroyan consisted of overseeing his sales effort. (Blumenschine Depo. P164 L1—P167 L11 (Def.Ex. B).)

21. Defendant did not have "projections" of plaintiff's sales figures upon which to base her termination. (Shannon Depo. P39 L1—P40 L1, P49 L12—P51 L25, P56 L10, P57 L5—P62 L23 (Def.Ex. E).)

22. Plaintiff never asked defendant's management if she would be fired for her sales performance. (Blumenschine Depo. P126 L6—P127 L9, P130 L8—P132 L14 (Def.Ex. B).)

23

23. Defendant's registered plaintiff's "boys club" comment as a complaint, referring to her exclusion from its all-male management team. (Kinnaman Depo. P55 L4—25 (Def.Ex. F); Shannon Depo. P49 L12—P51 L2 (Def.Ex. E).)

24. Plaintiff's gender played a role in defendant's decision to terminate her. (Ziperman Depo. P69 L10—11 (Def.Ex. D).)

25. Plaintiff, unlike George Saroyan, a true salesperson, was not given notice that her sales figures were having any negative influence on her position when, in fact, she was promoted into a position of management. (See promotion e-mail (Pl.Ex. J); Kinnaman Depo. P46 L8—15 (Def.Ex. F).)

26. Plaintiff had problems with Mr. Shannon's discrimination at the time he became her direct supervisor. (Shannon Depo. P55 L18—P56 L10 (Def.Ex. E).)

27. Mr. Shannon made sexist and ageist jokes and comments. (Complaint ¶17 (Def.Ex. A).)

28. Plaintiff's complaint of sex discrimination triggered defendant's decision to terminate her. (Complaint ¶25 (Def.Ex. A).)

29. Plaintiff was excluded from managerial meetings. (Shannon Depo. P49 L12—P51 L2 (Def.Ex.E).)

30. Male employees replaced plaintiff. (Ziperman Depo. P69 L10—L11, P75 L5-7; (Def.Ex. D); Shannon Depo. P44 L8-17, P55 L8-L17 (Def.Ex. E).)

31. Defendant had hired two young men prior to any decision to terminate plaintiff. (Ziperman Depo. P69 L10—L11, P75 L5-7 (Def.App. Ex. D); Shannon Depo. P44 L8-17, P55 L8-L17 (Def.Ex. E).)

24

32. Defendant had decided to terminate plaintiff after being in contact with two male salespeople. (Ziperman Depo. P69 L10—L11, P75 L5-7 (Def.Ex. D); Shannon Depo. P44 L8-17, P55 L8-L17 (Def.Ex. E).)

33. Defendant intentionally discriminated against plaintiff due to her gender and complaints of discrimination. (Complaint ¶ 25 (Def.Ex. A).)

34. Defendant discriminated against plaintiff by firing her. (Complaint ¶25 (Def.Ex. A).)

By _____
Scott R. Lucas (ct00517)
Mary Alice S. Canaday (ct17608)
Michel Bayonne (ct24628)
*Attorneys for Plaintiff*
*Lisa K. Blumenschine*
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mcanaday@mlc-law.com
mbayonne@mlc-law.com

25

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of January, 2004, a copy of the foregoing was mailed, first class, postage prepaid, to:

George P. Birnbaum, Esq.
Thomas P. Minogue, Esq.
Michael L. Ferch, Esq.
Minogue Birnbaum LLP
237 Elm Street
New Canaan, CT 06840
Phone: (203) 966-6916
Fax: (203) 966-6917

_____
Scott R. Lucas