2000 WL 351399
(Cite as: 2000 WL 351399 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

In the Matter of the Arbitration Between Francesca BRIAMONTE, Petitioner,
v.
LIBERTY BROKERAGE, INC., Respondent.

**No. 99 Civ. 2735 LAP.**

March 31, 2000.

*MEMORANDUM AND ORDER*

PRESKA, J.

*1 Liberty Brokerage, Inc., respondent here, commenced arbitration proceedings against Francesca Briamonte, petitioner here, on December 15, 1997 to collect on a promisory note executed by petitioner while she was employed at Liberty Brokerage, Inc. (See Affirmation of Jefferey Plotkin, ¶ 6) (hereinafter "Plotkin Affirm."). Petitioner's answer included counterclaims for defamation, violation of National Association of Securities Dealers ("NASD") rules, breach of contract, discrimination in the terms and conditions of employment, sexual harassment and unlawful termination based on sex discrimination. (See Pet. to Confirm in Part and Vacate in Part Arbitration Award Ex. C at 2-6) (hereinafter "Pet."). The Arbitration Panel, composed of three arbitrators, ruled that petitioner was liable for the remaining balance with interest on the promissory note and for respondent's attorney's fees in collecting on the note. (See id. Ex. A at 3-5.) The Panel also held respondent liable for "termination motivated by discrimination based upon gender." (Id. at 4.) The Panel dismissed petitioner's claims for defamation, violation of NASD Rules and breach of contract and held that "all other claims for relief are hereby denied." (Id.) Petitioner moved in this court to confirm the arbitration award with respect to the discrimination claim and to vacate the award to the extent that the Panel did not award petitioner attorney's fees incurred in litigating the discrimination claim. (See Petitioner's Memorandum of Law in Support of Motion to Confirm in Part and Vacate in Part Arbitration Award at 3, 5) (hereinafter "Petitioner's Memorandum of Law"). Respondent filed a cross-motion seeking to confirm the award with respect to the promissory note and to vacate the award with respect to the finding of discriminatory termination. (See Respondent's Memorandum of Law at 1.)

BACKGROUND

Petitioner was employed by respondent as a broker from approximately 1986 until her termination in May 1997. (See Pet. at 2.) On or about February 12, 1997 and while still employed by respondent, petitioner executed a promissory note pursuant to which she promised to pay respondent the principal sum of $33,364.25 plus interest by February 15, 1998. (See id.) The promissory note contained an acceleration clause pursuant to which the loan would become due immediately and payable upon the termination of petitioner's employment by respondent. (See Plotkin Affirm., ¶ 6.) Petitioner agreed to reimburse respondent for its attorney's fees and costs incurred in collecting payment due on the note. (See id.) Petitioner thereafter failed to make payment of the outstanding balance due on the promissory note, and respondent initiated an arbitration seeking the outstanding balance, accrued interest, attorney's fees and costs. (See id.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

In her answer, petitioner claimed that she was not in breach of the promissory note. (*See id.*, ¶ 7.) However, prior to the arbitration hearing, petitioner conceded liability for the promissory note, the accrued interest, attorney's fees and costs. (*See id.*, ¶ 10.)

*2 Petitioner also brought counterclaims for defamation, violation of NASD rules, breach of contract, discrimination in the terms and conditions of employment, sexual harassment, and unlawful termination based on sex and age discrimination. (*See id.*, ¶ 8.) [FN1] Petitioner's discrimination claims which were brought pursuant to Title VII, the New York City Human Rights Law and the New York State Human Rights Law, included allegations of discriminatory terms and conditions regarding compensation, awarding of written employment contracts, flexibility and tolerance regarding time and attendance, responses to complaints, assignment and reassignment of accounts, respondent's permitting an environment that evinces hostility and disrespect of women and unlawful discharge of petitioner (Pet. Ex. C at 3-5.)

> FN1. Because the present action is limited to the Panel's award regarding gender discrimination and the promissory note, I will limit my discussion to these issues.

With respect to the discrimination claims, petitioner alleged that respondent discriminated against her in many different ways. (*See id.*) Because the Panel's finding of gender discrimination in connection with petitioner's termination is the only claim at issue in this proceeding, my discussion will be limited to the events surrounding petitioner's termination.

During the arbitration, petitioner testified to the following facts regarding the First Boston account. (*See* Plotkin Affirm., ¶ 33-56.) In or about 1990, petitioner was assigned the First Boston account. (*See id.*, ¶ 33.) In 1996, Vincent Albanese and John Knapp became the new traders at First Boston. (*See id.*, ¶ 34.) In May 1997, Liberty changed broker coverage of the First Boston account from petitioner to James Meegan. (*See id.* Ex. 1 at 144-45.) Petitioner contended that the transfer was made because Meegan was a "single guy" who was interested in hockey and golf and therefore could better develop the account. (*See id.*, Ex. 3 at 135, 197; Kimmel Aff. Ex. B.) Petitioner also testified, and other witnesses' testimony confirmed, that Albanese and Knapp were happy with petitioner's handling of the account. (*See* Plotkin Affirm. Ex. 1 at 144-45; Ex. 2 at 143.) This decision to transfer the account, petitioner argued, constituted unlawful discrimination. (*See id.* Ex. 1 at 19.)

