
PLAINTIFF'S EXHIBIT NO. F

LISA K. BLUMENSCHINE            :   CHRO Case No. 0220357

V.                              :

PROFESSIONAL MEDIA GROUP LLC    :   MAY 16, 2002

## RESPONDENTS' STATEMENT OF FACTS

Respondents Professional Media Group LLC and Daniel Shannon offer the following statement of facts in response to the complaint of purported illegal and discriminatory practice filed by Lisa K. Blumenschine ("Blumenschine"):

1. Respondent Professional Media Group LLC (hereinafter, "Promedia" or the "Company") is a small Connecticut company which publishes two magazines, one (*District Administration*) primarily addressed to district administrators of high schools, and the other (*University Business incorporating Matrix*) addressed to college and university administrators.

2. Promedia only has 32 employees, 26 of whom work out of Promedia's sole office at 488 Main Street, Norwalk, Connecticut. Respondent Daniel Shannon holds the position of Publisher of *Matrix/University Business*.

3. Because Promedia's magazine business does not generate meaningful subscription revenue (almost all copies of its magazines are sent without charge to their

educational recipients), the business is wholly dependent on revenues from the sale of advertising (i.e., the monies paid by persons who advertise their educational products for sale in the pages of Promedia's magazines). This was the primary responsibility of complainant Blumenschine. The sole reason that Blumenschine was terminated on January 2, 2002 was that she was not fulfilling these job responsibilities.

4.  Blumenschine's promotion in the late summer of 2001 was designed to give her additional status so that she could sell more advertising. This did not happen; indeed, her production of advertising revenue steadily worsened throughout the fall of 2001 leading up to her termination. In 2001, for example, Lisa Blumenschine sold 26.3 pages of ads ($127,000) while her subordinate, a 55-year-old woman named Terry Nelson, sold 44.7 pages ($227,500).* Blumenschine's less-than-adequate sales, in fact, were in rapid decline in late 2001. In the last three issues of her tenure, her contributions were negligible: in September, Blumenschine sold 5.7 pages of advertising ($27,400 in revenues); in October, 2.7 pages ($13,100); and in November, only 1.2 pages ($5,500).

---

*Ms. Nelson is still with Promedia, earning more in 2002 than she was in 2001 because she is increasingly productive of sales and advertising revenues.

2

5. Blumenschine's termination for unsatisfactory performance came as no surprise to her. She recognized that she was not producing sufficient advertising revenues to justify her substantial salary (at least $80,000 per annum), and she even tried to precipitate her termination. On several occasions, she asked "When am I going to be fired?" and "When are you going to put me out of my misery?" If Blumenschine had sold sufficient advertising, she still would be working for the Company and would not have been terminated.

6. The claim that Blumenschine was discriminated against on the grounds of her sex or age is wholly false. The CHRO should note that in 2001 the Company's <u>most highly compensated employee</u> was a 46-year-old female, Melanie Jenkins, a salesperson who, because of her success, made over $40,000 <u>more</u> than the male chief operating officer of the Company, as well as more than any other salesperson. The success of Terry Nelson, a 55-year-old female, is discussed above.

7. Blumenschine's allegations of discrimination based on "sexist comments and jokes" purportedly made by Daniel Shannon are totally and emphatically denied, both as to any discriminatory conduct and as to any improper remarks.*

---

*Respondents also respectfully submit that Mr. Shannon, in his individual capacity, is not a proper respondent herein.

3

Indeed, the allegations against Mr. Shannon by Blumenschine strike the people who work with him on a daily basis as so preposterous as to suggest that they have been motivated on Blumenschine's part by something more than mere desperation at losing her job. In this regard, the CHRO is respectfully referred to the Affidavit of Daniel Shannon submitted herewith, which suggests that Blumenschine's false complaints against Mr. Shannon may be motivated, in part or whole, by his refusal to respond to inappropriate and innuendo-laden remarks Blumenschine made to him.

8. It also should be noted that the hiring of "two young guys" as salespersons by Promedia at the end of 2001 was not the cause of Blumenschine's termination; as stated, Blumenschine was discharged for poor sales performance. Both of the employees referred to became available upon the demise of their previous employer, a magazine named *University Business*, which had been a direct competitor with Promedia's *Matrix*. Subsequently, Promedia, through a subsidiary, acquired the salient assets of *University Business* (including its list of advertisers, as well as its name and trademark); subsequently Promedia has combined the two magazines into one. It should not be surprising that two able salespersons from this now-merged competitor came to work for the Company at this time. Neither their age nor

4

their gender had anything to do with their hiring, and their results speak for themselves (see affidavit of Daniel Shannon).

9. Finally, Blumenschine cannot support her claim that her termination was in any way caused by retaliation for her having made complaints of discrimination. Blumenschine filed no complaint of discrimination with the Company, and respondents deny that she had ever orally (much less repeatedly) complained of discrimination. Mr. Shannon remembers that Blumenschine on one occasion did use the term "boys' club" to refer to the fact that the senior management of the Company was male. Neither Mr. Shannon nor anyone else at the Company understood this comment to be a claim of unlawful discrimination, particularly given the highly compensated status of Ms. Jenkins, Ms. Nelson (and Blumenschine herself). Her personnel file, a copy of which is submitted herewith, reveals no claim of discrimination on which to ground any purported retaliatory action. If Promedia was unaware of her complaints, it could not have "retaliated."

10. The simple fact is that Blumenschine was earning quite a substantial salary and her production of advertising revenues had fallen off precipitously after her promotion. She repeatedly stated that she knew that her performance had been unsatisfactory. Ultimately Blumenschine was terminated

5

for lack of performance, not for any discriminatory or retaliatory reason. It is the Company's belief that she has brought these spurious claims because she is out of work and wants to see whether she can force the Company to "buy off" her claims.

Respondents respectfully request that the CHRO dismiss all of Blumenschine's claims as without merit.

_____
George P. Birnbaum
Attorney for Respondents
22 Old Studio Road
New Canaan, CT 06840
(203) 972-3063
JURIS No. 305258

OATH

State of Connecticut
Town of Norwalk
County of Fairfield

Personally appeared WILLIAM ZIPERMAN, an executive of respondent PROFESSIONAL MEDIA GROUP LLC, and made oath before me to the truth of the matters contained in the foregoing answer and responses and Respondents' Statement of Facts.

_____

Sworn to before me this 16th day of May, 2002.

_____
Notary Public or Commissioner
of the Superior Court
JURIS NO. 305258

**OATH**

State of Connecticut
Town of Norwalk
County of Fairfield


Personally appeared DANIEL SHANNON and made oath before me to the truth of the matters contained in the foregoing answers and responses, Respondents' Statement of Facts and affidavit.

*/s/ Daniel Shannon*

Sworn to before me this 16th day of May, 2002.

*/s/ Guy I. B.*
~~Notary Public or~~ Commissioner
of the Superior Court
JURIS NO. 305258