UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

LISA K. BLUMENSCHINE,          : CIVIL ACTION NO. 302CV2244 DJS
                               :
              Plaintiff,       :
                               :
vs.                            :
                               :
PROFESSIONAL MEDIA GROUP LLC,  : APRIL 17, 2006
                               :
              Defendant.       :

## (13) DEFENDANT'S REQUESTS FOR JURY INSTRUCTIONS

GENERAL INSTRUCTIONS

1. Introduction[1]

1.1  Members of the jury, you have listened to and seen the evidence in this case, and you have heard the arguments of counsel.  You are now to receive from me the rules of law that lie at the foundation of the various matters here in issue: the rules which, when applied by you, will lead to your ultimate decisions.

1.2  It is your duty as citizens and as jurors to deliberate on this case, and to arrive at fair and just decisions based upon the evidence and the law.  Sympathy as well as bias have no place in the case and you should conscientiously and definitely avoid any consideration of sympathy or bias as a basis for your decisions.  And that applies equally to the plaintiff and to the defendant.

1.3  I will first, if I may, direct your attention to certain general principles that will guide your consideration of the matters in this case before discussing the specifics of this case and the law applicable to them.

---

[1] Defendant expressly reserves its right to change, amend or supplement these jury instructions based on the facts adduced at trial and instructions or Orders of this Court.

1.4  First, I want to speak to you about what we call the pleadings in the case.  In a civil case, the plaintiff has to set forth first, in writing, her story of the facts upon which she founds her claims.  That first pleading is called the Complaint. In the Complaint the plaintiff sets forth the facts of her case and asks for legal remedies based on her version of the facts. Then the defendant files its written pleading, called an Answer, wherein the defendant responds to each and every one of the statements that comprise the story in plaintiff's Complaint.   In the Answer, the defendant may admit certain things and deny others, or state that it doesn't have knowledge or information at hand to be able to provide a more specific response, as well as set forth various defenses against what is alleged or stated in the Complaint.[2]

1.5  Ultimately these written pleadings lead to allegations of fact, disputed questions of fact, which are called the "issues" in the case, and that is what the Court and the Jury are to try -- those disputed allegations of fact.  Matters that are admitted in the pleadings do not require the Court and jury to hear evidence on:  undisputed facts are taken to be true.  It is only the matters in dispute in the pleadings which constitute the issues.   When the Court speaks to you about the issues, it means the disputed matters of fact raised by the written pleadings of the parties.[3]

1.6  The plaintiff cannot recover for something that is not alleged; she is limited by the allegations of her Complaint.   It is from the Complaint and the Answer that the issues arise in this case for your determination.[4]

1.7  In all cases, there are certain fundamental facts about which there is no dispute, where facts are either admitted in the pleadings or conceded at trial, and you're entitled to take them as true and use them as your foundation from which you proceed to consideration of the disputed issues.[5]

## 2.  Function of the Court and Jury

2.1  Let me remind you again that you are the sole judges of the facts.  It is your duty to find the facts.  You are to

---

[2] Adapted from Wright, D., Connecticut Jury Instructions (Civil), §11, p. 17 (2000) (hereinafter, "CJI").
[3] Id.
[4] Id. at § 11(c), p. 18.
[5] Id. at § 11(d)(1), p. 14 (2000 Supp.).

recollect and weigh the evidence and draw your own conclusions as to what the ultimate facts are.

2.2  It is my function and indeed my duty to instruct you on the law applicable to this case. You must apply the law, as I give it to you, to the facts you find proved. You are to accept the law from the court, that is, from me, considering my charge as a whole, without regard to any claims which have been made by counsel and without regard, also, to any convictions you yourselves may have as to what the law is or what you think the law ought to be. You will then render your verdict, which must be unanimous; if even one of you disagrees, you cannot render a valid verdict.

