**EXHIBIT G**

Westlaw.

Not Reported in A.2d                                                                                                                Page 1
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)
(Cite as: Not Reported in A.2d)

H
Only the Westlaw citation is currently available
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Thomas D. LEE
v.
AXIOM LABORATORIES, INC. et al.
No. CV980584562.

Jan. 24, 2001

MEMORANDUM OF DECISION DEFENDANT WILLIAM A.G. MACKEY'S POST-TRIAL MOTIONS

PECK
*1 In this action, the plaintiff, Thomas D. Lee, recovered a verdict in the amount of $300,000 against the defendants, his former employer, Axiom Laboratories, Inc. (Axiom), and his former boss, William A.G. Mackey, on May 1, 2000. While Axiom was named in all five counts of the plaintiff's complaint, Mackey was included in only counts four and five. The jury returned a plaintiff's verdict against Axiom Laboratories as to the first (breach of contract), second (covenant of good faith and fair dealing), third (promissory estoppel) and fifth (negligent misrepresentation) counts of the complaint, a plaintiff's verdict against Mackey as to the fifth count and a defendants' verdict as to count four (vacation pay).

> FN1. At all relevant times, Mackey was the President and Chief Executive Officer of Axiom Laboratories, Inc.

Pursuant to Practice Book § 16-37, the defendants timely moved to set aside the verdict and for judgment notwithstanding the verdict in accordance with their motion for directed verdict. In the alternative, the defendants moved, pursuant to Practice Book § 16-35, (1) for a new trial on the grounds that (a) the verdict was against the weight of the evidence, (b) the court erred in allowing the plaintiff's motion in limine to exclude evidence of his failure to file tax returns, (c) the court erred in denying the defendants' motion in limine and allowing evidence of emotional distress damages to be presented to the jury, (d) the court erred by allowing evidence, argument and a jury charge of reputation damage, and (e) the court erred by denying the defendants' objections to the testimony of Mackey's ex-wife and their motion to strike such testimony; or (2) for remittitur or a new trial on damages.

Subsequent to the filing of these motions, Axiom filed for bankruptcy. At a hearing held on September 18, 2000, counsel for the parties represented to the court that the bankruptcy judge granted permission for judgment to enter against Axiom. (Transcript, September 18, 2000, p. 3.) Subsequently, the court, Peck, J., entered judgment against Axiom on October 27, 2000. Accordingly, the court denies the motion with respect to counts one, two, three and five as to the defendant Axiom. What remains then are the defendant Mackey's motions with respect to count five of the plaintiff's complaint.

I

MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

"[A] motion [for judgment notwithstanding the verdict] should be granted if the evidence establishes, as a matter of law, that the party who had obtained the verdict could not and was not entitled to prevail. *Gesualdi v. Connecticut Co.,* 131 Conn. 622, 627 [41 A.2d 771 (1945) ]; *Yeske v. Avon Old Farms School,* 1 Conn.App. 195, 206 [470 A.2d 705 (1984) ]. When considering the motion, the evidence [including reasonable inferences] must be given the most favorable construction in support of the verdict as is reasonably possible. *Aksomitas v. Aksomitas,* 205 Conn. 93, 100 [529 A.2d 1314 (1987) ]. When a verdict is challenged because of a lack of sufficient evidence, the issue raised is whether the trier of fact could reasonably have concluded, upon facts established and inferences permissibly drawn from them, that the cumulative effect of the evidence warranted the ultimate finding made. *Coelho v. Posi-Seal International, Inc.,* 203 Conn. 106, 112 [544 A.2d 170 (1988) ]; *Jonap v. Silver,* 1 Conn.App. 550, 559 [474 A.2d 800 (1984) ]." (Internal quotation marks omitted.) *Craine v. Trinity College,* Superior Court, judicial district of Hartford, Docket No.

555013 (December 27, 1999) (Peck, J.); *Foley v. The Huntington Co.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 246145 (March 18, 1994) (Fuller, J.); see also *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 32, 761 A.2d 1268 (2000) ("The verdict will be set aside and judgment directed only if the jury could not reasonably and legally have reached their conclusion") (Internal quotation marks omitted.)

In support of his motion for judgment notwithstanding the verdict, Mackey argues that he cannot be held individually liable for negligent misrepresentation based on the evidence as presented or under Connecticut law and further that there was insufficient evidence at trial of the elements of negligent misrepresentation. Lee argues, in response, that there is individual liability under Connecticut law for negligent misrepresentations made by a corporate officer even though acting in his official capacity. The plaintiff further contends that he has presented evidence sufficient to support his claim of negligent misrepresentation.

*2 "[Our Supreme Court] has long recognized liability for negligent misrepresentation." (Internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C.*, 50 Conn.App. 385, 390, 717 A.2d 811 (1998), aff'd, 252 Conn. 153, 745 A.2d 178 (2000). "[The court has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995). "The governing principles are set forth in .. § 552 of the Restatement Second of Torts (1979): One who, in the course of his business, profession or employment . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C., supra,* 50 Conn.App. 390.

There is no Connecticut appellate authority with regard to the specific issue of whether an officer of a corporation can incur personal liability for negligent misrepresentation. "It is true that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975) (an agent and an officer can be liable for negligence in the construction of improvements subject to a contract by the principal)

Relying on *Scribner v. O'Brien, Inc,* Connecticut courts have, under various circumstances, recognized that a corporate officer can incur personal liability for either fraudulent misrepresentation or negligence. In holding a corporate officer liable for fraudulent misrepresentations or negligence, the court tends to focus on whether or not the officer himself committed the tort. See *Kilduff v. Adams, Inc.*, 219 Conn. 314, 331-32, 593 A.2d 478 (1991) (claim involving fraudulent misrepresentation made by an officer of a corporation where Supreme Court noted that "[i]t is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable"); *Maturo v. Gerard,* 196 Conn. 584, 588, 494 A.2d 1199 (1985) ("In considering the defendant's [agent's] personal liability for his [fraudulent] statements, it matters not that these representations were made by the defendant in the course of his agency relationship so long as the defendant can be said to have made them in circumstances under which he was chargeable with knowledge of their falsity"); see also *Altieri v. Nanavati,* 41 Conn.Supp. 317, 573 A.2d 359 (1989); *Silber v. Carotenuto & Sons,* Superior Court, judicial district of New Haven at New Haven, Docket No 416562 (February 8, 2000) (Devlin, J.); *Skelton v Chemical Leaman Tank Lines,* Superior Court, judicial district of New Haven at New Haven, Docket No. 359236 (May 13, 1996) (Corradino, J); *Viola v. Benchmark Corp ,* Superior Court, judicial district of New Haven at New Haven, Docket No. 330299 (April 21, 1995) (Hartmere, J.). *Avitabile v Criscuolo,* Superior Court, judicial district of New Haven at New Haven, Docket No. 357059 (October 25, 1994) (Hodgson, J.).

As to the plaintiff's claim of negligent misrepresentation, the court instructed the jury as follows: "[i]n order to prevail in his claim of negligent misrepresentation, the plaintiff, Thomas Lee, must establish the following elements by a preponderance of the evidence: 1) that the defendants made representations of fact to him which they knew or should have known in the exercise of reasonable care to be false; 2) that they knew or should have known that Mr. Lee would be guided by or would rely on those representations; 3) that Mr. Lee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt Works.

