

2006 APR 28  A 10: 13

DISTRICT COURT

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA K. BLUMENSCHINE, | : CIVIL ACTION NO. 302CV2244 ~~DJS~~ HBF |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| PROFESSIONAL MEDIA GROUP LLC, | : APRIL 27, 2006 |
| | : |
| Defendant. | : |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTIONS IN LIMINE AND
IN SUPPORT OF DEFENDANT'S MOTIONS
IN LIMINE AND OTHER EVIDENTIARY OBJECTIONS**

Defendant Professional Media Group LLC ("ProMedia")
respectfully submits this memorandum:

(a)  in opposition to plaintiff's two motions <u>in
limine</u>;[1] and

(b)  in additional support of ProMedia's own motions
<u>in limine</u> and certain other evidentiary objections raised

---

[1] One of plaintiff's two motions <u>in limine</u> dated April 17, 2006, seeks
"to exclude testimony from Daniel Boucher and evidence from irrelevant
time periods"; the other, of the same date, seeks to exclude "opinion
testimony as to discrimination, testimony as to negative character and
untimely disclosed witnesses."

by ProMedia in the joint pre-trial order of April 17, 2006.[2]

I.

### PLAINTIFF BLUMENSCHINE'S MOTION TO EXCLUDE TESTIMONY OF SEVEN WOMEN EMPLOYEES SHOULD BE REJECTED.

Plaintiff Blumenschine, wanting to preserve the fiction that ProMedia is a male-dominated company, obviously is desperate to keep out the testimony of several women who worked at ProMedia during Lisa Blumenschine's tenure. Among other things, these women will testify that although Lisa Blumenschine repeatedly complained to them (or in their hearing) of many things, including the location of her office, her title and her lack of sales, she never complained of anything remotely approaching the various types of discrimination she now alleges.

Three of these women, Gloria Williams, Terry Nelson and Ellen Ziperman, were in fact disclosed during discovery. Williams and Ziperman were disclosed two years ago both in defendant's Rule 26(a) disclosures, a copy of which is annexed as Exhibit "A" to Blumenschine's April 17, 2006 Motion in Limine to Exclude Opinion Testimony, as well

---

[2] ProMedia's three motions in limine: (1) seek to exclude purported expert testimony by Sheldon Wishnick; (2) seek to exclude testimony or discussion concerning certain "lost" or missing documents; (3) oppose plaintiff's attempt to exclude the four fact witnesses disclosed over four months ago.

as in the answer to plaintiff's interrogatory 14, a copy of which is annexed as Exhibit "B" thereto.  Similarly, Nelson was listed two years ago on plaintiff Blumenschine's own Rule 26(a) disclosures (attached as Exhibit "A" hereto), and ProMedia explicitly stated that people from that list both had knowledge (see Exhibit "A" to Blumenschine's Motion in Limine to Exclude Opinion Testimony) and might be called.[3]

Blumenschine is no doubt particularly eager to keep out Terry Nelson, despite having listed Terry Nelson as one of her own witnesses and presumably being fully aware of what she might say.  Indeed, Blumenschine was questioned about Terry Nelson repeatedly at her own deposition (See Blumenschine deposition, pages 80-83, 90-92, 164-69, 203, 229-32 and 247, copies of which are attached as Exhibit "B" hereto).

Terry Nelson is a successful salesperson, a woman older than Blumenschine, who is still employed by the

---

[3] The 1993 Advisory Committee Notes to Federal Rule of Evidence 37(c)(1) make clear that "unduly harsh penalties" can and should be avoided, by limiting this Rule's automatic sanction (for failure to disclose under Rule 26(a)) to violations that are "without substantial justification," or are not "harmless", e.g.: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; . . .(emphasis added)."  Here, we specifically mentioned the witnesses listed by plaintiff.  Accordingly, Ms. Terry Nelson, initially disclosed by Blumenschine as a potential witness, must be allowed to testify.

Company because her sales, unlike Blumenschine's, remained respectable even after 9/11. Blumenschine, having herself listed Terry Nelson as a witness, has known for several years that she might testify at the trial, and any suggestion that plaintiff will be unfairly prejudiced by such testimony by not having an opportunity to prepare to meet it, is baseless.

