in good faith, paying her the not insignificant base salary of $80,000 and remaining optimistic that Blumenschine would find a way to turn things around and improve her sales.

Further, the record is devoid of any evidence that Blumenschine considered the terminated nonrecoverable draw as guaranteed compensation or "unpaid wages," or made demand for prompt payment of such. Moreover, the record contains no evidence that ProMedia knew or understood that anything beyond her base salary had been owing, or that, even if there had been a "demand", that ProMedia met it with recalcitrance, arbitrariness, or otherwise displayed "bad faith."

The facts of this matter are vastly different from Connecticut "bad faith" wage claim cases in that, here, there was no clear understanding by ProMedia that stopping Blumenschine's draw against commissions "started the meter running" on accumulation of "unpaid wages," that any wage amount was due and owing to Blumenschine immediately upon her termination, that ProMedia had promised her it would eventually pay her $40,000 in back pay for the remainder of 2001 or

---

depo., pp. 25:10-19; 26:9-20; 29:8; and 30:19-20.

otherwise induced her to continue working under that assumption, or that it tried to leverage her signing a general release by promising to pay outstanding wages. See, Cabrera v. G.T. Construction, No. 3:05CV812 (MRK)(WIG), Slip Copy, 2006 WL 1272618 at *1, (D.Conn., March 27, 2006) (Garfinkel, J.) (after damages hearing, Court found defaulted defendant's conduct constituted bad faith "based upon his pattern and practice of not paying wages that were due and owing, and based upon his repeated promises to Plaintiffs that they would be paid their back wages as an inducement for them to continue to work for him" (emphasis added)); Butler v. Hartford Tech. Inst., 243 Conn. 454, 470-71, 704 A.2d 222, 230-31 (1997) (specific finding of "bad faith" by court not required, but instead based on conduct of defendant contained in the record; record supported double damages: plaintiff required to work overtime, did so, assured she would be paid yet denied payment); Commissioner of Labor v. Wall, 69 Conn.App. 450, 462-63 fn.11, 794 A.2d 1084, 1092 (App.Ct. 2002), cert. denied 260 Conn. 938, 802 A.2d 90 (2002)(lower court correct to award double damages based on its finding that defendant real estate firm withheld from former

11

employee salespersons some commissions (without justification), denied outright others, and "persistently acted in bad faith" and with "whim and caprice"); Petronella v. Venture Partners, Ltd., 60 Conn.App. 205, 215, 758 A.2d 869, 875 (App.Ct. 2000), cert. granted 255 Conn. 909, 763 A.2d 1036 (2001), appeal dismissed 258 Conn. 453, 782 A.2d 97 (2001) (trial court's "bad faith" finding not erroneous: defendants promised to pay back wages as inducement, yet fired plaintiffs two months later and offered back wages only if plaintiffs signed releases)[4]; Anderson v. Schieffer, 35 Conn.App. 31, 43-4, 645 A.2d 549, 555-56 (App.Ct. 1994) (real estate salesperson supervised construction of eight houses (four to completion) and was not paid commissions for work on all eight houses; trial court's findings affirmed: wages withheld without justification, double damages plus attorney's fees awarded as to the four completed homes constituting the wage claim); Crowther v. Gerber Garment Technology, 8 Conn.App. 254, 265-66, 513 A.2d

---

[4] Here, ProMedia's complete ignorance that plaintiff thought she was owed anything additional is evidenced by its actual January 2, 2002 separation letter (see Plaintiff's Trial Exhibit No. 27), wherein ProMedia offered, in exchange for a release, to pay promptly her "salary as earned to date," plus "an additional six (6) weeks of salary" (amounting to the approximately $10,000 severance offer Blumenschine recalled at trial).

144, 150-51 (App.Ct. 1986) (double damages and attorney's fees proper; appellate court found that trial court's memorandum of decision emphasized defendant's contractual breach, yet also considered defendant's "untenable" position it had "unfettered discretion" to change contract terms, and that it acted "unilaterally," which in effect showed plaintiff "[took] the law into its own hands"); compare Sansone v. Clifford, 219 Conn. 217, 229-30, 592 A.2d 931, 938 (1991) (trial court did not err in finding no bad faith; "nothing in the evidence compelled [such a finding]" and, as here, plaintiff never submitted a bill or written demand for payment of twelve days salary after he was replaced).

