## EXHIBIT B

Westlaw.

Not Reported in A.2d                                                          Page 1
Not Reported in A.2d, 2002 WL 31311837 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

# H

Only the Westlaw citation is currently available.
UNPUBLISHED  OPINION.  CHECK  COURT
RULES BEFORE CITING.
Superior Court of Connecticut.
Jennifer BENEDETTO,
v.
William WANAI
**No. CV990364526S.**

Sept. 9, 2002.

GORMLEY, J.
**\*1** The plaintiff in this case has prevailed on her
claim of breach of contract set forth in the First
Count of her Complaint and the court awarded her
$75,000 in damages plus statutory interest in a
decision on August 1, 2002. In her complaint, the
plaintiff also sought counsel fees pursuant to her
agreement with the defendant. At the conclusion of
the trial, the plaintiff did not offer any evidence as to
counsel fees. On August 12, 2002, the plaintiff
moved for an award of counsel fees pursuant to
Practice Book § 11-21 and paragraph 26 of the
Indenture Agreement (plaintiff's exhibit 1) entitled
"Default" which reads as follows:
In the event either party shall be in default of any of
its covenants or obligations under the within Lease,
the defaulting party shall be liable to the other for all
reasonable attorneys fees incurred by the other in
enforcing its rights under the within Lease.

The court conducted a hearing on this matter and
thereafter allowed the parties to file supplemental
briefs on the subject. The defendant has objected to
the motion on multiple grounds, all set forth in its
Memorandum of August 23, 2002.

The court does not agree with the defendant that this
motion is untimely or has denied the defendant of the
opportunity to contest the issue of reasonableness of
those fees. See, e.g., *Arnone v. Town of Enfield,* No.
CV960558333 (J.D. Hartford July 23, 2001) That is
precisely what the hearing on this matter was
intended to do. The plaintiff's attorney at the hearing
described his legal experience, his years at the bar,
his time spent in pursuing this case totaling 147.60
hours and his hourly rate of $150 per hour. The court
afforded defense counsel an opportunity to question
plaintiff's counsel on these matters and he declined.

As has been stated in *Andrews v. Gorby,* 237 Conn.
12, 24 (1996):
Courts have a general knowledge of what would be
reasonable attorneys fees for services which are fairly
stated and described. Courts may rely on their general
knowledge of what has occurred at the proceedings
before them to supply evidence in support of an
award for attorneys fees . . The court is in a position
to evaluate the complexity of the issues presented and
the skill with which counsel has dealt with those
issues

Expert testimony is not required in such matters and
if offered is not binding on the court. *Appliance, Inc.
v. Yost,* 186 Conn. 673, 680 (1982) Based on the
hearing and the court's view of the complexity of the
underlying case, the court concludes that the
plaintiff's attorney's request for a legal fee in the
amount of $22,140 (147.60 hours at $150 per hour) is
reasonable.

That, however, does not end the court's consideration
of this issue. No one would dispute the fact that
Connecticut has adopted the American rule that
counsel fees are not awarded to a successful litigant
in the absence of a statute or specific contract
language. It is the latter exception, specific contract
language, that the plaintiff is claiming, specifically
paragraph 26 of the Indenture Agreement (plaintiff's
exhibit 1). That clause refers to "a default of any of
its covenants or obligations under the written lease."
Here we are not talking about a failure to pay rent or
a failure to construct the building, which would
clearly fall under this description. Also, there is no
provision in the lease for a return of the $100,000
deposit. It is described throughout as
"nonrefundable."

**\*2** What this case is all about are promises,
understandings and commitments made outside the
lease and long after its execution. Obviously, the
plaintiff never became the tenant of the defendant
What did happen is because of delays in construction
the plaintiff through her father Stanley Benedetto, a
defendant in the cross claim, sought relief from the
defendant in getting out of the lease. He made efforts
to find a new tenant and he asked the defendant and
his agent Mr. Girouard to look for a new tenant. The
court has already found that this was conditioned on a
new tenant taking over all of the plaintiff's

Not Reported in A.2d                                                                                              Page 2
Not Reported in A.2d, 2002 WL 31311837 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

obligations under the lease and the return of the full
deposit. Otherwise, the plaintiff would in fact become
the defendant's tenant and live by the lease. The court
will not repeat what is contained in its earlier
memorandum in support of its finding for the
plaintiff.

