$40,000 on a "wage" claim, any attorney's fees should, proportionately, be much less than the amount actually recovered.[4]

Here, too, the causes of action Blumenschine prevailed on (and the only one on which she can be awarded attorney's fees) have no overlapping legal elements or theories with her Federal discrimination-based claims and are not factually "inextricably intertwined" with the discrimination-based counts, as evidenced by the underlying factual predicate for the different claims:

All of Blumenschine's Federal discrimination and retaliation claims were purportedly based on events that occurred after September 2001, when Dan Shannon became her supervisor and was alleged to have made sexist and ageist remarks, received her complaint of a "boy's club" atmosphere, excluded plaintiff from meetings, and was involved with ProMedia's hiring of two "bright, young, and energetic guys."

By contrast, the two State law claims Blumenschine prevailed on were tied to the 2000 offer letter (plaintiff's only trial exhibit related to these state law

---

[4] Attorney Lucas was one of defendant's attorneys in the Shaw matter, where defendant challenged two attorneys' lodestar billing rates of $225 and $300 per hour as too high and unsubstantiated in the Connecticut geographic area. In that 2002 decision, the Court reduced the billing rates to $150 and $225, respectively.

claims), the termination of Blumenschine's nonrecoverable draw by Ziperman in May 2001, and her subsequent requests to Ziperman for something to take its place.

There was absolutely no evidence that Dan Shannon or any allegedly discriminatory conduct had anything to do with Blumenschine's compensation package, and her primary focus at trial was to hold ProMedia liable for her alleged damages suffered on account of Shannon's purported discriminatory conduct.[5]

Accordingly, it is clear on the evidence in the record that Blumenschine's state law wage and misrepresentation claims had no overlapping or intertwining "core of facts" with Blumenschine's discrimination/retaliation claims, and as such can be easily segregated from those counts on which Blumenschine and her counsel spent the vast majority of

---

[5] Illustrative of the focus of plaintiff's case at trial is the following direct testimony of Blumenschine:

Q: Did you during this time period [after termination] experience any symptoms of stress? Sleeplessness, anything?

A: I was depressed. I have IBS and that kicked in. Yeah, I couldn't sleep. Yes, I was very -- I was not well, I was upset, I was depressed, I was sad, it was like somebody pulled the rug out from under me. People that I had thought respected me, that I certainly respected and wanted to act in the proper appropriate way, just hadn't reciprocated.

Q: Mr. Ziperman you're talking about?

A: I'm sorry?

Q: Mr. Ziperman?

A: Oh, really more Mr. Shannon. <u>That's really what this is all about.</u>

Transcript of Audio Recording of Trial, Day One, May 17, 2006, at 3:57:15 p.m. (emphasis added).

9

their efforts before and during trial -- i.e., her Federal discrimination claims.

As this Court is aware from the pre-trial and trial proceedings, including the papers, arguments and evidence submitted by plaintiff (see, Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998):

The majority of plaintiff's preparation and trial time was spent on the main claims in this case: the six Federal and state discrimination claims on which ProMedia prevailed. Even a cursory review of plaintiff's counsel's time records reveals that, so far as can be gleaned from those records, the bulk of the attorney time here was devoted to matters having only to do with the Federal discrimination claims (e.g., the CHRO proceeding, the use of the expert Sheldon Wishnick with respect to back and front pay, motions in limine, Rule 56 and other Federal court submissions, etc.).[6]

---

[6] A review of the detailed time entries spent by plaintiff's counsel, prior to filing the Post-trial Motion, with respect to the Wage Statute and negligent misrepresentation counts reveals only the following five (5) detailed entries with respect to these two counts:

    1. December 12, 2002 (before complaint filed): "Redraft complaint; research regarding particular damage claims under Connecticut wage statutes and other related claims", 1.4 Bayonne hours ($105.00);

    2. April 11, 2006: "Legal research on contributory negligence in negligent misrepresentation actions", 2.5 McBride hours ($225.00);

    3. April 27, 2006: "Attention to opposing counsel's briefs re: mitigation; misc. trial prep.", 2.10 Lucas hours ($315.00);

Although it is <u>plaintiff's</u> burden to show evidence of a reasonable attorney's fee, review of the submitted detailed billing records (Lucas Affidavit, Exhibits "3" and "4"), totaling $104,915.75, even a cursory review of plaintiff's counsel's time records shows significant time entries related exclusively to Blumenschine's Federal claims -- which must be deducted -- as follows:

1. The first invoice to plaintiff (Lucas Affidavit, Exhibit "3"), in the amount of $2,560, must be deducted in its entirety as it relates to the CHRO proceeding that raised and addressed purely Federal claims;

2. an additional $2,042.50 (at the lower, billed rate) should be deducted for 13.55 hours of Lucas and .10 of Cannaday time spent purely on CHRO matters before the complaint was filed;

3. At a <u>minimum</u>, $5,152.50 must be deducted for the only hours listed in the Lucas Affidavit, Exhibit 4, which directly indicate time spent on the Wishnick and Silverman

---

4. May 22, 2006: "Legal research on negligent misrepresentation, punitive damages and emotional distress damages", 4.5 McBride hours ($405.00); and

5. May 24, 2006: Research re: Punitive Damages; Negligent Misrepresentation; [sic] Shepartdize Cases", 2.0 Ryan hours, ($200.00).

