Hanson, Kinnaman, Shannon and Boucher), which produced 587 transcript pages.[9] Of this page total, questions related to the state law wage claim and/or negligent misrepresentation counts amount to a generous allocation of 18 pages of the total.

Additionally, of course, this Court will recognize that if plaintiff had brought only her state law wage claims for the same "unpaid wages" of $40,000, pre-trial and trial proceedings on that issue would have consumed only a small fraction of the time and expense involved in preparing and trying the entire Federal case as plaintiff presented it (as just one instance, no Motions in Limine would have been made; there would have been no expert testimony, etc.).

Since plaintiff was allowed to burden defendant ProMedia with four years and hundreds of thousands of dollars required to oppose the seven claims which the jury found to be without merit, the notion of further penalizing ProMedia by requesting it to pay plaintiff's full attorney's fees on her unsuccessful claims (at the rate stated in plaintiff's retainer agreement, much less some

---

[9] Not included in this transcript page total are the depositions ProMedia took: 166 pages of testimony of plaintiff's experts, Silverman and Wishnick, or Blumenschine's 257 total pages. Of these 423 total pages, a generous allocation of 14 pages (from Blumenschine's deposition only) are relevant to Blumenschine's wage count.

15

wholly inapplicable "lodestar" rate) has no basis in fact or law.

If ProMedia is, over our objection, adjudged liable for any attorney's fees in connection with the wage claim theory, it should be only for that part of the total attorney's fees requested which is reasonably related to the single wage claim and plaintiff's prosecution of <u>that claim alone</u>. Thus, even accepting plaintiff's counsel's billing records on their faces, after the "fat is trimmed," plaintiff has shown no entitlement to more than $10,933.15 ($54,665.75 x .20) in attorney's fees to pursue the single wage claim on which such fees would, in limited circumstances, be permitted.

3. Downward Departure from Plaintiff's Requested Amount is Necessary Due to Plaintiff's <u>Limited Success in This Matter</u>

A lodestar calculation is purely a guideline to be considered when a court in its discretion determines an award of an attorney's reasonable fees. Thus, as the Supreme Court has recognized even in cases where (unlike here) there was a Federal recovery, where a segregation of fees is difficult to ascertain and a plaintiff has achieved only limited success, reliance upon the lodestar calculation without some sort of reduction based on the degree of

16

success achieved may result in an excessive fee award. Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933 (1983) (attorney's fees compensable under 42 U.S.C. § 1988; degree of success a crucial factor in determining a reasonable fee award). "The 'most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Shorter v. Hartford Fin. Svcs. Grp., No. 3:03 CV 0149(WIG), 2005 WL 2234507 at *9 (D.Conn. 2005)(Garfinkel, J.)(emphasis added), quoting Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566 (1992). A copy of the Shorter decision is attached hereto as Exhibit "C". Consideration of this factor is key where a plaintiff has prevailed on some but not all of his or her claims. Hensley, 461 U.S. at 434, 103 S.Ct. 1933. Thus, in addition to the other bases for reducing plaintiff's requested amount, plaintiff's requested attorney's fees must be reduced due to her level of success in this matter. An 80% downward reduction on this ground alone is supported by several cases within this Circuit where similar, major reductions were made to proposed lodestar amounts. In a case closest to the instant one with respect to the claims asserted and outcome, in Hine v. Mineta, 253 F.Supp.2d 464 (E.D.N.Y. 2003), the New York District Court reduced by 60% a lodestar fee amount since plaintiff prevailed on one

17

Federal discrimination count when a significant part of the case and trial had been devoted to two other federal discrimination counts and their damages, for which the jury found in favor of defendant employer and awarded approximately $60,000 in lost benefits -- instead of $3 million for past and future emotional distress and $447,000 in back pay. The Hine court found that this limited success justified a substantial downward departure in attorney's fees sought, from approximately $120,000 to almost $48,000.[10]

Also see Kassim v. City of Schenectady, 415 F.3d 246 (2d Cir. 2005) where the Second Circuit remanded the matter to the District Court for a clarification of whether its downward departure and award of $12,000 in legal fees from the $65,400 lodestar amount sought -- an over eighty percent reduction -- was based on plaintiff's "low degree of success" or an impermissible adjustment to legal fees based solely on the dollar value of the outcome ($2,500 was awarded by the jury). Id. at 251-52. The Kassim court underscored a Court's discretion to reduce attorney fees below a lodestar amount based on "partial or limited

---

[10] And in Hine, unlike the case at bar, the plaintiff actually prevailed on one Federal discrimination count; here, Blumenschine prevailed on none of her discrimination claims, State or Federal, and, a fortiori, the requested fees should be reduced still further.

18

success" of a party, whether there are "multiple discrete theories" or where plaintiff wins only a "nominal or technical victory." Id. at 256.

