determination of reasonable attorney's fees by accepting

and granting, in toto, plaintiff's attorney's lodestar

amount of $252,917.25, based on the fact that there is a

"reasonable" retainer agreement between Blumenschine and

her counsel (Post-trial Motion, pp. 6-8), but the issue is

not whether the arrangement (under which Blumenschine

agreed to pay attorney Lucas $150 per hour, plus 20% of any

recovery in this matter) is reasonable, but whether the

award of legal fees under such arrangement is reasonable.[12]

To be sure, the amount sought comprises current, excessive

_____

[12] See, Fabri, supra, 193 F.Supp.2d at 487 fn8 (distinguishing these
different inquiries).  Thus, plaintiff's reliance on Sorrentino v. All
Seasons Svcs., Inc., 245 Conn. 756, 717 A.2d 150 (1998), is misplaced,
since there the Court faced the issue of whether a downward departure
of fees calculated at 1/3 recovery based on a strict contingency fee
agreement was an abuse of discretion.  The court found that the
arrangement was reasonable and there had been no showing that to
enforce the agreement as written would be "substantially unfair" to the
defendant.  Here, as detailed herein, a grant of proferred attorney's
fees in their entirety would be substantially unfair to defendant
ProMedia.
        Further cases cited in plaintiff's Post-Trial Motion must be
distinguished as follows: Link v. City of Shelton, 186 Conn. 623, 443
A.2d 902 (1982) (attorney's fees properly awarded to defendant
acquitted of criminal charge, but not awarded on action to enforce
payment of said fees); Buccino v. Cable Technology, Inc., 25 Conn.App.
676, 595 A.2d 376 (App.Ct. 1991) (award of attorney's fees properly
denied since contract specified situation in which they could be
awarded, and basis for lawsuit was not one so listed); Quaratino v.
Tiffany & Co., 166 F.3d 422 (2d Cir. 1999) (District Court erred in
awarding attorney's fees based on "billing judgment" rule; award
vacated and remanded for recalculation under lodestar method).  Also,
Blumenschine misquotes Bank of Boston Connecticut v. Brewster, 42
Conn.Supp. 474, 505 (1992) in her Post-Trial Motion at p. 4: compare
her statement that "[e]ven if no opposition to a fee application is
made, it is a court's duty to see to it a reasonable award is made"
with what the Bank of Boston court actually stated: "Even when there
has been no objection to the size of the attorney's fee requested, it
is the responsibility of the court to see to it that the size of the
award is reasonable."  Clearly, this Court must determine the
reasonableness of the fee award application here, regardless of the
"reasonableness" of Blumenschine's fee agreement with her attorneys.

billing rates multiplied by every moment counsel spent on
this matter from inception through creation of the post-
trial memorandum on attorney's fees, and "success" on one
fee-permitting claim should not justify an award of fees in
their entirety.  See, Steiger v. J.S. Builders, No. 515733,
1996 WL 218689 at *8 (Conn.Sup.Ct., April 3, 1996) (unpub-
lished opinion)(attached hereto as Exhibit "E") (after jury
found no liability on most claims after 12-day trial, award
of fees under single CUTPA claim authorizing attorney's
fees "should not be considered a vehicle for the collection
for all the fees and costs of the case") (emphasis added).

Plaintiff, admittedly, does not press for this full
amount in her papers, recognizing that the second retainer
agreement entered into is for plaintiff's counsel to
receive a reduced hourly rate, $150.00 for Scott Lucas,
plus as a contingency an additional 20% of any award in
favor of Blumenschine.[13]  Yet now plaintiff's counsel seeks
a lodestar rate of $385 per hour, despite his firm's
retainer agreement to the contrary.  In fact, instead of
the lodestar billing rates requested as "reasonable" in the
Lucas Affidavit, at paragraph 10, plaintiff's counsel
billed plaintiff at less than fifty (50%) percent of the

---

[13] See, Lucas Affidavit, Exhibits "2" (retainer agreement specifying
rate) and "4" (detailed billing itemization at specified $150 rate).

