EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISA K. BLUMENSCHINE :
:
v. : CIV. NO. 3:02CV2244 (HBF)
:
PROFESSIONAL MEDIA GROUP, LLC :
:
: May 24, 2006
:

SUPPLEMENTAL VERDICT FORM

We, the jury, unanimously find:

Negligent Misrepresentation

Economic Damages

OWED $40,000 00
SEVERANCE $10,000 00
―――――――――
$50,000 00

1. What sum do you find will compensate LISA BLUMENSCHINE for her economic damages from defendant's negligent misrepresentation?

   $50,000 00

2. Does this amount include the $40,000 you found that defendant owed her at the time of her discharge?

   YES ✓    NO _____

Noneconomic Damages

3. What sum do you find will fairly compensate LISA BLUMENSCHINE for her noneconomic damages from defendant's negligent misrepresentation?

   $ -0-

<u>Connecticut Wage Statute</u>

5. Do you find by a preponderance of the evidence that defendant's violation of the Connecticut Wage Statute was done in bad faith, arbitrarily or unreasonably?

     √  YES          _____ NO

When you have finished answering the appropriate questions on this form, you may report your verdict.

The form should be signed and dated by the foreperson.

_____          5/24/06
Foreperson                       Date

2

**EXHIBIT B**



Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308
(Cite as: Not Reported in A.2d)

Page 1

Briefs and Other Related Documents

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut,Judicial District of Stamford-Norwalk.
W. Frederick RAVETTO
v.
TRITON THALASSIC TECHNOLOGIES, INC. et al.
Raymond T. Bartko
v.
Triton Thalassic Technologies, Inc. et al.
Nos. FSTCV020189897, FSTCV020189898.

Nov. 4, 2005.

WILLIAM B. LEWIS, Judge (T.R.).

*1 These two cases were consolidated for trial because they both involve the same issue: whether the two plaintiffs, W. Frederick Ravetto and Raymond T. Bartko, are entitled to money damages from their former employer, Triton Thalassic Technologies, Inc. (Triton),[FN1] and from the defendant's president and chief executive officer, the individual defendant, Barry Ressler, for unpaid wages and related causes of action. The first of the above cases was tried to the court. The parties agreed that the second case, involving Raymond T. Bartko as plaintiff, could be decided on the briefs because the facts in each case were so similar.

FN1. Triton was developing technology that would treat and control bacteria and viruses in certain fluids.

In the first count of the Ravetto case, the plaintiff alleges that he was employed by Triton as vice president of sales at an annual salary of $175,000 from February 1, 2001 until March 30, 2002; that he did not receive any compensation starting September 30, 2001 and was owed the sum of $99,296; and that by failing to pay him his wages when due, the corporate defendant had violated General Statutes § 31-71, thus entitling the plaintiff to double damages and attorneys fees as authorized by General Statutes § 31-72.[FN2]

FN2. General Statutes § 31-71 provides that an employer may not "withhold or divert" an employee's wages. Section 31-72 states that if an employer fails to pay wages or to compensate an employee, such employee "may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorneys fees as may be allowed by the court ..."

In the second count of the Ravetto complaint, the plaintiff alleges that Triton breached its contract to compensate him in accordance with their written employment agreement. The third count is directed against the individual defendant, Barry Ressler, and alleges that Ressler also violated General Statutes § 31-72 by failing to pay the plaintiff what was owed him as an employee.[FN3] The fourth, fifth and six counts are directed against the corporate defendant and allege promissory estoppel, unjust enrichment and negligent misrepresentation "of employment opportunity."

FN3. Although not an issue discussed in the briefs filed by the parties, it should be noted in passing that the individual defendant, Ressler, is also liable to the plaintiff despite his status as a corporate officer. In Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 704 A.2d 222 (1997), our Supreme Court addressed the issue of whether an individual can be held personally liable pursuant to General Statutes § 31-72 for the failure to pay wages. The court concluded that: "an individual personally can be liable as an employer pursuant to § 31-72, notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation." Id., at 463-64.
There is no question that Ressler set the wages of all the employees of Triton and made the decision to stop paying the plaintiffs and "deferring" their salaries. Hence, he is liable to the plaintiffs to the same extent as the corporate defendant.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308
(Cite as: Not Reported in A.2d)

