EXHIBIT C

Case 3:02-cv-02244-HBF   Document 96-7   Filed 06/23/2006   Page 1 of 6

Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Ferron SHORTER, Jr., Plaintiff,
v.
HARTFORD FINANCIAL SERVICES GROUP, INC., Defendant.
No. 3:03 CV 0149 WIG.

May 31, 2005.

Rachel M. Baird, Law Office of Rachel M. Baird, Torrington, CT, for Plaintiff.
James F. Shea, Margaret J. Strange, Jackson Lewis, Hartford, CT, for Defendant.

RULING ON PLAINTIFF'S POST-TRIAL MOTIONS
GARFINKEL, Magistrate J.
*1 Following a five-day trial, the jury returned a verdict in favor of Plaintiff, Ferron Shorter, Jr., on his claims of race and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq., and his state-law claim of negligent infliction of emotional distress.[FN1] The jury awarded Plaintiff $170,000.00 in back pay and benefits and $85,000.00 in general compensatory damages. Plaintiff now moves for equitable relief in the form of reinstatement or, alternatively, an award of front pay and benefits [Doc.125, 133]. Additionally, Plaintiff has asked the Court to award prejudgment interest, post-judgment interest, and attorney's fees and costs [Doc.127, 133]. Plaintiff's motions will be granted to the extent set forth below.

> FN1. The jury returned a verdict in favor of Defendant on Plaintiff's claims of intentional infliction of emotional distress and hostile work environment.

DISCUSSION

A. Front Pay

1. Reinstatement vs. Front Pay

To compensate a victim of discrimination for future damages, a court, in the exercise of its sound discretion, may order reinstatement or an award of front pay as further equitable relief. See 42 U.S.C. § 2000e-5(g)(1); Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 145 (2d Cir.1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); see also Dominic v. Consolidated Edison Co. of N.Y., Inc., 822 F.2d 1249, 1258 (2d Cir.1987) (ADEA claim). Although reinstatement is the preferred remedy, front pay may be awarded when it would be inappropriate to order reinstatement due to excessive hostility or antagonism between the parties. Shaw v. Greenwich Anesthesiology Assocs., P.C., 200 F.Supp.2d 110, 114 (D.Conn.2002).

In Shaw, this Court held that a plaintiff must first seek reinstatement and have that remedy denied before he or she can seek front pay. Id. at 114-15. To hold otherwise, the Court explained, would allow a plaintiff to deny an employer the opportunity to obtain his or her services in exchange for compensation, as opposed to the employer's having to compensate a plaintiff without receiving any services in return. Id. at 114.

In keeping with the holding of Shaw, Plaintiff has first moved for reinstatement. He notes that following his termination by The Hartford, he sought reinstatement.[FN2] See Pl.'s Reply Br. Ex. 1 containing Letters between Plaintiff's counsel and The Hartford regarding reinstatement, dated Jan. 29, 2002, Mar. 11, 2002, May 7, 2002, and June 14, 2002. Plaintiff continues to remain interested in returning to The Hartford, despite this litigation since, in his view, reinstatement is the only way he will ever regain the position, status, seniority, and benefits that he had achieved through more than twelve years with The Hartford.

> FN2. During the trial, the Court instructed the jury that The Hartford's failure to reinstate Plaintiff was not part of the case. (Tr. 130.) However, the fact that Plaintiff sought reinstatement is relevant to his claim that he is willing to be reinstated.

The Hartford, on the other hand, vehemently opposes reinstatement. It relies largely on the Plaintiff's arrest, evidence of which the Court excluded, as well as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 2

Plaintiff's violation of The Hartford's Electronic Communications Policy. The Hartford argues that, although the jury found in favor of Plaintiff on his discrimination claims, it did not conclude that his termination was unjust or unwarranted, but rather that his former girlfriend and co-worker, Maryanne Rhodes, should also have been terminated. Additionally, The Hartford maintains that reinstatement would not be practical because over three years have passed since Plaintiff's termination, during which time he has not worked in the information technology field nor updated his skill level to stay current in the field. Thus, it argues, the Court has no basis for concluding that Plaintiff retains the skills and knowledge to perform his former job. (Def.'s Mem. at 8-9.)

