Slip Copy                                                                                                                  Page 6
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

truth of the matters asserted therein and are, therefore, inadmissible hearsay. Fed.R.Evid. 801(c). Therefore, the Court will not consider this evidence in ruling on this motion.

> FN12. This is based on the "Rule of 80." On October 29, 2018, Plaintiff will be 51 years old and would have had 29 years of service with The Hartford.

The Second Circuit has held that compensation for lost pension benefits is an essential component of the relief to which victims of discrimination are entitled. See Sharkey v. Lasmo (AUL Ltd.), 214 F.3d 371, 374 (2d Cir.2000). Relief for lost pension benefits may take one of two forms, legal or equitable. Id. (citing Banks v. Travelers Cos., 180 F.3d 358, 365 (2d Cir.1999)). Legal relief, which is properly awarded by the jury, involves the payment of money damages directly to the plaintiff as compensation for the value of the pension benefits that were lost. See Id. Equitable relief, which is committed to the sound discretion of the Court, entails the restoration of lost service and salary credits to the plaintiff's pension plan to put him in the same place he would have been had he not been unlawfully terminated. See Id. (citing Banks, 180 F.3d at 165, and Geller v. Markham, 635 F.2d 1027, 1036 (2d Cir.1980)). "Unlike damage awards, 'which are payable to the plaintiff, pension benefits are paid into pension annuity funds. They merely replace the benefits that would have accrued during the [period] of employment wrongfully denied to [the plaintiff].' " Banks, 180 F.3d at 165 (quoting Geller, 635 F.2d at 1036).

The jury was instructed to take into consideration lost benefits, including pension benefits, in its calculation of damages for back pay. Based on the amount of the jury's award, it appears that they included compensation for lost benefits. To award additional relief for lost pension benefits would be speculative given the record before the Court and possibly duplicative of the benefits already awarded by the jury. Moreover, Plaintiff may later qualify for a pension with another employer. Thus, the Court declines to award additional relief for lost pension benefits. See E.E.O.C. v. Yellow Freight System, Inc., No. 98 Civ. 2270, 2002 WL 31011859, at *31 (S.D.N.Y. Sept. 9, 2002).

B. Prejudgment Interest

*6 Plaintiff has also sought an award of prejudgment interest. In Loeffler v. Frank, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), the Supreme Court held that consistent with the "make-whole" remedial scheme of § 706(g), "Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers." Id. at 557-58. However, the fact that prejudgment interest may be awarded does not mean that it must be awarded. See II Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1785 (3d ed.1997). "As the Second Circuit has noted, it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate." Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 314 F.Supp.2d 201, 202 (S.D.N.Y.2003). Nevertheless, in cases involving the award of compensation for lost wages, the Second Circuit has held that "it is ordinarily an abuse of discretion not to include prejudgment interest." Saulpaugh, 4 F.3d at 145 (backpay award under Title VII); see also Clarke, 960 F.2d at 1154 (same); Sands v. Runyon, 28 F.3d 1323, 1327 (2d Cir.1994) (same under Rehabilitation Act); Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir.1993) (upholding prejudgment interest award in a § 1983 case); Equal Employment Opportunity Commission v. County of Erie, 751 F.2d 79, 81 (2d Cir.1984) (same under Equal Pay Act); Donovan v. Sovereign Security, Ltd., 726 F.2d 55, 58 (2d Cir.1984) (same under Fair Labor Standards Act). The rationale for awarding prejudgment interest in such cases is to prevent the defendant-employer from attempting to "enjoy an interest-free loan for as long as it can delay paying out back wages," Saulpaugh, 4 F.3d at 145, and to help ensure that the plaintiff is made whole. Loeffler, 486 U.S. at 558 (holding that prejudgment interest is an element of compensation).

The Court finds that prejudgment interest should be awarded in this case to compensate Plaintiff for not having had access to the wages that he would have received had he not been wrongfully terminated. See Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir.1994); Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 281-82 (2d Cir.1987). The more difficult questions are what rate should apply and the how prejudgment interest should be calculated.

