EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Agnes DeLEON,
v.
Sandra E. LITTLE, et al.
No. 3:94CV902 RNC.

March 2, 2000.

RULING AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS

CHATIGNY.
*1 Plaintiff's renewed motion for an award of attorneys fees and costs [doc. # 177] is granted in part and denied in part.

I. Background

From late 1989 until mid 1992, plaintiff Agnes DeLeon was employed by the City of Hartford as an administrative assistant assigned to the City Council office of the political party known as People for Change ("PFC"). In that capacity, she served under the direction of City Council members who had been elected on the PFC slate, including Sandra Little. On June 5, 1992, the plaintiff suffered a nervous breakdown at work, was hospitalized, and remained out of work for six months. Two years later, she commenced this action against Little and the City seeking money damages.[FN1] The complaint alleged that for a period of approximately two and a half years before the breakdown in June 1992, the plaintiff, who is Hispanic, was subjected to continuous harassment and discrimination by Little, who was African-American. The alleged mistreatment, as summarized in the plaintiff's complaint, included

FN1. Before bringing this action, plaintiff pursued a workers' compensation claim against the City.

orders to purchase illegal drugs under duress, orders to perform personal errands for Defendant Little, orders to perform tasks for Defendant Little's private employer, orders to stand guard while Defendant Little ingested illegal drugs, repeated telephone calls to the Plaintiff at her home during non-work hours, threats to terminate the Plaintiff's employment as a result of her racial and ethnic status and political affiliation, implementation of discriminatory sick time policies, monitoring of attendance at work, and repeated degrading and humiliating criticisms of the plaintiff in the presence of others.

Compl. at 8. The complaint alleged that "[a]s a result of the cruel and abusive treatment and harassment against her, the Plaintiff suffered a severe psychiatric illness which required her hospitalization and which has caused her to remain under the care of a psychiatrist, including the use of prescription medications, until the present time." *Id.* at 5.

The complaint purported to state claims for relief under 42 U.S.C. § 1983 on the ground that the alleged mistreatment deprived the Plaintiff of her rights to be free from emotional and criminal harassment in the workplace, to be free from racial discrimination in the workplace, and to be free from interference to her personal liberties, all of these rights secured by the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. *Id.* at 6. In addition, the complaint included pendent state law claims for damages for intentional infliction of emotional distress. See *id.* at 10-18.

In the first six months after the complaint was filed, the parties engaged in some written discovery. In February 1995, before deposition discovery began in earnest, the parties agreed to try to settle the case through alternative dispute resolution. The parties subsequently prepared for and engaged in mediation. Two mediation sessions were held in 1995, one in May, the other in September. The case did not settle.

*2 In January 1996, the litigation resumed. Over the next few months, depositions were taken of the plaintiff, Little, and eight witnesses. Then, in May 1996, the defendants moved for summary judgment on all counts of the complaint. The motions for summary judgment entailed extensive briefing by all parties, which was completed in the fall of 1996. In March 1997, Magistrate Judge Smith issued a ruling in which he recommended that Little's motion for summary judgment be granted as to all claims except

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                           Page 2
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

a claim based on the First Amendment and that the City's motion for summary judgment be granted in full. In June 1997, the ruling was approved and adopted over the plaintiff's objection. *See DeLeon v. Little,* 981 F.Sup. 728 (D.Conn.1997).[FN2]

> FN2. The plaintiff began to pursue an appeal but the appeal was withdrawn.

The case sat in that posture until the parties were ordered to appear for a pretrial conference in April 1998. By then Little had died. A motion to substitute her executor as the named defendant was subsequently filed and granted, and the case was set for trial.

Jury selection took place in October 1998. The trial lasted four days. At the trial, the plaintiff claimed that the defendant had violated her First Amendment rights in two ways: (1) by infringing on her right to freedom of association by prohibiting her from spending time during the business day in the office of the Democratic members of the City Council; and (2) by infringing on her right to political neutrality by impliedly threatening at a meeting at a Burger King restaurant that her job was in jeopardy because she was not attending meetings of the PFC. The plaintiff was not permitted to go to the jury on the first of these theories but was permitted to go to the jury on the second one. The jury found that Little's conduct at the Burger King meeting violated the plaintiff's First Amendment right to political neutrality. The jury awarded no compensatory damages for the violation, which occurred approximately eight months before the plaintiff's nervous breakdown. However, the jury did award nominal damages in the amount of $10 and punitive damages in the amount of $150,000.

The defendant filed post-trial motions for judgment as a matter of law and for a new trial or, in the alternative, remittitur. The plaintiff opposed those motions and filed a motion for an award of attorneys fees and costs. The plaintiff requested an award of $259,850 in fees based on 866.5 hours at $200 per hour plus a 50% bonus, and $17,589.55 in costs. The motion for judgment as a matter of law was denied, but the motion for remittitur was granted and a new trial was ordered unless the plaintiff accepted a reduced award of punitive damages in the amount of $7,500. See Rulings on Post-Trial Motions [doc. # 176] (filed Sept. 29, 1999).

