Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)  
(Cite as: Not Reported in F.Supp.2d)

Page 5

alleged in the complaint, plus punitive damages for Little's alleged cruelty, harassment, and discrimination.[FN10] Without those claims, plaintiff failed to obtain compensatory damages.[FN11] Moreover, because of the limited nature of the First Amendment violation found by the jury, the punitive damages awarded to the plaintiff had to be capped at $7,500 as a matter of law.[FN12]

> FN7. In *Hensley,* the Court stated that in civil rights cases, "unrelated claims are unlikely to arise with great frequency. *Hensley,* 461 U.S. at 435.
>
> FN8. When the success achieved is limited compared to the relief sought, the court may either identify specific hours to be eliminated or simply reduce the award to make it reasonable in light of the limited nature of the relief obtained on the merits. See *Hensley,* 461 U.S. at 436-37.
>
> FN9. The First Amendment claim based on the Burger King meeting is only alluded to in the complaint and only briefly discussed in the papers opposing the motions for summary judgment.
>
> FN10. At the final pretrial conference on October 6, 1998, plaintiff's lead counsel stated that, as a result of the summary judgment rulings, the plaintiff felt she had been denied her day in court on "all the actions that led to her illness." Tr. of Pretrial Conference at 28.
>
> FN11. The jurors were instructed that if they found a violation of the plaintiff's First Amendment rights based on the Burger King meeting, they could not award compensatory damages for the plaintiff's nervous breakdown in June 1992 because her psychiatric expert, Dr. Selig, could not attribute the breakdown to the Burger King meeting.
>
> FN12. See Rulings on Post-Trial Motions [doc. # 176] at 16-19.

*6 I have no doubt that the modest relief plaintiff has obtained falls well short of the relief she sought to obtain in bringing the action, and that a fully compensatory fee award would be unreasonable in light of the limited nature of her success. The plaintiff can be adequately compensated in accordance with the law and policy of statutory fee awards by awarding a reasonable fee based on the hours her counsel devoted to the successful First Amendment claim.

2. Hours For Work Done By Attorney James M. Quinn

The next issue is the number of hours that should be included in the lodestar calculation for work done by plaintiff's lead counsel, James M. Quinn. It is undisputed that almost all the time he spent on the case after the rulings on the motions for summary judgment may be included. Based on independent review of each item in the billing records, this figure is 207.3 hours.[FN13]

> FN13. This figure excludes 4.75 hours for services rendered in connection with an "appeal" on June 26 and 29, 1998.

As noted earlier, the parties disagree regarding the number of hours that should be included in the lodestar calculation for work performed by Attorney Quinn before the summary judgment rulings. Plaintiff contends that she should be compensated for 25 percent of all the hours he spent on the case through that point in the litigation. The defendant, on the other hand, urges the court to compensate the plaintiff for 15 percent of those hours, after excluding certain billing entries that on their face appear to be unrelated to the First Amendment claim.

Plaintiff has not taken issue with defendant's argument that the billing entries listed at page 5 of defendant's memorandum in opposition should be excluded from the lodestar. After reviewing each of the billing entries on that list, it appears that the listed entries for the years 1992 through 1996 are unrelated to the First Amendment claim against Little. Accordingly, those hours are excluded. The number of hours excluded on this basis is 56.75, leaving a balance of 360.30 for the period through June 1997.[FN14]

> FN14. The defendant's list of challenged billing entries include three entries for 1998. Of these, the first two are properly excluded from the lodestar because they relate to an "appeal" and the last is properly excluded because, although the entry plainly relates to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                              Page 6
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

the trial, the billing person "CC" is not identified.

The next issue is how many of those 360.30 hours should be included in the lodestar. If plaintiff's estimate of 25 percent is used, one would include 90.08 hours; if defendant's estimate of 15 percent is used, only 54.05 hours would be included. Recognizing that this is not an exact science, the higher figure will be used because Attorney Quinn is in the best position to estimate how much time he actually spent on the First Amendment claim.[FN15]

> FN15. The papers submitted by plaintiff's counsel state that identifying the number of hours spent on the First Amendment claim is "an impossible and unrealistic assignment, given the fluid nature of the allegations contained in this Complaint." Pl.'s Mem.Supp. (Renewed) Mot. [doc. # 178] at 1-2 (unnumbered). That said, plaintiff's counsel proceeds to provide the estimate of 25 percent, which the court is willing to credit.

