EXHIBIT F



Slip Copy                                                                                                                                                 Page 1
Slip Copy, 2006 WL 141652 (D.Conn.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Jose GALAZO, -Plaintiff
v.
Michael PIEKSZA et al, -Defendants.
No. 4:01-CV-01589(TPS).

Jan. 19, 2006.

John R. Williams, Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff.
Elliot B. Spector, Michelle N. Holmes, Sack, Spector & Karsten, West Hartford, CT, Leonard Michael Crone, Law Offices of Leonard M. Crone, Waterbury, CT, for Defendants.

RULING ON PLAINTIFF'S FIRST AND SECOND MOTIONS FOR ATTORNEY'S FEES

SMITH, Magistrate J.
*1 Plaintiff, Jose Galazo, seeks attorney's fees pursuant to 42 U.S.C. § 1988.[FN1] Plaintiff's first motion for attorney fees, submitted by his pre-trial counsel John Williams, requests an award of $4,865.00.[FN2] Plaintiff's second motion for attorney fees, submitted by trial counsel Joseph Merley, requests an additional $12,250.00.[FN3] The total amount requested is $17,115.00. Plaintiff also seeks $1,524.72 in costs. Because the jury found only defendant Charles Sampson liable it is he alone who is liable for plaintiff's fees and he alone who opposes plaintiff's motion. For the reasons set forth herein plaintiff's first and second motions for attorney's fees [Dkts. # 92, 94] are GRANTED. Plaintiff is awarded $17,115.00 in attorney's fees and $758.82 in costs for a total of $17,873.82.

FN1. Plaintiff prevailed under both a federal claim of excessive force and state law claim of assault and battery. As such, plaintiff may have been entitled to attorney's fees under Connecticut law. Under Connecticut common law, punitive damages are limited to litigation expenses less taxable costs. Hanna v. Sweeney, 78 Conn. 492, 494-95, 62 A. 785 (1906); Berry v. Loiseau, 223 Conn. 786, 827, 614 A.2d 414 (1992); Grisanti v. Cioffi, 3:99CV490 (JBA), 2001 U.S. Dist. LEXIS 14358, at *35 (D. Conn. June 14, 2001). Litigation expenses include attorney's fees. Harty v. Cantor Fitzgerald & Co., 275 Conn. 72, 99-100, 881 A.2d 139 (2005). With the agreement of the parties, the verdict form asked the jury only whether punitive damages should be awarded on the state law claim of assault and battery. The calculation of punitive damages was left to the determination of the court following trial. The jury found that punitive damages should be awarded on the state law claim. However, plaintiff moves for attorney's fees pursuant to 42 U.S.C. § 1988 not Connecticut state law. Therefore, the court awards attorney fees based solely on federal law. An additional award under Connecticut law would be unfairly duplicative. See Lieberman v. Dudley, 3:95CV2437(AHN), 1998 U.S. Dist. LEXIS 16809, at *19 (D.Conn. July 27, 1998); Ham v. Greene, 322775, 2000 Conn.Super. LEXIS 1556, at *5-10 (Conn.Super. Ct. June 12, 2000).

FN2. Due to an apparent calculation error, plaintiff's motion requested $4,965.00. However, 13.9 hours multiplied by an hourly rate of $350 results in $4,865.00.

FN3. Attorneys Williams and Merely are both members of the same law firm, John R. Williams & Associates LLC.

I. *Facts*

Plaintiff brought this action as a result of an altercation with a private citizen, Michael Pieksza, and several off-duty Waterbury Police Officers outside of the Brass Horse Bar ("Brass Horse") on St. Patrick's Day 1999. At that time, Pieksza was the co-owner of the Brass Horse and Galazo worked in the kitchen. Galazo alleged that Pieksza and several off-duty police officers confronted and proceeded to physically assault him in an alley behind the bar. One of the officers allegedly present was Charles Sampson. As a result of this incident, Sampson, along with the other officers, arrested Galazo for disorderly conduct. The Superior Court later entered a *nolle prosequi* on the disorderly conduct charge.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy	Page 2
Slip Copy, 2006 WL 141652 (D.Conn.)
(Cite as: Slip Copy)

Plaintiff further alleged that shortly after the incident he contacted the City of Waterbury Mayor's office and logged a complaint. Galazo claimed that as a result of this complaint, Sargent James Nardozzi came to his home and attempted to bribe him in an effort to prevent any further complaints. Finally, plaintiff alleged that Officer Gary Pelosi made at least one threatening phone call to his house, also with an eye toward preventing Galazo from taking any further action regarding the incident.