Respondent informed Albanese of its intention to transfer the First Boston Account on May 8, 1997. (*See* Plotkin Affirm., ¶ 36.) On May 9, 1997, Albanese called petitioner to give her a "heads up." (*See id.*, ¶ 37.) Over the following weekend, there were a series of phone calls between Albanese and Knapp and petitioner. (*See id.* Ex. 1 at 190-93; Ex. 2 at 265.) During the conversations, petitioner and Albanese and Knapp discussed respondent's decision to transfer petitioner from the First Boston account. (*See id.* Ex. 1 at 192; Ex. 2 at 266-67.) Respondent learned of the phone conversations and subsequently terminated petitioner. (*See id.* Ex. 1 at 197-98; Ex. 3 at 86- 86, 146-47 .) At the time respondent terminated petitioner, respondent believed that petitioner initiated the phone calls. (*See id.* Ex. 1 at 197-98.) Petitioner and Albanese testified that Albanese and Knapp initiated the phone calls, (*see id.* Ex. 1 at 198; Ex. 2 at 265), and petitioner testified that she informed Noel Peters and Bob McIntyre, co-managers, and Ed McCarthy, respondent's attorney. (*See id.* Ex. 1 at 196-98.)

*3 Respondent represented that it terminated petitioner because it considered

petitioner's calling Albanese and Knapp a circumvention of authority. (*See id.* Ex. 3 at 90-91.) Petitioner testified that she believed that respondent's stated reason for firing her was "an excuse." (*See id.* Ex. 2 at 134.) Petitioner stated, "I think that they always liked just having their boys club. That's what I believe." (*Id.* Ex. 2 at 135.) Petitioner also stated her belief that at least part of the reason for her termination was the fact that she was a woman. (*See id.* Ex. 2 at 140, 153-55; Ex. 4 at 40, 44.) Petitioner also put forth the theory that respondent had the intent to terminate her at the time the First Boston account was transferred from her. (*See id.* Ex. 1 at 19, 162-63; Ex. 2 at 116-18.) The arbitration transcript also reflects that, although petitioner did have some work-related problems, she generally was a "good worker." (*See id.* Ex. 3 at 224.)

The Panel held that petitioner was liable for the remaining balance on the promissory note, accrued interest, attorney's fees and costs. (*See* Pet. Ex A at 3-4.) The Panel also held respondent liable for petitioner's unlawful termination but held for respondent on all of petitioner's other claims. (*See id.* at 4.) Petitioner then moved to confirm the Panel's award to the extent it awarded damages to her for unlawful termination and moved to vacate to the extent the award did not award petitioner attorney's fees associated with discrimination claim. (*See* Petitioner's Memorandum of Law at 3, 5.) Respondent crossed-moved to confirm the Panel's award on the issue of the promissory note and to vacate the award with respect to the damages awarded petitioner for the discrimination claim. (*See* Respondent's Memorandum of Law at 1.)

DISCUSSION

I. Standard of Law

The standard for avoiding summary confirmation of an arbitration award is very high, and the burden of proof is on the party moving to vacate the award. *See Willemijn Houdstermaatschappij v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997). It is well-settled in this Circuit that " '[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." ' *Id.* (quoting *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993)). Thus, because of the severe limitation of a court's function in confirming or vacating an arbitration award, a district court must find that the arbitrators acted "in manifest disregard of the law" to vacate an arbitration award. *See id.* (citing *Wilko v. Swan*, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88 (1953)). A finding of manifest disregard requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law. It requires the finding "that 1) the 'arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether,' and 2) the 'law ignored by the arbitrators ... [was] well defined, explicit, and clearly applicable' to the case." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir.1993)).

*4 Arbitrators are not required to provide an explanation for their decision. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361-62 (1960). Here, the parties agreed that no explanation was to be provided to the parties, and none was. While the lack of an explanation makes the evaluation of the conduct and conclusions of an arbitration Panel more difficult, it does not change the standard of law I must apply. *See Willemijn Houdstermaatschappij*, 103 F.3d at 12. Thus, "a reviewing court can only infer from the facts of the case whether 'the arbitrator[s] appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." ' *Id.* at 12-13 (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986)). The Court of Appeals warns the reviewing court to "proceed with caution," (*id.* at 13), because if there is " 'even a barely colorable justification for the outcome reached,' " confirmation of the award is required.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Id. (quoting *Matter of Andros Compania Maritima, S.A. of Kissavos*, 579 F.2d 691, 704 (2d Cir.1978)). This applies even if the grounds for the arbitrators' decision are "based on an error of fact or an error of law." *Id.*