2.3  It is my right to make comments to you as to the weight or significance of evidence or as to the inferences you may draw from facts you find proven; but where I undertake to make comments of this nature, they are merely suggestive to you, for you to approve or disapprove, in the exercise of your own memories and your own sound judgment. My chief concern with the facts in the case is to refer to them insofar as to make clear to you the application of the rules of law to this particular case. If I refer to certain evidence or certain facts in this case, you are not to think that I mean thereby particularly to emphasize the matters of which I speak or to limit your consideration to them, as opposed to those to which I do not refer.[6]

2.4  Before a plaintiff is entitled to recover damages, she must show under the principles which I shall explain that there is legal liability on the part of the defendant. It is my function to tell you what rules of law are applicable to the evidence in this case, and it is your duty to accept and follow those rules as I give them to you. Insofar as the attorneys in argument have referred to any rules of law, you are to regard such reference only insofar as they coincide with the rules of law as I shall give them to you.[7]

2.5  Now, during the course of this charge, some of you may feel that I am indicating a preference for one side or the other. I may mention the plaintiff or the defendant more frequently, and some of you may feel that I want you to bring back a verdict for one side or the other. I assure you that this Court is neutral, it has no preference; it is your function (not the court's function) to decide this case, and the tonal quality of my voice is no indication as to any preference whatsoever.[8]

---

[6] Id., § 12(c), at p. 19.
[7] Id., § 12(d), at p. 20.
[8] Id., § 12(g), at p. 21.

3

### 3. Evidence

3.1   At the outset, I should inform you that I am not going to review or marshall the evidence for you. I am sure the evidence is still fresh in your minds, and counsel have just reviewed their factual contentions in their summations. If any comments that I do make about the evidence differ from your own recollection, it is still your recollection that controls, not mine.[9]

3.2   You must only consider the evidence properly admitted in the case. The evidence consists of the sworn testimony of the witnesses, and all exhibits.[10]

3.3   Statements, arguments, and characterizations of counsel, however, <u>including those made in the form of a question to a witness</u>, are not evidence in the case and should not be considered by you in your deliberations on the case. Again, it is your recollection of the evidence that governs.[11]

3.4   You must entirely disregard any evidence as to which an objection has been sustained by the court. It is the duty of the lawyers on each side of a case to object when the other side offers testimony or other evidence that the lawyer believes is not properly admissible. You should not show prejudice against a lawyer or her client because the lawyer has made objections. And you must not allow our discussions or my rulings on those technical matters to influence you in any way, for or against either side.[12]

3.5   Upon allowing testimony or other evidence to be introduced over the objections of one of the lawyers, the court has not indicated, nor have I meant to indicate, any opinion as to the weight or effect of such testimony or evidence. You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence -- each and every item of it as well as its totality. I have no opinion about the merit of any testimony. If I did, I would be encroaching on your job, and that I will not do.[13]

3.6   Anything you have seen or heard outside the courtroom is not evidence in the case, and must be entirely disregarded. But in your consideration of the evidence, you are not limited to

[9] See, <u>id.</u>, § 6(e)(1), p. 9, and § 12(a)(1), pp. 16-17 (2000 Supp.).
[10] See, <u>id.</u>, § 6(e)(2), pp. 9-10, and § 12(a)(1), pp. 16-17 (2000 Supp.).
[11] See, <u>id.</u>, § 6(e)(1), p. 9, and § 16(c), p. 29 (2000 Supp.).
[12] See, <u>id.</u>, § 16, pp. 27-28 (2000 Supp.).
[13] See, <u>id.</u>, § 15, pp. 22-23 (2000 Supp.).

the bald statements of witnesses. In other words, you are not
limited to what you see and hear as the witnesses testify. You
are permitted to draw, from facts that you find proved, such
reasonable inferences as you feel are justified in the light of
experience. An inference is a deduction or conclusion that
reason and common sense lead you to draw from facts that you find
have been proved.[14]

3.7   In practically all cases there are certain fundamental
facts about which there is no dispute; and where facts are either
admitted in the pleadings or are conceded at trial, you are
entitled simply to take them and use them as the foundation from
which you proceed to a consideration of the disputed issues.[15]