Not Reported in A.2d                                                                                                                                  Page 3
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

reasonably relied on the representations; and, 4) that he suffered a detriment or damages as a result of such reliance." (Plaintiff's Memorandum, p. 19.)

*\*3* As evidenced by the responses to the "Special Interrogatories," as to the claim of negligent misrepresentation, the jury concluded that Mackey made untrue statements of fact to Lee to the effect that "as long as he [Lee] did his job he would have a job"; that "Mr. Lee could safely and freely tell Mr. Mackey his true thoughts and feelings about the business and its operations"; and that "Mr. Lee would have three to four months to get his feet under him." The jury further found that Lee proved each of the elements of negligent misrepresentation by a preponderance of the evidence.

> FN2. The jury rejected the plaintiff's claim of negligent misrepresentation as to the statement that "Mr. Mackey had invested $1,500,000 in the business with $750,000 for new equipment."

> FN3. Count Five
> 22. Has the plaintiff proven, by a fair preponderance of the evidence, that Mr. Mackey made untrue statements of fact to him that:
> A. Mr. Mackey had invested $1,500,000 in the business with $750,000 for new equipment? Answer: No
> B. As long as Mr. Lee did his job he would have a job? Answer: Yes
> C. Mr. Lee could safely and freely tell Mr. Mackey his true thoughts and feelings about the business and its operations? Answer: Yes
> D. Mr. Lee would be given three to four months to get his feet under him? Answer: Yes
> 23. Has the plaintiff proven by a preponderance of the evidence, that the defendant knew or should have known that the statement or statements were untrue? Answer: Yes
> 24. Has the plaintiff proven, by a fair preponderance of the evidence, that Mr. Mackey knew or should have known that Tom Lee would rely on the false statement or statements? Answer: Yes
> 25. Has the plaintiff proven, by a fair preponderance of the evidence, that he did reasonably rely on one or more of the false statements? Answer: Yes
> 26. Has the plaintiff proven, by a fair preponderance of the evidence, that the plaintiff suffered economic damages by reasonably relying on the false statement or statements to his detriment? Answer: Yes

There was sufficient evidence in the record to support the jury's conclusion that the statements in question were untrue statements of fact. There is no question that the statements were made and that they were statements of fact relating to matters of job security and conditions of employment. The jury simply concluded, under all the circumstances, including a mere seven full days of employment that Mackey did not mean what he said when he said it even though he knew Lee was hanging on his every word. Further, they reasonably and logically could have found that Mackey sought Lee out for employment; that Lee was fifty-seven years old and worried about job security in light of his age; that the Heitkamp employment was not Lee's ideal but was a relatively stable employment situation; that Mackey was a brand new owner of Axiom who admittedly had no real experience in the business in which it was engaged.

In responding as they did to specific interrogatories, the jury apparently rejected Mackey's characterization of the statements at issue as well as his claims that after a mere few days on the job he [Mackey] was in a position to judge that Lee was not capable of doing the job that Mackey hired him to do even though Lee had worked almost his entire career for Axiom's predecessor. The jury also did not accept Mackey's exaggerated claims that Lee was advocating or engaging in unsafe laboratory practices that jeopardized the safety and well-being of Axiom employees. In addition, based on Mackey's own testimony, it was reasonable for the jury to conclude that Mackey's expectations and professed "unrelenting passion for excellence" resulted in standards that were unreasonable and impossible for Lee to meet. Further, the jury also knew, based on Mackey's own testimony, that he solicited Lee's employment for the very reason of Lee's experience and credibility in the business. It was no small wonder that the jury found that the statements at issue were made in an effort to solidify Lee's acceptance of employment. Finally, the jury could have reasonably concluded that the real reason Mackey fired Lee when he did was because of cash flow issues created in no small part by questionable expenditures such as those for consultants on esoteric management issues rather than on any real issue with Lee's ability to do the job.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 4
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

Giving the evidence the most favorable construction in support of the verdict as is possible, the jury could reasonably and logically have concluded, based on the facts established and permissible inferences, that the plaintiff was entitled to prevail. The court having found that the verdict in favor of the plaintiff is well justified by the evidence and the law, the defendant Mackey's motion for judgment notwithstanding the verdict is denied.

## II

### MOTION FOR A NEW TRIAL

*4 In the alternative, Mackey moves for a new trial on the grounds that (a) the verdict was against the weight of the evidence; (b) the court erred in allowing the plaintiff's motion in limine to exclude evidence of his failure to file tax returns; (c) the court erred in denying the defendants' motion in limine and allowing evidence of emotional distress damages to be presented to the jury; (d) the court erred by allowing evidence, argument and a jury charge of reputation damage; and, (e) the court erred by denying the defendants' objections to the testimony of Mackey's ex-wife and their motion to strike such testimony.

"Any motion for a new trial is addressed to the sound discretion of the trial court and will not be granted except on substantial grounds." *Burr v. Lichtenheim,* 190 Conn. 351, 355, 460 A.2d 1290 (1983). "Litigants in a civil case have a constitutional right to have a question of fact decided by a jury." *Beizer v. Goepfert,* 28 Conn.App. 693, 703, 613 A.2d 1336 (1992), cert. denied, 224 Conn. 901, 615 A.2d 1044, cert. denied, 507 U.S. 973, 113 S.Ct. 1416 122 L.Ed.2d 786 (1993).

### A

Mackey argues that the jury's verdict cannot be sustained as it was against the weight of the evidence because there was overwhelming evidence that no false representations of fact occurred upon which Mackey knew or should have known that Lee would reasonably rely to change his economic position. For the reasons articulated in part I of this opinion, the court finds there was substantial evidence that the statements in question were made by Mackey and that the evidence amply satisfied all the elements of the claim of negligent misrepresentation by a preponderance of the evidence. There are therefore no substantial grounds to warrant a new trial on the defendant's claim that the verdict in favor of the plaintiff was against the weight of the evidence.

### B

Mackey next argues that the exclusion of evidence of Lee's failure to file income tax returns and nonpayment of income taxes from 1996 to the present was harmful error because the failure to file tax returns goes directly to the issues of reliability, veracity and credibility. Specifically, Mackey argues that this evidence was important to Lee's credibility since the jury disbelieved Lee on two other occasions, namely, "(1) that untrue statements were made regarding the amount of investments made in Axiom; and (2) that [Lee] was entitled to three weeks of vacation immediately." (Defendant's Memorandum, p. 23.) Lee argues, in response, that case law distinguishes between the failure to file tax returns and willfully filing a false tax return and, therefore, the court properly excluded any evidence that Lee failed to file his tax returns.