Plaintiff Blumenschine admits that Gloria Williams and Ellen Ziperman were fully and timely disclosed, but objects to what she imagines will be their testimony without articulating why they should not be allowed to testify to what they personally observed and experienced with respect to the ProMedia workplace. Blumenschine's fear that witnesses who describe her contemporaneous comments and actions may cast Blumenschine in a different light than the one in which she wishes to portray herself, has no legal foundation. The cases offered by plaintiff in her attempt to exclude the testimony from these three witnesses (Nelson, Williams and Ziperman), as well as the other women witnesses -- Abel, Mollahan, Moore and Cassone -- who have been disclosed for almost five months, do not, in fact, support such a harsh result.[4]

---

[4] In that regard, attached hereto are the following papers which were referenced but not included with ProMedia's initial Memorandum in Opposition to Plaintiff's Motion in Limine to Attempt to Exclude

In addition to citing cases readily distinguishable

from this matter in support of precluding witness

testimony,[5] such an "unduly harsh penalty" can generally

---

Certain Fact witnesses:  (a) a copy of this firm's letter to plain-
tiff's counsel dated January 10, 2006 (Exhibit "C" hereto); (b) a copy
of this firm's letter to plaintiff's counsel dated January 12, 2006
(Exhibit "D" hereto); and (c) Defendant's Supplemental Answer to
Plaintiff's Witness Interrogatory (Exhibit "C" to Plaintiff's Motion in
Limine Seeking to Exclude Opinion Testimony).  Together, these exhibits
show that "a failure to disclose witness information is 'harmless' if
the other party was well aware of the identity of the undisclosed
witness and the scope of their knowledge well before trial." 6 Moore's
Federal Practice § 26.27 [2][d]at p. 26-93.  Further, attached hereto
as Exhibit "E" is plaintiff's counsel's January 11, 2006 letter,
wherein preclusion is immediately invoked as the appropriate remedy.
Blumenschine never responded to ProMedia's offer of a short deposition
schedule for the four additional witnesses (Exhibit "D" hereto).

[5] Robbins, a Federal Mississippi personal injury case, precluded
plaintiff from narrowing from six initially-disclosed experts to one
(and disclosing for the first time the proposed testimony), only one
month before trial; in Royal Petroleum, a Federal Oklahoma case, new
witness precluded when defendant tried to file Supplemental Response
the afternoon before trial -- this "trial by ambush" tactic disallowed;
in Empressa, the Southern District of New York would not allow
witnesses disclosed two months before trial to testify when one witness
was never heard of before, and extensive additional document discovery
was necessary prior to deposing them; L-3 Communications Corp., also a
Southern District decision, struck a declaration submitted in
opposition to summary judgment, where the declarant was unknown and had
never been previously disclosed (only mentioned in an email document
produced at a deposition); Ty, Inc., an Illinois Federal case,
precluded defendant from naming 14 additional trial witnesses who were
never identified during discovery (2 of which were plaintiff's trial
attorneys since the beginning), where defendant's explanation for non-
disclosure was its counsel was "unable to do so" and its attempt to
explain away any prejudice was that plaintiff could "pick up the phone"
to see what witnesses might say; Salgado, a Seventh Circuit products
liability case, the court precluded experts' opinions filed one day
late because they were conclusory in nature, devoid of any factual
basis (one expert admitted never seeing discovery materials), and
otherwise insufficient under Rule 26(e), and therefore their testimony
at trial precluded as well; in Outley, the Second Circuit noted that
Rule 37 does not impose sanctions for failure to supplement Rule 26
responses, and in any event, reversed the trial court's preclusion of
plaintiff's proffered eyewitness testimony to corroborate his account
because: testimony extremely important to corroborate and bolster
plaintiff's account of the facts and credibility; testimony based on
simple observation, not technical or specialized (expert) evidence;
defendant made no request for incomplete information (addresses and
telephone numbers) in the two years after disclosure but before trial;
defendant did not seek recess or continuance, but instead sought most