Instead, the evidence in the record before this Court cannot support a finding of bad faith against ProMedia. See, Santangelo v. Elite Beverage, Inc., 65 Conn.App. 618, 627, 783 A.2d 500, 506 (App.Ct. 2001) (trial court properly did not award double damages and attorney's fees; no evidence in record that defendants acted in bad faith); Matteson v. Great Eastern Development, Ltd., 18 Conn.App. 618, 621-22, 559 A.2d 1165, 1168 (App.Ct. 1989) (trial court abused discretion in awarding attorney's fees: review of

13

memorandum of decision revealed that trial court made no "bad faith" finding to justify such an award).

Blumenschine would like this Court to believe that ProMedia knew it owed her outstanding wages for 2001 based on the stoppage of the nonrecoverable draw, and that ProMedia's severance offer supports a finding of bad faith, yet nowhere in the record before the Court, other than in the Ninth Count of plaintiff's complaint herein, was there ever a demand made by Blumenschine for "unpaid wages" resulting from stoppage of the nonrecoverable draw. The fact that ProMedia offered Blumenschine severance in exchange for a general release cannot support any factual inference of "bad faith" or other guilt, liability, or acknowledgement of "unpaid wages," as argued by plaintiff to the jury. See, Williams v. Bayer Corp., 982 F.Supp. 120 (D.Conn. 1997) (offer of separation agreement, providing severance pay in exchange for a general release, by itself did not violate C.G.S. § 31-51q). In Williams, Judge Squatrito explained the public policy favoring the exchange (or attempt thereof) of severance pay for a general release as follows:

> "Separation agreements offer valuable benefits to both employees and employers. They are often used to afford employees, who would otherwise be fired, severance pay and favorable personnel records in exchange for a release of claims

14

>against the employer and an agreement not to speak disparagingly against the company. They benefit the public by encouraging parties to settle their disputes inexpensively, without burdening administrative agencies and courts."

Id., at 125.

Here, the record is clear that Blumenschine was not "dangled the carrot" of a promise to pay "unpaid wages" in exchange for a release of all claims. To the contrary, Blumenschine was offered severance of approximately $10,000 -- which in and of itself indicates ProMedia by no means understood or thought that it owed her any compensation whatsoever, as "unpaid wages" under the Connecticut Wage Statute, or otherwise -- so to consider this fact as evidence of "bad faith" runs contrary to public policy and common business sense, and would result in no company ever offering severance for fear that such offer will be construed as acknowledgement of unpaid statutory wages, and as an admission of liability or sign of "bad faith."

15

CONCLUSION

Neither the jury's verdict on damages, nor the record in this matter, support any doubling of wages or attorney's fees[5] pursuant to the applicable language of Connecticut General Statute § 31-72.

Respectfully submitted,

DEFENDANT PROFESSIONAL MEDIA
GROUP LLC

By: *George P. Birnbaum/MF*
George P. Birnbaum (CT04937)
Michael L. Ferch (CT24764)
Counsel
MINOGUE BIRNBAUM LLP
Attorneys for Defendant
237 Elm Street
New Canaan, CT 06840
(203) 966-6916

---

[5] This Court must determine the appropriateness of attorney's fees based on an "appropriate evidentiary showing," Smith v. Snyder, 267 Conn. 456, 471, 839 A.2d 589, 600 (2004), and in making its determination may rely on its "general knowledge of what has occurred at the proceedings before [it] to supply evidence in support of an award of attorney's fees." Bizzoco v. Chinitz, 193 Conn. 304, 310, 476 A.2d 572 (1984). However, "no award for an attorney's fee may be made when the evidence is insufficient." Smith, supra, 267 Conn. at 472, 839 A.2d at 600 (citation omitted). Despite a factual foundation to the contrary, should this Court determine that awarding Blumenschine her attorney's fees is appropriate, defendant ProMedia contends that said attorney's fees cannot be awarded in toto, and should instead be segregated. As the Court has already correctly noted at trial, the Connecticut Wage Statute is a remedial remedy and not a claim, and, based on the trial and all papers and proceedings heretofore, the Connecticut Wage Statute violation claim (Count Nine) was of little focus in Blumenschine's case-in-chief. ProMedia respectfully reserves its right to respond more fully should the Court request or Blumenschine's counsel submit an affidavit on fees.

## CERTIFICATION

This is to certify that a copy of the foregoing was delivered by fax and first-class mail, postage prepaid, to the following counsel of record on this 2nd day of June, 2006:

Scott R. Lucas, Esq.
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT  06901

_____
GEORGE P. BIRNBAUM

17