What the court does conclude is that its decision for
the plaintiff was not made as to any specific covenant
or obligation found in plaintiff's exhibit 1, but on
facts and representations made long after the lease
was executed. For that reason, the court does not
believe that paragraph 26 of plaintiff's exhibit 1
affords the plaintiff a valid claim for counsel fees.
Contract language such as this, which flies in the face
of the American rule, should be strictly construed.

The court, therefore, denies the plaintiff's request for
attorneys fees.

Conn.Super.,2002
Benedetto v. Wanat
Not Reported in A.2d, 2002 WL 31311837
(Conn.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

# **EXHIBIT C**

**LexisNexis·**
Martindale-Hubbell·

martindale.com

Logon

Lawyer Locator > Search Results > Profile

New Search    Search Results    Next Listing

Lawyer Locator
  Basic Search
  Advanced Search
  Browse Law Firms
  Browse Lawyers

Legal Articles

Dispute Resolution

Legal Personnel

Legal Careers

Professional Resources

Customer Service

Experts & Services

More resources ..
  lawyers com<sup>sm</sup>
  Peer Review Ratings<sup>sm</sup>
  Practice Development
  Counsel to Counsel Forums
  eAttorney
  LexisNexis®
  lexisONE® for Small Firms

🖨 Print    ✉ Email    🌐 Search Web

## Private Practice Lawyer Profile for Scott R. Lucas

**Scott R. Lucas**
Partner
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, Connecticut 06901
(Fairfield Co )

Telephone: 203-973-5200
Fax: 203-973-5250
Email: Send an Email

AV Peer Review Rated

**Practice Areas:** Commercial Litigation; Employment Litigation; Civil Litigation

**Admitted:** 1985, Connecticut; 1986, U S District Court, District of Connecticut; 1987, U S District Court, Southern and Eastern Districts of New York; 1989, U.S. Court of Appeals, Second Circuit; 1998, U S District Court, District of Colorado; 1999, U S Court of Appeals, Tenth Circuit

**Law School:** Albany Law School of Union University, J D , cum laude, 1985

**College:** Rensselaer Polytechnic Institute, B S , 1982

**Member:** Fairfield County, Connecticut and American Bar Associations; American Trial Lawyers Association; Connecticut Trial Lawyers Association; National Employment Lawyers Association; Connecticut Employment Lawyers Association

**Biography:** The Justinian Society  Managing Editor, Albany Law Review, 1984-1985. Co-Author:  After Acquired Evidence in Employment Litigation,' 2 Labor and Employment Law Quarterly 1 (Spring 1995); "Unresolved Issues In The Development of Connecticut Employment Contract Law," 64 Connecticut Bar Journal 297 (1990)  Author: "Monopolization and the Protection of Innovation: The Call for an Intent Standard , 48 Albany Law Review 982, 1984  Speaker:  Representing Plaintiffs in Conservative Times,' National Employment Lawyers Association, Regional Conference, 2003; ' Preliminary Issues in Employment Litigation," ABA Section of Labor & Employment Law, 2001; 'Handling the Difficult Judge," NELA New England Regional Conference, 1999; "Plaintiff s Discovery in Employment Cases,  Stamford/Norwalk Regional Bar Association, 1995

**Born:** Norwalk, Connecticut, 1960

**ISLN:** 905331193

**Web Site:** http://www mlc-law com

LexisNexis Analyzer

New Search    Search Results    Next Listing

▲Top

**LexisNexis**
Martindale-Hubbell®

martindale.com

Logon

Lawyer Locator
  Basic Search
  Advanced Search
  Browse Law Firms
  Browse Lawyers

Legal Articles

Dispute Resolution

Legal Personnel

Legal Careers

Professional Resources

Customer Service

Experts & Services

More resources...
  lawyers com℠
  Peer Review Ratings℠
  Practice Development
  Counsel to Counsel Forums
  eAttorney
  LexisNexis®
  lexisONE® for Small Firms