Plaintiff's counsel spent several times the approximately 13 hours of time explicitly mentioning the "wage" claims, but the lack of detailed time entries regarding the only two prevailing claims is illustrative of what her attorneys did in fact spend their time on: her Federal claims.

11

experts (15.8 Lucas, 1.0 Bayonne, 23 McBride, and 8.5 Ford hours);

4. a deduction of $105.00 for attorney Lucas's time spent unrelated to this litigation (on May 6, 2004) for discussing and reviewing a job offer letter with plaintiff;

5. $10,422.00 must be deducted as related to all motions in limine (13.2 Lucas, 91.3 McBride, and 3.0 Ford hours), which had nothing to do with Blumenschine's state law claims whatsoever;[7]

6. $711.00 must be deducted as related to the testimony of Nancy Switkes and Sara Sikes (7.9 McBride hours), who both testified exclusively as to plaintiff's Federally-recoverable, non-economic damages;

7. $1,001.00 must be deducted for time entries purely related to research and issues regarding federal damages, burden-shifting, and jury instructions re: same (20.9 McBride and 1.2 Ryan hours);

8. $20,797.50 must be deducted for time entries related exclusively to summary judgment motions as follows:

---

[7] The motions were regarding: discussion of missing documents at trial (leading to a spoliation charge); use of CHRO documents at trial (discrimination/Dan Shannon impeachment re: relationship with Blumenschine) and Boucher documents and testimony (monies spent to hire him indicate Blumenschine's firing was pretextual and therefore discriminatory -- defendant had money to keep her employed); to preclude the testimony of late-named fact witnesses (regarding the non-discriminatory workplace atmosphere); and exclusion of the testimony of plaintiff's front pay/back pay expert, Sheldon Wishnick.

12

a) $10,920.00 for plaintiff's papers in support of her motion for summary judgment (15.5 Lucas, 94 Bayonne[8], 5 Ford and 11.7 Canaday hours), of which 3.5 of 33 pages address the Wage Claim;

b) $7,770.00 for plaintiff's opposition to defendant's motion (9.3 Lucas, 75.5 Bayonne, and 9.5 Ford hours), of which <u>four lines</u> of plaintiff's 28-page opposition addressing the two state law claims by merely referencing corresponding sections to plaintiff's motion for summary judgment;

c) $2,107.50 for plaintiff's reply papers (4.55 Lucas, and 19 Bayonne hours), of which <u>eight lines</u> out of 12 pages refer to plaintiff's Wage Claim;

9. $ 7,458.50 must be deducted for time spent on the pretrial memorandum and proposed jury instructions (41.9 Lucas, 20.9 McBride, and 32.3 Ford hours), of which, again, only a handful of pages related to the two state law claims.

Accordingly, a minimum of $50,250.00 should be deducted from the $104,915.75 amount sought due to improper, unreasonable, and separable charges regarding Blumenschine's Federal claims, leaving a total of

---

[8] Many entries for Ms. Bayonne appear vague and duplicative, indicating "Motion for Summary Judgment 5.0" or similar such entries on several days.

13

$54,665.75. By no means does this amount represent "actual time" spent on the wage claim. From this reduced amount, further substantial deductions are necessary due to the vagueness of the time entries, consideration of the extremely limited success of plaintiff in this matter, and the obvious lack of proportionality between the Federal discrimination claims and the far smaller State "wage" claim.

2.  The "Lodestar" amount must be Further Reduced by This Court Based On The Vast Bulk of this Matter Being Focused by Plaintiff on the Federal Counts, and due to the Lack of Overall Success of Plaintiff in this Case.

From the remaining time entries submitted, which then totals $54,665.75, a significant reduction must be taken in light of the vagueness of the entries (i.e., it is not identifiable whether the time is attributable to the factual bases or legal theories underlying either her state or Federal counts) and amount of time spent on the State law claims by looking at the documents generated in support of them.

For example, a review of the depositions taken by plaintiff reveals what a relatively small part of the overall attorney effort on plaintiff's case was devoted to the wage claim: plaintiff took five depositions (Ziperman,

14