Also, in Baird v. Boies, Schiller & Flexner LLP, 219 F.Supp.2d 510 (S.D.N.Y. 2002), the Southern District of New York reduced an attorney's fee amount by 60% due to a $75,000 settlement for two plaintiffs, when potential damages had been estimated at $1.25 million and available evidence did not support discrimination claims. Accordingly, attorney's fees in the amount of approximately $55,000 were awarded by the Court instead of the application for nearly $191,000. In DeLeon v. Little, No. 3:94CV902 RNC, 2000 WL 435494 (D.Conn. 2000)(attached hereto as Exhibit "D"), Judge Chatigny reduced an attorney's fee lodestar amount by over 60%, from $182,000 to $68,000, where, after all claims were dismissed on summary judgment save one Federal claim, a jury awarded plaintiff $10 compensatory and $150,000 punitive damages. The Court then gave plaintiff the choice of retrying the case or accepting reduced punitive damages in the amount of $7,500. Remittitur was accepted.

Significant reductions to an attorney's fees application occurred in Bristol Tech., Inc. v. Microsoft Corp., 127 F.Supp.2d 64 (D.Conn. 2000), where plaintiff

19

failed on its Federal antitrust claims but prevailed on its Connecticut Unfair Trade Practice Act (CUTPA) count. The Court analyzed various stages of the case even though -- unlike the case at bar -- there was a "common core" of facts between the state and Federal anti-competition claims, and made such determinations as: 80% reduction in preliminary injunction motion fees proper since motion focused substantially on the antitrust legal issues; 80% reduction on motion to dismiss/summary judgment for same reason; expert charges unrecoverable as irrelevant to CUTPA claim (and withdrawn). After a 15% reduction for excessive hourly rates, with respect to discovery-related fees and work on jury instructions and other charges, the remaining lodestar amount was further reduced by 30% to reflect other excessive, redundant, or unnecessary entries. Thirty percent was also reduced from plaintiff's costs. The result was a reduction of almost 50% in the fee sought; if that resolution is warranted in a case where there was a "common core" between the unsuccessful Federal and successful State claims, here, a fortiori, an even greater reduction is warranted.

Accordingly, this Court, in its discretion, should reduce plaintiff's requested attorney's fees, incurred at the agreed to and billed reasonable rate, by at least 80%

20

in light of the extremely limited "success" of plaintiff's case, among the other factors discussed above. Considering the overwhelming amount of time spent by plaintiff on purely Federal issues -- probing and attempting to elicit facts to support the age, sex, and retaliation counts, the direction of questioning at trial and focus in the papers submitted in this matter -- an award of eighty percent of the requested legal fees ($104,915.75 x .20), in the amount of $20,983.15 should be the maximum, fair and reasonable fee for pursuit of one, simple legal theory that is easily separable from the other facts and theories plaintiff unsuccessfully pursued, and as argued above, after deductions for irrelevant entries are made and the remainder is reduced by 80%, the more appropriate fee amount should be $10,933.15 (see, supra, p. 16). To find otherwise, on the facts and circumstances of this matter, respectfully, would be both an abuse of discretion and substantially unfair to defendant ProMedia.

4.  Plaintiff's Purported "Lodestar" Amount, for Both Rates and Time, Is Unconscionably Excessive.

The Connecticut Wage Statute, C.G.S. § 31-72, provides that plaintiff may recover her "costs and reasonable attorney's fees as may be allowed by the court" (emphasis

added). Thus, this Court is, respectfully, <u>required</u> by statute to inquire as to what a "reasonable" attorney's fee might be under the present circumstances. See <u>Fabri v. United Techs Int'l, Inc.</u>, 193 F.Supp.2d 480, 484 (2002).[11] Although no Connecticut Federal or state decision has been found applying the lodestar rate to a C.G.S. § 31-72 determination of reasonable attorney's fees, the inquiry into what is reasonable begins by first calculating the "number of hours reasonably expended on the litigation by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-34, 103 S.Ct. 933 (1983). Excessive, redundant, or otherwise unnecessary hours must be excluded from the lodestar method. <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 116 (2d Cir. 1997).

    Plaintiff would like this Court to begin its

---

[11] This Court should also consider the twelve factors generally considered relevant to an award of reasonable attorney's fees:

"(1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Charts v. Nationwide Mut. Ins.</u>, 397 F.Supp.2d 357, 381 (2005) (recognizing Connecticut's adoption of these "<u>Johnson</u> factors" set forth in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)); see also, <u>Sorrentino v. All Seasons Svcs, Inc.</u>, 245 Conn. 756, 717 A.2d 150 (1998) (Rule 1.5(a) of the Rules of Professional Conduct, which are strikingly similar to the <u>Johnson</u> rules also determine the reasonableness of an attorney's fee).