lodestar rate now sought.[14]   The hourly rate billed to

Blumenschine by her attorneys should be considered the

maximum, reasonable lodestar rate applicable to the Court's

determination of a reasonable attorney's fee.   Indeed, the

billing arrangement between an attorney and client is a

significant factor to be considered.   See, <u>Shorter</u>, <u>supra</u>,

2005 WL 2234507 at *11.   Plaintiff's counsel would like

this Court to determine that, if the retainer agreement is

"reasonable," then all fees charged pursuant thereto are to

------------------------

[14] Comparing the Lucas Affidavit, paragraph 10, to Exhibit 4 attached
thereto, the difference between the lodestar rate sought and the rates
actually billed to Ms. Blumenschine are as follows:

| Attorney: | Lodestar rate sought: | Actual billed rate: |
|---|---|---|
| Scott Lucas | $385 | $150 |
| Mary Canaday | 280 | 100 |
| Michel Bayonne | 200 | 75 |
| Claire Ryan | 255 | 100 |
| Keith McBride | 190 | 90 |
| Bonnie Ford (paralegal) | 150 | 75 |
| | | |
| Totals | $252,917.25 | $103,745.75 |

Additionally, recent decisions have indicated that $350 per hour
for an "extremely well-known, experienced civil rights attorney in
Connecticut" and $250 per hour for "an experienced trial lawyer who has
conducted numerous trials" as reasonable lodestar rates in Connecticut.
See, <u>Galazo v. Pieksza</u>, No. 4:01-CV-01589 (TPS), 2006 WL 141652 at *3
(D.Conn. 2006) (attached hereto at Exhibit "F"); <u>see also</u>, <u>Shorter</u>,
<u>supra</u> ($300 per hour deemed reasonable for civil rights attorney with
13 years experience); <u>Cabrera v. G.T. Construction</u>, No. 3:05-CV-812
(MRK)(WIG), 2006 WL 1328767 (D.Conn., May 8, 2006) ($300 per hour
reasonable rate for attorney with 40 years experience).   With all due
respect to Attorney Lucas's skills and reputation, the "top dollar"
lodestar rates plaintiff seeks are excessive and must be set at a
reasonable rate -- in this case to the rates actually billed.

Moreover, plaintiff has failed to provide adequate justification
of marketplace rates for the equally exorbitant lodestar rates for the
other attorneys who worked on plaintiff's matter (let alone the $150
per hour sought for paralegal help), instead supplying their respective
ages and where they went to school.   See, Exhibit "C" to the Post-Trial
Motion.

be considered reasonable and chargeable in full.  However,
the reasonableness inquiry does not begin and end with the
presence of a retainer agreement, which is but one of the
factors, and analysis of the rates and hours charged is
also to be considered.  See, Schoonmaker v. Lawrence
Brunoli, Inc., 265 Conn. 210, 260 fn.61, 828 A.2d 64, 98
(2003) (regardless of retainer agreement, court permitted
to inquire into and "devalue" attorney's fees as part of
its "reasonableness" determination).  In light of the
excessive amount of hours actually billed, and considering
the circumstances and outcome of this matter, plaintiff's
attorney's billed rates should remain as the "reasonable"
rates.

5.    Blumenschine's List of Costs
      also Contains Improper Charges

      Blumenschine also seeks reimbursement from ProMedia
under the Connecticut Wage Statute for any and all costs
incurred by her and/or her attorneys.  Despite the fact
that such request is improper at this juncture since there
is no judgment yet in this matter, plaintiff's proposed
request for reimbursement of her reasonable costs -- as
with her itemization of her attorney's fees -- seeks
recovery of amounts that should not be included in any
award of "reasonable" costs in this matter.

26

First, any award of costs should not include amounts incurred prior to filing of the complaint in December 2002; $139.86 in various charges prior to filing should be deducted from the amount sought, since they relate to the CHRO proceeding which focused purely on Blumenschine's unsuccessful and distinct Federal claims.

Second, any and all costs related to the opinions and trial testimony of plaintiff's expert witness, Sheldon Wishnick, who testified exclusively regarding front pay and back pay damage calculations on Blumenschine's Federal Counts, should also be deducted as having nothing to do with the Connecticut Wage Statute or negligent misrepresentation claims.  Accordingly, charges by Mr. Wishnick's company, Actuarial Litigation Service, in the amount of $2,150 should not be included in any award of costs against ProMedia, nor the costs of Mr. Wishnick's deposition transcript in the amount of $171.72 (see Lucas Affidavit, Exh. 6 (3d page)).

Additionally, the deposition transcript of Beverly Silverman, LCSW, should not be included, as her testimony was not used and she was named as plaintiff's expert to testify as to the non-economic damages suffered by Blumenschine which may have been considered with respect to her Federal and state discrimination and retaliation

27