Page 2

In the second of the above two cases, the plaintiff, Raymond Bartko, makes similar allegations in the first count of his complaint, except to note that he was employed by Triton as its engineering manager from August 1, 2000 until March 11, 2002, at an annual salary of $90,000; that the corporate defendant stopped paying him on October 15, 2001; and that he was owed unpaid wages in the amount of $41,250. In the second and seventh counts of this complaint, Bartko alleges that Triton breached its "implied" contract and its "employment contract," respectively, by failing to pay him the amount of compensation agreed upon. The third count is directed against Ressler personally and the plaintiff alleges that this defendant also violated General Statutes § 31-72. The fourth and fifth counts allege promissory estoppel and unjust enrichment against Triton. In the sixth count of the Bartko complaint, the plaintiff alleges that on or about November 1, 2001, he loaned the corporate defendant $50,000; that said defendant had signed a promissory note in that amount; and that Triton had failed to pay the note when due on December 31, 2001 or thereafter.

The defendants denied the material allegations of the complaint except to state that both plaintiffs were "furloughed because corporate defendant was unable to pay his salary." The defendants alleged that Ressler represented to the plaintiffs that their salaries would be paid but "only to the extent that additional funding" was obtained and that there was no "guarantee" that such funding would be obtained. The defendants also filed a number of special defenses, including that the plaintiffs sued the wrong entity because they had been employed by International Charter Group (International Charter), now known as Total Team Solutions, Inc. (Total Team Solutions), and that their claims had been preempted by certain federal statutes. The defendants also allege that after October 1, 2001, the plaintiffs continued to work for Triton but only as "volunteers" and not as employees. With respect to the $50,000 loan, the defendants admitted that Bartko "agreed to loan $50,000 to the corporate defendant from plaintiff's 401k account," but stated in a special defense that Bartko "never demanded repayment of the Promissory Note."

*2 On or about May 22, 2002, the defendants impleaded International Charter as a third-party defendant on the theory that it was or may be liable to defendants "for all or part of the plaintiff's claims against defendants." The defendants contended in their third-party complaint that the plaintiffs were employed by International Charter pursuant to a "client service agreement" between Triton and the third-party defendant dated January 27, 1995. The defendants further allege that International Charter was in charge of Triton's payroll and had authorized its employees, including the plaintiffs in these two cases, to continue to work under a "deferred compensation" plan because it was aware that Triton could not meet its payroll obligations. The defendants also contended in its third-party complaint that International Charter was negligent in permitting the two plaintiffs to participate in a deferred compensation plan; that they were entitled to common-law indemnification by International Charter because its negligence was "sole, primary, and active;" and that the third-party defendant had breached its contract with Triton which entitled Triton to contractual indemnification from International Charter for any violation by the third-party defendant "of applicable State and Federal laws."

The third-party defendant denied the material allegations of the third-party complaint and also filed several "affirmative" defenses, including that contributory negligence on the part of Triton was greater than its own negligence, if any.

On March 31, 2004, Ressler on behalf of Triton wrote to the attorney for the two plaintiffs stating that Triton had received sufficient outside financing to pay both Ravetto and Bartko what was owed them, including interest compounded at 4% per year, the "Bank Prime Rate." In the case of Ravetto, the defendants stated that he was owed $54,999 beginning on September 30, 2001 to March 15, 2002, plus interest, less advances paid on unearned commissions, for a total of $14,421. The defendants calculated that Bartko was owed $44,616, which included two years of compound interest of 4%. "Triton hereby tenders the enclosed drafts in the amounts of wages plus two years interest as follows: $14,421 to Mr. W. Fred Ravetto, and $44,616 to Mr. Raymond Bartko."

Turning first to the Ravetto case, there is no question that he was not paid the wages that were owed him for the six-month period from approximately September 30, 2001 to March 11, 2002, when all the employees were "furloughed." The defendants, however, claim that Ravetto as well as the other plaintiff, Bartko, voluntarily and with full knowledge agreed to continue to work for the defendants in the hope of eventually getting paid, which they did.

There is also a dispute about the amount paid to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 3
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308
**(Cite as: Not Reported in A.2d)**

Ravetto because the defendants subtracted from the wages that were due advances on the sales commissions previously paid him. Ravetto argues that such advances are not refundable in the absence of an agreement to that effect.