*2 The Court is not persuaded by the arguments advanced by The Hartford for not reinstating Plaintiff. The Court is not convinced that a company as large as The Hartford could not find a position for which Plaintiff would be qualified, given the variety of positions that Plaintiff competently filled over the twelve years he was with the company. Additionally, the Court disagrees with The Hartford's assessment of the jury's verdict. The jury found that Plaintiff's race and gender were motivating factors in The Hartford's decision to terminate him. The Court fails to understand how The Hartford could construe the jury's verdict as anything other than a finding that Plaintiff's termination was unjust. The Hartford further ignores the jury's verdict in arguing that an award of any further equitable relief is inappropriate because Plaintiff would have been terminated in any event for violating the company's Electronic Communications Policy. This evidence was presented to the jury and the jury disagreed, finding that Plaintiff's termination was unlawful, for which it awarded him back pay.[FN3] As to Defendant's argument that reinstatement is not appropriate in light of Plaintiff's alleged criminal conviction, twelve days after Plaintiff was terminated, The Hartford received evidence that Plaintiff did not, in fact, have a record of a criminal conviction. See Def.'s Mem. in Opp'n to Pl.'s Mot. for Equitable Relief, Ex. 2. Although The Hartford argues that these records were unclear, the Court is not willing to deny reinstatement on the basis of these records, particularly when Plaintiff established that he did not have a criminal conviction.[FN4]

FN3. The Hartford could have sought a mixed-motive instruction but did not. The Court will not speculate how the jury would have responded to mixed-motive interrogatories.

FN4. Defendant argues that the Court should not consider the issue of reinstatement because it was precluded from introducing evidence at trial to rebut Plaintiff's claim for reinstatement. This evidence was excluded because, inter alia, the matter of reinstatement was not for the jury but for the Court. See Banks v. Travelers Companies, 180 F.3d 358, 364 (2d Cir.1999) (holding that if there is a lacuna in the record evidence concerning the issue of reinstatement versus front pay, the court on remand should afford the parties an opportunity to supplement the record); United States E.E.O.C. v. W & O, Inc., 213 F.3d 600, 618 (11th Cir.2000)(rejecting defendant's claim that the EEOC waived the claim of front pay due to the alleged paucity of references to front pay in the pretrial order and its failure to submit evidence of or to argue front pay during the jury trial, since this was an issue for the court, rather than the jury). The Court has reviewed the cases cited by Defendant in support of this argument, Excel Corp. v. Bosley, 165 F.3d 635, 639-40 (8th Cir.1999), and Sequa Corp. v. GBJ Corp., 156 F.3d 136, 143-44 (2d Cir.1998), and finds them to be inapposite.

Nevertheless, the Court reluctantly concludes that reinstatement is not a viable alternative and that the more appropriate remedy is an award of front pay based upon the animosity between the parties that was exhibited throughout the course of this litigation, as well as the fact that Plaintiff now resides in Georgia. The Second Circuit has held that in cases where the employer-employee relationship has been irreparably damaged by animosity associated with the litigation, reinstatement may not be possible, and "a reasonable monetary award of front pay is necessary as equitable relief ... appropriate to effectuate the purposes of [the Act]." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir.1984) (decided under the ADEA) (internal citations and quotation marks omitted); see also Banks v. Travelers Companies, 180 F.3d 358, 365 (2d Cir.1999); Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 125-26 (2d Cir.1996), cert. denied, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). It is clear to the Court that, though Plaintiff was liked and respected in his unit, corporate management's negative feelings about Plaintiff and this case would create an untenable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 3

relationship were he to return to The Hartford.

"A front pay award 'serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'" *Padilla*, 92 F.3d at 126 (quoting *Whittlesey*, 742 F.2d at 729). Under the facts of this case, the Court finds an award of front pay is appropriate.

2. *Calculation of the Front Pay Award*

*3 As an alternative equitable remedy, Plaintiff has sought front-pay in the amount of $869,828.[FN5] The amount of front pay to be awarded is a matter committed to the Court's discretion. In calculating the size of a front-pay award, the Court must estimate Plaintiff's ability to mitigate his damages in the future. *See Dominic*, 822 F.2d at 1257-58 (ADEA case). Additionally, the Court must take into consideration Plaintiff's age, his education and training, his work experience, his skills, the job market, and his reasonable prospects of obtaining comparable employment. *See Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.*, 79 F.Supp.2d 197, 204 (E.D.N.Y.2000).

FN5. Plaintiff has prepared a chart in which he has calculated two alternative front pay figures. The first is based upon a minimum annual salary of $45,000, which he projects will remain constant from 2005 to 2032, at which time Plaintiff would reach retirement age of 65. From this figure, he has subtracted his current earnings of $25,000, increasing each year at the rate of 1%. After six years, when he hopes to have completed his college degree, he has used an earnings figure of $35,000, which increases at the rate of 1% per year. This yields a total front pay figure of $268,156 over 27 years. Alternatively, he has computed front pay using the jury's back pay award, which included lost benefits, for a three-year period. Dividing the award of $170,000 by three produces an annual back pay award of approximately $57,000, including benefits, which he has increased at the rate of 1% per year. After subtracting the same projected future earnings, the total front pay is $869,828 for 27 years. In neither scenario has he included any benefits from future employers.