Since no federal statute controls the rate of prejudgment interest, see Jones v. UNUM Life Ins. Co. of America, 223 F.3d 130, 139 (2d Cir.2000), and since the Second Circuit has not expressly endorsed a particular interest rate, see Worthington v. City of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 7

*New Haven,* No. 3:94cv00609, 1999 WL 958627, at *17 (D.Conn. Oct.5, 1999), the courts in the Second Circuit have adopted a variety of approaches, including the post-judgment interest rate provided in 28 U.S.C. § 1961, state statutory interest rates, or market rates. *See, e.g., Chandler,* 44 F.3d at 84 (approving the trial court's use of the federal post-judgment rate of interest, 28 U.S.C. § 1961); *E.E.O.C. v. County of Erie,* 751 F.2d at 82 (applying the adjusted prime rate of interest as established by the Secretary of the Treasury in an employment discrimination case); *Shaw,* 200 F.Supp.2d at 119 (applying a prejudgment interest rate of 7.5%, compounded semi-monthly, in an employment discrimination case); *Malarkey v. Texaco, Inc.,* 794 F.Supp. 1237, 1243 (S.D.N.Y.1992) (applying the New York statutory rate to an employment discrimination case), *aff'd,* 983 F.2d 1204 (2d Cir.1993). "Regardless of the interest rate used as a starting point by a court evaluating a motion for prejudgment interest, the Second Circuit has made clear that a court 'need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government." ' *In re Livent, Inc.,* 360 F.Supp.2d 568, 572 (S.D.N.Y.2005) (quoting *Jones,* 223 F.3d at 139). In *Jones,* the Second Circuit emphasized that circumstances must be reviewed individually to determine the fairness of an award of prejudgment interest in a particular case, taking into consideration: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Jones,* 223 F.3d at 139 (quoting *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1476 (2d Cir.1996), *cert. denied,* 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997)).

*7 The remedial scheme of Title VII clearly contemplates that victims of discrimination should be made whole and, in keeping with this philosophy, the Second Circuit has encouraged the award of prejudgment interest on back pay awards in employment discrimination cases. Although the courts have applied different interest rates in employment discrimination cases, the majority of courts appear to favor the post-judgment statutory rate of 28 U.S.C. § 1961, "because it takes into account the effects of inflation, but does not overly compensate the plaintiff." *Worthington,* 1999 WL 958627, at *17 (citing cases); *Fisher v. Town of Windsor,* No. 3:94CV02050, 1997 WL 76669, at *6 (D.Conn. Feb.7, 1997) (using the rates set forth in § 1961(a), compounded monthly, to calculate prejudgment interest in an employment discrimination case); *Association Against Discrimination in Employment v. City of Bridgeport,* 572 F.Supp. 494, 495 (D.Conn.1983) (same). This Court will follow the approach taken in *Worthington, Fisher,* and the *City of Bridgeport* cases, *supra,* and award Plaintiff prejudgment interest at the § 1961(a) rate, which is the "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System ." *See also Norville v. Staten Island Community Hosp.,* 112 Fed. Appx. 92, 94, 2004 WL 2291388 (2nd Cir.2004) (applying the rate of interest found in § 1961(a) in an employment discrimination case); *E.E.O.C. v. Yellow Freight System,* 2002 WL 31011859, at *33 (same). That still leaves the question of how prejudgment interest is to be calculated.

In *Saulpaugh,* the Second Circuit held that the court must calculate prejudgment interest in a Title VII case based upon a compound rate of interest. "Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded." *Saulpaugh,* 4 F.3d at 145. In *Chandler,* the Second Circuit held that it was error for the district court to award prejudgment interest as of the date of discharge on the entire amount of the back pay award, rather than calculating the interest separately for each lost salary payment. "[I]nterest should have run from the date of the missed payments, rather than from the date of termination." *Chandler,* 44 F.3d at 84.

Because interest must be compounded, and should only be based upon the back pay due as of a particular point in time, the interest rate will change pay period to pay period. (The interest rates range from 2.18% on January 25, 2002, to a low of 0.95% on June 20, 2003, to over 3.0% in April 2005).[FN13] The Court instructs Plaintiff's counsel to submit a calculation of the amount of prejudgment interest from January 23, 2002, to the date of this ruling, compounded either monthly or biweekly (depending on how Plaintiff was paid by The Hartford), using the weekly rate of interest under § 1961(a) as of the Friday on or immediately preceding the date on which Plaintiff would have been paid. *See E.E.O.C. v. Yellow Freight System,* 2002 WL 31011859, at *33. This calculation should be submitted within twenty (20) days of the date of this ruling, to which defense counsel will have ten (10) days to object and, if so, to offer an alternative calculation. Either side may enlist the help of an expert not previously

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

Page 8

disclosed in the trial memorandum.

FN13. The most recent rates, i.e., those not appearing in 28 U.S.C. § 1961, can be found at www.federalreserve.gov.

### C. Post-Judgment Interest

*8 Plaintiff is also entitled to an award of post-judgment interest under 28 U.S.C. § 1961(a) on the entire money judgment. *See Employment Discrimination Law* at 1787 ("*After* an award of back pay, *postjudgment* interest is allowed in all cases." (original emphasis)). "Post-judgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." *Andrulonis v. United States,* 26 F.3d 1224, 1230 (2d Cir.1994). Under § 1961(a), post-judgment interest is calculated "from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The judgment entered by the Court shall include an award of post-judgment interest in accordance with this section.