Plaintiff has accepted the remittitur and renewed her motion for an award of attorneys fees and costs. In her renewed motion, plaintiff insists that she should receive a fully compensatory fee for all the time her attorneys spent on the case from its inception, plus a bonus for unusual success. In support of this position, she asserts that the Burger King meeting occurred as part of an "ongoing course of conduct during a thirty-month period"; that the defendant's conduct at the meeting was "intermingled" with her other conduct toward the plaintiff; that all the claims were "inherently interrelated"; and that she has won a "great victory." Pl.'s Mem.Supp. (Renewed) Mot. For Att'ys Fees & Costs [doc. # 178] at 2, 4 (unnumbered).

*3 Without waiving her claim to a fully compensatory fee and bonus, plaintiff also contends that, at a bare minimum, she should be awarded $144,549 in fees. This sum would compensate her for: (1) all hours her counsel spent on the case after June 1997 (i.e., after the rulings on the motions for summary judgment) (2) all hours Attorney C. Thomas Furniss spent on the case before June 1997 on the ground that all he ever worked on was the First Amendment claim; and (3) 25 percent of the hours spent by other attorneys on the case before June 1997 on the ground that this is the best estimate plaintiff's counsel can provide regarding the amount of time they spent on the First Amendment claim during that phase of the litigation. Plaintiff continues to maintain that $200 per hour is a reasonable rate for each of the hours for which she seeks compensation and renews her claim for costs in the amount of $17,589.55.

Defendant does not deny that plaintiff is a prevailing party presumptively entitled to an award of reasonable attorneys fees. However, defendant urges the court to award significantly less than the plaintiff's reduced figure of $144,549. Defendant suggests that the most the court should award is $58,662.50, which it views as a "generous" figure for obtaining a recovery of $7,510 in nominal and punitive damages. Def.'s Opp'n to Renewed Mot. For Att'ys Fees & Costs [doc. # 180] at 4, 7. This sum is arrived at by: (1) compensating plaintiff for virtually all the hours spent on the case by her lead counsel, James M. Quinn, and Attorney Furniss after the summary judgment rulings; (2) compensating her for almost all the hours Attorney Furniss expended on the case before then; (3) reducing the hours spent by Attorney Quinn before the summary judgment rulings to 15% of their value (after excluding billing entries that on their face relate to matters other than the First Amendment claim against Little); (4) excluding all time spent by other lawyers on the plaintiff's team (i.e., all lawyers except James M.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Quinn and C. Thomas Furniss); (5) compensating Attorney Quinn at a rate of $175 per hour; and (6) compensating Attorney Furniss at a rate of $150 per hour. Defendant opposes plaintiff's request for reimbursement of costs on the ground that she has failed to provide sufficient information regarding the nature or purpose of the costs to permit the court to make a reasonable award.

II. Discussion

The prevailing party in a federal civil rights case is entitled to an award of reasonable attorneys fees. See 42 U.S.C. § 1988. The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.1999). Reasonable attorneys fees also include reasonable out-of-pocket expenses ordinarily charged to clients. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998).

*4 To enable a court to calculate the lodestar amount, fee applications should be supported by contemporaneous time records specifying the date, hours expended, and nature of work done. See Hensley, 461 U.S. at 437 & n. 12. Hours that are excessive, redundant, or otherwise unnecessary should be excluded. See id. at 434.

A prevailing party is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claim on which the party prevailed. See id. at 434-35. However, "if the plaintiff won substantial relief, and all of his claims for relief 'involve[d] a common core of facts' or were 'based on related legal theories,' so that '[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended." LeBlanc-Sternberg, 143 F.3d at 762 (quoting Hensley, 461 U.S. at 435). See Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir.1997).

The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience, and reputation in the district. See Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir.1998); Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir.1997). When services are provided over many years, the objective of providing adequate compensation may call for use of current rather than historic hourly rates to compensate for delay in payment. See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir.1998). There is a strong presumption that the lodestar figure represents a reasonable fee. See Quaratino, 166 F.3d at 425. However, the lodestar may be adjusted on the basis of several factors, including the "results obtained." Id. (quoting Hensley, 461 U.S. at 434). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435. When a plaintiff recovers less than all the relief sought but the relief obtained is nevertheless substantial, a fee award based on all hours reasonably expended may still be appropriate if the relief obtained justifies the expenditure of attorney time. See id. at n. 11. However, if a plaintiff recovers only minimal damages that fall well short of the relief sought, a reduction in the lodestar amount may be necessary and appropriate. See Farrar, 506 U.S. at 114; Hensley, 461 U.S. at 434; see also Hyde v. Small, 123 F.3d 583, 585 (7th Cir.1997) (Posner, C.J.) (district court must determine whether "the plaintiff was aiming high and fell far short, in the process inflicting heavy costs on his opponent and wasting the time of the court, or whether ... the case was simply a small claim and was tried accordingly") (citations omitted); cf. Pino v. Locascio, 101 F.3d 235, 237-38 (2d Cir.1996).