Ninety hours for Attorney Quinn might appear to be somewhat excessive especially when viewed in light of the number of hours billed by Attorney Furniss. However, much of the time Attorney Quinn expended on the case through June 1997 was devoted to mediation, and it cannot be said that the amount of time he spent trying to resolve the case through mediation was unreasonable. He also devoted substantial time to deposition discovery, which was not clearly excessive (many of the deponents testified at trial). In addition, he spent substantial time opposing the defendant's motion for summary judgment, which challenged the First Amendment claim as well as the other claims.

*7 In this context, the court includes 90.8 hours in the lodestar as time reasonably expended by Attorney Quinn on this case through June 1997. Adding the 207.3 hours he spent thereafter yields a total of 298.10 hours.

### 3. Hours for Work Done By Attorney C. Thomas Furniss

It is undisputed that virtually all the hours Attorney Furniss spent on the case should be included in the lodestar because from the outset of the case he focused on the First Amendment claim against Little.

The only billing entry for him that the defendant would exclude from the lodestar is an entry for .60 hours on 5/16/95; defendant would exclude that entry on the ground that it relates to plaintiff's claim against the City. See Def.'s Opp. [doc. # 180] at 6.

Plaintiff has not taken issue with defendant's argument that this entry should be excluded. Other billing entries for Attorney Furniss also appear to relate to the claim against the City, namely: the other entry for 5/16/95 (.80 hours), and entries for 6/10/96 (1.2 hours), 6/20/96 (1.5 hours), and 6/22/96 (1 hour). Excluding those entries, the number of hours that should be included in the lodestar for Attorney Furniss is 83.10.

### 4. Other Attorneys

Plaintiff seeks compensation for time spent by other attorneys. Defendant would exclude any and all such hours on the grounds that plaintiff has offered no justification for seeking compensation for more than two attorneys and the billing entries for the other attorneys are "woefully non-descriptive and provide little assistance in assessing the reasonableness of the work done." Def.'s Opp. [doc. # 180] at 4. Plaintiff has not replied to these objections.

The plaintiff has the burden of demonstrating that it was reasonably necessary to involve additional lawyers in the prosecution of this case and that the time for which they seek compensation was reasonably expended. In the absence of such an explanation, their time must be excluded unless the court's firsthand knowledge of their involvement in the matter (or some other source of information) provides a sufficient basis for including their hours in the lodestar calculation.

In this case, the plaintiff claims a right to be compensated for services rendered by Attorneys Joseph P. Quinn, Jr. (91.40 hours), John J. Quinn (27 hours) and James F. Aspell (8 hours). Plaintiff's papers make no attempt to explain why their services were reasonably needed to prosecute this case. This is not fatal to the plaintiff's claim with regard to Attorney Joseph P. Quinn because he participated in a lengthy pretrial conference in the courthouse on October 6, 1998, and then participated in the trial itself, and as a result I have a basis for assessing the nature and extent of his involvement in the case. However, this is not true with regard to the other two attorneys. Attorney Aspell did not file an appearance in the case and, although Attorney John J. Quinn did

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 7
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

file an appearance on the eve of trial, I do not recall him participating in the pretrial conferences or the trial.[FN16]

> FN16. As the defendant correctly notes in its opposition memorandum, Attorney John J. Quinn has not submitted an affidavit. See Def.'s Opp. [doc. # 180] at 4. Plaintiff has not attempted to correct this oversight.

*8 Accordingly, I agree with the defendant that the hours billed by Attorneys Aspell and John J. Quinn should be excluded. With regard to Attorney Joseph P. Quinn, Jr., I find that the hours he billed beginning in October 1998 (i.e. in connection with his appearances in court) should be included in the lodestar. The total number of hours that will be included on this basis is 55.9.