Plaintiff's five-count complaint alleged the federal claims of unlawful arrest and excessive force as well as state law claims for assault and battery, malicious prosecution and intentional infliction of emotional distress. A ruling on defendants' motion for summary judgment dismissed all claims against several of the original defendant's named in the complaint. *Galazo v. City of Waterbury*, 303 F.Supp.2d 213 (D.Conn.2004).[FN4] The court denied summary judgment on all counts with respect to defendants, Michael Pieksza, Sargent James Nardozzi, Officer Charles Sampson and Officer Gary Pelosi.

> FN4. The case caption was changed to *Galazo v. Pieksza* after the dismissal of the City of Waterbury as a defendant.

On November 1, 2005 the case against the remaining defendants proceeded to a trial before a jury. After the plaintiff's case-in-chief, the court granted defendants' Rule 50 motion with respect to all counts except intentional infliction of emotional distress as to defendants Nardozzi and Pelosi. As a result, the jury was instructed on all five counts as to defendants Pieksza and Sampson and only the intentional infliction count with respect to Nardozzi and Pelosi.

*2 After deliberation, the jury returned a verdict in plaintiff's favor on the excessive force and assault and battery claims against defendant Sampson only. In all other respects the jury found in favor of the defendants. On the excessive force claim, the jury awarded $1,250 in compensatory damages and $50,000 in punitive damages. On the assault and battery claim, the jury also returned an award of $1,250 in compensatory damages and found that punitive damages should be awarded.[FN5]

> FN5. The damage amounts were upheld following defendant's Rule 50 Motion to Set Aside. *Galazo v. Pieksza*, 3:01-CV-01589(TPS), 2005 U.S. Dist. LEXIS 33505, 2005 WL 3312765 (D.Conn. Dec. 6, 2005).

II. *Standard*

Under 42 U.S.C.1988(b) a plaintiff who has prevailed in vindicating rights under the federal civil rights statutes is entitled to reasonable attorney's fees. The amount awarded is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Orchano v. Advanced Recovery Inc.*, 107 F.3d 94, 98 (2d Cir.1997). The product of this calculation is called the "lodestar" figure. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999). The party requesting fees bears the burden of proving reasonableness by way of an affidavit detailing the time spent working on the case and the fees charged. *Lieberman v. Dudley*, 3:95CV2437(AHN), 1998 U.S. Dist. LEXIS 16809, at *17 (D.Conn. July 27, 1998) (citing *Blum v. Stenson* 465 U.S. 886, 895-96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

After determining the loadstar amount the court may reduce the final award to account for the plaintiff's lack of success on certain claims. Where the suit involves multiple claims the plaintiff is not entitled to attorney's fees for time spent exclusively on the separate unsuccessful claims. See *Hensley*, 461 U.S. at 440; *Green v. Torres*, 361 F.3d 96, 98 (2d Cir.2004). If the district court determines that a reduction based on partial success is warranted, it may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436. However, where the claims arise out of a common nucleus of facts or are based on related legal theories a reduction is not appropriate where the plaintiff's attorney has achieved overall "excellent" results. See *Hensley*, at 435, 440; *Quaratino*, 166 F.3d at 425; *Green*, 361 F.3d at 98.

The amount of attorney's fees awarded is essentially a factual determination made by the trial court. As such, the district court is given great deference, reviewable under the abuse of discretion standard. See e.g., *Orchano*, 107 F.3d 94, 99.

III. *Discussion*

Under 42 U.S.C.1988 only the "prevailing" party is entitled to attorney's fees. Defendant does not contest

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                        Page 3
Slip Copy, 2006 WL 141652 (D.Conn.)
(Cite as: Slip Copy)

that plaintiff is the prevailing party as defined by the act and thus entitled to some attorney's fees. Instead, defendant challenges plaintiff's proposed calculation of the loadstar figure. Further, defendant argues that plaintiff's results were "limited" rather than "excellent" because plaintiff was unsuccessful on certain distinct claims-requiring a reduction in the amount of fees awarded. Therefore, the issue before the court is the appropriate calculation of the loadstar and whether it should be reduced to account of plaintiff's lack of success on certain claims.

### A. Reasonable Hourly Rate

*3 To determine a proper hourly rate the court must compare the rates claimed to the prevailing rates within the district where the court sits. Here, John Williams is requesting an hourly rate of $350 and Joseph Merely $250 an hour. The appropriate geographical reference is the District of Connecticut. John Williams is an extremely well-known, experienced civil rights attorney in Connecticut. Further, Joseph Merely presented himself as an experienced trial lawyer who has obviously conducted numerous trials.[FN6] The undersigned is familiar with the fees charged by attorneys with comparable experience in Connecticut. The court finds that the fees charged by plaintiff's two attorneys are well within reason.