II. Petitioner's Termination

The law governing employment discrimination involves a burden shifting analysis and was well established before the arbitration proceeding at issue in the present action. *See De la Cruz v. New York City Human Resources Admin. Dept. of Soc. Servs.*, 884 F.Supp. 112, 115 (S.D.N.Y.1995), affd, 82 F.3d 16 (2d Cir.1996). During its opening statement at the arbitration hearing, respondent informed the Panel of the relevant law. (*See* Plotkin Affirm., ¶ 19, Ex. 1 at 42-43.) The Panel, therefore, knew of the governing legal principle, and that principle was well defined, explicit and clearly applicable.

The Panel had some basis for finding respondent's proffered reason for terminating petitioner to be pretextual. (*See, e.g., id.* Ex. 1 at 196-98, Ex. 2 at 131 (reflecting petitioner's testimony that she informed respondent that she did not initiate the phone calls to First Boston employees); Kimmel Aff. Ex. B. (exhibiting discrepancy between Peters's immediate, hand-written memorialization of meeting with Albanese and subsequent typed-version of notes; hand-written notes state that because Albanese's interests were hockey and golf, Jim Meegan should be on First Boston Account and that Albanese had "no problem" with petitioner or with Jim Meegan handling account; typed notes make no mention of hockey and golf and state that when informed that Jim Meegan would be on account, Albanese was "obviously happy")).

The Panel did have some basis upon which to find that respondent's basis for terminating petitioner was grounded in sex discrimination. First, petitioner presented evidence that the transfer of the First Boston account from petitioner to a male employee was a discriminatory act. (*See id.* Ex. 3 at 135, 197; Kimmel Aff. Ex. B.) Petitioner testified that transferring the account was part of a larger plan to terminate her employment. (*See* Plotkin Affirm. Ex. 1 at 162-63.) She also presented evidence that the First Boston traders were pleased with her work and that her supervisor believed she was a "good worker." (*See id.* Ex. 1 at 144-45; Ex. 2 at 143; Ex. 3 at 224.) Petitioner also testified that she believed that the termination itself was motivated by gender bias. (*See id.* Ex. 2 at 135, 140, 153-55.)

*5 Given the high standard a party must meet when seeking the vacation of an arbitration award, I cannot vacate the Panel's award with respect to its finding of discriminatory termination. There is at least a "barely colorable" ground for the Panel's decision.

II. Attorney's Fees

Section 2000e-5(k) of Title VII provides that "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). In construing nearly identical language of a general civil rights attorney's fees provision, 42 U.S.C. § 1988, the Supreme Court of the United States has stated that in order to "ensure effective access to the judicial process for persons with civil rights grievances[,] ... a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensely v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983) (internal citation and quotation omitted.)

Despite the presumption of the award of attorney's fees for a prevailing plaintiff, I do not find that the Panel's award should be vacated to the extent that it allegedly failed to award petitioner attorney's fees. "[C]ourts generally 'will not look beyond the lump sum award in an attempt to analyze the reasoning

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

processes of the arbitrators." ' *Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir.1991)* (quoting *Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir.1978)*).

Additionally, "[i]f there are several possible interpretations of an arbitration award, the ambiguities must be resolved, if possible, in a manner supporting the award." *Mutual Redevelopment House, Inc. v. Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO, 700 F.Supp. 774, 777 (S.D.N.Y.1988)*. The Panel held, *inter alia*, that "[c]laimant be and hereby is liable for and shall pay Respondent $250,000.00 for termination motivated by discrimination based upon gender." It is possible that this award included attorney's fees, or it is possible that the Panel found petitioner did not carry her burden of proof on this issue because she failed to present evidence of her attorney's fees. Given these possibilities and the high standard a party petitioning for a vacatur or modification of an arbitration award must meet, I do not find petitioner's argument persuasive.

IV. Promissory Note

Respondent seeks confirmation of the arbitration award to the extend that it awarded respondent damages, interest and attorney's fees incurred in litigating this issue. (*See* Respondent Memorandum of Law at 1.) Petitioner does not oppose respondent's petition. (*See* Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Vacate Arbitration Award at 12.) Therefore, the Panel's award with respect to the promissory note and related issues is confirmed.

CONCLUSION

Petitioner's petition to confirm the Panel's award with respect to the discriminatory termination finding is granted. Petitioner's petition to vacate the Panel's award with respect to attorney's fees incurred in litigating the discrimination claim is denied. Respondent's petition to vacate the Panel's award with respect to the discriminatory termination is denied. Respondent's petition to confirm the Panel's award with respect to the promissory note and related issues is granted.

*6 The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED:

2000 WL 351399, 2000 WL 351399 (S.D.N.Y.)

END OF DOCUMENT