3.8   There may be situations in any case where direct
evidence or direct eyewitness testimony is not possible. In such
situations, it is permissible and proper for you, the jury, to
make all inferences and conclusions which, in your judgment and
discretion, may logically and reasonably be drawn from the facts
in evidence. The test is, not that the inference must
unavoidably and unerringly point in one direction, but, rather,
whether a rational mind could, with reasonableness, draw the
inference. Drawing logical deductions and making reasonable
inferences from facts in evidence is a recognized and proper
procedure in determining the rights and obligations of
litigants.[16]

## 4. Weight of the Testimony

4.1   In fulfilling your duty as finders of fact, you as
jurors are the sole judges of the credibility of the witnesses
and the weight, if any, their testimony deserves. This is also
true as to the veracity and weight of the other evidence,
including exhibits. There is no magical formula by which one may
evaluate testimony. You bring with you to this courtroom all the
experience and background of your daily lives. In your everyday
affairs you determine for yourselves the reliability or
unreliability of statements made to you or documents given to you
by others. The same tests that you use in your everyday dealings
are the tests that you should apply in your deliberations here.
You may consider the demeanor of the witness on the stand and any
interest he or she may have in the outcome of the case. You may
also consider any bias or prejudice for or against any party; the
witness' opportunity to observe; any reason for the witness to
remember or forget; the inherent probability of his or her story;

[14] See, id., § 15, pp. 22-27 (2000 Supp.).
[15] See, id., § 17, p. 29.
[16] See, id., § 14(e), p. 20 (2000 Supp.).

5

its consistency or lack of consistency; and its corroboration or lack of corroboration by other credible evidence.[17]

4.2  You may decide not to accept a witness' testimony even if it stands uncontradicted and unimpeached.  On the other hand, you may find a particular fact established even though it is supported only by the testimony of one witness.  In sum, jurors, you alone determine what weight, if any, to give to the evidence presented.

4.3  You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief.  Consider each witness' intelligence, motive, state of mind and demeanor while on the stand.  Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict and the extent to which, if at all, each witness is either supported or contradicted by other credible evidence in the case.

4.4  You may also bear in mind that if you should find that any witness has <u>deliberately</u> testified falsely on any <u>material</u> point, you may take that into consideration in determining whether that witness has testified falsely on other points.  Simply because you find that a witness has not testified accurately with respect to one fact, it does not necessarily follow that the witness is wrong on every other point.  A witness may honestly be mistaken on one point of testimony yet entirely accurate on others.  But if you find that a witness has <u>deliberately</u> lied on any <u>material</u> point, it is only natural that you should be suspicious of the testimony of that witness on all points.  Under those circumstances, you are entitled, if you deem it appropriate, to disbelieve the entire testimony of that witness.  Whether you disbelieve it or not lies in your sound judgment and sole prerogative.

## 5.  <u>Expert Witness Testimony</u>[18]

5.1  The expert who testified before you, Mr. Sheldon Wishnick, is an actuarial accountant who routinely provides expert opinions in court cases.  Just because he is considered an expert does not mean that you are to accord any special weight to the testimony or opinions he provided, nor is the fact that I refer to him as an expert mean that you should consider his testimony any differently from any other witness.  Any facts or

---

[17] <u>See</u>, <u>id.</u>, § 15, pp. 26-28, and 22-23 (2000 Supp.).
[18] This section is to be included only if the Court denies defendant ProMedia's motion <u>in limine</u> to preclude Mr. Wishnick's testimony.

opinions he gave are to be accorded the same credibility or believability that you would give to any other witness. You have observed the witness and are free to consider any bias or prejudice he may have, consider any interest he may have, his appearance and demeanor on the witness stand, and whether you find him credible. His opinion need not be binding on you. It is for you to consider in the light of all the other evidence and using your best judgment to determine what weight, if any, you will give to his testimony.[19]

5.2  Additionally, you must consider whether Mr. Wishnick is possessed of specialized knowledge and experience on which his testimony is based, and whether that specialized knowledge and experience is necessary to determine the facts for you in this case.[20]