The court rejects the defendant's claim that Lee's credibility was otherwise at issue and finds that the evidence relating to Lee's failure to file tax returns was far more prejudicial than probative and agrees with the plaintiff that as to the issue of credibility, there is a distinction between filing a false tax return and failure to file at all. See *Cree v. Hatcher,* 969 F.2d 34, 38 (3rd Cir.1992) (denial of motion in limine reversed on the grounds that failure to file a federal income tax return does not involve the making of a false statement and that such evidence was improper and unfairly prejudicial); *United States v. Darwin,* 757 F.2d 1193, 1202 (11th Cir.1985) ("[t]here was no abuse [of discretion] where questions relating to ... income tax returns were curtailed because of their limited relevancy")

> FN4. Although the defendant has cited to Code of Evidence §§ 6-6(b) and 6-8(a) on this issue, this court finds in accordance with the Third and Eleventh Circuits, that the failure to file a tax return does not go to the issue of untruthfulness or credibility, particularly when credibility is not otherwise called into question. Compare *Chinapkova v. Koh,* 985 F.2d 79, 82-83 (2d Cir.1993) (failure to file tax returns found to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02244-HBF   Document 68-6   Filed 04/27/2006   Page 6 of 20

Not Reported in A.2d                                                                                      Page 5
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)
(Cite as: Not Reported in A.2d)

admissible where truthfulness and credibility of the party witness was a central issue in the case). As previously stated, Lee's credibility was not otherwise called into question.

*5 In this action, since the economic damages claimed were not yet subject to taxation, evidence that Lee failed to file timely tax returns would have gone solely to impeach his credibility. The court having justifiably determined that the evidence in question was not relevant or, in the alternative, that any probative value was greatly outweighed by the likely prejudice to the plaintiff and confusion of the issues, the motion for a new trial on this ground is also denied. See Code of Evidence §§ 4-1, 4-3.

C

The balance of Mackey's motion for a new trial relates to various claims that he was somehow prejudiced by the limited admission of emotional distress and reputation evidence and related jury instructions even though the jury totally rejected the plaintiff's claim for damages for emotional distress. Since the jury declined to award any non-economic damages whatsoever, this argument is essentially a non-issue which the court respectfully declines to address. Further, the plaintiff sought to introduce the damage to reputation evidence in response to the defendant's claim that Lee failed to mitigate his damages. Since the jury found that the defendant failed to mitigate his damages to the extent of $10,000, it is apparent that they were able to distinguish between these issues and rejected his claim of emotional distress damages.

III

MOTION FOR REMITTITUR OR NEW TRIAL ON DAMAGES

In the alternative, Mackey moves for remittitur or a new trial on the grounds that the jury award was based upon sympathy, speculation and is inconsistent with its finding that Lee failed to mitigate his damages.

"When a verdict is excessive as a matter of law, the amount of the remittitur .... rests largely within the discretion of the trial court." (Internal quotation marks omitted.) *Morales v. Pentec, Inc.*, 57 Conn.App. 419, 435, 749 A.2d 47 (2000). As previously noted, "[a]ny motion for a new trial is addressed to the sound discretion of the trial court and will not be granted except on substantial grounds." *Burr v. Lichtenheim, supra,* 190 Conn. 355.

During the trial, the jury was presented with evidence that Lee was presently sixty years old and that he intended to work for as long as he was enjoying his work and that he thoroughly enjoyed his work. The calculation of his past and future economic damages adopted by the jury was based on the testimony of the plaintiff and the testimony and exhibits prepared by the plaintiff's expert witness, Sheldon Wishnick, an actuary, who testified that he used the age of sixty-five as the retirement age and recognized statistical sources for employees fitting Lee's profile to determine past and future losses.

*6 Based on the special interrogatories, there is no question that the jury intended for Lee to be awarded economic damages in the amount of $310,000 minus $10,000, the extent to which they found he failed to mitigate damages, for a total award of $300,000. The jury was presented with two alternatives with respect to the plaintiff's losses, one being to award Lee damages based upon his prior employment at Heitkamp, as if he had never left its employ, and the other being to award damages based upon continuation of employment with Axiom. The jury opted to award the more conservative amount based on Lee's Heitkamp employment. This award was unquestionably based upon the testimony of the plaintiff and Wishnick and Plaintiff's Exhibit 31, a loss summary, presented by Wishnick, reduced by the amount the jury specifically determined related to the issue of mitigation on which the defendants had the burden of proof. The court finds that the jury award for past and future damages was limited to a reasonable time and was supported by the evidence. See *Torosyan v. Boerhringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 33-34, 662 A.2d 89 (1995).

Based upon all the evidence, there was a reasonable basis for the jury to award Lee total damages of $300,000. In awarding past and future economic damages, the jury made a conscious decision to put Lee in the same position he would have been in had he never taken the position at Axiom, no more and no less. The motion for remittitur and/or a new trial is therefore denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 6
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

## CONCLUSION

Accordingly, the defendants, post-trial motions are denied. Judgment may enter for the plaintiff in accordance with the verdict.

Conn.Super.,2001
Lee v. Axiom Laboratories, Inc.
Not Reported in A.2d, 2001 WL 128917 (Conn.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

# **EXHIBIT H**

Westlaw

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut
Rene M. PALMA,
v.
PHARMEDICA COMMUNICATIONS, INC.
**Civil No. 3:00CV1128 (HBF).**

Sept. 30, 2003.

Jeffrey S. Bagnell, Joseph D. Garrison, Stephen J. Fitzgerald, Garrison Levin-Epstein Chimes & Richardson, New Haven, CT, for Plaintiff.
Glenn A. Duhl, Paul H. Gamache, Peter A. Janus, Siegel, O'Connor, Zangari, O'Donnell & Beck, Hartford, CT, Hugh W. Cuthbertson, Siegel, O'Connor, Zangari, O'Donnell & Beck, New Haven, CT, for Defendant.

*RULING ON PLAINTIFF'S POST-TRIAL MOTIONS*
HOLLY B. FITZSIMMONS, Magistrate Judge.
*1 Plaintiff moves for an award of liquidated damages **[Doc. # 86]** and also seeks front pay and benefits or, in the alternative, reinstatement to her former position **[Doc. # 104]**. Also pending is plaintiff's Motion for Prejudgment and Post-Judgment Interest **[Doc. # 110]**.

*MOTION FOR LIQUIDATED DAMAGES*

The jury found that defendant violated the FMLA in discharging plaintiff. Section 29 U.S.C. § 2617(a)(1)(A)(iii) of the FMLA provides that, in addition to compensatory damages specified in § 2617(a)(1)(A)(i) & (ii), an employer shall be liable for an amount of liquidated damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of the employer's violation of § 2615 of the statute. Liquidated damages are considered compensatory rather than punitive in nature. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir.1997) (interpreting liquidated damages statute under the FSLA) ; *Rhoads v. F.D.I.C.*, 956 F.Supp. 1239, 1261 (D.Md.1997) (reviewing analogous remedial provision under the Fair Labor Standards Act, 29 U.S.C. § 216 ("FLSA"), *aff'd in part, rev'd in part on other grounds*, 257 F.3d 373 (4th Cir.2001). "Doubling of an award is the norm under the FMLA, because a plaintiff is awarded liquidated damages in addition to compensation lost. The district court's discretion to reduce the liquidated damages "must be exercised consistently with the strong presumption under the statute in favor of doubling." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (5th Cir.1999) (quoting *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir.1998) (discussing FLSA liquidated damages provision)); *Williams v. Rubicon*, 808 So.2d 852, 861 (La.App. 1 Dir.2002) ( "Doubling is the norm, not the exception ")

FN1. Section 2617(a)(1)(A)(iii) states,
An additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith *and* that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii) respectively
29 U.S.C. § 2617(a)(1)(A)(iii)

FN2. Other courts considering liquidated damages under the FMLA have looked at cases under the Fair Labor Standards Act of 1938, ("FLSA"), as amended 29 U.S.C.A. § 201 et seq. *See Thorson v. Greminin Inc.*, 96 F.Supp.2d 882, 890 (N.D.Iowa 1999) ("The remedies provisions of the Family and Medical Leave Act were intended by Congress to mirror those of the Fair Labor Standards Act. It is therefore appropriate to rely on cases interpreting the liquidated damages remedy of the FLSA when interpreting the FMLA; *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 644 (6th Cir.1998)" ("[T]he legislative history of the FMLA reveals that Congress intended the remedial provisions of the FMLA to mirror

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

those in the FLSA."); *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 928 (5th Cir.1999) ("the remedial provision in the FLSA can aid in interpreting the similar remedial provision in the FMLA.").