only be imposed upon a showing of willfulness or bad faith.
See, Almonte v. Coca-Cola Bottling Co., 169 F.R.D. 246, 249
(D.Conn. 1996) ("the preclusion of evidence and striking
portions of the pleadings, like a dismissal, are harsh
sanctions that should be reserved for extreme cases")
(citations omitted); also see, Cine Forty-Second Street v.
Allied Artists Pictures Corp., 602 F.2d 1062, 1066-67 (2d
Cir. 1979). We have found no case which precluded fact
witnesses such as the ones at bar, who were named over four
months prior to trial, all of whom were offered up to
plaintiff to be deposed on regular or short notice in the
five months before trial.

ProMedia has sufficiently explained, pursuant to
Outley, its justification for not disclosing the four
additional witnesses until January 10, 2006, as well as the
harmlessness of the timing of such disclosure, including
the importance of such evidence to refute Blumenschine's
testimony purporting to create an inference of
discrimination, and the fact that Blumenschine has avoided

---

drastic remedy, engaging in "procedural gamesmanship" to seize upon
good faith mistake and gain advantage; in Wolak, the Second Circuit
found that the district court did not abuse its discretion in
precluding plaintiff's psychiatric expert from testifying where none
had been announced in initial disclosures, and psychiatrist named after
discovery complete and three weeks before trial; in Hamburger, a Fifth
Circuit uninsured motorist bad-faith insurance case, the trial court
did not abuse discretion in precluding expert witness testimony when
named three months after court deadline, no opinion supplied, and this
was first notice expert would testify on causation instead of damages.

any attempt to depose these women for <u>over</u> <u>four</u> <u>months</u>, instead now claiming unfairness and prejudice -- all which mitigate against this Court imposing the severe sanction of preclusion.  <u>See</u>, Defendant's Memorandum in Opposition to Plaintiff's Motion in Limine to Attempt to Exclude Certain Fact Witnesses, submitted April 17, 2006; <u>Dunlap-McCuller</u> <u>v. Riese Org.</u>, 980 F.2d 153, 158-59 (2d Cir. 1992) (trial court did not abuse discretion by admitting into evidence two telephonic depositions taken during trial to rebut plaintiff's statements, where witnesses were not disclosed on pre-trial order but known a long time; no prejudice, bad faith, or willfulness present).

By contrast, it is ProMedia that will be prejudiced should this Court preclude its witnesses from refuting Blumenschine's uncorroborated statements of fact from which she infers discrimination.

The truth is that plaintiff Blumenschine had ample opportunity to depose each of these witnesses, but chose not to.  This is in line with the fact that there were a number of other disclosed witnesses whom Blumenschine chose not to depose.[6]  She has in no way been prejudiced.

---

[6] Blumenschine deposed five persons, as opposed to the fifteen named on her list and the additional five persons on defendant's lists (<u>see</u>, Exhibit A hereto, and Exhibit A to Plaintiff's Motion <u>in</u> <u>Limine</u> Seeking to Exclude Opinion Testimony).

Finally, Blumenschine's discussion, in her motion *in limine* with respect to these witnesses, of the purported *Faragher/Ellerth* affirmative defense is nothing more than a red herring here.

One of ProMedia's factual defenses to Blumenschine's claims that she was fired in retaliation for having complained of discrimination is that (a) she did not make any such complaint; (b) her remark to Dan Shannon, when she saw him with some other male executives, about the "boys club", was not a legitimate complaint of discrimination which a reasonable person would understand as such; and (c) most importantly, that the decision-maker who fired Lisa Blumenschine, Joseph J. Hanson, managing member and half owner of ProMedia, never learned of such comment, let alone any genuine complaint of discrimination, before Blumenschine's termination. These factual defenses were discussed at length in the cross-motions for summary judgment in this case, and at pages 11-12 (fn.3) of Judge Squatrito's November 9, 2003 Decision. For these and other reasons, *Faragher/Ellerth* is wholly irrelevant here.[7]

---

[7] *Faragher* and *Ellerth* both involved Title VII discrimination via hostile workplace sexual harassment and an employer's affirmative defense to this type of discrimination claim. While Blumenschine is confident ProMedia has waived any affirmative defense it may have had, ProMedia is likewise confident that Blumenschine has never properly pleaded or otherwise made such a claim against ProMedia, and may not now "change her story" at this late juncture.