Lawyer Locator > Profile

New Search

🖶 Print    ✉ Email    🌐 Search Web

## Private Practice Lawyer Profile for Keith A. McBride

**Keith A. McBride**
Associate
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, Connecticut 06901
(Fairfield Co )

Telephone: 203-973-5200
Fax: 203-973-5250
Email: Send an Email

**Practice Areas:** Commercial Litigation; Employment Litigation; Civil Litigation

**Admitted:** 2003, Florida; 2004, U S District Court, Middle District of Florida; 2005, Connecticut

**Law School:** Stetson University College of Law, J D 2003

**College:** University of Tampa, B A , 2000

**Member:** Fairfield County, Hillsborough County and American Bar Associations; Association of Trial Lawyers of America

**Born:** Hartford, Connecticut, 1978

**ISLN:** 918339001

**Web Site:** http://www mlc-law com

LexisNexis Analyzer

New Search

▲Top

LawyerLocator co uk | Anwalt24 de | martindale co il | martindale jp | findalawyer cn

Home | Contact Us | About Us | Site Info | Products | Services | Media Room

Copyright | Terms & Conditions | Privacy Policy

LexisNexis·
Martindale-Hubbell·

martindale.com

Lawyer Locator > Profile

Print   Email   Search Web

## Private Practice Lawyer Profile for Mary Alice S. Canaday

**Mary Alice S. Canaday**
Associate
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, Connecticut 06901
(Fairfield Co )

Telephone: 203-973-5200
Fax: 203-973-5250

**Practice Areas:** Commercial; Employment; Civil Litigation

**Admitted:** 1994, Connecticut, New York, U S. District Court, Southern and Eastern Districts of New York and U S  Court of Appeals for the Federal Circuit; 1997, U S. District Court, District of Connecticut

**Law School:** Pace University, J D , cum laude. 1994

**College:** Denison University, B A , 1987

**Biography:** Ranking Scholar, 1992-1993  Law Clerk for U S  Magistrate Judge Mark D  Fox in the Southern District of New York (1995-1997)

**Born:** Stamford, Connecticut, May 7, 1965

**ISLN:** 910654300

**Web Site:** http://www mlc-law com

LexisNexis Analyzer

Left sidebar:
Logon
Lawyer Locator
 Basic Search
 Advanced Search
 Browse Law Firms
 Browse Lawyers
Legal Articles
Dispute Resolution
Legal Personnel
Legal Careers
Professional Resources
Customer Service
Experts & Services

More resources...
lawyers com℠
Peer Review Ratings℠
Practice Development
Counsel to Counsel Forums
eAttorney
LexisNexis®
lexisONE® for Small Firms

Top

**LexisNexis**
Martindale-Hubbell®

martindale.com

New Search

Lawyer Locator > Profile

**Logon**

Lawyer Locator
  Basic Search
  Advanced Search
  Browse Law Firms
  Browse Lawyers

Legal Articles

Dispute Resolution

Legal Personnel

Legal Careers

Professional Resources

Customer Service

Experts & Services

More resources...
  *lawyers com*sm
  Peer Review Ratingssm
  Practice Development
  Counsel to Counsel Forums
  eAttorney
  LexisNexis®
  lexisONE® for Small Firms

🖨 Print   ✉ Email   🌐 Search Web

**Private Practice Lawyer Profile for Claire E. Ryan**

**Claire E. Ryan**
Associate
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, Connecticut 06901
(Fairfield Co )

Telephone: 203-973-5200
Fax: 203-973-5250
Email: Send an Email

**Practice Areas:** Commercial Litigation; Employment Litigation; Civil Litigation

**Admitted:** 1999, Connecticut; 2000, New York; 2001, District of Columbia

**Law School:** American University, J D , cum laude, 1999

**College:** Kenyon College, B A , cum laude, 1992

**Biography:** Articles Editor, American University Journal of Gender, Social Policy & the Law, 1998-1999

**Born:** New Rochelle  New York, May 29, 1970

**ISLN:** 914171452

**Web Site:** http://www mlc -law com

LexisNexis Analyzer

New Search

▲Top

LawyerLocator co uk | Anwalt24 de | martindale co il | martindale jp | findslawyer cn

Home | Contact Us | About Us | Site Info | Products | Services | Media Room

Copyright | Terms & Conditions | Privacy Policy

LexisNexis·
Martindale-Hubbell®

martindale.com

**Logon**

Lawyer Locator
  Basic Search
  Advanced Search
  Browse Law Firms
  Browse Lawyers