*3 Thus, the issues in these cases are first whether both plaintiffs are entitled to double damages for the defendants' failure to pay wages as authorized by General Statutes § 31-72. The next issue is whether the defendants acted improperly or illegally in subtracting from the wages ultimately paid to Ravetto the sum of $40,650 obtained by Ravetto as an advance or draw against commissions. The remaining issue is whether Triton is entitled to reimbursement by International Charter as claimed in its third-party complaint.

It is well recognized that doubling damages for unpaid wages is in keeping with "the remedial purpose of the wage laws." *Petronella v. Venture Partners, Ltd.*, 60 Conn.App. 205, 215, 758 A.2d 869, appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001). However, in order to recover double damages pursuant to General Statutes § 31-72, there has to be a finding that the employer acted with "bad faith, arbitrariness or unreasonableness." (Internal quotation marks omitted). *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 269, 828 A.2d 64 (2003).

An example of a finding warranting double damages is found in *Petronella v. Venture Partners, Ltd.*, supra, 60 Conn.App. at 215, where the trial court found that: "[D]ouble damages should be awarded in this case. [The court] finds bad faith, arbitrariness and unreasonableness on the part of the defendants Venture, Laskowski and Betts. The claimants were promised by said defendants that they would be paid their back wages as an inducement to keep them working. Yet, they were fired two months later and not given those back wages. After being fired, they were further told they would be paid if they would sign certain releases. However, to this day they have not been paid."

Another example of a situation warranting double damages is found in a 2001 decision by the undersigned. "At some point near the end of his employment when the plaintiff was not being paid, the defendant promised the plaintiff and several of his fellow workers that they would be paid 'next week,' thereby inducing the plaintiff to work one more week without pay." *Alvarado v. Law*, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 00 0179512 (July 10, 2001).

There is no such proof in this case. The defendant corporation simply could not meet payroll and so advised its employees including the two plaintiffs on September 30, 2001. Some employees left immediately, but the plaintiffs voluntarily decided to remain at work under a "deferred salary plan." The defendants did not guarantee that the deferred salary would ever be paid, but only that Triton would make every effort to do so, which it did on March 31, 2004, with interest. The employer did not induce the employees to remain at work without pay but told them clearly that there was no guarantee of payment if they wanted to remain at work

In pursuit of his claim for double damages, the plaintiff in this case, Ravetto, points to the fact that during the period after his employment was terminated until March 31, 2004, some money came to Triton but was not used to pay Ravetto the wages that he was owed, but rather was spent on invoices from various providers and for wages due several lower-level employees. Ressler's testimony on this point was credible. He had to pay some of the providers in order to keep the business in operation and in the hope of eventually paying this plaintiff and other employees. Several employees were paid back wages but only after they convinced Ressler that they were suffering genuine, bona fide, hardship.

*4 Therefore, the award of double damages is not warranted in this first case because of the absence of bad faith, arbitrariness or unreasonableness.

As noted previously, the defendants, when repaying the wages due Ravetto, subtracted $40,650 on the basis that the commissions on which the draw or advances in that amount were paid, were never earned. In *Lepore v. Goldman*, Superior Court, judicial district of Litchfield, Docket No. CV 01 0086509 (February 21, 2003) (34 Conn. L. Rptr. 156), the court held that: "Connecticut has adopted the majority rule that, where advances made to a salesman are charged against commissions earned, he is not required to pay any excess of advances over commissions unless it is expressly or impliedly agreed that he do so." To the same effect see also *Valoco Building Products, Inc. v. Chafee*, 4 Conn.Cir.Ct. 322, 231 A.2d 101 (1966) and *Sutton v. Avery*, 132 Conn. 397, 399, 44 A.2d 701 (1945) ("Even if the advances were to be regarded as sums to be deducted from future commissions, the weight of authority is against recovery. Note, 57 A.L.R. 33.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 4
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308
(Cite as: Not Reported in A.2d)

To the cases there cited the following might be added: Smith v. Franklin Printing Co., Inc., 54 Ga.App. 385, 187 S.E. 904; American Furniture Co. v. Snell, (La.) 164 So. 478; Leighton v. Bancamerica-Blair Corporation, 192 Minn. 223, 255 N.W. 848; McConnell v. Baker, 170 S.C. 111, 114, 115, 169 S.E. 842.")