In this case, Plaintiff has produced a detailed affidavit setting forth his efforts to find comparable employment.[FN6] During his twelve years with The Hartford, Plaintiff worked as an insurance rater, an assistant to the underwriter, an actuarial pricing specialist, a specialty actuarial programmer, a technician in the information management department, and last as a developer with an annual salary of $44,500. Following the termination of his employment on January 23, 2002, Plaintiff placed his resume on various internet job search web sites. He regularly checked the employment section of the local newspapers, and applied for jobs at numerous temporary work and staffing agencies and with several other insurance companies. He attended a career expo. Plaintiff was repeatedly advised that either he was over-qualified, that he did not have enough experience for a particular job, that he was not a good match for a position, or that it had been too long since he had used particular skills. Finally, in April of 2003, Plaintiff relocated to Georgia to live with his family while he continued his search for employment.

FN6. Defendant has challenged this evidence on the ground that it was not produced during the trial. Defendant argues that it is improper for the Court to consider evidence outside the record. The "record" however before the Court on these post-trial motions is not limited to the trial transcript and exhibits. Plaintiff's affidavit was properly submitted in support of a post-trial motion on a matter to be decided by the Court, not the jury, just as his attorney's affidavit was properly submitted in support of the motion for attorney's fees. *See* Note 4, *supra*. Additionally, the Court notes that the affidavit is largely a recap in narrative form of Plaintiff's Exhibit No. 29, consisting of Plaintiff's resume and over thirty letters and e-mails detailing Plaintiff's efforts to find other employment. Plaintiff also testified during his deposition and at trial as to his efforts to find other employment. *See* Def.'s Mem. in Opp'n to Mot. for Equitable Relief Ex. 1 & 4.

Plaintiff submitted his resume to more than fifteen companies and recruiters in Georgia, and met with at least five others. One recruiting firm told him that he would have difficulty finding a job because his salary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 4

at The Hartford had been so high and that he should look for a job with a substantially lower salary, between $20,000 and $30,000.

Finally, in October of 2003, having found no comparable employment, Plaintiff began work as a courier for $12.00/hour (or approximately $25,000/year) and has continued in that capacity for several different companies until December 2004, when his employer could no longer afford to pay him due to the loss of a major customer.

Following the trial in January, 2005, Plaintiff met with a counselor at DeVry University in Alpharetta, Georgia, who advised him that to find a position in information technology he needed to acquire computer networking skills. Plaintiff states that he plans to attend a university [FN7] to acquire a degree and the skills he needs to obtain a job comparable to the position he held with The Hartford. Because he needs to work, he will have to attend school on a part-time basis. The university guidance counselor has advised him that it will take him six years to obtain his degree, after which he hopes to obtain a position in the field of Computer Programming/Information Technology. Plaintiff believes that after obtaining his degree, he will be able to find employment at a starting annual salary of $30,000 to $40,000.

> FN7. Plaintiff has looked into several universities. The cost to obtain his degree ranges from $58,000 to nearly $70,000.

*4 The Court finds that Plaintiff has made reasonable and diligent efforts to find other comparable employment.[FN8] Although The Hartford argues that Plaintiff's efforts at mitigation were insufficient, it is Defendant's burden to prove that comparable positions were available to Plaintiff, and that he did not make reasonable efforts to avail himself of employment opportunities. Clarke v. Frank, 960 F.2d 1146, 1152 (2d Cir.1992); Palma v. Pharmedica Communications, Inc., No. 3:00CV1128, 2003 WL 22750600, at *3 (D.Conn. Sept. 30, 2003); Epstein v. Kalvin-Miller Int'l, Inc., 139 F.Supp.2d 469, 482 n. 4 (S.D.N.Y.2001). The Hartford has failed to provide any evidence that comparable employment existed for Plaintiff, who had only a high school education and had worked for The Hartford for over twelve years.[FN9]

> FN8. While employees who have been terminated have a duty to "use reasonable diligence in finding other suitable employment," Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the duty is "not onerous." Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir.1997). The Second Circuit has held that the ultimate question "is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 695 (2d Cir.1998) (internal quotations and citations omitted). Suitable employment means a job that is "substantially equivalent" to the plaintiff's former job. Ford Motor Co., 458 U.S. at 232. While a plaintiff must demonstrate reasonable diligence in seeking suitable employment, "[t]he employer has the ultimate burden of proving that the discriminatee failed to mitigate damages." N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 112 (2d Cir.1999).

> FN9. Plaintiff's situation is significantly different than that of the plaintiff in Palma cited by Defendant. In Palma, the plaintiff had obtained another job, where she was very happy. Since obtaining this job, plaintiff had not made any effort to find employment comparable to her former position. The court declined to hold the defendant responsible for maintaining the plaintiff's income level into the future without regard to any continuing efforts on her part to mitigate her damages. Palma, 2003 WL 22750600, at *4.