### D. Attorney's Fees and Costs

Last, Plaintiff seeks an award of attorney's fees and costs. In support of this request, his attorney Rachel M. Baird has submitted an affidavit, twenty-six billing invoices, a table summarizing these invoices, a list of costs, and an affidavit of Attorney Peter B. Prestley, a Connecticut attorney who handles employment discrimination cases. Based on these affidavits and records, Plaintiff seeks an award of attorney's fees in the amount of $110,718.00, to which Plaintiff asks the Court to apply a multiplier of two, plus costs of $2813.41.

#### 1. The Standard for Awarding Fees

In Title VII cases, "the court may, in its discretion, allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k); *see Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 524 (2d Cir.1991). The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The "normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended in the litigation ... by a reasonable hourly rate.' " *Kirsch,* 148 F.3d at 172 (quoting *Hensley,* 461 U.S. at 433). The rates to be used in calculating the lodestar are the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.1998). There is a strong presumption that the lodestar figure represents a reasonable rate. *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1997).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437. "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch,* 148 F.3d at 173. The Court should exclude from the fee calculation hours that were not reasonably expended. *Hensley,* 461 U.S. at 434. Hours that are excessive, redundant, or otherwise unnecessary should be excluded from the lodestar calculation. *Kirsch,* 148 F.3d at 173. "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir.1994) (remanding award of attorneys' fees and directing the magistrate judge to review critically counsel's time records). The Court must

*9 examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case.... In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*Gierlinger,* 160 F.3d at 876 (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235-36 (2d Cir.1985)). The Second Circuit has further directed that if the Court determines that certain hours are not deserving of compensation, it must state the reasons for excluding

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 9
Slip Copy, 2005 WL 2234507 (D.Conn.)
(Cite as: Slip Copy)

those hours "as specifically as possible." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir.1998) (internal quotations omitted); *Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 99 (2d Cir.1997).

"The product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley,* 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward. *Id.* The lodestar figure may be adjusted on the basis of the "results obtained." *Id.* "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley,* 461 U.S. at 434. A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories. *Id.* However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof. *Murphy v. Lynn,* 118 F.3d 938, 951 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *DeLeon v. Little,* No. 3:94CV902, 2000 WL 435494, at *4 (D.Conn. Mar.2, 2000). The following factors also may be considered: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3.

2. *Plaintiff's Fee Request*

a. *Reasonableness of the Hours Claimed*

Plaintiff bases his fee request on 369.06 hours of time billed by Attorney Baird for services rendered over a three-year period.

*10 Attorney Baird's representation of Plaintiff began on or about January 26, 2002. She was the only attorney who represented Plaintiff in connection with this matter and she alone provided all of the legal services for which Plaintiff now seeks fees. Attorney Baird represented Plaintiff throughout the administrative proceedings before the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and then filed a complaint in federal court on his behalf on January 22, 2003. As attested to by Attorney Baird, and as reflected in the court file and docket sheet, this case has involved a considerable number of pretrial matters, including a motion to dismiss, an amended complaint based on newly acquired evidence, substantial discovery, motions for summary judgment, and motions in limine, followed by jury selection, a five-day jury trial, and several post-trial motions. The docket sheet currently lists 148 documents filed by the parties. The total number of hours billed over a three-year period, from January 26, 2002 through February 21, 2005, was 383.57, of which Plaintiff is claiming 369.06 for purposes of this motion.

The Court has thoroughly reviewed all of Attorney Baird's time records and finds that the hours billed were reasonable. Attorney Baird has carefully documented the services rendered, and has recorded her time in increments of hundredths of an hour. Without exception, her billing entries reflect a reasonable amount of time for the legal services provided.

Defendant has objected to the hours claimed as excessive because they include time spent on Plaintiff's claims against Defendant Maryanne Rhodes, whom Plaintiff voluntarily dropped from the case following the trial.[FN14] Defendant suggests that a reasonable number of hours would be 362.56, as opposed to the 369.06 claimed by Plaintiff.[FN15] Although Maryanne Rhodes would still have been a critical witness had she not been a party, Attorney Baird would not have been able to serve her with interrogatories and might not have had separate dealings with her attorney.[FN16] The Court finds that Defendant's proposed reduction in the hours claimed is reasonable and warranted and will award Plaintiff fees based upon total hours of 362.56.

FN14. The Court had severed all claims against Defendant Rhodes from the claims against The Hartford.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.