A. The Lodestar Calculation

1. Partial Success

*5 The first issue that must be decided is whether the time spent on plaintiff's unsuccessful claims should be included in the fee calculation. Under Hensley, this requires a two-step analysis. Step one asks whether the unsuccessful claims were related to the successful claim in fact or law. If the answer is yes, step two asks whether the plaintiff achieved a level of success that warrants full compensation for the hours spent on the unsuccessful claims. If the results

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                          Page 4
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

obtained are "excellent," no reduction is warranted. *Hensley,* 461 U.S. at 435. However, if the plaintiff obtained "only partial or limited success," a reduction may be necessary because the time expended might not be "reasonable in relation to the success achieved." *Id.* at 436-37.

In *Hensley,* the Supreme Court recognized that "there is no certain method of determining when claims are related, or 'unrelated .'" *Id.* at 437 n. 12. In this case, reasonable people could disagree about whether the claims should be deemed related under *Hensley.* All the claims in the complaint were at least marginally related because the First Amendment claim against Little based on the Burger King meeting could not be tried without some consideration of the history of the parties' relationship, which provided the factual underpinnings for the other claims.[FN3] Moreover, it is conceivable that some of the work on the unsuccessful claims contributed to the plaintiff's success on the First Amendment claim.[FN4] On the other hand, the successful First Amendment claim based on the Burger King meeting rested on a core of facts concerning the events of one evening, whereas the unsuccessful claims rested on a slew of allegations concerning a course of conduct encompassing all the cruel and abusive treatment, harassment, and discrimination the plaintiff allegedly suffered throughout a period of thirty months.[FN5] Severing the unsuccessful claims from the case was therefore possible and subtracting them from the case would have substantially reduced the amount of time plaintiff's counsel needed to spend on the case before the rulings on the motions for summary judgment.[FN6]

> FN3. At the trial, plaintiff was allowed to introduce evidence that she suffered a nervous breakdown, that she was required to run personal errands for Little, that Little was abusive, and that Little was known to be mean and vindictive. This evidence was admitted to place the Burger King meeting in context and enable the jury to assess the plaintiff's credibility concerning her perception of what occurred at the meeting and the impact it had on her health.
>
> FN4. For example, it is conceivable that work on the unsuccessful Fourteenth Amendment claims against Little and the City might have contributed to the plaintiff's success in persuading the jury that the plaintiff reasonably perceived Little as having the power to transfer her to a dead-end job.
>
> FN5. The theory of the unsuccessful claims, as described by plaintiff's counsel in opposing summary judgment on those claims, was that Little had "conducted a well-orchestrated and relentless campaign to control and direct Plaintiff's professional life and to oppress and destroy Plaintiff's personal life. In this orchestration effort, Little had the cooperation-at least by virtue of their inaction-of colleagues on the City Council, of the City Clerk and of the Office of the Corporation Counsel, none of whom would act to protect Plaintiff's job, even when told of Little's orders to buy drugs. The campaign of terror finally achieved its goal, ousting DeLeon from her job so that Little could replace her with a black employee. Her life, liberty and property interests were constantly assaulted, infringed on and partially stolen-never to be fully regained and Sandra Little got her way." Pl.'s Resp. to Def. Little's Reply to Opp'n to Def. Little's Mot. for Summ.J. [Doc. # 78] at 7-8.
>
> FN6. Plaintiff has not shown that the work her counsel performed to develop the successful First Amendment claim and the unsuccessful claims was so intertwined that the claims should be deemed related on that basis alone. Such a claim would be difficult to sustain in any event because the time sheets submitted by plaintiff's counsel show that before the rulings on the summary judgment motions (which is the only time period at issue here), Attorney Furniss had primary responsibility for the First Amendment claim and did not work on any other claims. This tends to confirm that the First Amendment claim could be pursued independently.

Assuming without deciding that all the claims in this case were sufficiently related to satisfy the *Hensley* standard of relatedness,[FN7] the hours expended on the unsuccessful claims must be excluded at step two of the *Hensley* analysis because the plaintiff obtained only limited success.[FN8] Plaintiff's loss on the unsuccessful claims was not a minor defeat. The First Amendment claim against Little based on the Burger King meeting was clearly secondary to the other claims in the complaint,[FN9] which provided a vehicle for seeking compensatory damages for all the harms

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.