### 5. Reasonable Hourly Rates

The parties' disagreement as to the hourly rates that should be used to calculate the lodestar requires me to make certain findings. Based on my knowledge of the market for legal services in the Hartford area, and the affidavits of plaintiff's counsel, I find as follows:
In the past 6 years in the Hartford area, trial lawyers with experience in litigation under 42 U.S.C. § 1983 alleging official misconduct have been compensated for their services in such cases in the range of $125 to $225 per hour.
During that time, the regular hourly rate charged by Attorneys Furniss and Joseph P. Quinn, Jr. has been $175, although on occasion each one has charged $200 per hour. Attorney James M. Quinn specializes in workers' compensation cases and usually does not bill by the hour but has charged fees that would yield an effective hourly rate in excess of $200.
None of these three attorneys claims to have been involved in any other actions under § 1983.

This appears to be the first case that Attorney James M. Quinn has tried in federal court, but he has tried civil cases in state court. Attorney Furniss frequently appears before this court in criminal cases, and he has tried civil cases in state court. Attorney Joseph P. Quinn, Jr. has tried civil cases in this court and state court.

Because compensation is sought for services rendered beginning in 1994, the hourly rate that is used in the lodestar calculation should take into account the need to provide compensation for delay in payment.

Based on these findings, I conclude that for the services they rendered in connection with litigating the successful First Amendment claim each of these three attorneys should be compensated at the same rate and that the rate should be $175 per hour.

Accordingly, the lodestar calculation is as follows: 387.1 hours multiplied by $175 per hour for a total of $67,742.50.

### B. Adjustments to the Lodestar

For reasons that should be apparent, I am not persuaded that the lodestar figure should be adjusted upward as a bonus for success, as plaintiff has requested. In my opinion, given the limited nature of the plaintiff's success, a fee award of $67,742.50 is reasonable, if not generous.[FN17]

> FN17. My award of $67,742.50 is disproportionate to the recovery of $7,510 but only slightly more so than the fee of $58,662.50 suggested by the defendant, and disparity in itself does not provide a basis for reducing an award in a civil rights case. See *Quarantino,* 166 F.3d at 425-26; *Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 98 (2d Cir.1997).

### C. Disbursements

Plaintiff is entitled to be reimbursed for reasonable out-of-pocket expenses. The defendant's memorandum in opposition criticizes plaintiff's request for $17,589.55 on the ground that not enough information has been provided to justify an award. Plaintiff has not responded to this objection.

Most of the items that appear on plaintiff's list of disbursements are self-explanatory as to the nature or purpose of the expense (e.g., mediation fees for Sta-Fed ADR, Inc., service of process fees, deposition expenses, expert witness fees, and fees for trial witnesses) and the total amount of those expenses appears to be within the range of reasonableness.[FN18] Other items on the list do not provide a basis for reimbursement without more information as to the nature and purpose of the expense and its connection to the First Amendment claim against Little (viz., disbursements before 6/14/94, disbursements for Pat Vontell for 3/19/96 and James M. Quinn for 4/4/96,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

disbursement to Russell Huk, disbursements to clerk for $105). As to these, I agree with the defendant that the plaintiff has failed to provide sufficient information to support an award. Accordingly, the plaintiff will be awarded an additional amount of $16,056.70.

> FN18. The deposition fees are on the high side. However, defendant has not contended that the deposition fees are excessive, many of the witnesses who were deposed wound up testifying at trial, and it would be difficult to allocate the time spent in depositions to one claim or another, see Hensley, 461 U.S. at 448 (Brennan, J., concurring in part and dissenting in part). The fees paid to Dr. Selig also appear to be on the high side but defendant has not challenged those fees as excessive either.

### III. Conclusion

*9 For the foregoing reasons, the plaintiff's motion for an award of fees and costs is granted in part and denied in part. Plaintiff is awarded fees and expenses in the total amount of $83,799.20.

So ordered.

D.Conn.,2000.
DeLeon v. Little
Not Reported in F.Supp.2d, 2000 WL 435494 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:94CV00902 (Docket) (Jun. 03, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.