FN6. Both attorneys submitted affidavits outlining their experience.

The defendant fires but one salvo at the hourly rate claimed. He argues that Attorney Williams should not be compensated at his standard rate because most of his work "can be described as out-of-court services." (Def's Mem. Opp'n at 6). This is an inaccurate characterization of the work claimed. Among other things, Attorney Williams claimed time in "preparing brief in opposition to motion to compel," "preparing reply brief regarding discovery," "preparing opposition to motion for summary judgment," and "preparing objection to motion in limine." While the documents were, quite literally, prepared "out of court", they are obviously related to the motion practice associated with litigation. As such, Attorney Williams should be compensated at his standard reasonable rate.

### B. Reasonable Amount of Time

Attorney Williams is requesting compensation for 13.9 hours of pre-trial work while Attorney Merely is requesting 49 hours associated with preparing for and prosecuting the trial. Defendant contends that both affidavits supplied are too vague and requests a "high percentage reduction" to penalize the attorneys for supplying the court with inadequate support for their fee request. (Def's Mem. Opp'n at 3). The court finds each attorney's affidavit sufficient to justify the hours charged.

Since Attorney Merely is claiming hours for trial and trial preparation only, little description is needed to convince the court that he actually worked the amount of time he is claiming. The undersigned presided over the three-day trial for which Attorney Merely had to prepare two direct examinations, three cross-examinations, an opening and a summation.[FN7] The court is confident that the remainder of the time claimed by Attorney Merely, during which he was not before the court, was spent preparing for trial. Attorney Merely presented himself as a well-prepared and capable attorney. As for the hours charged by Attorney Williams, while not exceedingly descriptive, the affidavit is sufficient to satisfy the court that Attorney Williams actually spent 13.9 hours working on this case.

FN7. It is likely that Attorney Merely prepared more than the five examinations mentioned. Other potential witnesses were named in the joint trial memorandum and defendant Pieksza's attorney, as a matter of trial strategy, decided late in the case not to call his client.

The court finds that the 62.9 combined hours claimed by attorneys Williams and Mereley is reasonable. The number is actually quite low. When this case went to trial it was well over six years old. During this time the case proceeded through the typical motion practice, including motion for summary judgment, that one might expect from six years of litigation. Further, unlike the overwhelming majority of its brethren, this case actually went to trial. For three days counsel was required to be at court from 9:30am to 5:00pm and for four hours on the fourth day awaiting the jury verdict. For all of this, the attorneys are claiming 62.9 hours-or about a week and a half worth of work. In the undersigned's experience this is very efficient work.

*4 Having determined that an hourly fee of $350 for Attorney Williams and $250 for Attorney Merely is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 4
Slip Copy, 2006 WL 141652 (D.Conn.)
**(Cite as: Slip Copy)**

reasonable and that 13.9 hours of time spent by Attorney Williams and 49 hours by Attorney Merely is reasonable the court calculates the loadstar as $17,115.00.[FN8] The only remaining issue is whether a reduction of the loadstar is warranted in light of the fact that plaintiff was unsuccessful on some of the claims made.

 FN8. The loadstar calculation is as follows:

| Attorney | Rate | Time | Total |
|---|---|---|---|
| Merely | $250/hr | 49 hours | $12,250.00 |
| Williams | $350/hr | 13.9 hours | $4,865.00 |
| | | | $17,115.00 |

### C. Reduction Based on Limited Success

Defendant argues that a substantial reduction is appropriate because plaintiff achieved "very limited success." (Def's Mem. Opp'n at 2). The defendant urges a mathematical analysis of plaintiff's success. Plaintiff's complaint alleged five counts against nine different defendants, resulting in a total of forty-five potential issues plaintiff could have prevailed upon. Through the vehicles of summary judgment and motions to dismiss the number of defendants was reduced to four. Further, only one of the original five counts was submitted to the jury as to two of the defendants. Finally, the jury returned a verdict in favor of plaintiff on only two counts against one defendant, Officer Charles Sampson. Therefore, defendant's request for a substantial reduction rests on the mathematical computation that plaintiff prevailed on only two of the possible forty-five claims.