5.3  Further, you should base your decision on whether or not to believe Mr. Wishnick on a determination of the basis for his opinion, whether it is the result of and based upon sound, logical and rational reasons.[21] Factors such as his knowledge and familiarity with information regarding plaintiff, such as her work history, her gainful employment after being terminated from ProMedia, the industry in which she worked and the type of compensation she received -- sales commissions -- are all for your consideration as to the completeness of the facts considered by him in formulating his opinion.[22]

5.4  Also, were the facts upon which Mr. Wishnick based his opinion proven by plaintiff? His opinion is only relevant if you believe plaintiff has sufficiently proven the facts upon which his opinion is based.[23]  Here, you must be sufficiently satisfied that plaintiff has proven that, but for ProMedia's termination of her employment and stopping of her nonrecoverable draw against commissions, she would have remained employed by ProMedia and continued on at the full compensation rate she alleges she was promised.  These things are not automatic, and plaintiff has the burden of showing that this is what would have happened, and if she has done that then you can consider the figures Mr. Wishnick has given as to probable earnings.[24]

5.5  The fact that I am permitting the expert's written opinion to you for your consideration should not suggest to you that I think he has established or can establish the amounts

---

[19] See, CJI (2000 Supp.) $325, pp. 521-22.
[20] Id.
[21] CJI, (2000 Supp.), p. 152.
[22] CJI, (2000 Supp.), pp. 150-151.
[23] Oliveri v. Delta S.S. Lines, Inc., 849 F.2d 742, 745 n.1 (2d Cir. 1988).
[24] CJI, (2000 Supp.), p. 152.

listed therein, and the fact that I am issuing this disclaimer
does not mean I think the opinion is not properly supported or
plaintiff can't or hasn't proven entitlement to damages listed in
the report.[25]

5.6  Remember, it is up to you the jury to determine if
plaintiff has sufficiently proven the facts of her case, and for
you alone to determine whether to accept or reject Mr. Wishnick's
opinion in whole or in part.

### 6. Impeachment by Prior Inconsistent Statement

6.1  As a general matter, the testimony of a witness may be
discredited or impeached by showing that he or she has previously
made statements that are inconsistent with his or her present
testimony.  Generally, the inconsistent statements are admitted
into evidence solely for the purpose of shedding light on the
witness' credibility.  Therefore, should you find that a witness'
prior statements are inconsistent with his or her testimony, you
may consider such prior statements but only in connection with
your evaluation of the credence to be given to the witness'
present testimony in court.  That is, you may consider such prior
inconsistent statements only for the purpose of judging the
witness' present testimony in court, and you are not to consider
such prior statements for their truth or falsity or for how they
bear on the merits of the case.  This is the general rule.

6.2  There is an exception to this general rule.  If you
find that a prior inconsistent statement of a witness was given
under oath, subject to the penalty of perjury, such as in a
deposition, that prior statement may be considered by you, both
for its own truth or falsity as well as in your evaluation of the
witness' credibility.

### 7. Burden of Proof -- Civil

7.1  In this civil action the plaintiff bears the burden of
proving each essential element of her claim by a "preponderance
of the evidence."

7.2  I wish to point out that the burden of proof in civil
cases such as this one differs from the burden of proof in
criminal cases.  In a criminal case, the burden of proof is proof
"beyond a reasonable doubt"; in a civil case, the burden of proof
is generally proof "by a preponderance of the evidence."  To
prove by a preponderance of the evidence means to prove that

---

[25] Oliveri v. Delta S.S. Lines, Inc., 849 F.2d 742, 745 n.1 (2d Cir. 1988).

something is more likely so than not so. In other words, a preponderance of the evidence means such evidence, as when considered and compared with that opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true. This is not necessarily determined by the greater number of witnesses produced by a party, but it means that the evidence on behalf of the party on whom the burden rests must have greater weight in your judgment, that is, greater probative value.