Under 29 U.S.C. § 260 of the FLSA, liquidated damages may be remitted "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [Act]." Under 29 U.S.C. § 260, the employer bears the burden of establishing, by "plain and substantial" evidence, subjective good faith and objective reasonableness. *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir.1991); see *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987). The burden, under 29 U.S.C. § 260, "is a difficult one to meet, however, and '[d]ouble damages are the norm, single damages the exception....' " *Wilamowsky,* 833 F.2d at 19 (quoting *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986)). *Reich.,* 121 F.3d at 71.

The district court may reduce an award to only compensatory damages if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615." 29 U.S.C. § 2617(a)(1)(A)(iii). The employer must therefore show *both* good faith *and* reasonable grounds for the act or omission." *Chandler v. Specialty Tires of America, Inc.,* 283 F.3d 818, 827 (6th Cir.2002) (emphasis in original); see 29 U.S.C. § 2617(a)(1)(A)(iii).

After the jury found that a causal connection existed between Ms. Palma's opposition to an unlawful practice at Pharmedica and the termination of her employment and awarded her $140,000 in compensatory damages, the Court asked the jury, on an advisory basis, to answer Question 6. Question 6 stated: "[i]f you awarded damages in response to Question 5, do you find by a preponderance of the evidence that when Pharmedica discharged Ms. Palma, defendant reasonably believed its actions complied with the Family and Medical Leave Act?" The jury returned a note during deliberations asking whether they had to answer Question 6. The jury responded "yes" after the Court directed them to answer. Plaintiff correctly states that the interrogatory failed to reference the dual elements of defendant's affirmative defense under the statute of "good faith" and "reasonable grounds for believing." Defendant argues that the jury was properly charged on both elements of the good faith test. The Court takes the parties' arguments and the jury's response to Question 6 under advisement.

*2 Pharmedica argues that "[t]he jury expressly found that in discharging the plaintiff Pharmedica reasonably believed its actions complied with the FMLA. In any event, even if the adequacy of the evidence supporting this finding were at issue, there is significant evidence demonstrating Pharmedica's legitimate business reasons for terminating the plaintiff" [Doc # 93 at 7]. Defendant argues that the decision to terminate plaintiff's employment was related to the reorganization of the company, pointing to the following evidence: (1) Stefanski's January 1999 memo regarding the organization; (2) "David Lynch, one of the persons who assumed plaintiff's duties was, unlike plaintiff, a degreed professional;" (3) "some of Ms. Palma's job responsibilities were being performed by lower paid temporary workers" such as Michele Olds; and (4) Timmerman, Stefanski, Bavasso and Cipollone's testimony "concerning the rapid growth of the company and the corresponding need to reorganize the accounting department to keep up with the increased workload." *Id.* at 8.

The burden of proof is on the employer, not the plaintiff, to establish whether the act or omission was in good faith and that the employer had reasonable grounds for believing that the act or omission was not in violation of the FMLA. 29 U.S.C. 2617(a)(1)(A)(iii); *Nero,* 167 F.3d at 928. A district court's decision on liquidated damages is reviewed for abuse of discretion; "that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling." *Shea v. Galaxie Lumber & Constr. Co., Ltd.,* 152 F.3d 729, 733 (7th Cir.1998) (discussing FLSA liquidated damages provision) (citations omitted); *Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 497 (8th Cir.2002) (reviewing grant of liquidated damages pursuant to the FMLA for an abuse of discretion) (citation omitted). "Even assuming that [the employer] acted in good faith the decision to award liquidated damages is still within the discretion of the trial court." *Nero,* 167 F.2d at 929.

Good faith requires more than a showing of ignorance of the prevailing law or uncertainty about

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02244-HBF   Document 68-6   Filed 04/27/2006   Page 11 of 20

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

its development. It is not enough to show that a violation was not purposeful. Nor is good faith demonstrated by the absence of complaints on the part of employees or conformity with industry-wide practice. Good faith requires that an employer first take active steps to ascertain the dictates of the law and then move to comply with them.

*Williams v. Rubicon, Inc.*, 808 So.2d 852, 861 (La.Ct. 1st Cir.2002) (citing *Reich v. Southern New England Telecommunications Corporation*, 121 F.3d 58, 71 (2d Cir.1997))

Several Courts have found in favor of the employer, holding that it acted in good faith and with a reasonable belief it was complying with the FMLA. Generally, these cases involve an employer's "good-faith mistake" as to whether its action violates the FMLA. *Compare Dierlam v. Wesley Jessen Corp.*, 222 F.Supp.2d 1052, 1057 (N.D.Ill.2002) (addressing question of first impression in the Seventh Circuit, and the "entire federal court system," the court denied liquidated damages.); *Miller v. AT & T*, 83 F.Supp.2d 700 (S.D.W.Va.2000), *aff'd*, 250 F.3d 820 (4th Cir.2000) (finding employer did not act in bad faith in terminating employee for excess unexcused absences on ground that employee's influenza A was not "serious health condition" covered under FMLA, and thus employer was not subject to liquidated damages, in light of regulation stating that flu was not "serious health problem"); *Barrilleauz v Thayer Lodging Group, Inc.*, Civ. No. 97-3252, 1999 U.S. Dist. Lexis 8206, *22 (E.D.La. May 25, 1999) ("It was reasonable, albeit legally incorrect, for Thayer to conclude that Barrilleaux was not entitled to FMLA leave because she had not worked for Thayer for the requisite time period."); *Thorson v. Geminin, Inc.*, 96 F.Supp.2d 882 (N.D.Iowa 1999), *aff'd*, 205 F.3d 370, *cert. denied*, 531 U.S. 871 (2000) (the court found that the employer acted in good faith when it fired employee for excess absenteeism due to minor ulcers and gastritis as FMLA was only six months old at the time of termination, employer made active effort to learn law and comply with it, and employer's mistake about the law was only determined when Secretary of Labor issued advisory opinion during pendency of employee's appeal); *with, Chandler v. Specialty Tires of America, Inc.*, 283 F.3d 818, 827 (6th Cir.2002) (finding employer's good faith belief was unreasonable where employer testified that he had no experience with the FMLA the day he fired plaintiff, that he made no inquiries into her request for leave, that he made no independent effort to check the information supplied by her manager regarding her status, and that the decision to terminate plaintiff was based on an eight minute conversation with her manager ); *Shea*, 152 F.3d at 733 (district court's finding of good faith based on good faith record-keeping errors by defendant's employees was not enough and defendant did not meet its burden of establishing its reasonable belief in the legality of the situation. "[A]n employer cannot satisfy its dual burden under [FSLA] § 260 solely by suggesting lower-level employees are responsible for the violations"); *Reich*, 121 F.3d at 71 ("That [employer] did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith."); *Smith v. Diffee Ford-Lincoln Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir.2002) ("Relying on 29 U.S.C. § 2617(a)(1)(A)(iii), and on the fact that the jury had necessarily rejected [the employer's] defense that it would have discharged Smith regardless of her taking FMLA leave, the judge found that he was required to award $62,785 in liquidated damages (equal to the sum of back pay of $58,000 and interest in the amount of $4,785) and did so."); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1151 (10th Cir.1999) (upholding liquidated damages award of $9,000, stating the employer "has not shown us the evidence is so in his favor that the district court was in error to deny its motion."); *Mummert v. Vencor, Inc.*, No. 99-16443, 99-16560, 2001 WL 1345999, *3 (9th Cir. Oct. 31, 2001) (upholding award of $44,736 in liquidated damages in an interference case. "The district court found [employer's] failure to follow its own policy fatal to its claim of good faith, and we have no basis upon which to reverse that finding."); *Nero*, 167 F.3d at 929 (affirming district court's liquidated damages award of $51,747.60); *Williams*, 808 So.2d at 861 (upholding lower court's award of liquidated damages as record demonstrated employer was "unable to state any basis that [it] had for believing it was not violating the FMLA." The court further held that the employer "took no active steps to ascertain the dictates of the FMLA before firing" plaintiff. The court also concluded that defendant "provided no evidence that it had reasonable grounds for believing that its acts were not a violation of the FMLA."); *Duty*, 293 F.3d at 497-48 (upholding liquidated damages where evidence that employer "(1) consistently refused to return [plaintiff] to his former job unless he functioned at 100% capacity, and (2) made no effort to determine whether [plaintiff] was capable of performing the essential functions of his job."); *Sherman v. AI/FOCS, Inc.*, 113 F.Supp.2d 65, 76 (D.Mass.2000) (concluding termination not in good faith where decision to terminate was "improperly colored with a discriminatory motive, and because attempt to offer nondiscriminatory justifications lacked credibility");