Blumenschine's Complaint alleges her supervisor "fostered an

Since it is ProMedia's contention that Lisa

Blumenschine never made any legitimate complaint of

discrimination, and that Joe Hanson had neither knowledge

---

atmosphere that was disrespectful to plaintiff on the basis of her age and sex" (para. 17) and that he "unreasonably interfered with [her] work performance" (paras. 31, 38). At no time has Blumenschine ever alleged the requisite two elements of "sexual harassment" discrimination based on a hostile work environment: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, (and that the work environment was both objectively abusive (motivated by hostility toward women) and subjectively perceived by Blumenschine to be so), and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. See, Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002). The employer may successfully defend a hostile workplace claim by showing that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus. v. Ellerth, 524 U.S. 721, 765, 118 S.Ct. 2257 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275 (1998). Even if Blumenschine now purports to allege harassment as sexual discrimination, her own "boys club" comment and a Viagra joke are insufficient: "[i]solated incidents or episodic conduct" (Richardson v. New York State Dept. of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999)), or "relatively minor or infrequent" incidents (Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)) cannot support a hostile work environment claim. See, Deters v. Lafunte, 368 F.3d 185 (2d Cir. 2004). To be sure, Blumenschine has never before raised a "hostile work environment" as a triable issue of fact for the jury to determine. See, Plaintiff's Request to Charge, dated April 17, 2006, pp. 11-13 ("[Blumenschine] alleges that [ProMedia discriminated] by excluding her from management functions and then deciding to terminate her and hiring two younger males for the sales force without fully paying her.")

Additionally, again, the cases Blumenschine cites offer no support for her propositions: in Mooney, a Jones Act, workers' compensation case, the Second Circuit found no affirmative defense had been waived; Leopold, also a Second Circuit decision, involved a hostile work environment claim, which expressly is not at issue here; Perry is relied upon to preclude "emotional" testimony, but the proffered quote is contained nowhere in that decision (instead, the quote is contained in a string of criminal cases, see, e.g., U.S. v. Quattrone, 441 F.3d 153, 186 (2d Cir. 2006)); Constantino does not remotely discuss precluding testimony of "character flaws," instead finding that in a medical malpractice case the isolated admission of a few objectionable, legalistic references in materials put before the jury was not reversible error.

nor reason to know that there was any such complaint, the testimony of several women employees who had frequent contact with Lisa Blumenschine that, although she frequently complained of other things, she never made any complaint of discrimination, is both relevant and material evidence under the Federal Rules to support ProMedia's position that (a) Blumenschine's bantering comment to Dan Shannon was not intended to be such a complaint or perceived as such; and (b) that the decision-maker, Joseph Hanson, _never_ learned that Ms. Blumenschine said anything to indicate that the Company was acting in a discriminatory fashion.

ProMedia is a small company which has approximately 30 employees, most of whom are located on a single half floor of an office building in Norwalk, Connecticut.  Ms. Blumenschine attempts to get around her failure to complain to Mr. Hanson, the owner of the company, on the grounds that he was "not accessible," (p. 129, line 11) "not around on a regular basis," (p. 70, line 3) and would in any event be unresponsive to her purported complaint. (See, Blumenschine deposition transcript excerpts, pp. 70, 129-35, attached as Exhibit "F" hereto.)  The testimony of the other women employees as to Joe Hanson's presence, his availability, and his receptivity to any legitimate

complaints, demonstrate that Blumenschine's purported

inability to know what to do with her complaint in the

absence of a company handbook is just another fiction.