Legal Articles

Dispute Resolution

Legal Personnel

Legal Careers

Professional Resources

Customer Service

Experts & Services

**Legend**


This attorney or firm has articles published on martindale.com


This firm has a Diversity Profile published on martindale.com

This attorney has a Premier Partner Profile published on martindale.com

Lawyer Locator > Profile

New Search

📇 Print    ✉ Email    🌐 Search Web

**Private Practice Lawyer Profile for Michel Bayonne**

**Michel Bayonne**
Associate
Dreier LLP
One Landmark Square, 20th Floor
Stamford, Connecticut 06901
(Fairfield Co )

Telephone: 203-425-9500
Fax: 203-425-9595

**Practice Areas:** Labor and Employment

**Admitted:** 2002, Connecticut; 2003, U S District Court, District of Connecticut

**Law School:** University of Connecticut School of Law, J D 2001

**College:** Fairfield University B A 1998

**Born:** Port-Au-Prince, Haiti, July 13, 1976

**ISLN:** 915923081

**Web Site:** http://www dreierllp com

LexisNexis Analyzer

New Search

▲Top

LawyerLocator co uk | Anwalt24 de | martindale co Il | martindale jp | findalawyer cn

Home | Contact Us | About Us | Site Info | Products | Services | Media Room

Copyright | Terms & Conditions | Privacy Policy

More resources:
  *lawyers com*[sm]
  Peer Review Ratings[sm]
  Practice Development
  Counsel to Counsel Forums
  eAttorney
  LexisNexis®
  lexisONE® for Small Firms

**EXHIBIT D**

Westlaw.

Not Reported in A.2d                                                          Page 1
Not Reported in A.2d, 2001 WL 1218741 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

☞

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Connecticut.
Thomas ARNONE,
v.
TOWN OF ENFIELD et al.
**No. CV960558333S.**

Sept. 13, 2001.

*RULING ON MOTION FOR ATTORNEYS FEES
AND COSTS*

BEACH, J.
**\*1** The jury returned a verdict in the amount of
$127,000 in favor of the plaintiff, including $91,000
for back and front pay and $36,000 in punitive
damages. The jury found that the defendant employer
retaliated against the plaintiff employee for "whistle-
blowing" and for exercising protected rights pursuant
to § § 31-51m and 31-51q of the General Statutes,
respectively. Both statutes provide for the allowance
of "reasonable attorneys fees" [FN1] and costs for the
prevailing plaintiff. The plaintiff has submitted a
motion for attorneys fees totaling $84,125.00. The
defendant has argued that the documentation does not
support the full amount requested; the defendant
further suggests that the existence of a one third
contingency fee agreement eliminates the need to
award fees on the basis of the amount of time spent
on the file.

> FN1. Section 31-51q appears to mandate
> that attorneys fees be awarded to a
> prevailing plaintiff; while § 31-51m(c)
> provides that the court "may allow to the
> prevailing party his costs, together with
> reasonable attorneys fees …."

In support of its position that the contingency fee
agreement should be enforced, such that the award of
attorneys fees would amount to $42,333.33, the
defendant refers to *Sorrentino v. All Seasons
Services, Inc.,* 245 Conn. 756 (1998). *Sorrentino* was
an action brought pursuant to § 31-290a of the
General Statutes, which prohibits retaliation by an
employer against an employee for having brought a
workers' compensation claim and requires the

imposition of "reasonable attorneys fees" and costs in
favor of a prevailing plaintiff. The jury apparently
awarded the plaintiff approximately $146,000. The
hourly billing records totaled approximately $64,000.
The trial court awarded $30,000, on the ground of
duplicate billing and the like. The contingency fee
agreement would have resulted in a fee of
approximately $48,600. The plaintiff claimed on
appeal that the contingency fee agreement was
reasonable and that it should control the award of
fees.

The Supreme Court agreed with the plaintiff. Where
a contingency fee agreement exists, the questions for
resolution are whether the fee agreement is
reasonable and, if the trial court does not enforce the
fee agreement, whether the trial court properly
exercises discretion in departing from the terms of
the agreement. *Id.,* 774. The court referred to the
standards of Rule 1.5(a) of the Code of Professional
Responsibility [FN2] in its assessment of reasonableness
and decided that the fee agreement in this instance
was reasonable. The court held (at 776) that the trial
court should not depart from the terms of a
reasonable fee agreement in the absence of a
persuasive demonstration that enforcing the
agreement would result in substantial unfairness.