The written employment agreement in this case is silent as to whether an employee is required to pay back excess advances. It does not contain any express language on reimbursement of unearned commissions. Ravetto never agreed to repay advances in excess of earned commissions. Accordingly, Ravetto is entitled to retain excess advances and Triton owes him the $40,650 that it improperly subtracted from the wages paid him, plus 4% interest from March 31, 2004 to the date of this judgment.

As to the third-party complaint, although International Charter is an employee leasing company and the plaintiffs can be technically regarded as employees of that company as well as Triton, International Charter's mission was to process the payroll and handle related personnel matters for Triton. It was Ressler's decision on behalf of Triton and his alone to illegally "defer" payment of wages. International Charter did not make that decision and there is no reason that this company should reimburse or indemnify Triton for whatever damages the defendant corporation sustains.

Moreover, although International Charter advised Triton sometime in February 2002, that Triton's withholding of wages was improper, there is nothing in the 1995 Client Services Agreement between Triton and International Charter that obligated the third-party defendant to provide legal or other advice regarding the payment or nonpayment of wages. Ressler decided to "furlough" the employees on March 11, 2002, after receiving legal advice to that effect from outside counsel. International Charter only agreed to indemnify Triton if the third-party defendant itself failed to properly withhold taxes or to pay certain benefits to entitled employees.

*5 In the Bartko case, as noted previously, instead of an actual trial, the parties submitted a "Joint Statement of Stipulated Facts" dated April 4, 2005. With the obvious exception of the $50,000 loan by Bartko, many of the facts in this stipulation apply to the Ravetto case as well. As to the loan, the parties stipulated that the $50,000 note was not paid when due on December 31, 2001. It was further agreed that Bartko was not paid by Triton for the period October 15, 2001 to March 11, 2002, Bartko's last day of employment, but that on March 31, 2004, Triton paid Bartko all back wages that were owed in the amount of $41,250, plus interest at 4%. Additionally, on or about April 4, 2005, Triton paid Bartko $60,035 for the $50,000 loan, including interest at 5.5% annually, to March 31, 2005.

The parties also stipulated that Ressler, on behalf of the defendant Triton, met with the employees, including Bartko, on September 30, 2001, and advised them that Triton could no longer pay its employees because of financial problems; that the plaintiff voluntarily continued to work after this meeting on a "deferred compensation basis" in the "hopes that the company would obtain additional funds;" and that on March 11, 2002, Triton held another meeting and advised its employees that they could no longer work because the employer "could not pay their wages," and that they were being "furloughed."

Thus, the only issue in the Bartko case is whether he is entitled to double damages pursuant to General Statutes § 31-72. For the reasons discussed in the Ravetto case, this plaintiff is not entitled to such damages.

In conclusion, judgment hereby enters for the plaintiff Ravetto to recover from the defendants the sum of $40,650, plus 4% interest from March 31, 2004 to the date of this judgment, which amounts to $2,597.10, for a total judgment against the defendants for $43,247.10, plus costs in favor of the plaintiffs as determined by the office of the chief clerk. All other causes of action alleged by the plaintiffs are denied and dismissed as is the third-party complaint against International Charter.[FN4]

> FN4. The plaintiffs, for example, claimed they were induced to join Triton by false representations by Ressler as to the financial health and value of the defendant corporation's product. The record is clear that both plaintiffs were experienced and knowledgeable businessmen who looked over Triton thoroughly before signing the employment agreement. The breach of contract claims refer to the failure of the defendants to pay them their wages and are subsumed under the statutory wage claim. Neither promissory estoppel nor unjust enrichment are applicable to these cases at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308  
**(Cite as: Not Reported in A.2d)**

Page 5

all.

So Ordered.

Conn.Super.,2005.  
Ravetto v. Triton Thalassic Technologies, Inc.  
Not Reported in A.2d, 2005 WL 3507963 (Conn.Super.), 40 Conn. L. Rptr. 308

Briefs and Other Related Documents (Back to top)

- FST-CV-02-0189897-S (Docket) (Jun. 11, 2002)
- FST-CV-02-0189898-S (Docket) (Jun. 11, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.