The Court finds that under the circumstances of this case, a front pay award is particularly appropriate. Plaintiff had received raises over a twelve-year period from a starting annual salary of $13,300 to $44,500, based on his seniority, in-house promotions, and merit assessment reviews. Without further training or a college degree, it will be extremely difficult for him to match the salary that he was earning at the time of his termination. The Hartford itself states that it would not be practical to rehire Plaintiff because he had been away from the information technology field for over three years. (Def.'s Mem. at 9) ("The IT field is constantly changing and there is no evidence in the record that Plaintiff has updated his skill level to stay current in the field."). Defendant also states that there were few positions in the information technology field

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 5

available in Connecticut. (Def.'s Mem. at 3.)

The Second Circuit has encouraged the district courts to "fashion remedies designed to ensure that victims of [ ] discrimination are made whole." *Whittlesey,* 742 F.2d at 728. The amount of time for which front pay will be awarded is committed to the district court's discretion. *See Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1182 (2d Cir.1996). The Court finds an award of front pay to be an appropriate equitable remedy in this case and awards front pay for a period of six years following the date of judgment, which will provide Plaintiff with the opportunity to obtain his college degree and to find comparable employment.[FN10] Plaintiff was making $44,500 with The Hartford at the time of his termination. He has been earning approximately $25,000 since October 2003 and intends to continue working while attending college.[FN11] The Court awards Plaintiff front pay in the amount of $117,000, representing the difference between his former salary and what Plaintiff was earning as a courier for a period of six years.

> FN10. The Court agrees with Defendant that an award of front pay for twenty-seven years, as sought by Plaintiff, is not warranted. Given Plaintiff's relatively young age and the fact that he will be obtaining a college degree, it is far too speculative to assume that Plaintiff will never be able to find a job at a salary level or with benefits comparable to what he would have made with The Hartford. *See Dominic,* 822 F.2d at 1258 (holding that it was not an abuse of discretion to limit the front pay award to two years); *but see Padilla,* 92 F.3d at 126 (affirming a front pay award for a period of 20 years); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1189 (2d Cir.) (affirming a front pay award for a period of 17 years), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

> FN11. The Court has not factored future salary increases into these calculations and, therefore, it is not necessary to reduce these figures to present value. *See Stratton v. Department for the Aging for City of New York,* 132 F.3d 869, 882 (2d Cir.1997) (affirming front pay award not discounted to present value); *Dominic,* 822 F.2d at 1257-58 (same); *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1147-48 (7th Cir.1993) (same).

### 3. Back Pay Until the Date of Judgment

Additionally, the Second Circuit has held that, because the jury cannot anticipate the date on which judgment will enter in calculating a back pay award, "any lag time between the jury's verdict and the district court's ultimate judgment ordinarily should be remedied by the court, in the form of a pro rata increase of the back pay award." *Banks,* 180 F.3d at 364; *see also Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 167 (2d Cir.1998) (holding that a "plaintiff who has proven a discharge in violation of the ADEA is, as a general matter, entitled to back pay from the date of discharge until the date of judgment"); *Dunlap-McCuller v. Riese Organization,* 980 F.2d 153, 159 (2d Cir.1992) (holding that back pay award runs from the date of termination until the date of judgment), *cert. denied,* 510 U.S. 908, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993); *Nord v. United States Steel Corp.,* 758 F.2d 1462, 1472-73 (11th Cir.1985) (back pay award should extend to date of judgment, rather than to earlier date on which court announced findings of fact following bench trial).

*5 Based on the Court's instructions, the jury's back pay award of $170,000 was calculated from the date of Plaintiff's termination, January 23, 2002, to the date of the verdict, January 28, 2005, a period of three years. This back pay award should continue until the date of judgment at the rate of $4,722 per month.

### 4. Lost Benefits

In addition to his lost wages, Plaintiff seeks compensation for the pension benefits that he has lost because of his termination and his loss of seniority and earnings. Plaintiff states that, under The Hartford's retirement plan, he would have been eligible for retirement with full medical benefits as of October 29, 2018.[FN12] He has produced some calculations by an actuary, which show the difference between the pension benefits Plaintiff will receive given his termination in 2002 and the pension benefits he would have received had he retired from The Hartford in 2032, at the age of 65, to be $11,383 per year. This evidence, however, is not properly before the Court. As Defendant points out, this "expert" witness was not disclosed in Plaintiff's Trial Memorandum or elsewhere. Further, this individual has not been properly qualified as an expert witness. Indeed, Plaintiff has not even disclosed his name. Additionally, his calculations are offered to prove the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.