Courts disfavor the mathematical approach to evaluating plaintiff's success for the purpose of awarding attorney's fees. Hensley, 461 U.S. at 435 n. 11 (noting "We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon")(internal quotations omitted); Brodziak v. Runyon, 145 F.3d 194, 197 (4th Cir.1998); Sinajini v. Board of Educ. San Juan Sch. Dist., 233 F.3d 1236, 1241-42 (10th Cir.2000). Instead, a practical holistic approach which takes into account the qualitative rather than quantitative success is more appropriate. In evaluating plaintiff's success the district court must "account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right." Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir.2001).

When viewed in appropriate context the result obtained by plaintiff's attorneys is aptly described as "excellent." The undersigned has served on the judiciary in the District of Connecticut for over twenty-six years. Experience shows that police misconduct cases often result in defendant's verdicts. The reason for the one-sided outcomes stems from the nature of the cases themselves. Often the case boils down to a "he said, he said" between a police officer and a plaintiff who frequently possesses a criminal record. Regardless of jury instructions to the contrary, juries tend to believe the testimony of a police officer over that of a convicted criminal. Thus, any plaintiff's verdict in these cases is rare.

*5 This case too was the classic "he said, he said" scenario. The defendants presented three police officers who, to various degrees, all proceeded to testify that the events plaintiff alleged never took place. On the other hand, plaintiff's counsel relied solely on the plaintiff's testimony and that of his wife. Plaintiff is a convicted felon who testified to numerous other confrontations with the police. Further, counsel could not even point to much in the way of physical evidence to prove damages or allow the jury to infer excessive force from the extent of the injuries. The only evidence admitted was a hospital report detailing some superficial abrasions and contusions, and a several day old photograph depicting mild bruises on plaintiffs face and neck. With the arrows in counsel's quiver depleted, he proceeded to do the only thing he could do-convince the jury of plaintiff's veracity while simultaneously arguing that the officers were not testifying truthfully. Attorney Merely was successful in this endeavor, so successful that the jury was sufficiently outraged to award $50,000 in punitive damages, twenty times the amount of compensatory damages awarded.

It is also critical to the determination that plaintiff's counsel obtained excellent results that plaintiff vindicated civil rights through a claim against a public official. As the court noted in Villano, when a civil rights plaintiff succeeds, he vindicates not only his individual rights, but those of the community as a whole. 254 F.3d at 1308. Mr. Galazo's victory will therefore be a deterrent to future misconduct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 141652 (D.Conn.)
(Cite as: Slip Copy)

Page 5

In light of the above, the court finds that plaintiff's attorneys achieved excellent results. The court also finds that the claims presented related legal theories and arose from a common nucleus of fact. To the extent that summary judgment and motions to dismiss were necessary to eliminate those defendants who were either not at the scene or not liable as a matter of law, the court finds that it was the police department's own conduct in delaying disclosure of the police report that caused plaintiff's counsel to name so many defendants in the original complaint. Therefore, the loadstar figure stands and no reduction is appropriate.

### D. Costs

Plaintiff requests $1,524.72 in costs associated with this litigation. The normal procedure is to submit a verified bill of costs directly to the clerk of the court. D. Conn. L.R. 54(a). However, for the purposes of expediting the close of this case the court will award costs using the Local Rule 54 standard.

The $603.90 claimed for private investigator fees is not taxable to the defendant. D. Conn. L.R. 54(c)(7)(ix). The $162.00 claimed for "messenger" fees is also not taxable because the entry is too vague for the court to determine if the messenger expense was incurred as a cost of serving process, which would be taxable under D. Conn. L.R. 54(c)(1). The requesting party must attach supporting documentation when requesting costs incurred using private process servers. *Id.* The remaining costs are taxable to the defendant. Plaintiff is awarded $758.82 in costs.

### IV. *Conclusion*

*6 For the reasons stated herein, plaintiff's first and second motions for attorney fees [Dkts. # 92,94] are GRANTED. Plaintiff is awarded $17,115.00 in attorney's fees and $758.82 in costs. Defendant Sampson is ORDERED to pay plaintiff a total of $17,873.82 within thirty days of this ruling

This case is before the undersigned pursuant to 28 U.S.C. § 636(c) and D. Conn. Magis. R. 73(A)(1). As such, this is a final ruling directly appealable to the United States Court of Appeals for the Second Circuit. 28 U.S.C. § 636(c)(3); D. Conn. Magis. R. 73(B)(1).

IT IS SO ORDERED.

D.Conn.,2006.
Galazo v. Pieksza
Slip Copy, 2006 WL 141652 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:01cv01589 (Docket) (Aug. 22, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.