7.3 It might be helpful to visualize a pair of scales in equal balance. Imagine that you can put the plaintiff's evidence on one side of the scale and the defendant's on the other. If the scales tip ever so slightly in favor of the plaintiff, the plaintiff's evidence preponderates, and he has sustained her burden of proof. If the scales tip the other way, ever so slightly in favor of the defendant, then obviously the plaintiff has not sustained her burden of proof. Should you feel that the scales are evenly balanced, that neither side's evidence outweighs the other, then the plaintiff has failed to meet the burden of proving her case by a preponderance of the evidence.

7.4 The general rule I have just described to you applies to the plaintiff's burden in what we call her case-in-chief: that is, to the plaintiff's claims that a defendant is liable. The same rule applies to claims which a defendant has raised, that is, a defendant has the burden of proving by a preponderance of the evidence any defense it chooses to raise.

## 8. Note Taking

8.1 You were permitted to take notes during the course of the trial. If you took any notes, those notes should be used only as memory aids. You should not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely on your own independent recollection of the proceedings and should not be influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror as to what the testimony may have been.

9

## JURY INSTRUCTIONS ON SEX DISCRIMINATION

### 9. Elements of Sex Discrimination Claim

First Count:    sex discrimination in violation of 29 U.S.C.
Sect. 2000 ("Title VII") (SHOULD BE 42 USC 2000).

Third Count:    sex discrimination in violation of Connecticut
General Statute ("C.G.S.") Sect. 46a-60(a).

9.1    In this case, plaintiff Blumenschine makes a claim
under the Federal Civil Rights statutes that prohibit employers
from discriminating against employees in the terms and conditions
of their employment because of the employee's sex.

9.2    More specifically, plaintiff Blumenschine complains
that she was terminated from her employment, replaced by two
young men, excluded from at least one meeting, and a part of her
compensation was stopped by defendant ProMedia because she is a
woman.

9.3    Defendant ProMedia denies this charge and asserts that
it terminated Plaintiff Blumenschine's employment because of her
poor sales performance.

9.4    In order to prevail on this claim, Blumenschine must
prove ProMedia intentionally discriminated against her by proving
by a preponderance of the evidence that her sex was a substantial
or motivating factor that prompted ProMedia to terminate her
employment or take other action against her.

9.5    Further, Blumenschine must prove by a preponderance of
the evidence that sex discrimination can be attributed to the
decision-maker responsible for her termination, Joseph P. Hanson,
as the motivating factor behind his decision.[26]

9.6    If this has not been proved by a preponderance of the
evidence, your verdict must be for defendant ProMedia and you
need not proceed further in considering this claim.[27]

9.7    The term "motivating factor" means a consideration that
moved defendant ProMedia toward its decision to terminate

---

[26] See, Lynch v. Pathmark Supermarkets, 152 F.3d 919, 1998 WL 425876 at *1 (2d
Cir. 1998) (unpublished decision), citing Lynch v. Pathmark Supermarkets, 987
F.Supp. 236 (S.D.N.Y. 1997), McLee v. Chrysler, 109 F.3d 130, 137 (2d Cir.
1997).

[27] Reeves v. Sanderson, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000); L.
Sand, et. al, 5 Modern Federal Jury Instructions, Inst. 88-42, p. 88-224 (3d
Ed. 2005) (hereinafter, "MFJI").

plaintiff Blumenschine's employment or take other action against her.[28]

9.8   The mere fact that plaintiff Blumenschine is a female and was terminated is not sufficient, in and of itself, to establish plaintiff's claim under the law.[29]

## 10.  Preponderance of the Evidence

10.1   Plaintiff Blumenschine has the burden of proving each and every element of plaintiff's claim by a preponderance of the evidence.  If you find that plaintiff has not proved any one of the elements by a preponderance of the evidence, you must return a verdict for defendant ProMedia.[30]

10.2   What does a preponderance of evidence mean?  A preponderance of the evidence means the greater weight of the evidence.[31]

10.3   In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.[32]

10.4   If you find that the credible evidence on a given issue is evenly divided between the parties -- that is, equally probable that one side is right as it is that the other side is right -- then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence --she must prove the element at issue by a preponderance of the evidence.[33]

10.5   Again, you must find that plaintiff Blumenschine has shown by a preponderance of the evidence that discrimination can be inferred from the facts in evidence, in order to find that defendant ProMedia has discriminated against her, based on her sex.