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02244-HBF    Document 68-6    Filed 04/27/2006    Page 12 of 20

Not Reported in F.Supp.2d                                                                                            Page 4
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

*Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.*, No. 00 CIV 5207, 2002 WL 1059117, *1 (S.D.N.Y. May 28, 2002)(denying motion for judgment as a matter of law or a new trial where awarded back pay and benefits of $150,000 and liquidated damages of $100,000) ; *Routes v. Henderson*, 58 F.Supp.2d 959, 999 S.D.Ind.1999) ("the issue of liquidated damages need not be briefed. The Court finds that Routes is entitled to liquidated damages as a matter of law under these circumstances."); *Churchill v. Star Enterprises*, 3 F.Supp.2d 622, 623 (E.D.Penn.1998) (awarding liquidated damages in an amount of $9,168.61, equal to the compensatory damages, and ordering reinstatement.); *Morris v. VCW, Inc.*, No. 95-0737-CV-W-3-6, 1996 WL 740544, *4 (W.D.Mo. Dec. 26, 1996) (the court found that plaintiff's supervisor recommended termination of plaintiff in the "heat of the moment" and "lost her cool." "If as the jury found, her predominant motivation was resentment at a valid leave request, the lack of good faith seems obvious, given the acknowledged awareness of the Leave Act.").

> FN3. The Court reviewed all the cases cited by defendant in support of denying liquidated damages *Estes v. Meridan One Corporation*, 77 F.Supp.2d 722, 729 (E.D.Va.1999) (plaintiff's motion for liquidated damages summarily denied as being "without merit"), *aff'd*, No. 99-2662, 2001 WL 28576 (4th Cir. Mar. 23, 2001); *Cavin v. Honda of America Manuf. Inc.*, 138 F.Supp.2d 987, 992 (S.D.Ohio 2001) ("The court may reduce or eliminate liquidated damages if the employer proves that it had reasonable grounds for believing that its behavior was not in violation of the FMLA." The court did not reach the question of liquidated damages prior to granting dismissal.); *Barcola v. Interim Healthcare, Inc.*, Nos. 01-1993, 01-1994, 2002 WL 463286, *1 (3d Cir.2002) (affirming denial of liquidated damages without comment)

> FN4. As noted by plaintiff, "with the exception of *Brennla*, the liquidated damages awards in the foregoing cases were in the exact amount of the backpay and prejudgment interest awarded by the court or jury, as mandated by statute." [Doc. # 87 at 7].

*3 Pharmedica did not prove "both good faith and reasonable grounds for the act or omission." To find otherwise would, in the Court's opinion, go against the weight of the facts found by the jury. Both Stefanski and Cipollone testified that they were unaware that the FMLA permitted half-day medical leave. They both testified that Palma requested half-day medical leave on "several" occasions prior to her return from surgery and yet they made no independent effort to determine the law. Here, defendant cannot claim a "good faith mistake" as plaintiff's discharge occurred six weeks after her supervisors were informed by the Department of Labor that the denial of half-day medical leave was a violation of the FMLA. Even if the Court accepts as true that defendant honestly misunderstood the FMLA and the provision of half-day medical leave, objective reasonableness cannot be found. The jury concluded that plaintiff's employment was terminated, at least in part, because she challenged Pharmedica's policy against half-day medical leave. The jury rejected the defense that Pharmedica would have terminated her employment absent the retaliatory motive. *See Smith*, 298 F.3d at 959. Therefore, the Court awards plaintiff $140,000 in liquidated damages for defendant's violation of the FMLA 29 U.S.C. § 2617(A)(1)(a)(iii).

### *FRONT PAY AND BENEFITS, OR IN THE ALTERNATIVE, REINSTATEMENT*

Plaintiff also moves for an award of front pay and benefits or, in the alternative, for reinstatement. [Doc # 103]. Palma seeks seven years' front pay to redress the financial harm she contends she has suffered, and will suffer, as a result of Pharmedica's termination of her employment on January 22, 1999. Plaintiff seeks present value future damages of $198,997, present value of future benefit loss of $48,737 and a lump sum tax adjustment of $48,741, totaling $296,475, based on the testimony of her expert Sheldon Wishnick.

Plaintiff argues that "[t]he relevant front pay inquiry ... is not whether the award is "speculative," but rather what amount of front pay is necessary to remedy the harm that Pharmedica's illegal conduct has caused, and will continue to cause, Ms. Palma, an older employee, for the remainder of her working life." [Doc. # 104 at 13].

"The decision to award front pay is discretionary, and a request for front pay may be denied if the court finds that the back pay award is sufficient to make the plaintiff whole. *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1064 (W.D.N.Y.1997)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02244-HBF    Document 68-6    Filed 04/27/2006    Page 13 of 20

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

(citing *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 145 (2d Cir.1993)); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1182 (2d Cir.1996) (The award of front pay is within the sound discretion of the court.) "While back pay-which the jury awarded-compensates the victim of discrimination for lost wages and benefits before trial, front pay is intended to compensate her for losses after trial." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 964 (10th Cir.2002) (citations omitted). "Where a plaintiff has already been fully compensated for the injuries resulting from discrimination, front pay is not appropriate. In order to qualify for front pay, a plaintiff must have been diligent in seeking comparable employment and under no circumstances can the award be based on speculation." *Rivera v. Baccarat,* 34 F.Supp.2d 870, 878 (S.D.N.Y.1999) (citation omitted); *Greenway,* 951 F.Supp. at 1064 ("the court must examine whether [plaintiff] used reasonable diligence in [her] job search...."). "[T]he burden lies with the defendant to show that plaintiff did not exercise such diligence." *Greenway,* 951 F.Supp. at 1064.