Contrary to plaintiff's motion in limine, there is no

intention on the part of ProMedia to "run down"

Blumenschine's character, only to present evidence as to

what she actually did or did not do and did or did not say.[8]

## II.

### EVIDENCE AS TO HOW PROMEDIA RESPONDED TO A LEGITIMATE CLAIM OF DISCRIMINATION IS HIGHLY RELEVANT AND SHOULD BE ADMITTED.

It is ironic that Blumenschine now objects to

testimony concerning Dan Boucher on the basis that he was

---

[8] The proposed testimony of all seven witnesses is based on first-hand knowledge or observation, and therefore admissible under Fed.R.Evid. 701(a)). Blumenschine cites Hester v. BIC Corp., 225 F.3d 178 (2d Cir. 2000), to preclude their testimony exclusively as lay witness opinion, yet the Hester decision recognized that "witnesses are free to testify fully as to their own observations of [plaintiff's] interactions with the [defendant] or other employees." Id. at 185. Further, the court granted a new trial because plaintiff's four co-workers all offered testimony that she was treated differently because of her race, which was "naked speculation" as to defendant's motivation for adverse employment action and therefore inadmissible lay opinion on the ultimate issue. Id. The fact that Ms. Blumenschine made various complaints which were heard by these witnesses, yet never mentioned age- or sex-based discrimination, is probative of the factual issues discussed supra – not proffered to support ProMedia's reason for terminating Blumenschine, which would clearly be "naked speculation" and inadmissible lay opinion, as Blumenschine's other case in support, Jacobs v. Gen. Elec., 275 Conn. 395, 405, 880 A.2d 151, 158-59 (2005), held (witness not involved in termination decision could not testify whether plaintiff was the "right candidate" for termination; witness no longer with company when plaintiff terminated could not testify whether he had "seen anything [to conclude] plaintiff had been discriminated against"). Blumenschine has simply misconceived what these witnesses will say in order to seek their preclusion.

<u>fired</u> after Blumenschine's tenure at ProMedia, since Blumenschine herself is attempting to offer evidence concerning the <u>hiring</u> and <u>compensation</u> of Boucher (also, admittedly after Blumenschine's tenure). <u>See</u>, Joint Pretrial Memorandum, submitted April 17, 2006, Exhs. 15-18 and 30, at pp. 31-32 and 34, respectively.[9]

By contrast, ProMedia seeks to introduce evidence which will show that when a legitimate complaint of discrimination was understood by the Company to have been made -- namely, Boucher's inappropriate remarks and actions toward two women employees in a social setting removed from the workplace -- ProMedia immediately conducted an investigation which led first to Mr. Boucher's probation, and then to his termination (which he did not challenge). It is respectfully submitted that this is highly relevant evidence regardless of the time period involved.

The time period of Boucher's employment, moreover, is not determinative of its admissibility: what the Boucher

---

[9] ProMedia has objected, in its pre-trial order, to this evidence regarding Boucher's hiring and compensation after the date of Lisa Blumenschine's termination. Blumenschine apparently wants to show that ProMedia had the funds to hire additional personnel on Matrix/University Business; even if so, however, this is irrelevant to Lisa Blumenschine's termination based on her sales performance. There is no defense here of "reduction in force," only that Joe Hanson was attempting to increase the poor sales of the magazine, which he had every right to do, by investing as much of his own money as he chose to invest. None of this imposed any legal obligation on ProMedia to keep Blumenschine on the payroll.

12

testimony is probative of is whether ProMedia adequately addressed legitimate complaints of discrimination. The Boucher testimony will show what ProMedia has done in the only instance a legitimate claim of discrimination was understood to have been made, and tends to make facts put at issue by Blumenschine herself -- whether an atmosphere of disrespect against women was fostered by ProMedia (see, Complaint, para. 17), and whether ProMedia adequately investigated and remedied allegations of discrimination when reasonably notified of such (see, Complaint, paras. 30, 45, 49, 58) -- more probable or less probable. Fed.R.Evid. 401.[10]

Blumenschine claims ProMedia's handling of the Boucher investigation is not during a "relevant time period," but