> FN2. The standards in the Code of
> Professional Responsibility are markedly
> similar to the factors stated in *Johnson v.
> Georgia Highway Express, Inc.,* 488 F.2d
> 714, 717-19 (5th Cir.1974), which is
> frequently cited for its recitation of factors
> influencing the adjustments to the "lodestar"
> calculation in determining attorney fees
> brought pursuant to, *inter alia,* 42 U.S.C. §
> 1988 (civil rights actions) and unfair trade
> practices actions.

In other contexts, courts have specifically
discountenanced the use of the contingency fee in
setting attorneys fees. In *Blanchard v. Bergeron,* 489
U.S. 87, 91-96 (1989), the United States Supreme
Court overruled the dictum, if such is possible, in
*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d
714 (5th Cir.1974), to the effect that contingency fee
agreements capped the amount of recovery of
attorneys fees in civil rights actions. The Supreme
Court held in *Blanchard* that the presence of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 1218741 (Conn.Super.)
(Cite as: Not Reported in A.2d)

Page 2

contingency fee was but one factor to consider in the assessment of attorney fees, and the proper measure was what was a reasonable fee in the circumstances. The starting point, and most often also the ending point,[FN3] was the lodestar number, reached by multiplying the number of hours reasonably spent times a reasonable hourly rate; that rate is subject to adjustment by application of the *Johnson* factors. The court noted that the trial court should not be limited in its assessment of what was reasonable by an agreement of the parties.[FN4]

> FN3. See *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 564-66 (1986).
>
> FN4. Federal case law is, of course, ordinarily not binding authority on the application of Connecticut statutes.

*2 Connecticut courts have also relied on the *Johnson* approach, especially in the context of attorneys fees assessed pursuant to the Connecticut Unfair Trade Practices Act (CUTPA). A significant qualification, however, is the language in § 42-110g(d), which provides for attorneys fees for the successful pursuit of CUTPA claims. The section specifically and expressly provides that attorneys fees are not to be based on the outcome of the case, and it would appear, then, that any contingency fee arrangement should not be considered as a significant factor. See, e.g., *Steiner v. J & S Builders*, 39 Conn.App. 32, 38-39 (1995); *Riggio v. Orkin Exterminating Co.*, 58 Conn.App. 309, 318 (2000). Sections 31-51m and 31-51q, by contrast, contain no such qualification, and refer only to reasonable attorneys fees. Authority applying the CUTPA language is, then, of limited relevance to the issue at hand.

We are left, then, in this case, with one figure reached by the lodestar calculation with adjustments and a second somewhat lower, but still substantial, figure reached by application of the contingency fee agreement between attorney and client. The application of either number fulfills a primary purpose of the imposition of attorneys fees, which is to ensure that the individual party receives the full amount of damages awarded. The individual plaintiff presumably has no obligation to pay his attorney more than the amount calculated by applying the terms of the contingency fee agreement. I feel constrained to follow our Supreme Court's language in *Sorrentino*, which is quite clear and unambiguous,

and first to inquire whether the contingency fee is reasonable in this case. I have examined the factors in Rule 1.5(a), including the time and labor required, the novelty and difficulty of the questions involved, the skill needed to perform the services properly, the fee customarily charged in the locality for such services, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, and the contingent nature of the fee. I do not consider the likelihood of preclusion of other employment by the lawyer, any time limitations imposed by the client or the nature and length of the attorney-client relationship, because there was either no information available as to those factors or they were immaterial to the question considered. In the circumstances, it cannot be said that the contingent fee agreement is unreasonable: although more time and effort probably were expended than is reflected in the fee resulting from the application of the fee agreement, some of the time was not spent in successful efforts, in that, at a minimum, two of the four counts did not reach the jury, the case against one of the two defendants was dismissed entirely, and the trial was protracted by counsel's lengthy examinations.[FN5] Some of the legal questions were of moderate difficulty, and the defense counsel's skill necessitated considerable research. The amount involved was moderate and the results obtained were reasonably good. The plaintiff and his attorney bargained for the contingency fee, and in the circumstances it would appear to be reasonable. By the very nature of contingency fee arrangements, there will at times be superficial overpayment and at times superficial underpayment, and *Sorrentino* compels me not to depart from the contingency fee agreement unless it, in the circumstances, appears not to be reasonable.

> FN5. The plaintiff was questioned on direct examination for three and a half days, for example.