---

[28] K. O'Malley, et al., 3C Federal Jury Practice & Instructions, §173.42, p.522 (5th Ed. 2001) (hereinafter "FJPI").
[29] Id., §171.20, pp. 197-98.
[30] Id., §173.50, p. 526; see, Reeves, supra, 530 U.S. at 142, 120 S.Ct. at 2106.
[31] 3C FJPI, §173.51 pp. 526-27.
[32] Id.
[33] See, 4 MFJI, §§73.01-.02, pp. 73-2 to 73-5.

Case 3:02-cv-02244-HBF    Document 63    Filed 04/17/2006    Page 12 of 17

10.6  You should be mindful that the law applicable to this
case requires only that an employer not discriminate against an
employee because of the employee's sex. So far as you are
concerned in this case, an employer may terminate an employee for
any other reason, good or bad, fair or unfair, and you must not
second guess that decision or permit any sympathy for the
employee to lead you to substitute your own judgment for that of
defendant ProMedia even though you personally may not favor the
action taken and would have acted differently toward Blumenschine
under the circumstances. Neither does the law require an
employer to extend any special or favorable treatment to
employees because of their sex or gender.[34]

10.7  If you find in the plaintiff's favor with respect to
each of the facts that she must prove, then you must decide
whether the defendant has shown by a preponderance of the
evidence that Blumenschine would have been terminated for other
reasons even in the absence of consideration of her sex or
gender. If you find that Blumenschine would have been terminated
for reasons apart from her sex, then your verdict should be for
the defendant ProMedia.[35]

## 11. Legitimate, Nondiscriminatory Reason For Employment Decision

11.1  You must also consider any legitimate,
nondiscriminatory reason or explanation stated by defendant
ProMedia for its decision. If you determine that ProMedia has
stated such a reason, then you must decide in favor of ProMedia
unless plaintiff Blumenschine proves, by a preponderance of the
evidence, that ProMedia's stated reason -- poor and declining
sales performance -- was not the true reason for her termination,
but was only a pretext or excuse for defendant's discriminating
against Blumenschine because of her sex or gender.[36]

11.2  To prove that ProMedia's stated reason for her
termination was a pretext, and that discrimination on account of
her sex was the real reason for ProMedia's action, Blumenschine
must prove, by a preponderance of the evidence, that ProMedia's
reason for her termination -- poor sales -- was knowingly
false.[37]

I will now discuss the issue of pretext in greater detail.

---

[34] See, 5 MFJI, Inst. 88-61, p. 88-249.
[35] See, J. Cook & J. Sobieski, Jr., 7 Civil Rights Actions, Instruction 88-42,
p. 88-224) (hereinafter, "CRA"); 5 MFJI, Form F17.06-41, p. F17-124.
[36] Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).
[37] St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752
(1993); Viola v. Philips Medical Systems of N.A., 42 F.3d 712, 717 (2d Cir.
1994).

## 12. Pretext

12.1   If defendant ProMedia has offered evidence tending to
show a non-discriminatory reason for her termination,
Blumenschine may introduce evidence that ProMedia's articulated
reason for its action was nothing more than a pretext for sex
discrimination.   In other words, plaintiff Blumenschine may
introduce evidence to show that ProMedia's reason for terminating
her employment -- her lack of sales performance -- is not worthy
of belief, and that it was not the true reason why defendant
ProMedia terminated her employment, and the true reason for
terminating her employment was sex discrimination.[38]

12.2   When you consider this issue, keep in mind that the
relevant question is whether ProMedia's reason was or was not the
real reason for its action.   The question is not whether ProMedia
showed poor or erroneous business judgment by terminating
plaintiff Blumenschine.   You are not to judge, question, or
second-guess the wisdom of ProMedia's decision.[39]