*4 An award of front pay is not warranted here, as the Court finds that the compensatory and liquidated damages of $280,000 plus interest sufficiently meet the goal of making plaintiff whole. *Hardin v. Caterpillar, Inc.,* No. 1:97CV213-D; 1999 WL 960034, at *3 (N.D.Miss. May 28, 1999) ("[A]n award of front pay is inappropriate because the jury verdict sufficiently meets the goal of making the plaintiff whole."), *aff'd,* 227 F.3d 268, 269 (5th Cir.2000)(finding "the district court acted within its discretion in refusing reinstatement and front pay); *Floc v. Homecare Health Serv., Inc.,* 845 F.2d 108, 112 (5th Cir.1988) ("Front pay is awarded to meet the goal of Title VII to make whole the victims of discrimination."). "In calculating the size of a front pay award, the court must estimate the plaintiff's ability to mitigate damages in the future. This determination is subject to the court's discretion. Equitable factors which courts have considered in determining whether to award front pay include both the age of the plaintiff and his reasonable prospects of obtaining comparable employment." *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.,* 79 F.Supp.2d 197, 204 (E.D.N.Y.2000) (citations omitted).

Moreover, plaintiff testified that since she was hired at Guilford Savings Bank she has not sought other employment. In awarding back pay of $140,000, the jury implicitly found that Palma would have been employed at least until the date of trial, November 13, 2002, which was more than three years after her dismissal on January 22, 1999. *See Smith,* 298 F.3d at 965. Over four years have passed since termination of Palma's employment. Since trial of this matter in November 2002, plaintiff testified, she has not sought other employment. To the Court, plaintiff stated that she did not believe there was much opportunity for growth at her current job at Guilford Savings. However, she has not made any efforts to contact a head hunter or interview for other positions. Indeed, on cross examination plaintiff stated that, without knowing more, she did not know if she would be interested in applying for an accounting job in the $40,000 range. Without any evidence of an effort to seek a higher paying position, or even a position comparable in pay and responsibilities to her job at Pharmedica, the Court can only conclude that plaintiff is content to remain at her current job at the current rate of pay. *Miller v. AT & T,* 83 F.Supp.2d 700, 709 (S.D.W.Va.2000) ("A successful FMLA plaintiff cannot simply reevaluate her career goals, accept a lesser paying job, and receive the same amount of compensation as before through front pay."); *Hine v. Mineta,* 238 F.Supp.2d 497, 501 (E.D.N.Y.2003) (finding "plaintiff had a duty to seek "suitable" other employment."). Ms. Palma testified that she is very happy working at her current job at Guilford Savings Bank, she liked her co-workers and she has a very short commute to work. Palma failed to establish the absence of any prospect of obtaining comparable employment. *Rivera,* 34 F.Supp.2d at 878. There is nothing in the record to indicate that her age, or the economy, are impediments to plaintiff obtaining a higher paying position. *See Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,* No. 00 CIV 5207, 2002 WL 105917, *11 (S.D.N.Y. May 28, 2002) (Awarding one year of front pay, the Court stated "there is nothing in the record to indicate that [plaintiff] will not be able to secure employment within the year ... because any greater award would be unreasonable and unduly speculative."). As in *Rivera,* "[i]t would therefore be inequitable to grant her additional damages in the form of front pay and future damages." 34 F.Supp.2d at 878 ("plaintiff has now worked at Bloomingdale's for two years for significantly lower wages and benefits than she received at Baccarat, yet she has presented no evidence that she has made any further efforts to secure more comparable employment.) The Court declines under these circumstances to make Pharmedica "responsible for maintaining [Ms. Palma's] income level into the future without regard to any continuing efforts she may or may not have made to mitigate those damages." *Id.* In light of the evidence, any assumption that Ms. Palma will not be

Case 3:02-cv-02244-HBF   Document 68-6   Filed 04/27/2006   Page 14 of 20

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

able to secure comparable employment for the next seven years is unwarranted and highly speculative; the Court therefore declines to award front pay on that basis as well.

*Reinstatement*

\*5 "There is a strong preference for reinstatement as the remedy for future lost earnings in discrimination cases." *Locale v. The Port Authority of New York and New Jersey,* No. 97 Civ. 0704, 1999 WL 587928, \* 6 (S.D.N.Y. Aug. 4, 1999) (quoting *Milano v. AC & R Advertising, Inc.* 875 F.Supp. 203, 224 (S.D.N.Y.1995)). Courts have recognized that reinstatement may not be appropriate where there is animosity or where it may result in an innocent third party losing a job. *Id.* at \*6 (citations omitted).

Plaintiff asserts that the "remedy of reinstatement may not be practical in this case," requesting front pay as the preferable remedy [Doc. # 104 at 2]. Ms. Palma did not seek reinstatement during her testimony at trial or at oral argument on this motion. While plaintiff states that an award of front pay is appropriate when reinstatement is "not practical or possible due to animosity resulting from litigation," *Id.*, there was no evidence at trial of any animosity or hostility between the parties that would make the employer-employee relationship unworkable. Nor did the parties offer any evidence on the impact to Pharmedica if reinstatement were granted. According to the testimony at trial, plaintiff's job functions were simply redistributed to other employees.

In fashioning an equitable remedy, the Court is persuaded that the award of back pay and liquidated damages plus interest meets the goal of ensuring that Ms. Palma has been made whole from the FMLA violation. *Wheedles v. Union Carbide Corp.,* 742 F.2d, 727-28 (2d Cir.1984). Under the circumstances of this case, reinstatement is not warranted, or necessary.

*CONCLUSION*

For the foregoing reasons, plaintiff Motion for Liquidated Damages [**Doc. # 86**] is **GRANTED** in the amount of $140,000.

Plaintiff's Request for Front Pay and Benefits [**Doc. # 104-1**] is **DENIED**. Plaintiff's alternative request for Reinstatement [**Doc. # 104-2**] is **DENIED**.

Plaintiff's Motion for Prejudgment and Post-Judgment Interest [**Doc. # 110**] is **GRANTED** absent objection.

Under the FMLA, "[t]he court ... shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." *See* 29 U.S.C. § 2617(a)(3). Plaintiff is directed to file a Motion for Attorneys' Fees and Costs, along with supporting documentation, within thirty (30) days.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. # 49] on September 30, 2002, with appeal to the Court of Appeals.

D.Conn.,2003
Palma v. Pharmedica Communications, Inc.
Not Reported in F.Supp.2d, 2003 WL 22750600 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:00CV01128 (Docket) (Jun 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT I**

**Westlaw.**

23 Fed. Appx. 36                                                                                                          Page 1
23 Fed. Appx. 36, 2001 WL 1230706 (C.A.2 (N.Y.))
**(Cite as: 23 Fed.Appx. 36)**

**H**
Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter. THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. Please use FIND to look at the applicable circuit court rule before citing this opinion. Second Circuit Rules § 0.23. (FIND CTA2 s 0.23.)