---

[10] To support the exclusion of Mr. Boucher's testimony, Blumenschine relies almost exclusively on the law of other circuits. Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304 (8th Cir. 1984) determined that it was not reversible error for the trial court to exclude plaintiff's proffered testimony that defendant, after it fired plaintiff, learned that one of its bases (threats against other employees) was unfounded. This principle in no way addresses why ProMedia's proffered testimony should be excluded here. Tompkin v. Philip Morris, 362 F.3d 882 (6th Cir. 2004) found a tobacco litigation plaintiff had not been prejudiced by the trial court's exclusion of "post-1965 evidence" (deposition and other testimony, much from non-parties) for several reasons: plaintiff did not match any particular testimony with any particular issue; did not identify any specific piece of evidence that was excluded; and, to the extent such information related to punitive damages, it was irrelevant because the jury did not award damages. See, id. at 899-901. Gulbranson v. Duluth, Missabe & Iron Range Railway Co., 921 F.2d 139 (8th Cir. 1990) determined that the admission of minutes, done at a side-bar at close of trial, were irrelevant to show knowledge of safety issue in negligence case because devoid of foundation: no speaker identified in minutes and no witnesses testified to connect minutes to knowledge of employer, and no evidence of ongoing problem or "relating back" by minutes compiled nine months after accident.

cites no authority and makes no attempt to define what period is "relevant" here; evidence regarding her claims must not be limited exclusively to the time period in which she was employed, or no testimony regarding any events post-termination (i.e., subsequent hirings or mitigation of damages) would ever be admissible in any wrongful termination/discrimination action.

Blumenschine cites Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997), but the Second Circuit's decision does not contain the passage she relies upon. Instead, in Perry, the Second Circuit found that the trial court did not err in excluding plaintiff's desired testimony regarding hostile workplace environment of defendant since "unfair prejudice" was not established because the facts attested to were: outside the beginning of the statute of limitations time period; already in evidence; or trumped by plaintiff's failure to establish that defendant failed to implement prompt, immediate corrective action to her complaint. See, id., pp. 150-52.

Moreover, Perry actually supports the admission of evidence regarding ProMedia's investigation of a complaint against Mr. Boucher, since in that case defendant Ethan Allen was permitted to present evidence of what it did once

14

it obtained notice of plaintiff's legitimate complaint.
Id., pp. 147-48.

III.

**AN ADDITIONAL REASON TO REJECT**
**THE PURPORTED "EXPERT" TESTIMONY**
**OF SHELDON WISHNICK IS THAT**
**THE PRECISE OPINION TO WHICH**
**MR. WISHNICK EXPECTS TO TESTIFY**
**APPARENTLY STILL HAS NOT BEEN DISCLOSED.**

ProMedia has moved in limine to exclude the purported

"expert" opinion of Sheldon Wishnick on the grounds that he

does not have the economic expertise relevant to this case,

nor did he do any of the studies required to offer the jury

anything more than an expert "patina" on what is

essentially a mechanical calculation.  These arguments will

not be repeated here.  See, ProMedia's initial Memorandum

to Exclude Purported Expert Testimony by Sheldon Wishnick,

submitted April 17, 2006.

However, it is worth nothing that in addition to the

lack of proper expertise on Mr. Wishnick's part, we have

never received the recently revised opinion which

apparently Mr. Wishnick is expected to offer at trial.

Mr. Wishnick's purported expert opinion, dated June

20, 2003, a copy of which is annexed hereto as Exhibit "G",

was disclosed on July 1, 2003, and he was examined with

respect to this opinion at his deposition on August 13,

15

2003.

That opinion states that Blumenschine is owed $541,582
in front pay and $161,202 in back pay, in adjusted figures.
However, these figures are dramatically different from the
numbers in the claimed damages section of the joint
pretrial order, which states that Blumenschine is entitled
to $314,567 in front pay and $287,591 in back pay.