*3 If the lodestar approach were used, the result would not be markedly different. The plaintiff submitted documentation showing a total of 89 hours spent before trial and claiming an hourly rate of $175.00. During the trial period, the plaintiff's attorneys spent 342.75 hours at $200.00 per hour. The total amount claimed is $84,125.00. As noted above, however, some of the effort was unsuccessful and, in my observation of the trial, I believed that portions of the trial were unnecessarily protracted. The trial was only partially successful, in that two of the four counts did not reach the jury and the case was dismissed as to one of the defendants. No

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 1218741 (Conn.Super.)
(Cite as: Not Reported in A.2d)

Page 3

differentiation was made in rates between Mr. Cicchiello, the lead counsel, and Ms. Buden, the associate who performed research and argued legal issues orally.[FN6] The records submitted do not appear to be actual billing records; rather, they appear to be compilations and, in regard to many entries, estimates. If I were to apply the *Johnson* factors to the lodestar-and I would reduce the composite billing rate by $25.00/hour-I would conclude that an attorneys fee of $50,000 would be reasonable. The contingency fee agreement is not greatly different from this sum, so there would appear to be no great injustice, and within the exercise of a reasonable discreton, to enforce the agreement between the parties. I award, then, an attorneys fee of $42,333.33.

> FN6. It should be noted that Ms. Buden's research was useful and her arguments frequently persuasive.

Finally, I turn to the question of costs. The theoretical difference between the parties is whether the award of costs is governed by the usual statutory standards, specifically § § 52-257 and 52-260 of the General Statutes, or by the language of § § 31-51m and 31-51q of the General Statutes, which, as noted above, mention as items for recovery reasonable attorneys fees and costs. I believe that the inclusion of costs in the statutes creating the causes of action leads to the conclusion that something other than the ordinary statutory taxable costs was contemplated by the legislature: otherwise, the addition of the term "costs" is meaningless. It also seems consistent with the allowance of attorneys fees to shift the payment of reasonable costs to the defendant to further the plain legislative goal of making the successful plaintiff truly whole. This does not mean, of course, that all costs are automatically shifted without some scrutiny to determine reasonableness. See, e.g., *Citino v. City of Hartford Redevelopment Agency,* 2000 Ct.Sup. 9931 (L.Sullivan, J., 2000).

The objections to the plaintiff's second amended bill of costs, dated August 2, 2001, are decided as follows. The defendant has objected to the amount of $286.20 for the cost of the sheriff's service of subpoenas for trial. It is clear from the supporting documentation that the amount of $286.20 actually represents the cost of the service of subpoenas and the cost of serving the complaint. Because these were legitimate out-of-pocket expenses, they are awarded as costs.

*4 The costs of the deposition transcripts of Merrill

and Serra are supported by documentation and were reasonably necessary at trial. They are allowed. The plaintiff also claims as costs the cost of the transcript of Serra's trial testimony in the amount of $570.49. Although some portion of the transcript may have been helpful to the plaintiff, the use of the transcript was more a luxury than a necessity and I do not think it reasonable to transfer its cost to the defendant. The plaintiff claims $6,479 for the expert fees of the economist Dr Wright. The invoices submitted in support of the claim indicate that approximately half of the amount was for pretrial events and half for trial testimony. The defendant's only objection is on the ground that there is no statutory provision for the transfer of the cost; but, as noted above, I believe that § § 31-51m and 31-51q contemplate the transfer of reasonably incurred costs to the successful plaintiff. I will allow the cost of $6,479.

Finally, the defendant objects to the claim of the plaintiff for "copy/mail/parking" in the amount of $283.10.[FN7] There is no documentation in support of the claim, nor any indication of what the mailing and copying is for. Parking is not a traditional expense of litigation which is usually transferred. The objection to this item is sustained.

> FN7. The defendant specifically objected to the amended bill for costs dated July 17, 2001, and the latest version of the bill for costs was filed, as stated above, in August. Some of the claimed dollar amounts are different in the two versions. The principles of the objections remain the same, however, and I am using the amounts submitted in the latest versions.

Costs, then, may enter according to the second amended bill of costs, as amended by the application of this decision.

Conn.Super.,2001.
Arnone v. Town of Enfield
Not Reported in A.2d, 2001 WL 1218741 (Conn.Super.)

END OF DOCUMENT