12.3   Even if an employer is mistaken and in its business
judgment is wrong, an employer is entitled to make its own policy
and business judgment.   An employer may make those employment
decisions as it sees fit, as long as it is not unlawful.[40]

12.4   Defendant ProMedia would be entitled to make its
decision for a good reason, a bad reason, or for no reason at
all, so long as the decision was not motivated by unlawful
discrimination.   Unless you find that defendant's reason for
terminating plaintiff's employment was instead a pretext or
excuse for discrimination, pretext is not established just
because you disagree with the business judgment of defendant
ProMedia.[41]

12.5   Ultimately, remember that the question you must decide
is whether Blumenschine has proven by a preponderance of the
evidence that defendant ProMedia terminated Blumenschine because
of her sex.

12.6   If you believe ProMedia's explanation for its action,
then you must find for ProMedia.

12.7   Should you decide ProMedia's stated reason is not
credible, you still must determine if Blumenschine has proven by

---

[38] Weinstock, supra, 224 F.3d at 42, 5 MFJI, Inst. 88-37, p. 88-151.
[39] Id.
[40] See, 5 MFJI, Inst. 88-37, p. 88-151 (citations to 2d Cir. authorities
omitted); 3C FJPI §173.66, p. 539.
[41] Id.

13

a preponderance of the evidence that her sex or gender was a substantial or motivating factor in ProMedia's decision to terminate her.[42]

## 13. <u>Same Decision</u>

13.1  Furthermore, even if you determine that plaintiff Blumenschine has proved that plaintiff's sex was a factor motivating ProMedia's decision to terminate her employment, you still must find for ProMedia if you determine that ProMedia has shown it would have reached the same decision to terminate Blumenschine's employment regardless of her sex or gender.[43]

## 14. <u>Defenses</u>

14.1  If, after considering Blumenschine's evidence and ProMedia's rebuttal of that evidence, you find plaintiff Blumenschine has established each and every element of her claim, only then should you concern yourselves with the defenses offered by defendant ProMedia.[44]

14.2  With regard to any of ProMedia's defenses, remember that plaintiff Blumenschine must disprove the defense, that ProMedia terminated her because of her poor sales performance, by a preponderance of the evidence.  In other words, defendant ProMedia establishes the defense unless you find the evidence that opposes the existence of that defense has more convincing force to you than the evidence that supports it.  If you find defendant ProMedia has established its defense, then you must find for defendant ProMedia.[45]

## 15. <u>Damages</u>

15.1  Only if you find for Blumenschine on her claim of discrimination because you find that ProMedia terminated Blumenschine as a result of sex discrimination rather than on account of her sales performance, can you consider the issue of Blumenschine's damages:

15.2  If you do find sex discrimination, only then can you go on to consider the issue of plaintiff's damages.  You are

---

[42] <u>Sanders v. New York City Human Resources Admin.</u>, 361 F.3d 749, 758-59 (2d Cir. 2004) (instructing jury on <u>McDonnell Douglas</u> burden-shifting analysis was harmless error where dearth of supporting proof of discrimination, and jury given instruction as to the ultimate question before it).
[43] 5 <u>MFJI</u>, p. 88-230, Inst. 88-43 (authority: <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 123 S.Ct. 2148 (2003).
[44] 3C <u>FJPI</u>, §171.70, pp. 268-69.
[45] <u>Id.</u>

instructed that you should assess as damages only the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of Blumenschine's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.[46]

15.3  The following elements of compensatory damage should be considered, to the extent you find them proved by a preponderance of the evidence, and no others: (a) lost wages and benefits to the date of trial; and (b) any genuine emotional pain and mental anguish.[47]

15.4  If you find in favor of Blumenschine on the issue of sex discrimination, you may award damages for any pain, suffering or mental anguish that plaintiff Blumenschine experienced as a consequence of defendants' allegedly unlawful act of terminating Blumenschine's employment based on her sex, but you are not required to do so, particularly if you find that no evidence of the monetary value of such intangible things as pain and suffering has been introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.[48]

15.5  In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. And, again, unless you find ProMedia guilty of sex discrimination under the standard I have charged you, you cannot award Blumenschine any damages on her claim of sex discrimination.[49]

### 16. Mitigation of Damages

16.1  You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages—that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.[50]

---

[46] 3C FJPI, §171.20, pp. 208 et seq.; §171.90, pp. 285-86.
[47] Id.
[48] Id.
[49] Id.
[50] See, 3C FJPI, §171.95, pp. 303-05.