United States Court of Appeals, Second Circuit
BIC CORPORATION and Wite-Out Products, Inc.,
Plaintiffs-Appellees,
v.
FAR EASTERN SOURCE CORPORATION,
Defendant-Appellant.
No. 01-7074.

Oct. 12, 2001.

Plaintiff companies brought action against another company, alleging trademark infringement, unfair competition, and trademark dilution and sought injunction against defendant's use of mark "WIPE-OUT" on its corrections products. The United States District Court for the Southern District of New York, Baer, J., granted injunctive relief. Defendant appealed. The Court of Appeals held that: (1) defendant's claim that survey results may have been misleading because oral responses of persons polled may have been "white out" rather than "Wite-Out" went to weight of evidence, not to its admissibility; (2) admission of lay testimony of person who worked directly on design and interpretation of survey, which had been prepared in plaintiff's normal course of business, not for litigation purposes was not an abuse of discretion; and (3) any error in admission of testimony of plaintiff's employee as to plaintiff's market share and marketing expenditures was harmless.

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A ⚖ 2011**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(C) Reception of Evidence
            170Ak2011 k. In General. Most Cited Cases

**Federal Courts 170B ⚖ 823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of Evidence. Most Cited Cases
Trial court has broad discretion over admission of evidence, and its evaluation of probative value of proffered evidence is entitled to substantial deference.

**[2] Evidence 157 ⚖ 150**

157 Evidence
    157IV Admissibility in General
        157IV(E) Competency
            157k150 k. Results of Experiments. Most Cited Cases
It is within discretion of district court to admit evidence of results of a survey that has polled individuals about their presently-existing states of mind to establish facts about the group's mental impressions.

**[3] Evidence 157 ⚖ 546**

157 Evidence
    157XII Opinion Evidence
        157XII(C) Competency of Experts
            157k546 k. Determination of Question of Competency. Most Cited Cases
Trial court's discretion in admission of evidence is especially broad with respect to admission or exclusion of expert evidence.

**[4] Evidence 157 ⚖ 555.2**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.2 k. Necessity and Sufficiency.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

23 Fed.Appx. 36 Page 2
23 Fed.Appx. 36, 2001 WL 1230706 (C.A.2 (N.Y.))
**(Cite as: 23 Fed.Appx. 36)**

Most Cited Cases
Although expert testimony may be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an "apples and oranges" comparison, other contentions that the assumptions are unfounded go to weight, not admissibility, of testimony.

**[5] Evidence 157 🗝498.5**

157 Evidence
    157XII Opinion Evidence
        157XII(A) Conclusions and Opinions of Witnesses in General
            157k498.5 k. Determination of Question of Competency. Most Cited Cases

**Federal Courts 170B 🗝823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of Evidence. Most Cited Cases
Trial court has discretion to allow lay opinion testimony based on witness's observations where that testimony will be helpful to factfinder in determining a fact in issue, and trial court's view of helpfulness is entitled to deference. Fed. Rules Civ.Proc.Rule 701(b), 28 U.S.C.A.

**[6] Federal Courts 170B 🗝823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of Evidence. Most Cited Cases
In reviewing a decision of trial court as to admissibility of evidence, Court of Appeals applies an abuse-of-discretion standard.

**[7] Federal Courts 170B 🗝795**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)3 Presumptions
                170Bk795 k. Conduct of Trial in General; Evidence; Judgment. Most Cited Cases

**Federal Courts 170B 🗝897**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk896 Admission of Evidence
                    170Bk897 k. Nonjury Cases. Most Cited Cases
Admission of evidence in a bench trial is rarely ground for reversal, for trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis.

**[8] Trademarks 382T 🗝1619**

382T Trademarks
    382TIX Actions and Proceedings
        382TIX(C) Evidence
            382Tk1613 Admissibility
                382Tk1619 k. Surveys. Most Cited Cases
    (Formerly 382k580)

**Trademarks 382T 🗝1629(4)**

382T Trademarks
    382TIX Actions and Proceedings
        382TIX(C) Evidence
            382Tk1620 Weight and Sufficiency
                382Tk1629 Similarity; Likelihood of Confusion
                    382Tk1629(4) k. Surveys. Most Cited Cases
    (Formerly 382k580)
Defendant's claim that survey results may have been misleading because oral responses of persons polled may have been "white out" rather than "Wite-Out" went to weight of evidence, not to its admissibility, in action seeking injunction prohibiting defendant from continuing to use the mark "WIPE-OUT" on its correction products.

**[9] Evidence 157 🗝474.5**

157 Evidence
    157XII Opinion Evidence
        157XII(A) Conclusions and Opinions of Witnesses in General
            157k474.5 k. Subjects of Opinion Evidence in General. Most Cited Cases
Admission of lay testimony of person who worked directly on design and interpretation of survey, which had been prepared in plaintiff's normal course of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

business, not for litigation purposes, was not an abuse of discretion in action seeking injunction prohibiting defendant from continuing to use the mark "WIPE-OUT" on its correction products.

[10] Federal Courts 170B ⟨key⟩899

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk896 Admission of Evidence
                    170Bk899 k. Irrelevant Evidence and Hearsay. Most Cited Cases
Although testimony of plaintiff's employee as to plaintiff's market share and marketing expenditures was perhaps hearsay and not the best evidence, any error in admission of his testimony was harmless in action seeking injunction prohibiting defendant from continuing to use the mark "WIPE-OUT" on its correction products, given that his testimony was based on his first-hand knowledge gained in various positions he had held with plaintiff, as well as on marketing studies that he had received in the course of his duties with plaintiff, and copies of studies had been provided to defendant.

*37 Appeal from the United States District Court for the Southern District of New York.

Dolly Caraballo, N.Y., NY, for appellant.
Peter D. Vogl, Pennie & Edmonds, N.Y., NY, for appellee.

Present KEARSE, MINER and PARKER, Circuit Judges.

*SUMMARY ORDER*

**1 This cause came on to be heard on the record from the United States District Court for the Southern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Defendant Far Eastern Source Corporation ("Far Eastern") appeals from a final judgment of the United States District Court for the Southern District of New York, Harold Baer, Jr., *Judge*, granting plaintiffs BIC Corporation and Wite-Out Products, Inc. (collectively "BIC"), an injunction prohibiting Far Eastern from continuing to use the mark "WIPE-OUT" on Far Eastern's correction products. On appeal, Far Eastern does not take issue with the district court's ruling that the "Wite-Out" mark is not generic; rather it argues *38 principally that the district court erred in analyzing the strength of BIC's mark and in the overall balancing of the *Polaroid* factors, *see Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.)* ("*Polaroid*"), *cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)*. Far Eastern also argues that several of the district court's evidentiary rulings were erroneous and that the injunction is overbroad. For the reasons that follow, we find no basis for reversal.

In arguing that the district court made errors in its evidentiary rulings, Far Eastern contends principally that a consumer survey offered by BIC should have been excluded due to the possibility of confusion in the minds of those responding to the survey; that Mary Pugh was allowed to give expert opinion testimony without being qualified as an expert; and that the expert testimony of Jacob Jacoby with respect to the efficacy of disclaimers should have been excluded for unreliability. Far Eastern also contends that the testimony of Charles McCaffrey as to BIC's market share and marketing expenditures was inadmissible hearsay. We see no basis for reversal.