It is plain from this roughly $100,000 discrepancy, as
well as the fact that on April 11, 2006, plaintiff
provided, without any attempt to tie them to any opinion, a
few additional financial documents (see Exhibit "H"
hereto), that Mr. Wishnick's opinion may have changed based
on figures and assumptions undisclosed and unknown to
ProMedia, and as to which ProMedia has had absolutely no
chance to inquire or prepare to challenge.[11]

Accordingly, not only is Mr. Wishnick the wrong expert
here, and not only does he add nothing but a mechanical

---

[11] Blumenschine's efforts to introduce a still undisclosed "updated"
expert opinion stands in stark contrast to Blumenschine's attempt to
exclude witnesses whose identities and testimony were disclosed in full
over four months ago.  ProMedia will be prejudiced should Mr. Wishnick
be allowed to testify when ProMedia has yet to be afforded with the
basis for his original opinion, let alone the "updated" opinion and its
bases.  To date, ProMedia has not received these documents.  Rule 37
prohibits this "trial by ambush" tactic, and the precedent is clear,
particularly with respect to expert witnesses, that such testimony must
be precluded.  See, Softel, Inc. v. Dragon Med. & Sci. Commun., Inc.,
118 F.3d 955 (2d Cir. 1997) (applying Outley, trial court did not err
in precluding plaintiff from substituting new expert at late juncture).
(Here, too, Blumenschine should not be permitted to "substitute" or
amend the opinion of her expert one month before trial.)

calculation which is the province of the jury, but at this late date, less than a month before trial, we have still not received the precise opinion he apparently intends to offer. As a result, ProMedia has been denied an opportunity to inquire, even minimally, as to how Mr. Wishnick reached his new conclusions, if and how his assumptions have changed, why and how his numbers have changed, and what was wrong with his previous opinions. To permit him to give his opinion without such disclosure would be only prejudicial to ProMedia.

IV.

**PROMEDIA'S OBJECTIONS AS
TO DOCUMENTS AND TESTIMONY
RELATING TO ADMINISTRATIVE
PROCEEDINGS OUTSIDE THIS CASE
SHOULD BE GRANTED ON THE
GROUNDS THAT THESE ITEMS ARE
NOT INDEPENDENTLY ADMISSIBLE.**

In her exhibit list, plaintiff Blumenschine has identified several items which were submitted in Blumenschine's proceeding before the Connecticut Commission on Human Rights and Opportunities ("CHRO") prior to the commencement of this lawsuit, namely, defendant's responses to plaintiff's CHRO complaint and affidavit of Dan Shannon submitted in the CHRO proceeding (see, Joint Pretrial Memorandum, pp. 31-32 (plaintiff's Exhibits 12, 13, and 19). Additionally, Blumenschine seeks to introduce a

statement by ProMedia in the worker's compensation proceeding which followed Blumenschine's termination.

Perhaps these documents legitimately could be used for rebuttal purposes, but they are not independently admissible and this Court may exclude them. See, Paolitto v. Brown E.&C., Inc., 151 F.3d 60 (2d Cir. 1998) (district court did not abuse discretion by excluding CHRO findings, as more prejudicial than probative, since likelihood of confusion and protraction of proceedings was great and party seeking their admission had full opportunity separately to present at trial all evidence presented to CHRO); Kasper v. City of Middletown, 352 F.Supp.2d 216, 226-27 (D.Conn. 2005) (CHRO documents admitted purely for the evidentiary value of the dates contained therein since the issue in the case was the date an agreement was signed); Barlow v. Conn., 319 F.Supp.2d 250 (D.Conn. 2004) (CHRO reasonable cause investigation report stricken from summary judgment papers since of little probative value: document was unreliable, based on hearsay and plaintiff's statements, and all the same evidence before the CHRO was now before the court). Take, for instance, the affidavit of Daniel Shannon submitted in response to Blumenschine's complaints in the CHRO proceeding. In response to the facts and theories Blumenschine will assert in this

separate, independent lawsuit, ProMedia may deem Shannon's

earlier response unnecessary or irrelevant, just as any

determination by the CHRO (or Blumenschine's decision not

to wait for such a determination but to seek redress in

this Court) would not be independently admissible.

Similarly, statements and pleadings in this separate CHRO

administrative proceeding should not be admitted as

independent evidence.   The same is true of ProMedia's

response in any proceeding before the Connecticut

unemployment bureau.[12]

V.