15

16.2  If you determine Blumenschine is entitled to lost
compensation, you must reduce the loss by:

1.  What she has earned subsequent to her termination
and up to the date of this trial; and

2.  What she could have earned by reasonable effort
during the period from her discharge until the date of trial.

16.3  Plaintiff must accept employment that is "of a like
nature." In determining whether employment is of a like nature,
you may consider the type of work, the hours worked, the
compensation, the job security, the working conditions, and other
conditions of employment.  You must decide whether plaintiff
Blumenschine acted reasonably in not seeking or accepting a
particular job after her termination.  If you determine she did
not make reasonable efforts to obtain another similar job, you
must decide whether any damages resulted from her failure to do
so.[51]

16.4  You must not compensate her for any portion of her
loss of compensation which results from her failure to make
reasonable efforts to reduce her loss of compensation.

16.5  So, if you find that Blumenschine failed to seek out
or take advantage of a business or employment opportunity that
was reasonably available under all the circumstances shown by the
evidence, then you should reduce the amount of her damages by the
amount that could have been reasonably realized if Blumenschine
had taken advantage of such opportunity.

### 17.  Punitive Damages

17.1  With respect to her Federal sex discrimination claim,
Blumenschine also claims that the acts of ProMedia entitle her to
an award of punitive damages in addition to compensatory damages.

17.2  Punitive damages may be awarded for the purpose of
punishing a defendant for its wrongful conduct and to deter
others from engaging in similar wrongful conduct.  You may not
impose punitive damages, however, unless you find that ProMedia
discriminated against Blumenschine out of malice or reckless
indifference to her Federally-protected rights.  "Malice" and
"reckless indifference" refer to the employer's actual knowledge
that it may be acting in violation of Federal law.[52]  If ProMedia

---

[51] Id.
[52] See, Kolstad v. Amer. Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118 (1999).

16

did not know that its action might violate Federal law, you may not assess punitive damages at all.

17.3  Furthermore, an employer like ProMedia may not be held liable for punitive damages because of discriminatory acts on the part of any managerial employee where those acts by such employee are contrary to the employer's own good faith belief that it is complying with the law.[53]

17.4  So, an award of punitive damages on plaintiff Blumenschine's sex discrimination claims would be appropriate only if you first find for Blumenschine that she had been discriminated against on account of her sex or gender, and then further find from a preponderance of the evidence that (1) not only did a management official of the Company personally act with malice or reckless indifference to Blumenschine's federally protected rights, but that (2) ProMedia itself knew that it was actively disobeying Federal law by terminating plaintiff Blumenschine.[54]

17.5  If you find that punitive damages should be assessed against ProMedia, you should consider the financial resources of the company in fixing the amount of such damages.  You should not award the same amount of such damages against a small company with few employees as you would against a large company with many employees.

### 18.  Nominal Damages

18.1  If you find Blumenschine has proven sex discrimination, but you find that her damages have no monetary value, then you must return a verdict for Blumenschine in the nominal amount of one dollar.[55]

### JURY INSTRUCTIONS ON AGE DISCRIMINATION

Second Count:  age discrimination in violation of 29 U.S.C. Sect. 623(d) ("ADEA").

Third Count:  age discrimination in violation of Connecticut General Statute ("C.G.S.") Sect. 46a-60(a).

### 19.  Introduction

---

[53] Id.

[54] Id.; see also, 3C FJPI, §171.94, pp. 297-98.

[55] 3C FJPI, §171.93, p. 296.

17