[1][2] The trial court has broad discretion over the admission of evidence, *see, e.g., Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 619 (2d Cir.1991)*, and its evaluation of the probative value of proffered evidence is entitled to substantial deference, *see, e.g., George v. Celotex Corp., 914 F.2d 26, 28 (2d Cir.1990)*. It is within the discretion of the court to admit evidence of the results of a survey that has "poll[ed] individuals about their presently-existing states of mind to establish facts about the group's mental impressions." *Schering Corp. v. Pfizer Inc., 189 F.3d 218, 227 (2d Cir.1999)*. "[E]rrors in methodology ... properly go only to the weight of the evidence-subject, of course, to Rule 403's more general prohibition against evidence that is less probative than prejudicial or confusing." *Id. at 228.*

[3][4] The trial court's discretion is especially broad with respect to the admission or exclusion of expert evidence. *See, e.g., Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Fed.R.Evid. 702*. Although expert testimony may be excluded if it is speculative or conjectural, *see In re Air Disaster at Lockerbie Scotland, 37 F.3d 804, 824 (2d Cir.1994), cert. denied, 513 U.S. 1126,*

115 S.Ct. 934, 130 L.Ed.2d 880 (1995), or if it is based on assumptions that are "so unrealistic and contradictory as to suggest bad faith" or to be in essence an " 'apples and oranges' comparison," *Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 208 (2d Cir.1984), other contentions that the assumptions are unfounded "go to the weight, not the admissibility, of the testimony," *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1188 (2d Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

**2 [5] The trial court also has discretion to allow lay opinion testimony based on the witness's observations where that testimony will be helpful to the factfinder in determining a fact in issue. *See, e.g.,* Fed.R.Evid. 701(b); *Howley v. Town of Stratford,* 217 F.3d 141, 155 (2d Cir.2000); *United States v. Urlacher,* 979 F.2d 935, 939 (2d Cir.1992); *Brady v. Chemical Construction Corp.,* 740 F.2d 195, 201 (2d Cir.1984). The trial court's view of helpfulness is entitled to deference. *See generally George v. Celotex Corp.,* 914 F.2d at 28 ("district court's determination of relevance will not be disturbed unless it evidences an abuse of discretion").

[6][7] In reviewing a decision of the trial court as to the admissibility of evidence, we apply an abuse-of-discretion standard. *See, e.g.,* *39*General Electric Co. v. Joiner,* 522 U.S. 136, 138-39, 141-43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (expert testimony); *Salem v. United States Lines Co.,* 370 U.S. at 35, 82 S.Ct. 1119 (decision to admit expert testimony must be upheld unless decision is "manifestly erroneous"); *Schering Corp. v. Pfizer Inc.,* 189 F.3d at 224 (survey evidence); *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 292 (2d Cir.1999) (same); *Brady v. Chemical Construction Corp.,* 740 F.2d at 201 (lay opinion). Further, the admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis. *See, e.g., Schultz v. Butcher,* 24 F.3d 626, 631-32 (4th Cir.1994) ("For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."); *Gulf States Utilities Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir. Unit A Jan.1981); *see also* 11 C. Wright & A. Miller & M. Kane, *Federal Practice and Procedure* § 2885, at 454-55 (2d ed. 1995) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence. The appellate court will disregard the inadmissible evidence and hold that its admission was harmless if there was competent evidence to sustain the findings of the court." (footnotes omitted)). An erroneous ruling will not lead to reversal unless affirmance would be "inconsistent with substantial justice," Fed.R.Civ.P. 61; *see, e.g., Healey v. Chelsea Resources, Ltd.,* 947 F.2d at 620.

[8] In the present case, we see no error in the court's admission of the evidence to which Far Eastern objects on this appeal. Far Eastern's contention that the survey results may have been misleading because the oral responses of the persons polled may have been "white out" rather than "Wite-Out" go the weight of the evidence, not to its admissibility. Respondents to the poll were asked to state brands of correction products, and the possibility that they responded "white out" as a description, rather than "Wite-Out" as a brand name, is speculative. It was well within the province of the court to admit the survey evidence, especially in a bench trial.

**3 [9] Far Eastern's contention that Pugh was improperly allowed to testify with regard to the survey as an expert despite her lack of expert qualifications is unsupported by the record. Although at one point the court referred to Pugh as an expert, it noted, "I don't think she is telling us anything as an expert. I think she is telling us what her experience provides for her." Pugh had worked directly on the design and interpretation of the survey-which had been prepared in BIC's normal course of business, not for litigation purposes-and the court indicated its view that Pugh's testimony would be helpful. The admission of her lay testimony was not an abuse of discretion.

Nor are we persuaded by Far Eastern's contention that expert testimony by Jacoby as to the efficacy of Far Eastern's disclaimers on its packaging should have been excluded on the basis that Jacoby was not qualified to give that testimony. Given the evidence as to Jacoby's credentials, we see no error in the court's admission of his testimony.

[10] Lastly, although the testimony of McCaffrey as to BIC's market share and marketing expenditures was perhaps hearsay and not the best evidence, we see no basis for reversal. His testimony was based on his first-hand knowledge gained in various positions he had held with BIC, as well as on marketing studies that he had received in the course of his duties at BIC; and copies of the studies themselves had been provided to Far Eastern. Any *40 error in the admission of McCaffrey's testimony

23 Fed.Appx. 36 Page 5
23 Fed.Appx. 36, 2001 WL 1230706 (C.A.2 (N.Y.))
**(Cite as: 23 Fed.Appx. 36)**

was harmless. *See, e.g., United States v. Gordon, 379 F.2d 788, 790 (2d Cir.), cert. denied, 389 U.S. 927, 88 S.Ct. 286, 19 L.Ed.2d 277 (1967)* (when records that formed the basis of testimony were made available to the opposing party, failure to introduce the records themselves into evidence is at most "a formal violation of the best evidence rule," which does not create "prejudice requiring reversal")

Finally, we reject Far Eastern's challenges to the merits of the judgment against it. We see no clear error in the challenged findings of fact, nor any error of law in the court's balancing of the *Polaroid* factors, and we affirm substantially for the reasons stated in Judge Baer's Opinion and Order dated December 17, 2000. We have also considered Far Eastern's contention that the injunction fashioned was overly broad. We see no abuse of discretion, *see, e.g., Starter Corp. v. Converse, Inc., 170 F.3d at 299*, in the terms of the injunction, given the court's permissible views of the likelihood of consumer confusion inherent in the close similarity between "Wite-Out" and "WIPE-OUT" and the inadequacy of Far Eastern's disclaimers to eliminate the likelihood of such confusion.

We have considered all of Far Eastern's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.

C.A.2 (N.Y.),2001.
Bic Corp. v. Far Eastern Source Corp.
23 Fed.Appx. 36, 2001 WL 1230706 (C.A.2 (N.Y.))

Briefs and Other Related Documents (Back to top)

• 2001 WL 34354169 (Appellate Brief) Reply Brief of Defendant-Appellant (Jun. 25, 2001) Original Image of this Document (PDF)
• 2001 WL 34354170 (Appellate Brief) Brief of Defendant-Appellant (Apr. 26, 2001) Original Image of this Document (PDF)
• 01-7074 (Docket) (Jan. 23, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.