**IN THE ABSENCE OF ANY EVIDENCE
THAT THE SO-CALLED MISSING DOCUMENTS
WERE WILLFULLY LOST OR DESTROYED,
OR THAT THEY CONTAIN ANYTHING WHICH
CONTRADICTS OTHER DOCUMENTS WHICH
ARE AVAILABLE, ANY DISCUSSION OF
THEIR ABSENCE IS MERELY PREJUDICIAL
RATHER THAN PROBATIVE.**

Finally, ProMedia respectfully submits the following

additional citation in support of its motion in limine to

exclude Blumenschine's proposed negative references to

certain "lost" or missing sales records.   See, Byrnie v.

Town of Cromwell, 243 F.3d 93 (2d Cir. 2001) (adverse

inference permitted because Town violated ADA regulation by

---

[12] None of these documents can be deemed any sort of admission, since
they all deny Blumenschine's claims.

19

intentionally destroying hiring documents within two years
after position filled; notes from interviews would have
helped explain why plaintiff with clearly superior paper
credentials was ranked lower than new hire who survived
initial screening due to procedural irregularities, and why
Town modified its hiring theory between CHRO answer and
instant litigation).

Blumenschine has offered no basis for inferring that
the so-called missing documents would have been germane to
"proof of an issue at trial [to] support an inference that
the evidence would have been unfavorable to [ProMedia]."
Id. at 107 (quoting Kronisch v. U.S., 150 F.3d 112, 126 (2d
Cir. 1998).  Here, not only is there no evidence that the
records were intentionally discarded, but there is also no
evidence that these records do or would contradict anything
contained in the records which will be in evidence.[13]
Additionally, plaintiff cannot show that there is "some
evidence," nor even an indication, that documents relevant
to substantiating her age, sex, or retaliation
discrimination claims would have been included in her

---

[13] Blumenschine, for instance, says she has no independent records of
her sales (Blumenschine deposition, pp. 56-57, attached hereto as
Exhibit "J"); further, she has not and cannot challenge the figures
contained in the summary document which will be in evidence as
Plaintiff's Exhibit 10 and Defendant's Exhibit 502.  She cannot
contend, therefore, that the missing sales records will show that her
sales performance was any better than what is contained in the summary.

personnel file, or that it is likely the documents therein "would have been of the nature alleged by [Blumenschine]" Id. at 108. Nothing asserted by Blumenschine remotely warrants or supports a spoliation charge.

## CONCLUSION

Based on the foregoing, and on its previous submissions in both the pre-trial order and motions in limine, ProMedia respectfully requests that:

(a) Blumenschine's motion to exclude, in whole or part, the testimony of seven women employees be denied;

(b) Blumenschine's motion to exclude evidence relevant to a sexual harassment complaint against Daniel Boucher, ProMedia's subsequent action, and Boucher's consequent termination (as opposed to evidence about his hiring and compensation) be denied;

(c) the testimony, as well as any undisclosed opinion, of Blumenschine's purported expert Sheldon Wishnick be excluded;

(d) Blumenschine's proposed evidence from proceedings other than the one at bar (the CHRO and unemployment proceedings) be deemed not independently admissible; and

(e)   Blumenschine be prohibited from offering any evidence or discussion about the "lost" or missing sales records.

Respectfully submitted,

DEFENDANT PROFESSIONAL MEDIA
GROUP LLC

By: _____  MLF
   George P. Birnbaum (CT04937)
   Michael L. Ferch (CT24764)
   Counsel
   MINOGUE BIRNBAUM LLP
   Attorneys for Defendant
   237 Elm Street
   New Canaan, CT 06840
   (203) 966-6916

## CERTIFICATION

    This is to certify that a copy of the foregoing was served by fax and first-class mail, postage prepaid, this 27th day of April, 2006, to the following counsel of record:

        Scott R. Lucas, Esq.
        Martin, Lucas & Chioffi, LLP
        177 Broad Street
        Stamford, CT  06901

        Fax #203-973-5250

                            MICHAEL L. FERCH